**HAGNER & ZOHLMAN, LLC**
Commerce Center
1820 Chapel Ave. West
Suite 160
Cherry Hill, New Jersey  08002
(856) 663-9090
Attorney for:   Plaintiff


By:  Thomas J.  Hagner, Esquire

---

| | |
|---|---|
| ROBERT S. CONRAD, SR. | UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF NEW JERSEY |
|        Plaintiff, | |
| vs. | CIVIL ACTION NO. |
| | |
| THE WACHOVIA GROUP LONG-<br>TERM DISABILITY PLAN; | **COMPLAINT** |
| | |
|        Defendant. | |


Plaintiff, Robert S. Conrad, Sr., by way of Complaint against Defendant, says:

1.      This is an action to redress the wrongful denial and under-payment of long term disability benefits rightfully due to the Plaintiff pursuant to a certain Wachovia Corporation Health and Welfare Benefits Plan which he is a participant.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to Section 502(a)(1)(B) and (g)(1) of ERISA, 29 U.S.C. §1132(a)(1)(B) and (g)(1).   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §502(e)(1) of ERISA, 29 U.S.C. §1132 (e)(1).  Pursuant to §502(f) of ERISA, 29 U.S.C. §1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(c) in that

there were sufficient contacts in this District by Defendant including the promulgation, provision, transmission and/or administration of the subject policy and/or plan of insurance as well as frequent contacts with the Plaintiff herein.

## PARTIES

4.      Robert S. Conrad, Sr. ("Plaintiff"), is an individual residing at 44 Longwood Drive, Sicklerville, NJ 08081.

5.      Plaintiff is a participant in the health and welfare plans offered by his employer, Wachovia Corporation ("Wachovia"), including but not limited to the Wachovia Group Long Term Disability Plan.

6.      At all pertinent times hereto, Liberty Life Insurance Company of Boston was the provider of administrative services only (ASO) with respect to the Plan.

## FACTUAL BACKGROUND

7.      In 1995 Plaintiff became employed by Wachovia as a Securities Broker achieving the status of Senior Vice-President in 1997.

8.      Commencing September, 2003 Conrad began struggling with various chronic ailments, the symptoms of which included unexplained sweating, fatigue, diarrhea, sudden weight loss, lack of appetite and short term memory loss.

9.      In November, 2003 while in the office, Conrad needed to suddenly excuse himself from an extremely important meeting with two of his wealthiest clients and rushed to the hospital.  He was admitted for a five day admission undergoing numerous tests to determine the cause of his symptoms, which included abdominal pains and chest discomfort.

10.      Thereafter, Conrad's symptoms worsened and, as a result, he was unable to

perform most of his work tasks.  He was, however, able to answer phone calls and to minimally

service existing clients.

11.     The then Office Manager of the office in which Plaintiff worked was fully aware

of Plaintiff's symptoms and had discussions with Plaintiff concerning his health and the impact

on his ability to work.    Rather than advise Plaintiff concerning the Short Term Disability

Plan's features and benefits, the Office Manager recommended that Plaintiff exercise a "look

back" option to supplement his income.

12.     Conrad made a further inquiry to Wachovia about disability benefits, but was told

initially that no such benefit plan existed.

13.     After a substantial delay, Conrad determined that a disability benefits plan did

exist and submitted a claim for short-term disability benefits.

14.     After filing the claim, Plaintiff was informed by Liberty Mutual that he was not

covered, because he was answering his incoming calls at work.

15.     Although Plaintiff requested information concerning benefits, he was not given

a copy of the Summary Plan Description until January, 2005.

16.     Pursuant to the applicable Employment Benefits Plan, STD benefits begin upon

an absence as a result of an injury or sickness.  In pertinent part, the STD Plan provides that "If

your absence lasts for 8 or more consecutive calendar days, you may apply for STD benefits."

17.     Under the heading of "Intermittent Chronic Disability" the STD Plan provides

for coverage of intermittent disabilities which are defined as a "disability of long duration

characterized as a disease showing little change or slow progression."

18.    In pertinent part, the Employment Benefits Plan provides that "Employees who suffer from intermittent chronic disabilities may obtain STD benefits for days when they are out of work, even though the days are not consecutive."

19.    Also under the heading "Intermittent Chronic Disability", the Disability Plan provides that "You and your manager will be responsible for tracking the days of absence from work as they occur."

20.    Under the heading of "Partial Disability", the Disability Plan provides that "In calculating the 8 days of absence from work (which are required to establish entitlement to STD benefits), you also may include absences of partial work days due to disability."

21.    After receiving STD benefits for a six month period of time Conrad applied for long-term disability (LTD) benefits.

22.    According to the LTD Plan, the amount of LTD benefits, as well as, in some instances, the entitlement to LTD benefits, is based upon the benefits eligible compensation ("BEC") which has the same meaning as pre-disability earnings.

23.    For purposes of calculation and entitlement to LTD benefits, BEC is determined on the business day immediately preceding the date a disability is incurred.

24.    According to the Plan, BEC means the greatest of the following amounts, divided by 52 weeks:

      (a)    Your grandfathered annual benefits base rate;

      (b)    Your comp rates;

      (c)    Your rolling 12 month amount.

25.    For purposes of the LTD Plan, the BEC in this instance represents the Plaintiffs "rolling 12 month amount".

26.     Pursuant to the LTD Plan, Plaintiff's rolling 12 month amount represents the sum of Plaintiff's earnings, as defined in the Plan, for the 12 consecutive months immediately preceding the onset of disability.

27.     Pursuant to the terms of the LTD Plan, compensation is defined as 70% of Plaintiff's "Eligible Function Incentive Pay."

28.     For purposes of calculation of Plaintiff's amount of and entitlement to long-term disability benefits, his "rolling amount" equals $105,906.06 annually or $8,826.48 monthly average.

29.     According to the Plan, the amount of LTD benefits equates to 66 2/3 of the BEC.  Based upon a BEC of $8,826.48, the amount of LTD benefits to which the Plaintiff became entitled is 66 2/3 thereof, or $5,883.66, on a monthly basis.

30.     Pursuant to the terms of the Plan, a participant is entitled to partial benefits in the event of a partial disability, which is defined in the Plan as the ability to perform one or more, but not all, of a participant's material and substantial duties.

31.     The LTD Plan provides for a "Return to Work Program" available to partially disabled participants.

32.     Pursuant to the "Return to Work Program" a participant is entitled to full benefits if monthly earnings are less than 20% of pre-disability earnings.  During the first 12 months of a return to employment if earnings are greater than or equal to 20% of pre-disability earnings, but less than 80% of pre-disability earnings, the full LTD benefit will continue to be paid providing it does not exceed 100% of pre-disability earnings.

33.     After the first 12 months of a return to employment under the Return to Work Program, if monthly earnings are greater than or equal to 20% of pre-disability earnings, but

less than 80% of pre-disability earnings, the LTD benefit otherwise payable will be reduced by 50% of monthly earnings from all employment, and, if monthly earnings are greater than or equal to 80% of pre-disability earnings, LTD benefits will end.

34.     Under the Return to Work Program, Plaintiff was entitled to his full monthly disability payment of $5,883.66 during all months in which his monthly earnings did not exceed $1,765.29 and he was entitled to partial benefits during all months in which his monthly earnings did not exceed $7,061.18.

35.     Mr. Conrad's disability claim was initially approved based upon a disability date of August 3, 2004 and LTD benefits commenced as of February 1, 2005.

36.     On December 31, 2004, Conrad sent a letter to the Wachovia Benefits Committee objections to the calculation of his BEC stating that it should be higher based upon a disability onset date of September 2003, rather than August, 2004.

37.     In response, Mr. Conrad received correspondence from Wachovia's Human Resources Division indicating, among other things, that he needed to address the issue with the claims administration service, Liberty Life Assurance Company of Boston.

38.     On May 30, 2006, Mr. Conrad issued a letter to Liberty appealing both its decision to terminate his benefits, and also the amount of his disability income benefits.

39.     On June 26, 2006, Liberty issued a letter to Conrad refusing his request for reconsideration of the denial of his long-term disability benefits.

40.     Liberty's letter of June 26, 2006 did not address the issue raised by Mr. Conrad concerning the onset date of his disability.

41.     On June 29, 2006, Conrad submitted another appeal to the Wachovia Corporation Benefits Committee.

42.     On August 9, 2006 Conrad submitted a letter jointly signed by his supervisor, Branch Manager, Stanley Hadam, stating "As you know I have chronic health condition that limits my ability to work full-time.   I have been limited to working three hours a day Mondays, Wednesdays and Fridays.   I average one week per month productivity.   In the month of July, 2006 I worked 38 hours and 40 minutes."

43.     With the letter of August 9, 2006 jointly signed by Conrad and his supervisor, Conrad included the paystub indicating that he had a gross commission income of only $961.66.

44.     By letter dated September 5, 2006, Wachovia informed Mr. Conrad that his claim was reopened and he was entitled to receive further benefits.

45.     By letter dated December 7, 2006, Liberty advised Conrad that "In order to obtain complete information (test results, office notes, and assessment of capacity) from the above providers, we are in need of office address (street, city, state, zip code), telephone number and fax number for each provider listed above on the preceding page."

46.     Also by the letter of December 7, 2006 Liberty requested Conrad to complete and return an Authorization to Obtain and Release Information, a Claimant Supplementary Statement, and a Social Security Consent for Release of Information and return them no later that January 8, 2007.

47.     Conrad attempted to submit a claim pursuant to the intermittent chronic disability benefit provision of the LTD Plan.

48.     On December 17, 2006, Liberty issued correspondence to Conrad stating that "The Wachovia Group LTD Plan does not provide intermittent chronic disability benefits."

49.     On January 6, 2007, Liberty contacted Conrad advising that Liberty was going to terminate his benefits due to the fact that the information requested on December 7, 2006 had not been received.

50.     By letter dated January 6, 2007, Conrad informed Liberty that he did not understand that he was responsible for obtaining the medical records; rather, that he interpreted Liberty's letter of December 7, 2006 as an indication that it was going to be sending requests for medical information directly to the medical providers.

51.     Despite the fact that the December 7, 2006 letter from Liberty indicated that a lack of information "may" result in an interruption of LTD benefits; and despite the fact that Conrad spoke to Liberty on January 6, 2007 explaining his confusion about what Liberty required and when; and despite the further fact that Conrad explained to Liberty that during the holiday/flu season, it was difficult to communicate with his doctors and obtain information, Liberty promptly terminated Conrad's benefits on January 10, 2007.

52.     On January 10, 2007, Liberty issued a letter to Wachovia indicating that his benefits were being suspended because medical information which had been requested had not been received.

53.     By letter dated January 11, 2007, Mr. Conrad provided a copy of his health history for the year 2006 which included the name and complete address of all medical providers and the treatments that he had received.

54.     By letter dated January 11, 2007, Mr. Conrad returned completed and signed forms which Liberty had sent in December 2006.

55.     By letter dated February 20, 2007, Conrad submitted to Liberty medical reports of his primary treating doctor, George Petrunzio, M.D. from July 5, 2006 through February 16,

2007 as well as certain lab results.  Conrad reiterated that he disagreed with the benefits

calculation using a disability onset date of 2004.

56.     On February 21, 2007, Conrad received a "Confirmation of Coverage" with

respect to various benefits indicating that coverages had been canceled as of January 1, 2007 as

a result of Liberty's denial of January 10, 2007.

57.     The February 21, 2007 letter further indicated that Conrad's insurance had been

reduced drastically based upon current compensation.

58.     By letter dated March 23, 2007, Liberty advised Conrad that his benefits were

being reinstated pending a continuing investigation.

59.     By letter dated April 24, 2007, Conrad, in order to prove the correct onset date

of his disability, issued a request to Wachovia Corporation seeking "Copies of any and all

employment records pertaining to Mr. Conrad's attendance during the months of September,

October, November and December 2003."

60.     By letter of April 24, 2007, Conrad further requested "Copies of any and all

attendance and/or performance records maintained by Mr. Conrad's supervisor…as well as all

telephone records and/or logs reflecting the volume of calls in which Mr. Conrad participated

during the period of September through December 2003."

61.     In response to the letter of April 24, 2007, Wachovia issued a letter stating that

"Pursuant to the request issued to Wachovia Corporation, it is not our practice to provide

employment/payroll records of employees without a subpoena."

62.     By letter dated April 25, 2007 Conrad informed Liberty of certain provisions in

the Plan, including a provision entitled "Intermittent Chronic Disability" which stated that "If

you suffer from an intermittent chronic disability as defined on page 66 of the STD summary,

you may be entitled to receive LTD benefits after you have been absent from work due to your disability for a period of 26 weeks (130 work days) during any rolling 12 month period."

63.     The letter of April 25, 2007 also included a report from Conrad's physician indicating that Conrad's disability began in September, 2003 stating "In September, 2003 Mr. Conrad experienced the onset of symptoms of depression, fatigue and malaise… since the onset of symptoms in September, 2003 he has experienced spontaneous diaphoresis of unknown ediology, depression, myalgia, sleep apnea, etc.   His attempts to return to work only aggravate his condition with a result in total disability."

64.     The April 25, 2007 letter further informed Liberty that Conrad was participating in a return to work program and therefore was entitled to full disability benefits if his monthly earnings were less than 20% of his pre-disability earnings and a partial benefit in the event his monthly earnings fell between 20% and 80% of his pre-disability earnings.

65.     According to the LTD Plan the pre-disability earnings are determined as of the business day immediately preceding the date of disability.

66.     Due to Conrad's illness, his performance and consequent income suffered greatly between September, 2003 and September, 2004.   Nevertheless, Wachovia/Liberty calculated Conrad's benefits erroneously by using a lesser income level than that to which he was entitled.

67.     On April 25, 2007, Conrad submitted additional medical and compensation information to Liberty.

68.     By letter dated May 17, 2007, Liberty informed Conrad that his payment was approved for the month of March 2007 and that payment of his April 2007 LTD benefit would be paid upon receipt of information from his employer concerning his earnings.

69.     Conrad informed Liberty/Wachovia that the onset date of disability should be September, 2003 due to the "intermittent chronic disability" provisions in the STD/LTD plan.

70.     In the letter of May 17, 2007, Liberty refused to even consider the issue of the correct onset date of disability.  The letter states, in pertinent part, that "With regard to the calculation of Mr. Conrad's Benefits Eligible Compensation (BEC), we must defer all comments and inquiries directly to the Wachovia Corporation, as we are not able to comment on this.  The BEC for each employee who files a claim for disability benefits is calculated by the Wachovia Corporation and then provided to Liberty Mutual."

71.     As a result, in the determination of future benefits, the benefits eligible compensation (BEC) was miscalculated and as a consequence, both the amount of, and also Conrad's entitlement to further benefits was erroneously determined.

72.     Subsequently, utilizing an improperly calculated BEC, Liberty Mutual denied Conrad's benefits on May 23, 2007.

73.     The May 23, 2007 denial letter relies in large part upon a Transferrable Skills Analysis (TSA) to determine other occupations for which Conrad could qualify.

74.     The TSA analysis included reference to New Jersey and national annual wages which erroneously compared those wages to Conrad's compensation based upon an initial disability date of August 2004 as opposed to September 2003.

75.     In response to the letter of May 8, 2007, a letter dated June 6, 2007 was issued to Wachovia indicating, among other things, that "The issuance of a subpoena is not possible for the simple reason that there is no legal action pending."  The letter further provided an Authorization for release of the information, signed by Conrad.

76.     The letter to Wachovia dated June 6, 2007 expressly informed Wachovia that the information was needed in order to address the calculation of the BEC issue.

77.     By letter dated July 6, 2007, a letter was issued to Wachovia indicating that a response had not bee received to the letter of June 6, 2007.

78.     By letter dated August 7, 2007, a further letter was issued to Wachovia indicating that a response had not been received other than copies of pay stubs for the months of September through December 2003.

79.     The letter of August 7, 2007 requested copies of pay stubs for the months of September, October, November and December 2002 and pointed out that the information had been requested in the initial letter of April 24, 2007.

80.     By letter dated September 10, 2007, Wachovia was advised that a response had not been received to the letter of August 7, 2007.

81.     By letter dated September 26, 2007, Wachovia was advised that Conrad had not received a response to the multiple letters dated all the way back to April 24, 2007.

82.     By letter dated November 13, 2007, Conrad submitted an appeal of the denial of his benefits including additional medical information as well as a detailed summary of hours and days worked requesting that his benefits be recalculated in order to take into consideration the higher BEC based upon the onset of disability of September, 2003.

83.     Conrad's appeal was supplemented with additional information on November 16, 2007.  Conrad was forced to file the appeal without the payroll information that he had been requesting for approximately six months.

84.     By letter dated December 3, 2007, Liberty denied the November 13, 2007 appeal.  In the December 3, 2007 denial letter, Liberty submitted a calculation of earnings

which erroneously included a "monthly draw" of $1,972.00 per month as actual compensation when, in fact, the draw represented a draw against future commissions, if earned.

85.     Conrad's appeal was denied by letter dated December 19, 2007.

86.     By letter dated January 18, 2008 benefits were denied.   As of that time, Conrad had **still** not received the payroll information requested almost eight months before.

87.     Subsequently Conrad submitted additional information of a medical nature on June 26, 2008 which Wachovia refused to consider even though Conrad remains employed by Wachovia and has an ongoing right to seek long-term disability benefits.

88.     By refusing to acknowledge the Plan provision for intermittent chronic disability, Defendant improperly imposed a lower BEC which resulted from the fact that commencing in September, 2003 Plaintiff became ill, was unable to work energetically and full-time and therefore his earnings became reduced.

89.     The Defendant wrongfully used Plaintiff's reduced disability caused earnings to create the BEC which it then utilized to calculate Plaintiff's entitlement to an amount of LTD benefits as well as the amount and entitlement of STD benefits.

90.     Because of the disability which commenced in September, 2003 the Plaintiff satisfied the 8 day waiting period as of October, 2003.   As of October, 2003 Plaintiff became entitled to a disability benefit pursuant to the Return to Work Program.

91.     Plaintiff's STD benefit was $8,826.48 which was payable during all months in which Plaintiff's income did not exceed 80% of that amount.  Accordingly, Plaintiff was entitled to an STD benefit of $8,826.48 in December, 2003 which has not been paid.

92.     Plaintiff was entitled to an STD benefit for the month of April, 2004 of $8,255.50.

93.     Plaintiff was entitled to an STD benefit of $6,835.14 for the month of July, 2004.

94.     Plaintiff first received a disability benefit in the month of August, 2004 which benefit was in the amount of $5,327.66.

95.     In the month of September, 2004 Plaintiff became entitled to disability benefit of $8,826.48 but received only $5,027.66 leaving a balance due of $3,498.82.

96.     In the month of October, 2004 Plaintiff became entitled to disability benefit of $8,826.48 but received only $5,027.66 leaving a balance due of $3,498.82.

97.     In the month of November, 2004 Plaintiff became entitled to disability benefit of $8,826.48 but received only $5,027.66 leaving a balance due of $3,498.82.

98.     As of December, 2004 Plaintiff became entitled to LTD beefis of $5,883.66 per month.

99.     In December, 2004 Plaintiff received only $5,327.66 leaving a balance of $556.00.

100.    In January, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $5,327.66 leaving a balance of $566.00.

101.    In February, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $2,952.06 leaving a balance of $2,931.60.

102.    In March, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received nothing leaving a balance of $5,883.66.

103.    In April, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $3,196.60 leaving a balance of $2,687.06.

104.    In May, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $3,103.22 leaving a balance of $2,780.44.

105.    In June, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $867.56 leaving a balance of $5,016.16.

106.    In July, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $3,196.60 leaving a balance of $2,687.06.

107.    In August, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $2,994.87 leaving a balance of $2,888.79.

108.    In September, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $3,238.66 leaving a balance of $2,645.00.

109.    In October, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $872.45 leaving a balance of $5,011.27.

110.    In November, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $2,344.17 leaving a balance of $3,539.49.

111.    In December, 2005 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $5051.40 leaving a balance of $832.26.

112.    In January, 2006 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $5,683.93 leaving a balance of $199.73.

113.    In February, 2006 Plaintiff was entitled to a LTD benefit of $5,883.66 but received only $5981.91 which resulted in an overpayment of $108.05.

114.    In March, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4,037.03.

115.    In May, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4400.74.

116.    In June, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4393.96.

117.    In July, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5402.83.

118.    In August, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4516.32.

119.    In September, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4180.22.

120.    In October, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $44.11.

121.    In November, 2006 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $4,812.55.

122.    In January, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5,633.54.

123.    In February, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $1286.71.

124.    In March, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $2255.63.

125.    In April, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

126.   In May, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

127.   In July, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $3330.57.

128.   In August, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $2589.50.

129.   In September, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5081.35.

130.   In October, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

131.   In December, 2007 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $3557.60.

132.   In January, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5047.47.

133.   In February, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $3104.06.

134.   In April, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

135.   In May, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5621.76.

136.   In July, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

137.     In September, 2008 Plaintiff received no disability payment and, based upon a credit of 50% of his earnings, was entitled to a disability benefit of $5883.66.

138.     Due to the fact that Wachovia and Liberty improperly calculated Plaintiff's BEC, Plaintiff's benefits were not only wrongfully calculated but also wrongfully denied due to the fact that an incorrect BEC was used in the calculation of the 80% ceiling.

## FIRST COUNT
## ERISA

139.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 138 as if fully set forth herein.

140.     Defendant has wrongfully failed and refused to provide Plaintiff with the benefits he is entitled to receive pursuant to the subject long-term disability plan despite Plaintiff having duly made a claim and exhausted all necessary administrative remedies.

141.     The failure of Defendant to provide Plaintiff with long-term disability benefits is a violation of ERISA.

142.     As a direct and proximate result of the aforesaid denial of benefits, Plaintiff has sustained, and continues to sustain, economic loss and damage.

143.     Pursuant to §502(a)(1)(b) of ERISA, 29 U.S.C. §1132(a)(1)(b), Defendant is obligated to provide Plaintiff with all past and future benefits that have been wrongfully denied.

144.     Pursuant to §502(g)(1) of ERISA, 29 U.S.C. §1133(g) Defendant is also liable to Plaintiff for reasonable attorney's fees incurred and costs of this action.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a)     Reinstatement in the Long Term Disability Plan, retroactive and ongoing benefits, determining his right to future benefits and other attendant employee benefits together with attorney's fees, interest and costs of suit; and

(b)    Remand, as necessary and appropriate for a full and fair review of Plaintiff's claim.

## SECOND COUNT

145.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 144 as if fully set forth herein.

146.    Defendant failed and refused to provide relevant information to Plaintiff concerning the Employment Welfare Plan, specifically, the correct name of the Long-Term Disability Insurance Company.

147.    The conduct of Defendant constitutes, among other things, a violation of ERISA §104(B)(4).

148.    Based upon the foregoing Conrad is entitled to damages pursuant to ERISA §502(c).

WHEREFORE, Plaintiff demands judgment against the Defendant for:

(a)    Statutory penalties pursuant to ERISA §502(c); and

(b)    An Order mandatorily enjoining Defendant to provide all "relevant documentation."

HAGNER & ZOHLMAN, LLC
Attorneys for Plaintiff

BY: _____
          Thomas J. Hagner

Dated:    November 3, 2008