# EXHIBIT 4

Wachovia Benefits Committee                         December 31, 2004
Human Resources
Two Wachovia Center, T-4
301 South Tryon Street
Charlotte, NC 28288-0960


Dear Sirs/Madam,


        I was hired by Nicholas Mekosh of Wheat First Butcher and Singer on May 02, 1995. I achieved the status of Senior VP in 1997 and have been a loyal Wheat First Union/First Union Securities/Wachovia Securities broker since.

        The unfortunate thing is that since September 15, 2003 I have been struggling with various chronic ailments. I first went to my primary physician who did a number of blood tests to try to determine the cause of my symptoms which included sweats, fatigue, diarrhea, sudden weight loss, lack of appetite, short term memory loss, etc. I continued to work but found it difficult to work my regular hours. Subsequently my production gradually declined as my symptoms persisted. Then in November 03 I was in the office and had to excuse myself from a very important meeting of two of my wealthiest clients. I went to the hospital and was admitted with abdominal pains and chest discomfort. I stayed in the hospital for five days undergoing numerous tests to determine the cause of these symptoms. These tests included stress test, Ekg and heart catherization, etc. I was released from the hospital with further tests scheduled for December 03, at this time I submitted a claim for short term disability. I was contacted by the Liberty Rep and she informed me that my doctor had not sent the form back. In the course of our conversation I told the Liberty Rep that I was unable to perform my entire work tasks but I was able to answer phone calls from clients and was likely to continue servicing my clients who call in. She said that I would probably get turned down for benefits any way so I dropped it.

        My symptoms continued to persist and I was continually seeing my doctor who suggested I get a sleep test. The first sleep test was in March 04 revealed I was having 40 episodes an hour and I had severe sleep apnea. So in April I was prescribed a CPAP (continuous pressure air pump) machine which I use every time a go to sleep. I was told that I could start to feel better in 2 to 8 weeks. This made me feel good because I was finally going to get better. My production at work was continuing to decline and I hoped to get back to my old self as soon as possible. Unfortunately I have not gotten back to my old self and in July was told by the sleep specialist I was probably not going to feel much better. The CPAP machine had improved my episodes to 29 per hour but since August I have been out on disability. I have explored other treatment methods including surgery but at this time I am not a good candidate for this procedure.

The problem I have is I did not receive instruction or assistance from anyone in the company with regard to the disability benefits and the way they are calculated. Therefore my benefit amount, BBR, has been reduced to a level which supposedly reflects the trailing twelve months of production from the date I went out on disability August 2, 2004. I believe you will see that I was first treated for this condition since September 15, 2003 and had I been given some guidance I would have sought disability coverage sooner which would have resulted in a more appropriate BBR. My BBR on Dec 2003 would have been $95,205.62 since I did not pursue disability until August 2004 my BBR is $63,931.86. Had I gone out in September 03, I estimate my BBR would have been $ 116,536.00.

You might wonder why it has taken me this long to request an adjustment to my BBR. When I first went on disability it took a month and a half to approve my claim. I began contacting HR with phone inquiries in October to no avail. In November I picked up the pace and inquired to the branch managers Nick Mekosh, Stan Hadim, payroll Stephanie Sargent, Twana Coleman, Deanna Simpson-Gray, Regional Office Laura Hak, HR Sheila Johnson referred me to Lisa Carter, Madonna Miller, Linda Calcagney, Euline Hill, and Linda Hudson who gave me your address on Dec. 30.

I believe the disability policy with Wachovia is designed more for salaried individual's then commission persons. If I was on a salary I could have come to work and not been as productive but my benefits would have stayed the same until I went out on disability.

I hope you will examine the evidence in my situation and make the determination to adjust my benefits accordingly.


Sincerely,


_____

Robert S. Conrad, Sr. CL 40  A 891688
Senior VP / Investment Officer
44 Longwood Drive
Sicklerville, NJ 08081
856-875-1739

Enc. BBR calculation/ Commission run/ Doctors claim forms

# EXHIBIT 5



Liberty
Mutual®

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-2484
Phone No.: (800) 853-7108  Ext. 328
Secure Fax No.: (888) 443-4212

January 11, 2005

Robert Conrad
44 Longwood Drive
Sicklerville, NJ 08081-0000

RE:    Short Term Disability Benefits
       Wachovia Corporation
       Claim #: 1248676

Dear Mr. Conrad:

The Wachovia Corporation Group Short Term Disability (STD) Plan provides STD leave for a maximum of 26 weeks for eligible employees. If you continue to meet your plan's definition of disability beyond January 31, 2005 you may be eligible for Long Term Disability (LTD) benefits. You will be advised on or before this date of the status of your LTD claim. We understand that you may be able to return to work on partial basis. If you are able to return to work on a partial basis, you may still be eligible to receive STD and LTD benefits. According to the Wachovia Group Disability plans:

*Work Incentive Benefits.  To encourage Participants to return to work, a Participant who has satisfied the Elimination Period may be eligible to continue to receive a Disability Benefit while engaging in Active Employment in accordance with the provisions of this Section 3.7.*

*(a)      For the purposes of this provision, the Participant may satisfy the Elimination Period if he or she is Disabled or Partially Disabled, or a combination of Disabled and Partially Disabled, during such time.*

*(b)      A Disability Benefit will be paid for the period of Partial Disability if proof is provided upon request of the Plan Administrator or the Claims Administrator and at the Participant's expense of continued:*
*(1) Partial Disability; and*
*(2) regular attendance of a legally qualified Physician and compliance with the recommended course of treatment for the disabling condition.*

*(c)      For the purpose of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while the Employee is a Participant.*

*(d)      If the Participant is eligible for benefits described in this Section 3.6, the Plan will pay Disability Benefits as follows:*
*(1) If, at any time while Disability Benefits are payable under Section 3.2, the Participant's Monthly Earnings are less than 20% of his Pre-Disability Earnings, a Disability Benefit*

*determined under Section 3.2(b) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.*

*(2) If, during the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than or equal to 80% of his or her Pre-Disability Earnings, a Disability Benefit determined under Section 3.2(b) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.  However, if the Disability Benefit plus the Participant's Monthly Earnings would exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be reduced so that the Disability Benefit plus the Participant's Monthly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.*

*(3) If, after the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than or equal to 80% of his Pre-Disability Earnings, the Disability Benefit otherwise payable will be further reduced by 50% of the Participant's Monthly Earnings. All other benefit provisions and terms applicable to Disability will apply as stated in this Plan.*

*(4) If the Participant's Monthly Earnings exceed 80% of his Pre-Disability Earnings, Disability Benefits will cease.*

If you are approved for LTD, the plan will pay a benefit equal to 60% of your base monthly salary at the time your disability commenced. In the interim, we would like to advise you about Social Security Disability Benefits and their impact on your LTD claim, if determined to be payable.

The LTD benefits provided by the Wachovia Corporation Group LTD Plan are reduced by any Social Security Disability Benefits you and your dependents are eligible to receive due to your disability.  The LTD plan includes a 66 2/3% all source benefit provision that increases your benefit percentage calculation upon receipt of a Primary and/or Family award.

The LTD plan may require us to estimate, beginning with the 6th month of disability, the amount of Social Security Disability Benefits you and your dependents would be entitled to receive and reduce your LTD benefits accordingly.

However, to avoid financial hardship, we will agree not to deduct an estimated Social Security Disability Benefit prior to your receipt of a Social Security Award if you:

1.   Apply for Social Security Disability Benefits as your plan requires should your disability be expected to extend for twelve months.

2.   Promptly forward to us a copy of the receipt of your claim for Social Security Disability Benefits, and

3.   Sign and return the enclosed Social Security Reimbursement Agreement and Social Security Authorization to Release Information form.
     This states that in the event you are awarded Social Security Disability Benefits retroactively, you will agree to reimburse Liberty Life Assurance Company of Boston ("LIBERTY") for any LTD benefits overpaid.

If we do not receive your Social Security Authorization and Reimbursement Agreement forms and proof that you applied for Social Security Disability Benefits, we will reduce your LTD benefits by an estimated Social Security Disability Benefit.

There are several advantages to you in obtaining an award of Social Security Disability Benefits. The enclosed Social Security fact sheet explains these advantages and provides some additional information about Social Security.

We would also like to take this opportunity to offer direct deposit of your LTD benefit, provided your LTD claim is approved. If you are interested in this service, please read the enclosed form, complete and return to the address indicated on the form.

Federal and state tax withholding requirements are based upon the disability plan established by your employer. In your case, both federal and state income tax withholding is voluntary. To elect federal income tax withholding from your benefits, obtain, complete, sign and submit IRS Form W-4S to your Case Manager. You cannot elect less than $88.00 per month be deducted for federal taxes. To elect state income tax withholding, provide your Case Manager with the applicable state tax withholding form. Tax withholding forms can be obtained from your local post office, library, or federal building.

Also enclosed is an Activities Questionnaire, Training-Education-Experience Form, Authorization to Release Information Form and a Claimant Information Form. Please complete and return them in the enclosed self addressed envelope. In addition, please enclose a photocopy of your Driver's License or Birth Certificate to verify your date of birth.

Please return the enclosed information as follows:

**Pink Envelope** (Dover Address)
- Direct Deposit Application

**Blue Envelope** (Charlotte Address)
- Social Security Authorization to Release Information Form
- Social Security Reimbursement Agreement
- Request for Tax Withholding Form
- Authorization to Release Medical Information
- Activities Questionnaire
- Training-Education-Experience Form
- Claimant Information Form
- Copy of Driver's License or Birth Certificate

Please return all of the above information to our office no later than January 25, 2005. The completion of these forms does not in any way mean that you will be automatically approved for LTD benefits.

Questions regarding this correspondence or your LTD benefits may be directed to me at extension 328 utilizing the number below.

Sincerely,

Denise S. Welsh
Sr. Disability Case Manager
Phone No.: (800) 853-7108   Ext. 328
Secure Fax No.: (888) 443-4212

Forms Attached:
  Tax Withholding
  Training-Education Experience
  Claimant Information
  Authorization
  Direct Deposit Application
  SSA Authorization
  Activities Questionnaire
  SS Reimbursement Agreement

# EXHIBIT 6



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-2484
Phone No.: (800) 853-7108   Ext. 328
Secure Fax No.: (888) 443-4212

February 1, 2005

Robert Conrad
44 Longwood Drive
Sicklerville, NJ 08081-0000

RE:    Long Term Disability Benefits
       Wachovia Corporation
       Claim #: 2021495

Dear Mr. Conrad:

We are writing in regard to your claim for Long Term Disability (LTD) benefits under the Wachovia Corporation's Group LTD Plan and are pleased to advise you that a decision has been made to approve your claim.  Our determination is based on your inability to perform the duties of your occupation as defined below.  According to the terms of the LTD Plan for Wachovia Corporation:

"Disability or Disabled" means:

(a)    *during the Elimination Period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*

(b)    *after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education or experience because of the Injury or Sickness.*

Your LTD Plan provides benefits at the lesser of: (1) 60% of your Pre-Disability Earnings; or (2) 66 2/3% of your Pre-Disability Earnings less the Benefits from Other Income.  In no event shall the Disability Benefit be less than $100.00 per month.  Benefits from Other Income means:

(a)    *The amount for which the Participant is eligible under:*
       *(1)    any Worker's or Workmen's Compensation Law;*
       *(2)    any occupational disease law;*
       *(3)    any compulsory benefit act or law; or*
       *(4)    any other act or law of like intent.*

(b)   The amount for which the Participant is eligible under The Jones Act (Title 46 appendix, United States Code Section 688).

(c)   The amount of any disability benefits which the Participant is eligible to receive under:

(1)   any other group plan of the Participating Employer;
(2)   any governmental retirement or disability system.

(d)   The amount of benefits the Participant receives under the Employer's Retirement Plan as follows:

(1)   The amount of any Disability Benefits, or Retirement benefits the Participant voluntarily elects to receive as retirement payment under the Employer's Retirement Plan; and
(2)   the amount the Participant is eligible to receive as retirement payments when he or she reaches the later of age 62, or normal retirement age as defined in the Employer's Retirement Plan.

(e)   The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan or any similar plan or act, for which:

(1)   the participant receives or is eligible for; and
(2)   his or her spouse, child or children receives or are eligible for because of his or her Disability; or
(3)   his or her spouse, child or children receives or are eligible for because of his or her eligibility for Retirement Benefits.

(f)   The amount of earnings the participant earns or receives from any form of employment.
(g)   The amount a Participant or his or her family receives from any group or franchise insurance or similar plan for persons in a group, excluding the following programs:

(1)   the Employer's Supplemental Executive Long Term Disability Plan;
(2)   the Employer's Long Term Disability Restoration Plan; or
(3)   the Employer's Supplemental Disability benefit Plan.

Benefits from Other Income, other than Retirement Benefits, must be payable as a result of the same Disability for which the Plan pays a Disability Benefit.

You must satisfy an Elimination Period of 26 weeks which begins on the first day of Disability. Your date of Disability was August 03, 2004.  Therefore, your LTD benefit effective date is February 01, 2005.

Your first check in the amount of $2,472.57 represents LTD benefits due for the period of February 1, 2005 through February 28, 2005, and will be sent under separate cover.  Your gross monthly benefit is equal to $3,196.59 until you return to work or are awarded Other Income Benefits as defined above.  In addition, if you are released to return to work full time or part-time, please advise us of this change as it will impact your benefits.

Considering the medical and vocational information in your file, it appears you may be eligible to receive Social Security Disability Benefits.  Social Security is an insurance program that you

pay for by working and paying FICA taxes.  In essence your FICA taxes are the insurance premiums.  Social Security covers individuals in the form of retirement, life, and disability insurance.

There are a number of advantages for you if you are approved for Social Security.  These advantages are outlined in the attached pamphlet, and include:

> *Higher retirement benefits from Social Security
> *Medicare eligibility after 24 months
> *Annual Cost of Living increase to the Social Security Benefit

If you are approved for Social Security Disability Benefits, the disability benefits you receive from Liberty will be reduced by the amount you and any dependents receive under Social Security. (An exception is Social Security Cost of Living increases, which are yours to keep.) In other words, you will continue to receive the same amount of monthly benefits, but the money will come from two sources.

You have advised us that you have applied for Social Security Disability benefits and have provided us with a copy of the Receipt of Application letter Social Security sent to you.  Please notify me immediately when you are awarded Social Security Disability Benefits.  Typically you will receive a significant retroactive payment from Social Security shortly thereafter. Much of this money is essentially money that Liberty advanced to you while you were waiting for Social Security's decision, and you must repay it immediately.

We will continue to review your claim and request medical documentation to support your continued disability.  We ask that you assist us with your claim to obtain the necessary information to continue benefits.  Please notify our office immediately with any changes in your treatment.

Should you have any questions regarding your claim, please contact our office.

Sincerely,

Denise S. Welsh
Sr. Disability Case Manager
Phone No.: (800) 853-7108   Ext. 328
Secure Fax No.: (888) 443-4212

# EXHIBIT 7

Wachovia Benefits Committee                                    March 11,2005
Human Resources
Two Wachovia Center, T-4
301 South Tryon Street
Charlotte, NC 28288-0960

Has corporate America grown through mergers, acquisitions and business combinations to the extent of putting aside human values of honesty, loyalty and compassion? Are employees including supervisors of these combined companies, afraid to ask questions about the merged companies policies and benefits? Are the benefit plans appropriate and fair for all employees regardless of there previous affiliation. Does the employer have the ability to be flexible for the purpose of fairness or is it hand tied due to liability exposure. Are the existing company benefit plans understood by all employees? Are there people responsible to advise employees about these plans? Does the existing plan enhance or harm productivity and advancement?

A man works for one of the largest financial institutions in America today. He is hired on May 02, 1995. He proceeds to transfer his clients from the previous firm he worked for for 14 years, and they are all excited about the increase in benefits to them of the new firm. There are many benefits to both the clients and broker including increased commitments to technology and support personnel.

The first year is a transition year however the broker exceeds expectation and is awarded a bonus for his accomplishments. The years pass and the broker continues to advance in productivity and recognition, achieving levels of production granting him the title of Senior VP (700,000 gross). The income of this individual has grown every year, in the year 2001 he maximizes his benefits due to IRS rules. Then the unthinkable happens in September 03 the broker develops various symptoms which detract from his productivity. He continues to seek medical advise from his family physician weekly , who thought this was an infection.  As the symptoms progress his productivity started to decline, the broker mentioned several times to management that he was ill and received no consult on benefits. The firm was in the middle of a large merger, which included a possible management change, and merger of personnel, in addition to an office relocation.

As a broker you considered yourself  an entrepreneur and you feel loyalty to your customers and friends to provide them with the best advice and service which you can. You therefore work as if you ARE THE OWNER OF THE CANDY STORE, you sometimes show up to unlock the doors and you lock them when you leave. If you break an arm and cant mix sugar, you answer the phone to take orders or something else to be of help. This is what happened to me in September 03, I came to the office while I was under physician's care and answered phones, placed orders from clients and did what I could due to be helpful. I fully expected that my condition would soon improve once they found out what was causing my symptoms. Had I been advised of the consequences of working while ill I would have went out after the seventh day. Much to my regret, I was not informed of the consequences and things got worse I was hospitalized in November 03 and in December I had additional tests ordered by my physicians to try and determine the cause of my illness. This is when I approached Liberty to file a claim for STD. I informed management I was going to submit a STD claim and received no guidance.

I was in the office answering calls when Liberty Rep Tosha Darby called on or around  January 12, 2004. Tosha had been trying to get information from my primary physician and had not received it back. My claim number was 1201957. She informed me that because I was in the office I would most likely not qualify for Short term disability benefits. In fact I told her I was licensed to sell disability insurance and she said well then you know how it goes.

Assuming Tosha was experienced in the disability policy and assuming she was and or intended to advise me on the plan and benefits, I did not follow through with the claim. Now keep in mind I have continuing symptoms which are leading to my fatigue and preventing me from seeing as many clients  as normal therefore

my productivity is declining. I continue to receive treatment from my physician and finally in March 04 I am diagnosed with chronic obstructive sleep apnea. I am told if I use a CPAP machine I will most likely feel better in 6-8 weeks. I use the CPAP machine religiously and to no avail my condition worsens and I am told that I would probably not feel any better in the future. I continue on the CPAP to this day and to this day my symptoms persist and have gotten worse.

    I was latter diagnosed with Chronic Fatigue Syndrome this can be associated with Sleep Apnea due to the lack of quality sleep. I filed a claim for STD on August 02, 2004 when I discovered my benefits were being diminished and my health was not expected to improve. When I first became sick, in Sept. 03, my 12 months income from Nov. 02 to Nov 03 was approximately 143,293.57 my families life insurance benefit was 2 times BEC for the year 2004 my BEC was 112,477.57 now that I made it through 2004 my BEC for 2005 is 63,931.86. I am sorry this should not happen.

    In conclusion, I am a person that has worked 24 years in an industry founded on honesty, trust, loyalty and service. I have worked many 16 hour plus days to achieve levels of productivity most people only dream about I have had a wonderful career filled with accomplishments, awards, recognition and comfort for my family. I never would have been treated in this fashion since I became ill. To this day the final diagnosis has yet to be made and my condition has not improved. My employee benefits with Wachovia have been slashed in thirds due to the absence of any advice in this matter from any figure of authority., or person responsible to inform me. In fact I did not receive a benefits summary book until January 5,2005.

    These employee benefit plans are confusing I don't know if I would qualify for Grand fathered Annual Benefits Base Rate and if not why not, I don't know if a BUDA exist for my business unit. These plans have serious flaws, I would hope that the committee would consider my case and adjust the amount of my benefits.

    Thank you for your consideration to my request. In the event you deny this appeal, please inform me what my next plan administrative remedy might be.

    Sincerely,

———————————————

Mr. Robert S. Conrad, Sr.
A891688
Senior Vice President - Disabled
STD Claim # 1248676    LTD Claim
#2021495
Wachovia Securities, LLC
Five Greentree Center Suite 400

Mr. Robert S. Conrad, Sr
44 Longwood Drive
Sicklerville, NJ 08081

Phone 856-875-1739  Fax 856-875-6

# EXHIBIT 8

NC0951
Two Wachovia Center, T4
301 South Tryon Street
Charlotte, NC 28288



June 23, 2005

WACHOVIA

Robert S. Conrad
44 Longwood Drive
Sicklerville, NJ  08081

Dear Mr. Conrad:

This correspondence is in response to your letter dated December 31, 2004, February 2, 2005 and March 11, 2005.  Although initially it appeared that your letter was an appeal properly filed with this Committee.  We had subsequently confirmed that the request you make in your letter to the Committee (e.g. a request for an adjusted date of disability of September 2003 which you believe in turn would result in an adjustment to your BBR which you feel would result in your receipt of a greater benefit) did not follow the required claims procedure as communicated to employees in the Summary Plan Description for the Wachovia Short Term Disability Plan.  Before any claim appeal concerning the adjustment of benefits comes to this Committee, an employee is required to have first gone through the claims appeal process with Liberty.  We have confirmed with Liberty that they have not previously received a claim request to adjust your disability benefit.  Therefore, we are not considering your letter in this regard to be a claim appeal but rather we are treating this as an inquiry/complaint concerning the calculation of your disability benefit.

As an initial matter, we have confirmed with Liberty that currently you have an approved long-term disability claim.  Your date of disability was August 3, 2004 and your LTD benefit commencement date was February 1, 2005.

We noted in your letter you contend that you did not receive instruction or assistance from anyone in the company with regard to disability benefits and the way they are calculated.  Please note that in the Summary Plan Description for the STD Plan (which is provided to all participants; either with a hard copy, or through access on Exchange) contains the information surrounding the STD Plan, which you contend not to have been provided.

Specifically, with respect to the calculation of your BEC, you mention in your letter that your Benefits Eligible Compensation ("BEC") should have been calculated upon your September 2003 salary.  You also state that had you gone out on disability in September 2003, you estimated your BEC to have been $116, 536.00.  The Summary Description for the STD Plan, which is communicated to employees, explains in detail the calculation of BEC.  Below is only the pertinent information that pertains to your situation:

*"Compensation" is defined as the sum of your... Seventy percent (70%) of "eligible functional incentive pay" ....*

*"BEC" or "Pre-disability Earnings" means the greatest of the following amounts divided by 52 (i.e., the number of weeks in a calendar year):*

- *Your Grandfathered Annual Benefits Base Rate (ABBR);*
- *Your Comp Rate; or*
- *Your Rolling 12-Month Amount*

*Your BEC or Pre-disability Earnings is determined as of the business day immediately preceding the date you incur a disability. Note, however, that the Rolling 12-Month Amount is actually calculated once each month...*

*The "Rolling 12-Month Amount" is determined as of the last business day of each month if you are eligible to participate in the plan on such date. For example, if you become eligible for benefits during April, the Rolling 12-Month Amount is calculated for the 12 months ending March 31.*

*12 Months of Participation - If you have 12 Months of Participation during the most recent 12 consecutive calendar months, your Rolling 12-Month Amount is the sum of your Earnings for such 12 consecutive calendar months...*

Your BEC is based on your August 2004 STD BEC amount for your approved disability date of August 3, 2004 to January 31, 2005 and a current approved LTD claim (LTD effective date February 1, 2005). Therefore your BEC calculation in this regard is correct.

Sincerely,

*Tandace Martz*

Tandace Martz
Officer
Human Resources Division

# EXHIBIT 9



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904
Phone No.: (800) 291-0112
Secure Fax No.: (888) 443-4212

May 11, 2006

Robert Conrad
44 Longwood Drive
Sicklerville, NJ 08081-0000

RE:    Long Term Disability Benefits
       Wachovia Corporation
       Claim #: 2021495

Dear Mr. Conrad:

This letter is in regard to your claim for Long Term Disability (LTD) benefits under the Wachovia Corporation Group LTD Plan.  The above Plan requires that to receive benefits, you must meet the following definition of disability.

*"Disability" is defined as:*

    *(a)    during the Elimination period and the next 24 month, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*

    *(b)    after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, or experience because of an Injury or Sickness.*

The Plan further states that *Partial Disability or Partially Disabled means as a result of the Injury or Sickness, the Participant is:*

    (a) *during the Elimination Period and the next 24 months, able to perform one or more but not all, of the material and substantial duties of his or her own or any other occupation on an Active Employment or a part-time basis; or*

    (b) *after the period described in paragraph (a) above, able to perform all of the material and substantial duties of his or her own or any other occupation on a part time basis.*

*To encourage Participants to return to work, a Participant who has satisfied the Elimination Period may be eligible to continue to receive a Disability Benefit while engaging in Active Employment in accordance with the provisions of this Section.*

*(a) For the purpose of this provision, the Participant may satisfy the Elimination Period if he or she is Disabled or Partially Disabled, or a combination of Disabled and Partially Disabled, during such time.*

**Liberty/Conrad 826**

*(b)  A Disability Benefit will be paid for the period of Partial Disability if proof is provided upon request of the Plan Administrator or the Claims Administrator and at the Participant's expense of continued:*

 *(1)  Partial Disability; and*
 *(2)  Regular attendance of a  legally qualified Physician and compliance with the recommended course of treatment for the disabling condition*

*(c)  For the purpose of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while the Employee is a Participant.*

*(d)  If the Participant is eligible for benefits described in this Section, the Plan will pay Disability Benefits as follows:*

*(1)  If, at any time while Disability Benefits are payable, the Participant's Monthly Earnings are less than 20% of his Pre-Disability Earnings, a Disability Benefit will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.*

*(2)  If, during the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his  Pre-Disability Earnings, but less than 80% of his or her Pre-Disability Earnings, a Disability Benefit will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.  If the Disability Benefit plus the Participant's Monthly Earnings would exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be reduced so that the Disability Benefit plus the Participant's Monthly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.*

*(3)  If, after the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his or her Pre-Disability Earnings, but less than 80% of his or her Pre-Disability Earnings, the Disability Benefit otherwise payable will be further reduced by 50% of the Participant's Monthly Earnings.  All other benefit provisions and terms applicable to Disability will apply as stated in this Plan.*

*(4)  If the Participant's Monthly Earnings are greater than or equal to 80% of his Pre-Disability Earnings, Disability Benefits will cease.*

Additionally, the "Discontinuation of Benefits" provision of the Plan states:

*The Disability Benefit will cease on the earliest of:*

*(a)  the date the Participant is no longer Disabled;*

*(b)  the end of the maximum benefit period in Section 3.3(b) or the date the Participant is able to work in his or her own occupation on a part-time basis (with or without reasonable accommodation or modification), and is offered such a position by the Employer, but chooses not to;*

**Liberty/Conrad 827**

(c)   the date the Participant's Monthly Earnings exceed 80% of his or her Pre-Disability Earnings;

(d)   except as prohibited by applicable law, the Employer determines that the Participant is engaging or has engaged in conduct that would result in Termination for Cause;

(e)   the date the Participant is no longer under the regular attendance of a legally qualified Physician;

(f)   the date the Participant ceases to comply with the course of treatment recommended by his or her Physician for the disabling condition;

(g)   the date the Participant refuses to be examined or evaluated for purposes of determining the continuing nature of the Disability; or

(h)   the date the Participant dies.

Your pre-disability earnings, verified by Wachovia Corporation, were $5,327.66 monthly. Eighty percent of this amount calculates to $4,262.13.  Your earnings have exceeded 80% of your pre-disability earnings for three consecutive months, as follows:

> February 2006:  Residual Commissions of $2,675.00 + Reduced Hours Partial Earnings of $1,832.40 = $4,507.40

> March 2006:  Residual Commissions of $3,493.26 + Reduced Hours Partial Earnings of $1,832.40 = $5,325.66

> April 2006:  Residual Commissions of $7,263.43 + Reduced Hours Partial Earnings of $1,832.40 = $9,095.83

Since your monthly earnings have exceeded 80% of your pre-disability earnings for three consecutive months, your disability benefits have ceased, and your claim is closed effective May 1, 2006.

This claim determination reflects an evaluation of the claim facts and Plan provisions.  We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to:

> The Liberty Life Assurance Company of Boston
> Attn: Kate Schulz
> Disability Claims
> P.O. Box 242484
> Charlotte, NC  28224-9904

**Liberty/Conrad 828**

The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied.  In your request for review, include documentation which you feel will support your claim for continued disability benefits.  You may request to review pertinent claim file documents upon which the denial of

benefits was based.  If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted.  Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request is received.  If there are special circumstances requiring delay, you will be notified of the final decision no later than 90 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Wachovia Corporation rights and defenses under the above captioned Plan, and all of these rights and defenses are reserved to the Plan Sponsor, whether or not they are specifically mentioned herein.

If you have any questions about this determination please call me.

Sincerely,

Kate Schulz
Sr. Disability Case Manager
Phone No.: (800) 291-0112 Ext. 369
Secure Fax No.: (888) 443-4212

**Liberty/Conrad 829**