# EXHIBIT 42



# HAGNER & ZOHLMAN, LLC

### ATTORNEYS AT LAW

JOHN A. ZOHLMAN III ◊ *
THOMAS J. HAGNER ◊

_____

◊  CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY

*  ALSO MEMBER OF PA. BAR

COMMERCE CENTER
1820 CHAPEL AVENUE WEST
SUITE 160
CHERRY HILL, NJ 08002
PHONE 856.663.9090
FAX 856.663.9199

JZOHLMAN@HZLAWPARTNERS.COM
THAGNER@HZLAWPARTNERS.COM

November 16, 2007

Liberty Life Assurance Company
Attn:  Kate Schulz, Sr. Disability Case Manager
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904

> **Re:   Robert Conrad**
> **Claim No.  2021495**

Dear Ms. Schulz:

This letter supplements our previous letter dated November 13, 2007.   With respect to additional documentation concerning Mr. Conrad's lack of documentation, I enclose herewith the following:

(1)   Fax from Wachovia to you dated May 2, 2007 with the March, 2007 compensation statement reflecting a deficit of $160.00.  Mr. Hadam's note on the compensation statement indicates that March compensation was paid in April and was a deficit of $160.00.

(2)   Copies of Wachovia non-exempt time sheets for the months of March, 2007 through June, 2007, all signed by Mr. Hadam.   They indicate that Mr. Conrad worked as follows:

| | | |
|---|---|---|
| March, 2007 | 52 hours | Over 13 partial days |
| April, 2007 | 58.5 hours | Over 15 partial days |
| May, 2007 | 43 hrs. 40 min. | Over 12 partial days |
| June, 2007 | 39 hrs. 50 min. | Over 11 partial days |

(3)   Correspondence dated April 12, 2007 indicating that Mr. Conrad was not going to receive a paycheck on April 15, 2007;

Page Two
November 16, 2007
_____

(4)    Correspondence from Mr. Conrad to you dated May 15, 2007 indicating that he did not receive a paycheck on May 15, 2007;

(5)    Correspondence from Mr. Conrad to you dated June 11, 2007 indicating that he did not receive a paycheck on either May 15, 2007 or April 15, 2007 and that the last LTD check that he received was for the month of March, 2007 and was received on May 8, 2007.

Very truly yours,

THOMAS J. HAGNER

TJH/bg
Enclosures
cc:   Robert Conrad

MAY. 2.2007 1:00PM    WACHOVIA SECURITIES                    NO. 304        P. 1

* * * COMMUNICATION RESULT REPORT ( MAY. 2.2    9:12AM ) * * *

FAX HEADER: WACHOVIA SECURITIES

| TRANSMITTED/STORED : MAY. 2.2007 9:05AM FILE MODE OPTION | | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|
| 298 MEMORY TX | | 918884434212 | E-3)3) | 0/4 |

---

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

Wachovia Securities
Stanley P. Hadam, Branch Manager
Five G/contree Centre, Suite 400
Marlton, N.J. 08053

856-985-8008 or 800-222-0034 Fax
Number 856-988-3508

## Fax

WACHOVIA SECURITIES

Date  5-2

To  KATIE Schwartz

Fax  888-443-4212   704-357-0737

Pages

From  STAN HADAM

Re:  Bris Conners - Morris

MAY. 2.2007  1:00PM   WACHOVIA SECURITIES          NO.304   P. 2

Wachovia Securities LLC                                    Run Date:  5/2/2007 12:59:32 PM

## Compensation Statement
### March 2007 - ALL EC Cycles - MTD Preliminary

CL40 - Conrad, Robert
CL - Cherry Hill/Marlton
Financial Advisor

Comp Hire Date:  05/12/1995
Comp Firm LOS:   11
Comp Industry Start Date:   06/20/1981
Comp Industry LOS:   25

Schedule:  Standard No Net

CL40

| | | |
|---|---|---|
| Gross Commission | | $5,164.16 |
| Payout Eligible Gross | -$300.00 | |
| Net Commission | -$60.00 | |

Adjustments
| | |
|---|---|
| Draw Adjustment reverse March draw ded did not rec draw on 3/15 | $1,972.00 |
| Voluntary Allocation Charge - Flat Recurring - Joanna Moore | -$100.00 |
| Minimum Wage Draw | -$1,972.00 |

Commission Earnings                                          -$160.00

Deficit Offsets          *Note*          -$160.00

EC EARNINGS          *Negative  #*                          $.00

| | |
|---|---|
| Prior Month Deficit Balance | $.00 |
| Current Month Deficit | $160.00 |
| Deficit Repayment | $.00 |
| Deficit Balance | $160.00 |

*MARCH  COMP  PAID  IN  April,*

*— /60. —*

For Internal Use Only.  Not for use with or distribution to the public.

Nov 14 07 09:30a   ROBERT CONRAD   18568756287   p.1

# Wachovia Non-Exempt Time Sheet

| EMPLOYEE NAME (please print) | S.S. # (optional) | WORK PHONE # | DEPARTMENT | RC# | SUPERVISOR NAME | PAY PERIOD |
|---|---|---|---|---|---|---|
| Robert Conrad | 13 5-44-1807 | 856-768-8700 | MARLTON | | | MARCH 07 |

Please indicate weekly scheduled hours: ☐ 5 days/8 hours per day   ☐ Other, please specify: _____

| DATE | TIME IN | LUNCH OUT | LUNCH IN | TIME OUT | REGULAR TIME | ADDITIONAL REG. TIME | OVERTIME | DOUBLE TIME | PTO | OTHER | REASON |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3-2 | 9:05 | | | 1:05 | 4:00 | | | | | | |
| 3-12 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 3-14 | 10:30 | | | 1:30 | 3:00 | | | | | | |
| 3-09 | 9:30 | | | 11:30 | 2:00 | | | | | | |
| 3-16 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 3-23 | 8:30 | | | 12:30 | 4:00 | | | | | | |
| 3-19 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 3-21 | 9:00 | | | 5:30 | 8:30 | | | | | | |
| 3-22 | 9:00 | | | 12:30 | 3:50 | | | | | | |
| 3-27 | 9:30 | | | 1:30 | 4:00 | | | | | | |
| 3-28 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 3-29 | 9:40 | | | 1:40 | 4:00 | | | | | | |
| 3-30 | 9:30 | | | 12:30 | 3:00 | | | | | | |

RECORD YOUR EXACT TIME IN AND OUT   **TOTALS:** 52

\* Other: Bereavement, Education, Volunteer, Family Care Time, Holiday, Jury Duty, Military, Other

**BECAUSE OF THE REQUIREMENT OF FEDERAL & STATE LAWS, IT IS IMPERATIVE THAT THIS RECORD BE FILLED IN COMPLETELY AND ACCURATELY. UNDER NO CIRCUMSTANCES MUST TIME WORKED BE UNRECORDED.**

I HEREBY CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF TIME WORKED DURING THIS PERIOD.

EMPLOYEE SIGNATURE

SUPERVISOR SIGNATURE

# Wachovia Non-Exempt Time Sheet

**EMPLOYEE NAME (please print):** Robert Conrad

**S.S. # (optional):** 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

**WORK PHONE #:** 1-800688208

**DEPARTMENT:** Chargeback

**RC#:** CL-40 Sion Room

**SUPERVISOR NAME:** Sion Room

**PAY PERIOD:** April 07

Please indicate weekly scheduled hours:

☐ 5 days/8 hours per day  ☐ Other, please specify: _____

| DATE | TIME IN | LUNCH OUT | LUNCH IN | TIME OUT | REGULAR TIME | ADDITIONAL REG. TIME | OVERTIME | DOUBLE TIME | PTO | OTHER | REASON |
|------|---------|-----------|----------|----------|--------------|----------------------|----------|-------------|-----|-------|--------|
| 4-2 | 9:20 | | | 1:20 | 4 | | | | | | |
| 4-3 | 9:30 | | | 12:45 | 3.15 | | | | | | |
| 4-4 | 9:00 | | | 1:00 | 4 | | | | | | |
| 4-6 | 9:05 | | | 1:00 | 3.55 | | | | | | |
| 4-9 | 8:30 | | | 12:30 | 4 | | | | | | |
| 4-10 | 8:30 | | | 12:30 | 4 | | | | | | |
| 4-11 | 9:30 | | | 1:30 | 4 | | | | | | |
| 4-13 | 9:05 | | | 1:00 | 4 | | | | | | |
| 4-16 | 9:00 | | | 1:00 | 3.55 | | | | | | |
| 4-18 | 9:00 | | | 1:00 | 4 | | | | | | |
| 4-23 | 9:30 | | | 2:00 | 4 | | | | | Disability | |
| 4-24 | 9:30 | | | 12:30 | 4:30 | | | | | | |
| 4-25 | 9:45 | | | 2:15 | 4 | | | | | | |
| 4-27 | 9:05 Rona | | | 11:30 | 4.00 | | | | | | |
| 4-30 | 9:00 | | | 2:25 | | | | | | | |

RECORD YOUR EXACT TIME IN AND OUT

**TOTALS:** 100 | 58.5 | 4 | | | | |

**BECAUSE OF THE REQUIREMENT OF FEDERAL & STATE LAWS, IT IS IMPERATIVE THAT THIS RECORD BE FILLED IN COMPLETELY AND ACCURATELY. UNDER NO CIRCUMSTANCES MUST TIME WORKED BE UNRECORDED.**

* Other: Bereavement, Education, Volunteer, Family Care Time, Holiday, Jury Duty, Military, Other

(I HEREBY CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF TIME WORKED DURING THIS PERIOD.)

**EMPLOYEE SIGNATURE**

**SUPERVISOR SIGNATURE**

# Wachovia Non-Exempt Time Sheet

EMPLOYEE NAME (please print): Robert S Conrad  
S.S. # (optional): 135.44.1807  
WORK PHONE #: 856-986-6001  
DEPARTMENT: Marlton  
RC#: CC 40  
SUPERVISOR NAME: Stan Hadam  
PAY PERIOD: May 07

Please indicate weekly scheduled hours:  ☐ 5 days/8 hours per day   ☒ Other, please specify:

| DATE | TIME IN | LUNCH OUT | LUNCH IN | TIME OUT | REGULAR TIME | ADDITIONAL REG. TIME | OVERTIME | DOUBLE TIME | PTO | OTHER | REASON |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5-02-07 | 9:15 | | | 12:45 | 3:30 | | | | | | |
| 5-04-07 | 9:05 | | | 1:00 | 3:55 | | | | | | |
| 5-7-07 | 9:50 | | | 12:55 | 3:45 | | | | | | |
| 5-9-07 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 5-11-07 | 9:05 | | | 1:00 | 3:55 | | | | | | |
| 5-14-07 | 9:00 | | | 12:55 | 3:55 | | | | | | |
| 5-16-07 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 5-16-07 | 9:05 | | | 1:00 | 3:55 | | | | | | |
| 5-21-07 | 9:30 | | | 1:00 | 3:30 | | | | | | |
| 5-23-07 | 9:30 | | | 12:45 | 3:15 | | | | | | |
| 5-29-07 | 9:30 | | | 12:30 | 3:00 | | | | | | |
| 5-30-07 | 10:45 | | | 1:45 | 3:00 | | | | | | |

RECORD YOUR EXACT TIME IN AND OUT

TOTALS: 43.40min

BECAUSE OF THE REQUIREMENT OF FEDERAL & STATE LAWS, IT IS IMPERATIVE THAT THIS RECORD BE FILLED IN COMPLETELY AND ACCURATELY. UNDER NO CIRCUMSTANCES MUST TIME WORKED BE UNRECORDED.

* Other: Bereavement, Education, Volunteer, Family Care Time, Holiday, Jury Duty, Military, Other

I HEREBY CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF TIME WORKED DURING THIS PERIOD.

EMPLOYEE SIGNATURE

SUPERVISOR SIGNATURE

# Wachovia Non-Exempt Time Sheet

EMPLOYEE NAME (please print): Robert J. Conrad

S.S. # (optional): 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

WORK PHONE #: 801 886 8818

DEPARTMENT: Cherry Hill

RG#: CL-4D Stan. Hadam

SUPERVISOR NAME: Stan. Hadam

PAY PERIOD: June - 2007

Please indicate weekly scheduled hours: ☐ 5 days/8 hours per day   ☐ Other, please specify:

| DATE | TIME IN | LUNCH OUT | LUNCH IN | TIME OUT | REGULAR TIME | ADDITIONAL REG. TIME | OVERTIME | DOUBLE TIME | PTO | OTHER | REASON |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-4-07 | 8:45 | | | 12:45 | 4:00 | | | | | | |
| 6-6-07 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 6-8-07 | 4:05 | | | 1:00 | 3:55 | | | | | | |
| 6-11-07 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 6-13-07 | 9:00 | | | 1:00 | 4:00 | | | | | | |
| 6-15-07 | 9:05 | | | 1:00 | 3:55 | | | | | | |
| 6-18-07 | 8:30 | | | 12:30 | 4:00 | | | | | | |
| 6-19-07 | 10:00 | | | 12:00 | 2:00 | | | | | | |
| 6-21-07 | 8:05 | | | 12:05 | 4:00 | | | | | | USAA, 11:14 |
| 6-22-07 | 10:00 | | | 12:00 | 2:00 | | | | | | " |
| 6-25-07 | 9:00 | | | 1:00 | 4:00 | | | | | | (1) |

RECORD YOUR EXACT TIME IN AND OUT

TOTALS: 39.50 hrs

* Other: Bereavement, Education, Volunteer, Family-Care Time, Holiday, Jury Duty, Military, Other

BECAUSE OF THE REQUIREMENT OF FEDERAL AND STATE LAWS, IT IS IMPERATIVE THAT THIS RECORD BE FILLED IN COMPLETELY AND ACCURATELY. UNDER NO CIRCUMSTANCES MUST TIME WORKED BE UNRECORDED.

I HEREBY CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF TIME WORKED DURING THIS PERIOD.

EMPLOYEE SIGNATURE

SUPERVISOR SIGNATURE

Robert S. Conrad

44 Longwood Drive
Sicklerville, NJ 08081

856-875-1739
856-875-6287

Rconrad44@comcast.net

FAX TRANSMITTAL FORM

To:  Liberty Claims                    From: Robert S. Conrad
Attn: Kate Schultz                     Date Sent: 04/12/2007

                                       Number of Pages: 2
Fax: 888-443-4212

Message:

Kate,

Time Sheet for March    52 hrs  I am not going to receive a paycheck on April 15, 2007

**Bob**              **Claim # 2021495**

Robert S. Conrad

44 Longwood Drive
Sicklerville, NJ 08081

856-875-1739
856-875-6287

Rconrad44@comcast.net

FAX TRANSMITTAL FORM

|  |  |
|---|---|
| To:  Liberty Claims | From: Robert S. Conrad |
| Attn: Kate Schultz | Date Sent: 05/15/2007 |
|  | Number of Pages: 3 |
| Fax: 888-443-4212 |  |

Message:

### Kate,

Time Sheet for APRIL   58.5 hrs  I did not receive a paycheck on May 15, 2007
You can confirm Wachovia's decision not to pay me commissions from Stanley Hadam at 800-866-8808.

### Bob          Claim # 2021495

Robert S. Conrad
44 Longwood Drive
Sicklerville, NJ 08081

856-875-1739
856-875-6287

Rconrad44@comcast.net

FAX TRANSMITTAL FORM

| | |
|---|---|
| To:  Liberty Claims | From: Robert S. Conrad |
| Attn: Kate Schultz | Date Sent: 06/11/2007 |
| | Number of Pages: 6 |
| Fax: 888-443-4212 | |

Message:

**Kate,**

Time Sheet for MAY     43 hrs 40 min  I **did not** receive a paycheck on **May 15, 2007, or April 15, 2007.** The last LTD check I received was for the month of **March 07**. I received it on May 08, 2007.

I was told by Stanley Hadam ( 1-800-866-8808) that I was going to receive a commission check for June 15, 2007. But as of today I do not have a pay statement available on line.

In summary I have not received a paycheck or a LTD check since March 2007 ( LTD paid on May 08, 2007)

You can confirm Wachovia's decision not to pay me commissions from Stanley Hadam at 800-866-8808.

**Bob**              Claim # 2021495

# EXHIBIT 43



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 49470
Charlotte, NC 28277-9470
Phone No.: (800) 291-0112
Secure Fax No.: (888) 443-4212

January 18, 2008

Thomas J. Hagner
Hagner & Zohlman, LLC
Commerce Center
1820 Chapel Avenue West, Suite 160
Cherry Hill, NJ 08002-0000

RE:     **Robert Conrad**
        **Self-funded Plan Sponsor: Wachovia Corporation**
        **Long Term Disability Claim #: 2021495**

Dear Mr. Hagner:

On behalf of the plan sponsor, Wachovia Corporation we have completed our review of your request for reconsideration of Robert Conrad's claim for Long Term Disability benefits and are unable to alter our original determination to deny benefits.

The Wachovia Corporation Long Term Disability Plan requires that, to receive benefits, a Participant must meet the following definition of disability or partial disability:

*"Disability" or "Disabled" means:*
(a)     *during the Elimination Period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*
(b)     *after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, and experience because of an Injury or Sickness.*

*The loss of a license for any reason does not, in itself, constitute Disability.*

*A Participant will not be Disabled unless (i) he or she received disability benefits under the Wachovia Corporation Short Term Disability Plan (or exhausted benefits under such plan) which are related or due to the same cause(s) or (ii) he or she received disability benefits under any workers' compensation act or law or any other act or law of like intent or application which are related or due to the same cause(s).*

*"Partial Disability" or "Partially Disabled" means as a result of the Injury or Sickness, the Participant is:*
(a)     *during the Elimination Period and the next 24 months, able to perform one or more, but not all, of the material and substantial duties of his or her own or any other occupation on an Active Employment or a part-time basis; or*
(b)     *after the period described in paragraph (a) above, able to perform all of the material and substantial duties of his or her own or any other occupation on a part-time basis.*

*Loss of a license for any reason does not, in itself, constitute a Partial Disability.*

According to our review of the information on file, Mr. Conrad's reported date of disability was August 3, 2004, and he received Long Term Disability benefits from February 1, 2005 through May 23, 2007.

On February 1, 2007, Mr. Conrad experienced the change in definition of disability, from the inability to perform all of the material and substantial duties of his own occupation to the inability to perform all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education and experience. This is an ongoing claim investigation and acceptance beyond the 24th month does not equate to acceptance until the maximum duration.

We outlined the basis for denial in our letter of May 23, 2007. At that time, Mr. Conrad was given the opportunity to submit any additional medical information that may support disability for his appeal review.

We received your written request for an appeal review on behalf of Mr. Conrad on November 13, 2007, along with a letter dated July 17, 2007 from Dr. George Petruncio, a letter dated July 19, 2007 from Dr. James Dwyer, and lab results dated July 19, 2007. No additional medical information was submitted for the appeal review.

Prior to our May 23, 2007 claim determination, all of the medical information contained in Mr. Conrad's claim file was reviewed by Dr. Paul Howard, an independent physician board certified in internal medicine and rheumatology. In his report, Dr. Howard stated:

*"The medical records and the available medical evidence therein, does not provide evidence of fibromyalgia. Excellent comprehensive evaluation is well documented by Dr. Amy Evangelisto and notes no trigger points or myofascial abnormalities beyond trigger finger involving the hand and osteoarthritis of both knees. There is no other objective evidence of fibromyalgia, although it is mentioned in Dr. Irigoyan's note of November 28, 2006, without physical examination findings present.*

*Based on objective evidence from the primary medical records available for review, there is no evidence of fibromyalgia. The presence of fatigue and a sleep disorder are seen in fibromyalgia, but do not constitute fibromyalgia based on the American College of Rheumatology Criteria (1990) defining fibromyalgia syndrome…*

*The claimant's impairments include osteoarthritis involving the knees with minimal reference to significant pain involving the knees. They were injected in late 2005 on a solitary occasion by Dr. Evangelisto without further references in 2006 of knee discomfort. There is morbid obesity present, sleep apnea and an isolated trigger finger which was treated and responded to therapy by Dr. Evangelisto in September 2005. There is also a fatigue syndrome that is self-reported and without other corresponding rheumatic diagnoses to account for functional impairment.*

*…[P]eripheral neuropathy, sensory in nature, is present without evidence of significant motor involvement, and as a result should not result in any degree of impairment related to his ability to work. The presence of trigger finger was treated and has not resulted in any degree of impairment, and as such he would be unrestricted in his ability to perform repetitive and fine motor hand activities of gripping, grasping, handling, fingering, feeling, fine finger dexterity, typing and writing. It is beyond the scope of this review to further comment on any functional impairment related to obstructive sleep apnea. Mr. Conrad's primary source of impairment is due to his morbid obesity and presence of osteoarthritis of his knees. This would result in some restrictions in terms of limited walking, and heavy lifting or carrying. Specifically, his morbid obesity and osteoarthritis of the knees would limit his ability to walk occasionally (a third of the day), stand occasionally (a third of the day). More specifically, he would be limited to standing and/ or walking up to 30 minutes at a time, 2.5 hours in cumulative total to stand and similar such restrictions would be indicated for walking. Mr. Conrad would not have any specific physical restrictions in terms of sitting. His lifting and carrying would be restricted to up to*

*20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be restricted to a maximum of 35 pounds given his morbid obesity. Overall, no more specific restrictions or limitations would be indicated based on his primary source of impairment related to his morbid obesity and resultant osteoarthritis of the knees…*

*As described, Mr. Conrad is presently working a reduced hourly schedule with an average of 20 hours per workweek. Based upon review of the available medical evidence, he is certainly capable of increasing his work hours to a full-time work schedule, 40 hours per week, 8 hours per day. There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy of a nonprogressive nature, osteoarthritis of a mild nature as it relates to his bilateral knees, and complaints of self-reported fatigue. As described…above, the available medical evidence does not support that Mr. Conrad has fibromyalgia, and that he does not meet the specific diagnostic criteria for such. Based on the available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week at the present time."*

A vocational analysis was subsequently conducted and identified alternative occupations that Mr. Conrad could perform, based on his education, training, work experience, age, and the above functional capacities, as outlined in our May 23, 2007 denial letter.

With regard to the information submitted for Mr. Conrad's appeal review, the letters from Dr. Petruncio and Dr. Dwyer do not contain new clinical evidence as compared to the medical records already on file. However, in light of Dr. Dwyer's comment that his symptoms might be aggravated by sleep apnea, which he felt was still an issue, and Dr. Howard's indication that he was unable to comment on any functional impairment related to obstructive sleep apnea in his review, we determined to have all of the medical information on file reviewed by another independent physician, Dr. Theodore Hubley, who is board certified in sleep medicine, as well as pulmonary disease and critical care medicine. In his report, Dr. Hubley stated:

*"The claimant has obstructive sleep apnea hypopnea syndrome as evidenced by a sleep study performed in March 2004. The evidence indicates that it is effectively treated with CPAP therapy at 9 cm. The clinical notes indicate that the claimant has been compliant with the CPAP and wears it approximately seven hours per night. On both occasions, the sleep studies revealed that the respiratory disturbance index was reduced to zero with CPAP therapy. There is no evidence of periodic limb movements of sleep or other sleep disorder. The evidence indicates that CPAP effectively treats his obstructive sleep apnea. Therefore, there is no evidence that obstructive sleep apnea continues to be an impairing diagnosis. The claimant has had self-reported complaints of somnolence which have not been verified by objective testing such as a multiple sleep latency test. There are no restrictions or limitations based on the available evidence, as no impairment is supported. Mr. Conrad can perform activities such as sitting, standing, walking, reaching, lifting, carrying, as well repetitive and fine motor hand motions in an unrestricted fashion…*

*There is no evidence that the claimant cannot work full-time work at 40 hours per week. There is no functional assessment that shows that he is physically incapable of this. The sleep studies do not reveal that he has any untreated sleep disorder. He has complaints of self-reported hypersomnolence. This could be attributable to fibromyalgia or depression. This self-reported complaint, however, would not result in inability to sustain regular full-time work. There is no mention of any incident where the claimant fell asleep at an inappropriate time in the available medical record."*

Based on our review, the medical evidence on file does not support Mr. Conrad's inability to perform, on a full time basis, the material and substantial duties of any occupation for which he is qualified. Therefore, without proof of disability, we are unable to alter our determination and no further Long Term Disability benefits are payable.

With regard to your assertion that the onset date of Mr. Conrad's disability for the purposes of the LTD plan should be September 2003, we would like to make note of the following:

- The Wachovia Corporation Short Term and Long Term Disability plans require that notice of claim be provided within 60 days of the date of loss on which the claim is based. Mr. Conrad did not file a claim reporting a date of onset of disability in September 2003 within such timeframes.
- Mr. Conrad did file a Short Term Disability claim reporting a date of disability of November 25, 2003. This claim was denied due to failure to provide proof of disability. Mr. Conrad was notified in writing of this decision on January 19, 2004 and provided the opportunity to have the claim reopened by submitting medical information in support of his claim within 60 days. Such information was never provided.
- Mr. Conrad subsequently filed a new claim for Short Term Disability with a reported date of disability of August 3, 2004. Short Term Disability benefits were approved from August 2, 2004 through January 31, 2005. This period of 26 weeks satisfied his elimination period for Long Term Disability benefits, which began on February 1, 2005 and continued through May 23, 2007 as discussed above.

Based on the above information, we are unable to alter the date of August 3, 2004 as the appropriate date of onset of Mr. Conrad's disability for the purposes of his Long Term Disability claim at issue. Furthermore, it is our understanding that Mr. Conrad's concerns regarding his Benefits Eligible Compensation as it pertains to this claim, have been previously addressed by the Plan Sponsor, Wachovia Corporation.

This claim determination reflects an evaluation of the claim facts and Plan provisions.

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, Mr. Conrad was entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of his appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Plan Administrator and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Wachovia Corporation Long Term Disability plan. These provisions are not contingent on decisions made by the Social Security Administration or the Workers' Compensation Carrier.

If Mr. Conrad disagrees with this denial, he may make a written request to Wachovia Corporation's Benefit Committee. He may request to receive, free of charge, copies of all documents relevant to his claim. He may submit any additional information or comments he deems pertinent for review. All requests must be made in writing within 60 days of receipt of this letter and should be addressed to:

Wachovia Corporation
Safety & Disability
Benefits Committee
Attn: Jim Beaver
Two Wachovia Center, T4
301 South Tryon Street
Charlotte, NC 28288-0960

The Benefits Committee will provide Mr. Conrad with their decision, in writing, within 60 days of receipt of the written appeal.

Sincerely,

Lindsay Mack
Appeal Review Consultant
Phone No.: (800) 291-0112 Ext. 24150
Secure Fax No.: (888) 443-4212

# EXHIBIT 44



# HAGNER & ZOHLMAN, LLC
## ATTORNEYS AT LAW

COMMERCE CENTER
1820 CHAPEL AVENUE WEST
SUITE 160
CHERRY HILL, NJ 08002
PHONE 856.663.9090
FAX 856.663.9199

JOHN A. ZOHLMAN III ◊ *
THOMAS J. HAGNER ◊

JZOHLMAN@HZLAWPARTNERS.COM
THAGNER@HZLAWPARTNERS.COM

◊  CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY
*  ALSO MEMBER OF PA. BAR

June 26, 2008

Wachovia Corporation
Safety & Disability Benefits Committee
Attn: Jim Beaver
Two Wachovia Center, T4
301 South Tryon Street
Charlotte, NC    28288-0960

      **Re:   Robert Conrad**
            **Claim No.  2021495**

Dear Mr. Beaver:

Kindly consider this letter as a request for a reconsideration of the denial of benefits set forth in your letter of January 18, 2008.   I am enclosing herewith the following:

(1)   Report of Pravin B. Vasoya, M.D. dated February 1, 2008;

(2)   Report of Jason Cerutti, D.C. dated May 1, 2008;

(3)   Fibromyalgia Residual Functional Capacity Questionnaire completed by Dr. Petruncio;

(4)   Sleep Study conducted by Sleep Care Center of Washington Township on February 6, 2008.

With respect to the sleep study, it confirms that, even with use of the C-PAP, slow wave sleep was absent; Stage III sleep was absent; and Stage IV was absent.   Most significantly, REM sleep was decreased at 7.1%.    20-25% is normal.   It is apparent that even when using C-PAP therapy, Mr. Conrad is lacking REM sleep which is a major reason for his daytime fatigue.

Page Two
January 26, 2008
_____

Additionally, by comparing the February, 2008 sleep study to the 2004 sleep studies, you will see that Mr. Conrad's condition has actually decreased.

Please note that we take issue with the basis for the January 11, 2008 denial in that it incorporates by reference an earlier medical review by a Dr. Howard.   Pursuant to the ERISA regulations, the healthcare professional engaged for purposes of an appellate consultation "shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual."  Therefore your incorporation of the earlier Howard report was improper.

Finally, I should note that Mr. Conrad remains employed by Wachovia and therefore remains eligible to be covered by, and in fact continues to be covered by the LTD plan. Therefore if this letter is not accepted as a reconsideration of the January 11, 2008, it should be considered as a continuation and/or reapplication of Mr. Conrad's claim for LTD benefits. Kindly advise us of your position as soon as possible.  Please note that pursuant to the ERISA regulations, specifically § 2560.503-1(3)(i)(4) claimants are entitled to at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal that determination.

Very truly yours,

THOMAS J. HAGNER

TJH/bg
Enclosures
cc:   Robert Conrad



SleepCare Center at Washington Twp.
400 Medical Center Drive  Suite D
Sewell, NJ  08080

Morley, Thomas DO
570 Egg Harbor Road  Harbor Pavilions Suite C-2
Washington Township, NJ  08080
Fax: (856) 582-7872

Petruncio, George MD
188 Fries Mill Rd  Ste E-1
Turnersville, NJ  08012
Fax: (856) 262-0428

**RE: Robert Conrad**
**Sex:** Male
**Date of Birth:** 02/26/1955
**Age:** 52
**Height:** 5-11
**Weight:** 295
**B.M.I.:** 41.1
**Admitting Diagnosis:** Obstructive Sleep Apnea Syndrome (OSAS) 327.23

**Past Sleep History:** Non-Restorative Sleep and Snoring.

**Medical History:**

Thank you for the opportunity to study Robert Conrad. I wanted to give you the results of the split study that was performed at SleepCare Center at Washington Twp. on 02/06/2008. This study was performed to treat the patient's sleep related complaints.

The patient was studied using the Sandman System. Electroencephalogram (EEG), electro-oculogram (EOG), and electromyogram (EMG), were monitored for sleep staging. Nasal pressure monitoring, chest wall movement, abdominal movement, snoring and oxygen saturation were monitored for respiratory assessment. Electrocardiogram (EKG) and tibial EMG were monitored for cardiac arrhythmias and nocturnal limb movements respectively.

In the diagnostic portion of the study, Mr. Conrad slept 120.0 minutes out of 188.4 minutes in bed for a sleep efficiency of 63.7%. The sleep latency was decreased at 52.0 minutes. of the total sleep time was spent in the supine position. Stage I sleep was increased at 8.8%. Stage II sleep was increased at 91.3%. Slow wave sleep total was absent at 0.0%, with Stage III sleep absent at 0.0% and Stage IV sleep absent at 0.0%. There were 0 REM sleep period(s).

The overall apnea hypopnea index was severe at 68.0 events/hr. The supine index was 94.7 events/hr. The obtructive apnea index was 40.5 events/hr. There were 81 obstructive apneas with a mean duration of 15.8 seconds. There were 55 obstructive hypopneas. with a mean duration of 19.8 seconds. Mean saturation was 92.0 with a nadir saturation in non-REM sleep of 72.0% . 79.2% of the study time was spent with a saturation in the 90-100% range. 20.8% of the study time was spent with a saturation below 90%. There were 105 arousals related to respiratory events with an index of 52.5 arousals/hour. There were 64 spontaneous arousals with an index of 32.0 arousals/hour. The etiology of some of these was unclear. Snoring was moderate.

Mean heart rate was 69.8 bpm. Heart rate ranged from 60.0 bpm to 91.0 bpm.


**KENNEDY**
HEALTH SYSTEM

SleepCare Center at Washington Twp.
400 Medical Center Drive  Suite D
Sewell, NJ  08080

**RE: Robert Conrad**

In the treatment portion of the study, due to the obstructive sleep apnea noted, nasal CPAP was titrated from a pressure of 5 CmH2O to 8 CmH2O. On 8 CmH2O, the respiratory disturbance index was reduced to 0 events/hr. The time at the effective pressure was 210.8 minutes including 14.0 minutes in REM sleep. 0 obstructive apneas were seen at the effective pressure. 0 hypopneas were seen at the effective pressure. Mean saturation was 94.8% with a nadir saturation of 86.0%. Robert slept 197.0 minutes out of 275.4 minutes in bed for a sleep efficiency of 71.5%. The sleep latency was decreased at 3.2 minutes. of the total sleep time was spent in the supine position. Stage I sleep was normal at 4.1%. Stage II sleep was increased at 88.8%. Slow wave sleep total was absent at 0.0%, with Stage III sleep absent at 0.0% and Stage IV sleep absent at 0.0%. REM sleep was decreased at 7.1%. REM onset occurred 128.0 minutes into the study.

The overall apnea hypopnea index was normal at 1.2 events/hr. The REM specific index was 0.0 events/hr. The supine index was 1.0 events/hr. There were 4 obstructive hypopneas. with a mean duration of 17.5 seconds. There were 4 arousals related to respiratory events with an index of 1.2 arousals/hour. There were 77 spontaneous arousals with an index of 23.5 arousals/hour. The etiology of some of these was unclear.

Mean saturation was 94.5 with a nadir saturation in non-REM sleep of 86.0% and in REM sleep of 91.0%. 99.0% of the study time was spent with a saturation in the 90-100% range. 0.8% of the study time was spent with a saturation below 90%.

The titration time was adequate. Snoring was eliminated.
Mean heart rate was 60.9 bpm. Heart rate ranged from 52.0 bpm to 82.0 bpm.
The patient did display a normal sinus rhythm.
**SLEEP DISORDER:**

Obstructive Sleep Apnea Syndrome (OSAS). An apnea is a pause in breathing lasting at least 10 seconds. Apneas during wake are a normal phenomenon and not normally associated with any pathology. Sleep apnea is an apnea that occurs during sleep or during the transition from wake to sleep. Obstructive sleep apnea is an apnea during sleep that occurs with continued respiratory effort (as evidenced by thoracic and/or abdominal expansion, intercostals muscle activation, intrathoracic pressure variation, etc.). Obstructive Sleep Apnea Syndrome is a complex syndrome involving excessive apneas, repeated awakenings or arousals from sleep, loud snoring or gasping, excessive daytime sleepiness, and often cardiovascular and neurological complications from blood oxygen plunges and blood pressure swings.

The cause of Obstructive Sleep Apnea Syndrome is a transient lack of upper airway patency during relaxed sleep resulting in a partial or complete collapse of the upper airway blocking inspiration. Excessive intrathoracic pressure eventually opens the airway and often wakens the subject, causing the transient and cyclic phenomena observed in the syndrome.

**IMPRESSIONS**

Severe Obstructive Sleep Apnea Syndrome (OSAS) 327.23

 **KENNEDY**
HEALTH SYSTEM

**SleepCare Center at Washington Twp.**
**400 Medical Center Drive  Suite D**
**Sewell, NJ  08080**

**RE: Robert Conrad**

## RECOMMENDATIONS

CPAP at pressure 8 cm/H2O with a ramp of 15 minutes using a Respironics Comfort Gel Sm mask with a heated humidifier .


- Review of the patient's sleep logs
- Avoid driving while sleepy
- Recommend weight loss
- Results should be reviewed in person with the patient

- Evaluation of thyroid function

Obstructive Sleep Apnea could cause hypertension and has been associated with an increased risk of cardiovascular disease, stroke, and insulin resistance. It can disrupt sleep and cause daytime hypersomnolence.

As with all patients who are overweight and have obstructive sleep apnea, a weight loss program is likely to be of benefit.

The patient should be counseled to avoid activity that requires heightened concentration such as driving or operating equipment until these matters can be resolved.

Thank you for the opportunity to study Robert Conrad.

This document was digitally signed originally by Vasoya, Amita DO on 02/14/2008 at 11:09:43 PM

*FAX   856- 663- 9199*
*To. Tom Hagner*

**Washington Township Neurological Associates. P.C.**

Pravin B. Vasoya, M.D.

General & Sub-Specialty Neurology
EMG/NCV, EEG, Nerve Block, Epidural Block, Facet Block, Pain Management
438 Ganttown Rode, Suite B-3, Sewell NJ 08080 Phone: (856) 256-2600 Fax: (856) 256- 2516

**Pt. Name: Robert Conrad    DOB:** 02/26/1955
Office visit Dt. Feb 01, 2008

Primary Physician: Dr. George , Petruncio
188 Fries Mill Road - Suite E-1
Turnersville, NJ 08012

**HPI:** I had the privilege of seeing your patient in office consultation. As you know, Robert is a 52 year 11 month old right handed patient with a primary complaint of he has side effect with lyrica specifically visual change water retention and swelling in legs has myelgic pain and sleep deprivation and problem with memory and hyper hydrosis his muscle pain makes him tired easily and not able to finish shoping.

ROS: persistent myelgic pain. Patient denies neck pain and Patient denies chest pain, dizziness, orthopnea, palpitations, pedal edema. Patient denies cough, dyspnea, hemoptysis, pleuritic pain, wheezing.

Review of Data: Need sleep study

Allergy: ,    Current Medication:**(1) Verapamil Hcl   240 Mg   Cap**  SIG: ONCE A DAY **(2) Hydrochlorothiazide 12.5 Mg   Cap**  SIG: ONCE A DAY **(3) Lexapro   40 Mg   Tab     Tab**  SIG: ONCE A DAY **(4) Avandia   4 Mg   Tab**  SIG: ONCE A DAY **(5) Zocor   40 Mg   Tab**  SIG: ONCE A DAY **(6) Adderall Xr   20 Mg   Cap**  SIG: 1 every morning **(7) Lyrica 150 Mg   1 Tab Po Qhs**  SIG: AT BED TIME

**EXAMINATION:**  Vital Sign:BP 136/88

**HEENT:** Neck was supple without JVD, lymphadenopathy, thyromegaly, or carotid bruit. No scalp tenderness. No tenderness over Para nasal sinuses or TMJ's. No tenderness in neck, range of neck rotation was adequate. Heart: Regular without murmur; Lungs: CTA (no rales, wheeze, or rhonchi), Abdomen: Soft, nontender/nondistended, no hepatosplenomegaly. Patient exhausted, and difficulty staying awake. Extremities: without clubbing, cyanosis, or edema; pulses palpable bilaterally.

**Neuro:** AAOX3 in no acute distress. Has Cooperative affect. Patient is in moderate pain and depressed but not suicidal. Short term and long term recall was adequate with intact visual praxis and comprehension. Serial 7 subtractions from 100 were adequate but slow. Follows 3/4 step command and comprehension was adequate. Mild dysphasia and dysarthria noted. There were no stigmata of neurocutaneous disorder. Head was normocephalic, atraumatic. Pupils were equal and reactive bilaterally. Extra ocular movement was full without nystagmus or gaze paresis. Optic disks were clear without drusion or papilledema. Venous pulsations were adequate. No evidence of conjunctival or subhyloid hemorrhage. Holpike's maneuver was positive revealing end gaze reproducible nystagmus. Face was symmetrical and tongue protrusion was midline with normal facial sensation. Cranial nerve examination was within normal limits. Shoulder shrug

was adequate. Fine and gross motor movement of hands were reduced. Myelgic tenderness present and there is generalised weakness. No fasciculation or myotonia noted. Proximal and distal motor strength in the upper extremities was ~4/5 and lower extremity motor strength was +4/5. Neck flexion weakness is noted. Pt can't walk on tips of toes and on heels. Gait was wide based and waddling. Romberg was normal. Finger to nose showed no dysmetria or dysdiadokokinesis. Deep tendon reflexes were symmetrical +2/4 upper and lower extremities. Babinski was negative. Sensory exam was normal to cold, pinprick, vibration and position. There was no dystonia, tremor, rigidity, or joint deformity. subnectively patient has peroxysmal numbness but objective exam sensory point of vew normal. hyperpathia at B/L occipital area noted.

IMPRESSION: 742.51  FIBROMYELGIA
OSA
Obesity
Neuropathy

CARE PLAN: consider Provigil 200 mg po Q AM  need sleep study **(1) Verapamil Hcl  240 Mg  Cap**  SIG: ONCE A DAY **(2) Hydrochlorothiazide  12.5 Mg  Cap**  SIG: ONCE A DAY **(3) Lexapro  40 Mg  Tab Tab**  SIG: ONCE A DAY **(4) Avandia  4 Mg  Tab**  SIG: ONCE A DAY **(5) Zocor  40 Mg  Tab**  SIG: ONCE A DAY **(6) Adderall Xr  20 Mg  Cap**  SIG: 1 every morning **(7) Lyrica 150 Mg  1 Tab Po Qhs**  SIG: AT BED TIME  I thank you for the opportunity to evaluate your patient. Please call 856-256-2600 with any questions. With Regards,

Dr. Pravin B. Vasoya
Department of Neurology JFK



**Dynamic Chiropractic Center**                    Dr. Jason Cerutti

817 Erial-New Brooklyn Road                         www.drjason.net
Sicklerville, NJ 08081
Telephone: (856) 782-2077
Fax: (856) 782-2078

May 1, 2008

RE: Robert Conrad

To Whom It May Concern:

Robert Conrad was first examined in my office on January 4, 2006. The patient
complained of severe pain in multiple areas of his spine as well as multiple body parts.
Mr. Conrad indicated he suffered from fibromyalgia, which caused a variety of pain
syndromes. The patient indicated he suffered with severe lower back pain, which
radiated into his lower extremities. He described the pain as a constant, dull ache that
worsened with activity. He also complained of a constant, intense neck and upper back
pain, which radiated into his upper extremities. The patient also complains of shoulder
joint and muscle pain as well as joint pain in both hands.

Upon examination, Mr. Conrad had limited mobility and range of motion in his neck,
upper and lower back with pain upon movement. Palpation revealed multiple spinal
levels of muscle spasms and decreased segmental range motion throughout his spine. A
surface EMG revealed multiple levels of abnormal muscle contraction and muscle
imbalance. It was also noticed that the patient experiences severe bouts of sweating
brought on by no specific action or activity. Mr. Conrad suffers from fatigue and his
demeanor is calm and sluggish.

I have been providing treatment for Mr. Conrad and he is still currently being seen in my
office for regular chiropractic care. The patient has followed my recommendations to
date, has been consistent with his care and is truly working to improve his health. I have
been utilizing specific chiropractic adjustments to eliminate nerve interference in his
spine as well as trigger point therapy and deep tissue massage to eliminate the intense
muscle spasms causing him severe pain.

It is my recommendation that Mr. Conrad continue his chiropractic care in order to continue to manage his pain and discomfort as well as to prevent a worsening in his spinal column and limit the possibility of future degenerative changes.

Should you have any questions or concerns or require additional information, please do not hesitate to contact me at your convenience.

Yours in Health,

Jason Cerutti, D.C.

## FIBROMYALGIA RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE

Doctor:     George Petruncio, M.D.

Patient:     Robert Conrad

DOB:     02/26/1955

Please answer the following questions concerning your patient's impairments.

1.     Frequency and length of contact: _____ *contact since Sept 8, 2007* _____

2.     Does your patient meet the American College of Rheumatology criteria for fibromyalgia?
       ✓ Yes     __ No

3.     List any other diagnosed impairments: _____ *Sleep apnea , Depression* _____
       _____ *Fibromyalgia , Gout , Hypertension , peripheral neuropathy* _____

4.     Prognosis: _____ *Poor* _____

5.     Have your patient's impairments lasted or can they be expected to last at least twelve months? ✓ Yes     __ No

6.     Identify the *clinical findings*, laboratory and test results that show your patient's medical impairments: _____

       _____

7.     Identify all of your patient's symptoms:

       ✓ Multiple tender points                    ✓ Numbness and tingling
       ✓ Nonrestorative sleep *Sleep, Insom*        __ Sicca symptoms
       ✓ Chronic fatigue                           __ Raynaud's Phenomenon
       ✓ Morning stiffness                         __ Dysmenorrhea
       ✓ Muscle weakness                           __ Breathlessness
       __ Subjective swelling                      ✓ Anxiety
       __ Irritable Bowel Syndrome                 __ Panic attacks
       __ Frequent, severe headaches               ✓ Depression
       __ Female Urethral Syndrome                 __ Mitral Valve Prolapse
       __ Premenstrual Syndrome (PMS)              __ Hypothyroidism
       __ Vestibular dysfunction                   __ Carpal Tunnel Syndrome
       __ Temporomandibular Joint Dysfunction (TMJ)  ✓ Chronic Fatigue Syndrome

8.     Is your patient a malingerer? __ Yes          __ No

9.     Do emotional factors contribute to the severity of your patient's symptoms and functional limitations? ✓ Yes     __ No

1

10.  If your patient has pain:

   a.  Identify the location of pain including, where appropriate, an indication of right or left side or bilateral areas affected:

|  | RIGHT | LEFT | BILATERAL |
|---|---|---|---|
| __ Lumbosacral spine | — | — | ✓ |
| __ Cervical spine | — | — | ✓ |
| __ Thoracic spine | — | — | — |
| __ Chest | — | — | — |
| __ Shoulders | — | — | — |
| __ Arms | — | — | ✓ |
| __ Hands/fingers | — | — | ✓ |
| __ Hips | — | — | ✓ |
| __ Legs | — | — | — |
| __ Knees/ankles/feet | — | — | ✓ |

   b.  Describe the nature, frequency, and severity of your patient's pain:

   _____ Constant _____

   c.  Identify any factors that precipitate pain:

   ✓ Stress    ✓ Changing weather    ✓ Fatigue    __ Movement/Overuse    __ Cold
                                __ Hormonal Changes                       __ Static Position

11.  Are your patient's impairments (physical impairments plus any emotional impairments) *reasonably consistent* with the symptoms and functional limitations described in this evaluation?   ✓ Yes        __ No

   If no, please explain: _____

12.  How often during a typical workday is your patient's experience of pain or other symptoms severe enough to interfere with **attention and concentration** needed to perform even simple work tasks?

   __ Never        __ Occasionally        ✓ Frequently        __ Constantly

***For this and other questions on this form, "occasionally" means 1% to 5% of an 8-hour working day; " frequently " means 6% to 33% of an 8-hour working day; "constantly" means 34% to 66% of an 8-hour working day.***

13.  To what degree can your patient tolerate work stress?

   __  Incapable of even "low stress" jobs          ✓  Capable of low stress jobs
   __  Moderate stress is okay                      __  Capable of high stress work

14.  Identify the side effects of any medication that may have implications for working, e.g., dizziness, drowsiness, stomach upset, etc.:

   _____ Lyrica _____

2

15. As a result of your patient's impairments, estimate your patient's functional limitations if your patient were placed in a *competitive work situation.*

   a. How many city blocks can your patient walk without rest or severe pain? ___½___

   b. Please circle the hours and/or minutes that your patient can sit **at one time**, e.g., before needing to get up, etc.

   **Sit**:   0  5  10  15  (20) 30  45                1   2   More than 2
   Minutes                                            Hours

   c. Please circle the hours and/or minutes that your patient can stand **at one time**, e.g., before needing to sit down, walk around, etc.

   **Stand**:   0  5  (10)  15  20  30  45             1   2   More than 2
   Minutes                                            Hours

   d. Please indicate how long your patient can sit and stand/walk *total in an 8-hour working day* (with normal breaks):

   | Sit | Stand/walk |                          |
   |-----|-----------|---------------------------|
   | ✓   | ✓         | less than 2 hours         |
   | —   | —         | about 2 hours             |
   | —   | —         | about 4 hours             |
   | —   | —         | at least 6 hours          |

   e. Does your patient need to include periods of walking around during an 8-hour working day?   ✓ Yes ___ No

      1. If yes, approximately how *often* must your patient walk?

      1  (5)(10)  15  20  30  45  60  (90)
      Minutes

      2. How *long* must your patient walk each time?

      1  2  3  4 (5) 6  7  8  9  10  11  12  13  14  15
      Minutes

   f. Does your patient need a job that permits shifting positions *at will* from sitting, standing or walking?                    ✓ Yes      ___ No

   g. While engaging in occasional standing/walking, must your patient use a cane or other assistive device?                ___ Yes    ✓ No

   h. Will your patient sometimes need to take unscheduled breaks during an 8-hour working day?                    ✓ Yes      ___ No

      If yes,  1) how *often* do you think this will happen?   3c m w f
               2) how *long* (on average) will your patient have to rest before returning to work?   _____
               3) on such a break, will your patient need to ___ lie down or ✓ sit quietly?

   i. With prolonged sitting, should your patient's leg(s) be elevated?   ___ Yes   ✓ No

      If yes,  1) how *high* should the leg(s) be elevated?   _____
               2) if your patient had a sedentary job, *what percentage of time* during an 8-hour working day should the leg(s) be elevated?   _____%

3

j.  How many pounds can your patient lift and carry in a competitive work situation?

| | Never | Occasionally | Frequently | Constantly |
|---|---|---|---|---|
| Less than 10 lbs. | — | | — | — |
| 10 lbs. | — | ✓ | — | — |
| 20 lbs. | — | ✓ | — | — |
| 50 lbs. | — | | — | — |

k.  How often can your patient perform the following activities?

| | Never | Occasionally | Frequently | Constantly |
|---|---|---|---|---|
| Twist | — | ✓ | — | — |
| Stoop (bend) | — | ✓ | — | — |
| Crouch/ squat | — | ✓ | — | — |
| Climb ladders | — | ✓ | — | — |
| Climb stairs | — | ✓ | — | — |

l.  How often can your patient perform the following activities?

| | Never | Occasionally | Frequently | Constantly |
|---|---|---|---|---|
| Look down (sustained flexion of neck) | — | ✓ | — | — |
| Turn head right or left | — | ✓ | — | — |
| Look up | — | ✓ | — | — |
| Hold head in static position | — | ✓ | — | — |

m.  Does your patient have significant limitations with reaching, handling or fingering?
__ Yes        ✓ No

If yes, please indicate the percentage of time during an 8-hour working day that your patient can use hands/fingers/arms for the following activities:

| | HANDS: Grasp, Turn Twist Objects | FINGERS: Fine Manipulations | ARMS: Reaching (incl. Overhead) |
|---|---|---|---|
| Right | 100 % | 100 % | 100 % |
| Left: | 100 % | 100 % | 100 % |

n.  Are your patient's impairments likely to produce "good days" and "bad days"?
✓ Yes        __ No

If yes, please estimate, on the average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment:

__ Never                    __ About three days per month
__ About one day per month  __ About four days per month
__ About two days per month ✓ More than four days per month

4

16.  Please explain or describe any other limitations that would affect your patient's ability to work at a regular job on a sustained basis.

_Decreased Alertness, impaired_
_Decreased Alertness,_

17.  What is the earliest date the description of *symptoms and limitations* on this questionnaire applies? _Spt 03_        _Sept 03_

18.  Please provide any additional information that may assist in more fully understanding your patient's impairments.

_Chronic fatigue syndrome_
_fatigue_

Date _10-24-0_

Signature _[signature]_

Print/Type Name: _____

Address: _____

Telephone: _____

Please return to: Bassett, Nelson & Associates, PO Box 1226, Columbia, MO 65205; or fax to (815)927-0278. Please call (800)331-1127 with questions. Thank you for your cooperation.

5

## GENERAL MEDICAL OPINION RE: PHYSICAL CAPACITY TO DO WORK

Doctor:        George Petruncio, M.D.

Patient:       Robert Conrad

DOB:          02/26/1955

**Definitions:**

**Occasionally** means an activity or condition exists up to 1/3 of the time.
**Frequently** means an activity or condition exists from 1/3 to 2/3 of the time.
**Constantly** means an activity or condition exists 2/3 or more of the time.
**Regular and Continuing Basis** means 8 hours a day, for 5 days a week, or an equivalent work schedule.

YES  NO
☐    ☑   Is your patient capable of performing sustained work activities in an ordinary work setting on a regular and continuing basis (eight hours a day, five days a week)?

**If Yes above:**

Based on medical findings it is my opinion that this patient is capable of performing the following level of work on a regular and continuing basis considering all factors including the effects of pain, fatigue, medical treatment and side-effects from medications:

YES  NO
☑    ☐   **Sedentary Work.** Exerting up to 10 pounds of force *occasionally* and/or a negligible amount of force *frequently* to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only *occasionally* and all other sedentary criteria are met.

☐    ☑   **Light Work.** *Exerting up to 20 pounds of force occasionally,* and/or up to 10 pounds of force frequently, and/or a negligible amount of force *constantly* to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
*NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.*

☐    ☑   **Medium Work.** Exerting 20 to 50 pounds of force *occasionally,* and/or 10 to 25 pounds of force *frequently,* and/or greater than negligible up to 10 pounds of force *constantly* to move objects. Physical demand requirements are in excess of those for Light Work.

The following medical findings support this opinion:

Signature _George P. Petruncio_____        Date _10-24-02_____

                George Petruncio, M.D.

**Please return to: Bassett, Nelson & Associates, LLP, PO Box 1226, Columbia, MO 65205; or fax to (815)927-0278. Thank you.**

# MLS National Medical Evaluation Services, Inc.

### An MLS Group Company

March 26, 2007

Re:   Robert Conrad
      Claim Number:        2021495
      Social Security:     XXX-XX-1807

INDEPENDENT PEER REVIEW

To Whom It May Concern:

LIST OF MEDICAL DOCUMENTATION

- Patient letter, 01/17/05.
- List of physicians, undated.
- Medical records of Dr. Thomas Morley beginning on 03/04/04 through 06/15/06.
- Medical records of Dr. Dean Drezner, 09/24/04.
- Medical records of Dr. Praven Vasoya, D.O., 10/21/04.
- Medical records of Dr. George Petruncio beginning on 01/10/05 through 10/03/05 with multiple handwritten notes that are not legible through 12/18/06.
- Medical records of Dr. Praven Vasoya, 02/03/05 through 07/11/05.
- Medical records of Amy Evangelisto, M.D., 09/12/05 through 11/07/05.
- Medical records of Dr. Jason Cerutti, D.C., 01/04/06 through 10/23/06.
- Medical records of Dr. Gus Slotman, M.D., 07/13/06.
- Medical records from the Arthritis Center, Dr. Oscar Irigoyan.
- Hospital records from Kennedy Health Systems, 05/03/05.
- Diagnostic studies, MRI scans, cervical spine, 02/18/05.
- MRI scan of the brain, 02/18/05.
- Motor and nerve conduction study, 02/22/05, Dr. Praven Vasoya.
- EKG, 12/18/06.

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 2

- Colonoscopy, Jeff Abrams, M.D., 12/22/06.
- Laboratory studies from 03/03/04 through 01/30/07.
- Attending Physician Statement from Dr. Thomas Morley, 10/14/04, Dr. George Sanders, 11/17/04 and Dr. George Petruncio, 11/19/04 and 07/06/05.
- Thomas Morley, M.D., Restrictions form.
- Praven Vasoya, M.D., Attending Physician Statement, 07/05/05 and 08/09/05, Dr. George Sanders, 07/12/05.
- Letter, George Sanders, Ph.D., and medical records, 10/01/05.
- Restrictions form, Dr. Irigoyan, 01/06/07.
- Restrictions form, Dr. Sanders, 01/10/07.
- Restrictions form, Dr. George Pretruncio, 01/12/07.
- Restrictions form, Dr. Jason Cerutti, D.C., 01/24/07.

<u>SUMMARY OF MEDICAL DOCUMENTATION</u>

Mr. Robert Conrad is a 52-year-old male who went out of work in 2004 and is currently on a restricted work schedule, three days a week, between 9 a.m. and 1 p.m.  He has been out of work because of obstructive sleep apnea, fibromyalgia, difficulty concentration and history of depression.

I have been asked to review his medical records provided above and render an opinion whether the presence of fibromyalgia is supported by the medical records, provide a description of the claimant's impairments and how these translate into restrictions and limitations on physical activities, expected duration of any restrictions and limitations, comment on whether an increase in the current work schedule is supported by the medical records and contact the attending rheumatologist to clarify restrictions and limitations and how they impact on the claimant's ability to function in a setting of an eight hour work day.

Medical records begin with evaluation of Mr. Conrad by Dr. Morley on March 4, 2004. He was found to be overweight with excessive snoring.  Evaluation pursued, finding evidence of obstructive sleep apnea, with mild oxygen desaturation.  Subsequent study demonstrated no significant periodic leg movements or oxygen desaturation after placement of CPAP at 9 cm with adequate control of his sleep disorder breathing.

Subsequent evaluation over the course of the summer and fall found him to have some difficulty wearing the mask, but he was not having any frank pathologic sleep.  He denied falling asleep while driving, during conversation or meals, although he reported poor concentration.   He was evaluated by Dr. Drezner, an ears, nose and throat specialist, who did not feel that surgical intervention would be of benefit.  A repeat

Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 3


polysomnogram in October 2004 identified moderate severe obstructive sleep apnea with mild oxygen desaturation and adequate control of the patient's sleep disorder breathing on his nasal CPAP of 9 cm of water.   Weight reduction and exercise were advised.

Throughout the records there are handwritten notes that are not legible.  They begin on November 1, 2004, through December 18, 2006.  Blood pressures in 2006 were all in the normal range with weights varying between over 300 pounds to 294 pounds on December 1, 2006.  It is presumed that these are from Dr. George Petruncio.  They contain no physical examination notes that are legible.  Dr. Petruncio has a letter of January 10, 2005, which authorizes his return to work for nine hours a week.

Dr. Praven Vasoya evaluated him on February 3, 2005, for numbness and tingling involving the feet along with foot pain.  He found diminished sensation in hands and feet with an ataxic gait.  He felt he had peripheral neuropathy.  Nerve conduction studies were entirely normal.  There was report of a cerebral spinal fluid showing an elevated protein, but objective evidence of this is not present in the records provided.  He was felt to have an autoimmune neuropathy and underwent plasmapheresis with questionable benefit and Trileptal and Adderall were also added.

There was no change in his physical examination throughout the notes of Dr. Vasoya through July 11, 2005 and IVIG was recommended.

Dr. Amy Evangelisto evaluated him on September 12, 2005, with an excellent comprehensive evaluation.  There was no evidence of trigger points on examination.  She felt he had osteoarthritis involving the knees and a trigger finger which she injected.  She saw him back in followup on November 7, 2005, and injected both knees because of objective evidence of osteoarthritis involving the knees on x-ray (x-ray report not available for review).

Dr. Cerutti began seeing him on January 4, 2006, through October 23, 2006.  These notes, near monthly visits, do not identify any significant musculoskeletal abnormalities that are legible with the exception of some mild decrease in range of motion, but it is not identified as to the site.  There is mention of being stiff and not sleeping well.

A visit at the Arthritis Center with Dr. Irigoyan on November 28, 2006, is handwritten and is without a physical examination.  The assessment is one of fibromyalgia.

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 4

<u>DIAGNOSTIC / LABORATORY STUDY SUMMARY</u>

The Kennedy Health System records noted an evaluation by Dr. Haenel, D.O., on May 3, 2005, for aid in carrying out plasmapheresis.  Diagnostic studies including an MRI scan on February 18, 2005, with the cervical spine demonstrating early cervical disc disease at C5-C6 and an MRI scan of the brain on February 18, 2005, which is normal.

Motor and sensory nerve conduction study on February 22, 2005, was entirely normal. An EKG was present on December 18, 2006, without interpretation.

Dr. Jeff Abrams performed a colonoscopy on December 22, 2006, finding hemorrhoids and some diverticulosis and a solitary polyp removed.

Laboratory studies between March 30, 2004, and January 30, 2007, notes repeatedly normal chemistry panels and complete blood count, elevated lipid panels with triglycerides and cholesterol, normal thyroid function, CPK, ANA, rheumatoid factor and other autoantibodies, Lyme serologies and syphilis serologies.  Heavy metal testing was negative.

<u>ANCILLARY DOCUMENTATION</u>

Attending Physician Statement by Dr. Morley on October 14, 2004, notes obstructive sleep apnea as an inability to work.

Dr. Sanders notes that depression on November 17, 2004, is the impedment to work and Dr. Petruncio on November 19, 2004, notes chronic fatigue syndrome, obstructive sleep apnea and hypertension.

Similarly, on July 6, 2005, notes depression, autoimmune disorder, sleep apnea, chronic fatigue and hypertension.

Dr. Thomas Morley, in a response letter, identifies obstructive sleep apnea, depression as primary causes of inability to work and the fact that he is unable to concentrate.

Dr. Vasoya, on July 5, 2005, notes peripheral neuropathy and on August 9, 2005, notes fibromyalgia and neuropathy as causes for inability to work.

Dr. Sanders re-affirms on July 12, 2005, that depression was in remission and he confirms similarly that on January 10, 2007, noting that disability was really the physical measures and not depression.

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 5


Dr. Irigoyan filled out a restrictions form on January 6, 2007, noting fibromyalgia, but he was capable of sedentary physical activity on a full time basis.

Dr. Petruncio felt that he was capable of only working up to four hours a day and Dr. Jason Cerutti felt he was capable of sedentary activity of less than five and a half hours a day.

PEER-TO-PEER CONSULTATION

Attempts were made to speak with Dr. Oscar Irigoyan at 215-955-8430. The first call was on March 8, 2007, at which time, a message was left on "Cindy's" voicemail requesting a return phone call. Additional calls were made on March 15, March 23, and March 26, 2007. Messages were left, however, no return call has been received.

CONCLUSION

**1.     The claimant's diagnosis is Fibromyalgia.  Based on your review of the medical information provided and prevailing medical standards, is the correct diagnosis?  If not, please provide a primary diagnosis based on your review of the medical evidence provided.**

The medical records and the available medical evidence therein, does not provide evidence of fibromyalgia.  Excellent comprehensive evaluation is well documented by Dr. Amy Evangelisto and notes no trigger points or myofascial abnormalities beyond trigger finger involving the hand and osteoarthritis of both knees.  There is no other objective evidence of fibromyalgia, although it is mentioned in Dr. Irigoyan's note of November 28, 2006, without physical examination findings present.

Based on objective evidence from the primary medical records available for review, there is no evidence of fibromyalgia.  The presence of fatigue and a sleep disorder are seen in fibromyalgia, but do not constitute fibromyalgia based on the American College of Rheumatology Criteria (1990) defining fibromyalgia syndrome.

**2.     Please provide a description of the claimant's impairments, if any, and outline how any impairment translates to restrictions and limitations on physical activities.**

The claimant's impairments include osteoarthritis involving the knees with minimal reference to significant pain involving the knees.  They were injected in late 2005 on a solitary occasion by Dr. Evangelisto without further references in 2006 of knee

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 6

discomfort. There is morbid obesity present, sleep apnea and an isolated trigger finger which was treated and responded to therapy by Dr. Evangelisto in September 2005. There is also a fatigue syndrome that is self-reported and without other corresponding rheumatic diagnoses to account for functional impairment.

As described above, peripheral neuropathy, sensory in nature, is present without evidence of significant motor involvement, and as a result should not result in any degree of impairment related to his ability to work. The presence of trigger finger was treated and has not resulted in any degree of impairment, and as such he would be unrestricted in his ability to perform repetitive and fine motor hand activities of gripping, grasping, handling, fingering, feeling, fine finger dexterity, typing and writing. It is beyond the scope of this review to further comment on any functional impairment related to obstructive sleep apnea. Mr. Conrad's primary source of impairment is due to his morbid obesity and presence of osteoarthritis of his knees. This would result in some restrictions in terms of limited walking, and heavy lifting or carrying. Specifically, his morbid obesity and osteoarthritis of the knees would limit his ability to walk occasionally (a third of the day), stand occasionally (a third of the day). More specifically, he would be limited to standing and/or walking up to 30 minutes at a time, 2.5 hours in cumulative total to stand and similar such restrictions would be indicated for walking. Mr. Conrad would not have any specific physical restrictions in terms of sitting. His lifting and carrying would be restricted to up to 20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be restricted to a maximum of 35 pounds given his morbid obesity. Overall, no more specific restrictions or limitations would be indicated based upon his primary source of impairment related to his morbid obesity and resultant osteoarthritis of the knees.

**3.     Please provide an expected duration for any restrictions and limitations you may have provided.**

In terms of duration of the above-described restrictions and limitations, they would be indefinite unless he were to lose a significant amount of weight in which his present level of impairment would be reduced and he would have less limitation in terms of standing, walking, lifting and carrying.

**4.     The claimant is currently working a reduced hourly scheduled at an average of 20 per hours per week. Based on the review of the medical information, is there evidence to support the claimant's medical capacity to increase his hours?**

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 7

As described, Mr. Conrad is presently working a reduced hourly schedule with an average of 20 hours per workweek.   Based upon review of the available medical evidence, he is certainly capable of increasing his work hours to a full-time work schedule, 40 hours a week, 8 hours per day.   There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy of a nonprogressive nature, osteoarthritis of a mild nature as it relates to his bilateral knees, and complaints of self-reported fatigue.   As described in Question Number 1 above, the available medical evidence does not support that Mr. Conrad has fibromyalgia, and that he does not meet the specific diagnostic criteria for such.   Based on the available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week at the present time.

I further declare under penalty of applicable law that I personally performed this evaluation and prepared this report on the date and location specified.  Furthermore, I state under penalty of applicable law that I dictated this report to the MLS transcription service and that I have reviewed the transcribed report and that this report is true and correct.


Sincerely yours,


Paul F. Howard, M.D.
Board Certified, American Board of Internal Medicine
 Subspecialty Board in Rheumatology
Fellow, American College of Physicians
Fellow, American College of Rheumatology
Clinical Lecturer, University of Arizona
Affiliate Assistant Professor, Division of Clinical Education, Midwestern University

PH:nmb

RECEIVED
APR 0 9 2007

# EXHIBIT 45

Wachovia Corporation
Benefits
NC0960
Two Wachovia Center T4
301 South Tryon Street
Charlotte, NC 28288-0960



August 28, 2008

**WACHOVIA**

Mr. Thomas J. Hagner
Hagner & Zohlman, LLC
Commerce Center West Suite 160
Cherry Hill, NJ 08002

Re: Robert Conrad

Dear Mr. Hagner:

We are in receipt of your letter of August 20, 2008 that was received on August 27, 2008 regarding your client Robert Conrad.

Mr. Conrad would be eligible to seek benefits under the Wachovia Short-Term Disability (STD) Plan and the Wachovia Long-Term Disability (LTD) Plan as long as he remains eligible for the plans.

Eligibility for the (STD) plan is found on pages 81-82 of the Wachovia 2008 Benefits Summary Plan Descriptions. That section indicates, when you are an employee of a participating employer or affiliate you may participate in the plan, provided you are regularly scheduled to work. Cooperative education students, casual employees, leased employees, independent contractors, nonresident aliens, temporary employees, zero-hour employees, and certain employees transferring to the United States from a work location outside the country are not eligible for participation. You are eligible for the STD Plan after three months of service, provided you are actively at work on the date you are first eligible. "Actively at work" means that you perform work as a regularly scheduled full-time or part-time employee at your usual work location or at a location to which Wachovia requires you to travel. Once you have satisfied the eligibility period (three months of service), you will be considered actively at work if you were physically at work on the day immediately before: • A weekend; • A holiday; • A paid time off (PTO) day; or • Any nonscheduled workday.

For example:
If you were hired on January 1, you will be first eligible to participate in the STD Plan if you are actively at work on April 1 unless April 1 is a weekend, holiday, PTO or a nonscheduled workday. If your are not actively at work on April 1 for any other reason (i.e., an illness) and do not return until April 3, you will not be eligible to participate until April 3. If you are provided with

Liberty/Conrad 90

notice of your termination of employment under the Worker Adjustment and Retraining Notification Act and you remain on-call and available for work, you will be deemed to be actively at work for purposes of the plan.

Additionally, page 90 Applying for Benefits indicates;

- To apply for STD benefits, you must call Liberty at 800-853-7108 on or before the eighth consecutive calendar day of illness to report the claim and to provide the information Liberty will need in order to review and process the claim. If you know beforehand that you will be out for eight or more consecutive calendar days, you may call Liberty to file a claim anytime within 30 days before your disability is scheduled to begin.

Eligibility for the (LTD) plan is found on page 97 of the Wachovia 2008 Benefits Summary Plan Descriptions. That section indicates:

- If you are an employee of a participating employer or affiliate, you may participate in the LTD Plan, provided you are regularly scheduled to work at least 20 hours per week. Cooperative education students, casual employees, leased employees, independent contractors, nonresident aliens, temporary employees, zero-hour employees and certain employees transferring to the United States from a work location outside the country are not eligible for participation. You are eligible for the LTD Plan after three months of service, provided you are actively at work on the date you are first eligible. "Actively at work" means that you perform work as a regularly scheduled full-time or part-time employee at your usual work location or at a location to which Wachovia requires you to travel. Once you have satisfied the eligibility period, three months of service, you will be considered actively at work if you were physically at work on the day immediately before; • A weekend; • A holiday; • A PTO day; or • Any nonscheduled workday.

    For example:
- If you were a hired on January 1, you will be first eligible to participate in the LTD Plan if you are actively at work on April 1, unless April 1 is a weekend, holiday, PTO or a nonscheduled workday. If you are not actively at work on April 1 for any other reason (i.e., an illness) and do not return until April 3, you will not be eligible to participate until April 3. If you are provided with notice of your termination of employment under the Worker Adjustment and Retraining Notification Act and you remain on-call and available for work, you will be deemed to be actively at work for purposes of the plan.

Additionally, page 105 Applying for Benefits indicates:

- An approved STD benefit does not automatically qualify you for LTD benefits. Liberty will continuously monitor your condition throughout the disability period. After the fourth month of an approved disability (whether paid or unpaid), you will receive information from Liberty about transitioning

Liberty/Conrad 91

 

your claim to LTD. Your LTD claim must be approved by Liberty to qualify for LTD benefits.

In regards to your indication that documentation between Liberty and Basset Law Firm was withheld from the files provided, Liberty Mutual has confirmed the information was provided in the files delivered. Liberty Mutual confirmed the text of the email communications received from Bassett Law Firm was cut & pasted into the claim notes included in the files provided.

If there are any questions please feel free to contact me at 704-374-3426.

Sincerely,

James L. Beaver
Senior Vice President
Human Resources Division

Liberty/Conrad 92