**FISHER & PHILLIPS LLP**
430 Mountain Avenue
Murray Hill, New Jersey 07974
(908) 516-1050
Attorneys for Defendant
Attorney of Record: Kathleen McLeod Caminiti, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT S. CONRAD, SR., <br><br> Plaintiff, <br><br> vs. <br><br> THE WACHOVIA GROUP LONG-TERM DISABILITY PLAN, <br><br> Defendant. | Civil Action No. 1:08-cv-05416-RMB-AMD <br><br> **DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** |

Pursuant to Local Civil Rule 56.1, defendant Wachovia Corporation Long-Term Disability Plan (hereinafter "Wachovia LTD Plan" or "Defendant"), incorrectly denominated in the caption as "The Wachovia Group Long-Term Disability Plan," sets forth the following material facts as to which there is no dispute, in support of its Motion for Summary Judgment:

## I.     BACKGROUND INFORMATION

1.     Plaintiff Robert S. Conrad, Sr. became employed by Wachovia Securities, LLC as a Financial Advisor with the title of Senior Vice President when First Union

Corporation and Wachovia Corporation merged on September 1, 2001 (**Complaint ¶ 7, Beaver Certif.[1] ¶ 14).**

2.      Wachovia Corporation sponsors group health and welfare plans, including a Short-Term Disability ("STD") Plan and a Long-Term Disability ("LTD") Plan, which provide coverage to eligible employees of Wachovia Securities, LLC.  (**Beaver Certif. ¶ 2; Complaint ¶ 5).**

3.      The Liberty Life Assurance Company of Boston ("Liberty") is the Claims Administrator of Wachovia's STD and LTD Plans.  (**Beaver Certif. ¶ 3).**

4.      All employees of Wachovia Securities, LLC are provided with a Summary Plan Description ("SPD") for both the Wachovia Corporation STD Plan and LTD Plan, respectively, through electronic access via the *My Wachovia Benefits* website which is accessible to all employees.  (**Beaver Certif. ¶ 4).**

5.      The SPD posted on Wachovia's website advised employees (under the section entitled, "Your Rights Under ERISA") that they can also view the official plan documents which legally govern the operation of the STD and LTD Plans, by submitting a written request to the Plan Administrator. (**Beaver Certif. ¶5).**

6.      Each year all employees of Wachovia Securities, LLC are also given access to an Employee Handbook (via the company intranet) which summarizes the parameters

---

[1]  "Beaver Certif." refers to the Certification of James L. Beaver, filed herewith in Support of Defendant's Motion for Summary Judgment.

of the current STD and LTD Plans, with electronic links to the actual SPD. **(Beaver**

**Certif. ¶ 8 and ¶ 9, Exhibit C).**

## II. WACHOVIA'S STD PLAN AND PLAINTIFF'S CLAIM

7.     Wachovia's official 2003 STD Plan provided in pertinent part:

> (a)   *Notice.* Notice of claim must be given to the Plan
> Administrator, or the Claims Administrator acting as agent of
> the Plan Administrator, within 60 calendar days of the date of
> the loss upon which the claim is based...
>
> (b)   *Proof.*
> (1)   Proof of claim must be given to the Plan
> Administrator, or the Claims Administrator acting as agent of
> the Plan Administrator, no later than 60 days after the end of
> the Elimination Period.[2] For this purpose, "proof" means (a)
> the evidence in support of a claim for benefits in a form or
> format satisfactory to the Claims Administrator; (b) an
> attending Physician's statement in a form or format
> satisfactory to the Claims Administrator, completed and
> verified by the Participant's attending Physician, and (c)
> provision by the attending Physician of standard diagnosis,
> chart notes, lab findings, test results, x-rays, and/or other
> forms of objective medical evidence that may be required by
> the Claims Administrator in support of a claim for benefits.

**(Beaver Certif. ¶ 7, Ex. B, § 3.12 Notice and Proof of Claim).**

8.     Wachovia's 2003 STD Plan defines "Disability" or "Disabled" as "the

Participant's inability to perform all of the material and substantial duties of his or her

own occupation on an Active Employment basis because of an Injury or Sickness."

**(Beaver Certif. ¶ 7, Ex. B, §1.1, p. 1).**

---

[2] "Elimination Period" means a period of eight consecutive calendar days of Disability during
which time no benefit is paid. **(Beaver Certif. ¶ 7, Ex. B, §1.1 Definitions.)**

9.      Wachovia's 2003 STD SPD reiterated the information contained in Wachovia's official 2003 STD Plan document. **(Beaver Certif. ¶ 6, Ex. A).**

10.     Wachovia's 2003 Employee Handbook reiterated the STD Plan information provided in Wachovia's official 2003 STD Plan document. **(Beaver Certif. ¶9, Ex. C).**

11.     The 2003 *My Wachovia Benefits* website, accessible to all employees via the *Your Benefits Resources* link reiterated the STD Plan information provided in Wachovia's 2003 STD Plan document. **(Beaver Certif. ¶ 4-5, Exhibits A & C).**

12.     Between Monday, November 24, 2003 and Friday, November 28, 2003, Plaintiff was absent from work due to illness.  He returned to work on Monday, December 1, 2003. **(McGee[3] Certif. ¶ 2, Ex. A).**

13.     On December 22, 2003, Plaintiff called Liberty and reported an STD claim with a date of disability as November 25, 2003 to Disability Case Manager Tosha Darby. It was assigned Claim No. 1201957. **(*Id*).**

14.     However, because Plaintiff was not absent from work for a period of eight (8) consecutive days, he failed to satisfy the requisite elimination period. **(*See* ¶¶ 7, fn, 12 and 2 supra).**

15.     By letter dated January 19, 2004, Liberty advised Plaintiff in pertinent part:

> We have not received medical information to support a condition of such severity as to preclude you from performing your occupation as a Financial Advisor.  To support your claim, on January 12, 2004, a request for medical information was faxed to the office of Dr.

---

[3] "McGee Certif." refers to the Certification of Paula McGee, filed herewith in support of Defendant's Motion for Summary Judgment.

> George Petrunzio,  To date, we have not received a response. Therefore, your claim for STD leave has been closed.
>
> You have the right to have your claim reopened by providing the documentation requested above within 60 days from the date of this letter to the Liberty Life Assurance Company of Boston representative signing this letter.  In addition, please feel free to include any additional information that you feel support why your claim should not have been closed.
>
> If you have any questions, please feel free to contact our office at the number below.

**(McGee Certif. ¶ 3, Ex. B).**

16.     Plaintiff failed to provide supporting medical information of his claim within the requisite time period, and accordingly, his claim was not reopened.  **(McGee Certif. ¶ 4).**

17.     Plaintiff did not appeal this denial of benefits.  **(McGee Certif. ¶ 5).**

## III.  WACHOVIA'S 2004 STD PLAN AND PLAINTIFF'S CLAIM

18.     Plaintiff continued to work for Wachovia on a full-time basis until August 2004 at which time he went out on a short-term disability leave. **(Beaver Certif. ¶ 15).**

19.     Wachovia's 2004 STD Plan provided the same terms as Wachovia's 2003 STD Plan.  **(Beaver Certif. ¶ 7-10, Exhibits B & D).**

20.     Plaintiff applied and was approved for STD leave benefits by Liberty commencing on August 3, 2004.  **(Beaver Certif. ¶ 19).**

21.     The level of disability benefits to which Plaintiff was entitled under the 2004 STD plan was determined using the concept of Benefits Eligible Compensation

("BEC").   As used in the plan, BEC and "pre-disability earnings" have the same meaning.  **(Beaver Certif. ¶ 10, Ex. D, § 1.1 Definitions, p.1).**

22.    A detailed explanation of the BEC calculation was provided to all employees via the 2004 STD SPD and the 2004 Employee Handbook.  **(Beaver Certif. ¶ 4,5,8, 10-12, Exhs. E & F).**

23.    The information applicable to the calculation of Plaintiff's BEC as stated in the 2004 STD SPD is as follows:

> "Compensation" is defined as the sum of your . . . Seventy percent (70%) of "eligible functional incentive pay . . .
>
> "BEC" or "Pre-disability Earnings" means the greatest of the following amounts divided by 52 (*i.e.* the number of weeks in a calendar year):
>
> > - Your Grandfathered Annual Benefits Base Rate;
> > - Your Comp Rate; or
> > - Your Rolling 12-Month Amount
>
> Your BEC or Pre-disability Earnings is determined as of the business day immediately preceding the date you incur a disability.  Note, however, that the Rolling 12-Month Amount is actually calculated once each month . .
>
> The "Rolling 12-Month Amount" is determined as of the last business day of each month if you are eligible to participate in the plan on such date.  For example, if you become eligible for benefits during April, the Rolling 12-Month Amount is calculated for the 12 months ending March 31.
>
> 12 Months of Participation – if you have 12 Months of Participation during the most recent 12 consecutive calendar months, your Rolling 12-Month Amount is the sum of your Earnings for such 12 consecutive calendar months . . .

**(Beaver Certif. ¶ 10, Ex. D, p.66).**

24.     Plaintiff was a Financial Advisor with more than one year of service whose earnings varied from month to month, so his BEC was determined by calculating the sum of his rolling 12-month earnings and then computing an average monthly rate of compensation.  **(Beaver Certif. ¶ 16, Ex. D).**

25.     The "Rolling 12-Month Amount" is determined as of the last business day of each month an employee is eligible to participate in the plan.  Plaintiff became eligible for STD benefits on August 4, 2004, so his Rolling 12-Month Amount was calculated for the 12 months ending on July 31, 2004.  **(Beaver Certif. ¶ 17, Ex. D).**

26.     The sum of Plaintiff's rolling 12-Month compensation was $63,931.83, yielding a monthly average for BEC purposes of $5,327.65 per month. **(Beaver Certif. ¶ 18, Ex. H).**

27.     Between August 3, 2004 and January 31, 2005 (*i.e.* the maximum 26 weeks of benefits provided under Wachovia's STD Plan), Plaintiff received full benefits pursuant to the terms of the STD Plan.  **(Beaver Certif. ¶ 19).**

## IV.  PLAINTIFF'S LTD CLAIM

28.     Pursuant to the terms of Wachovia's 2004 LTD Plan, after satisfying the 26-week elimination period, an individual becomes eligible to receive LTD benefits. **(Beaver Certif. ¶ 13, Ex. G, §1.1 Definitions, p. 5).**

29.     To obtain LTD benefits, a participant must prove he or she is "Disabled" as the Plan defines that term. Wachovia's 2004 LTD Plan defines "Disability" or "Disabled" as "the Participant's inability to perform all of the material and substantial duties of his or

her own occupation on an Active Employment basis because of an Injury or Sickness…during the Elimination Period and the next 24 months."

**(Beaver Certif. ¶ 13, Ex. G, §3.2(a) and §1.1, p. 4).**

30.   Approximately 17 weeks into the LTD elimination period, Liberty begins to review an STD recipient's file, and if appropriate, will automatically transition an STD claim to the LTD program, upon expiration of the full 26 week elimination period. **(Beaver Certif. ¶ 21).**

31.   Pursuant to this process, Liberty approved LTD benefits for Plaintiff effective February 1, 2005. **(Beaver Certif. ¶ 22, Ex. I).**

32.   Between February 1, 2005 and October 9, 2005, Plaintiff received full LTD benefits pursuant to the terms of Wachovia's 2004 LTD Plan, *i.e.* 66 2/3% of his monthly BEC of $5,327.65, which computes to $3,551.77 per month. **(Beaver Certif. ¶ 23, Exhibits G & H).**

## A. PARTIAL DISABILITY AND RETURN TO WORK PROGRAM

33.   On January 10, 2005, Plaintiff was cleared by his doctors to return to work on a part-time basis under the LTD Plan's Partial Disability and Return to Work Program provision. **(McGee Certif. ¶ 6, Ex. C).**

34.   Plaintiff remained at home, however, for the next nine (9) months **(McGee Certif. ¶ 7).**

35.   During this time period, Plaintiff's claim for social security disability benefits was denied on July 7, 2005 because he did not satisfy the definition of "disabled." **(McGee Certif. ¶ 8, Ex. D).**

36.     Plaintiff's    request    for    reconsideration    of    the    Social    Security
Administration's decision to reject his claim for disability benefits was denied on March
24, 2006.  (McGee Certif. ¶ 9, Ex. E).

37.     Plaintiff returned to work on a part-time basis on October 10, 2005.
Plaintiff's medical status was changed from fully disabled to partially disabled and he
continued to receive benefits pursuant to the terms of the LTD Plan.  (McGee Certif.
¶ 7).

38.     The "Return to Work Program" provision of Wachovia's 2004 LTD Plan
provided in pertinent part:

> To encourage Participants to return to work, a Participant who has
> satisfied the Elimination Period may be eligible to continue to
> receive a Disability Benefit while engaging in Active Employment
> in accordance with the provisions of this Section [3.7].
>
> (a)     For the purposes of this provision, the Participant may
> satisfy the Elimination Period if he or she is Disabled or Partially
> Disabled, or a combination of Disabled and Partially Disabled,
> during such time.
>
> (b)     A Disability Benefit will be paid for the period of
> Partial Disability if proof is provided upon request of the Plan
> Administrator or the Claims Administrator and at the Participant's
> expense of continued:
>> (1)     Partial Disability; and
>> (2)     Regular attendance of a legally qualified
>> Physician and compliance with the recommended course of
>> treatment for the disabling condition.
>
> (c)     For the purpose of determining Partial Disability, the
> Injury or Sickness must occur and Partial Disability must begin
> while the Employee is a Participant.
>
> (d)     If the Participant is eligible for benefits described in
> this Section 3.6, the Plan will pay Disability Benefits as follows:

(1)    If, at any time while Disability Benefits are payable [under Section 3.2], the Participant's Monthly Earnings are less than 20% of his Pre-Disability Earnings, a Disability Benefit determined under Section 3.2(b) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.

(2)    If, during the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than or equal to 80% of his or her Pre-Disability Earnings, a Disability Benefit determined under Section 3.2(b) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.  However, if the Disability Benefit plus the Participant's Monthly Earnings would exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be reduced so that the Disability Benefit plus the Participant's Monthly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.

(3)    If, after the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than or equal to 80% of his or her Pre-Disability Earnings, the Disability Benefit otherwise payable will be further reduced by 50% of the Participant's Monthly Earnings.  All other benefit provisions and terms applicable to Disability will apply as stated in this Plan.

(4)    If the Participant's Monthly Earnings exceed 80% of his Pre-Disability Earnings, Disability Benefits will cease.

**(Beaver Certif., ¶ 13, Ex. G, §3.7  Work Incentive Benefits).**

39.    Pursuant to the terms of the "Return to Work" program, Plaintiff was entitled to his full LTD monthly benefit if at any time when disability benefits were payable, his monthly earnings were less than 20% of his pre-disability earnings.  **(Beaver Certif., ¶ 13, Ex. G).**

40.    During the first 12 months in which Plaintiff returned to work, he was still entitled to his full monthly LTD benefit if his earnings were greater than 20%, but less than or equal to 80% of his pre-disability earnings. **(Beaver Certif, ¶ 13, Ex. G).**

41.    Wachovia's 2004 LTD Plan "Discontinuation of Benefits" provision also stated in pertinent part:

> The Disability Benefit will cease on the earliest of …
>
> (c)    The date the Participant's Monthly earnings exceed 80% of his or her Pre-disability earnings;

**(Beaver Certif., ¶ 13, Ex. G, §3.4).**

## B. DEFINITION AND PROOF OF DISABILITY AFTER 24 MONTHS

42.    Pursuant to Wachovia's 2004 LTD Plan, "Disability" is defined as follows:

> (a)    during the Elimination period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of **his or her own occupation** on an Active Employment basis because of an injury or sickness; and
>
> (b)    after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or **any other occupation** for which he or she is or becomes reasonably fitted by training, education, or experience because of an Injury or Sickness.

**(Beaver Certif., ¶ 13, Ex. G, §1.1 Definitions, p. 4., emphasis added).**

43.    By letter dated December 8, 2006, Liberty advised Plaintiff that to remain eligible for LTD benefits beyond the 24th month, he must meet a different definition of "disability." That is, Plaintiff must provide medical proof that he is unable to perform **any** occupation due to an on-going disability. **(McGee Certif. ¶ 10, Ex. F).**

44.     Plaintiff reached his 24 month anniversary of receiving either full or partial LTD benefits on February 1, 2007. **(McGee Certif. ¶ 11).**

45.     In order to determine whether or not Plaintiff continued to meet the Plan's definition of disability, Liberty retained the services of Paul F. Howard, Board Certified in Internal Medicine, with a sub–specialty Board Certification in Rheumatology, to clarify Plaintiff's level of functional ability and to help assess whether or not he continued to meet Wachovia's LTD Plan's definition of disability. **(McGee Certif. ¶ 12.**

46.     Liberty advised Plaintiff by letter dated March 23, 2007 that he would continue receiving LTD benefits during the pendency of his LTD claim review. **(McGee Certif. ¶ 13, Ex. G).**

47.     Dr. Howard's report, dated March 26, 2007, concluded as follows:

> There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy of a non-progressive nature, osteoarthritis of a mild nature as related to his bilateral knees, and complaints of self-reported fatigue . . . the available medical evidence does not support that Mr. Conrad has fibromyalgia and . . . he does not meet the specific diagnostic criteria for such. **Based on the available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week at the present time.**

**(McGee Certif. ¶ 14, Ex. H, emphasis added.)**

48.     Following the conclusions of Dr. Howard's medical review, Liberty also obtained a Transferable Skills Analysis ("TSA") to determine other occupations for which Plaintiff might qualify. **(McGee Certif. ¶ 15, Ex. I).**

49.   The TSA, dated April 30, 2007, identified four other occupations which could be performed in a variety of work settings and were identified to exist within Plaintiff's local and regional economy.  *(Id)*.

50.   By letter dated May 23, 2007, Liberty notified Plaintiff in pertinent part:

> Our role in the management of your Long Term Disability (LTD) claim is to determine whether or not your medical condition(s) and the medical information in your file support that you are unable to perform the material and substantial dues of any occupation according to the definition of disability under the Wachovia Group LTD Plan . . . **Based upon the medical documentation provided for your claim, the medical evidence does not support that your medical conditions continue to be of such severity as to preclude you from performing any occupation.**  Benefits have continued while we finalized our review; however, benefits beyond May 23, 2007 are denied and your claim is closed effective May 24, 2007.

**(McGee Certif. ¶ 16, Ex. J (emphasis added)).**

51.   Liberty also advised Plaintiff in its letter of May 23, 2007 that he could make a written request for review of the denial within 180 days of the receipt of this letter.  *(Id.)*

52.   By letters to Liberty dated November 13, 2007, and November 16, 2007, respectively, Plaintiff's counsel appealed both the amount of benefits previously provided to Plaintiff, as well as the termination of his LTD benefits on May 24, 2007.  **(McGee Certif. ¶¶ 17,18 and Exhs. K and L).**

53.   By letter dated December 3, 2007, Liberty acknowledged receipt of Plaintiff's appeal. **(McGee Certif. ¶ 19, Ex. M).**

54.     By letter dated January 18, 2008, Liberty received an Independent Peer

Review Report of Plaintiff's case, rendered by Theodore Hubley, M.D., who stated in

pertinent part:

> **There is no evidence that the claimant cannot work full-time work at 40 hours per week. There is no functional assessment that shows that he is physically incapable of this. The sleep studies do not reveal that he has any untreated sleep disorder. He has complaints of self-reported hypersomnolence. This could be attributable to fibromyalgia or depression. This self-reported complaint, however, would not result in inability to sustain regular full-time work. There is no mention of any incident where the claimant fell asleep at an inappropriate time in the available medical record.**

**(McGee Certif. ¶ 20, Ex. N, emphasis added).**

55.     By letter dated January 18, 2008, Liberty advised Plaintiff's counsel in

pertinent part:

> On behalf of the Plan Sponsor, Wachovia Corporation, we have completed our review of your request for reconsideration of Robert Conrad's claim for Long Term Disability benefits and are unable to alter our original determination to deny benefits.
>
> If Mr. Conrad disagrees with his denial, he may make a written request to Wachovia Corporation's benefits committee. **All requests must be made in writing within 60 days of receipt of this letter** and should be addressed to:
>
> 
>
> Wachovia Corporation
> Safety and Disability
> Benefits Committee
> Attn: Jim Beaver
> Two Wachovia Center, T4
> 301 South Tryon Street
> Charlotte, NC 28288-0960
>
> 

**(McGee Certif. ¶ 21, Ex. O).**

56.    The 2004 Wachovia LTD Plan requires a claimant like Plaintiff, whose

application for benefits is denied by the Claims Administrator, to file a written appeal to

the Plan Administrator, Wachovia, or its designee, "[w]ithin 60 days of receipt of a notice

from the Claims Administrator denying a claim."   (Wachovia LTD Plan § 4.7(c) at p.32,

§ 1.1 at 6 (definition of "Plan Administrator"), 5 (definition of "Employer")   **(Beaver**

**Certif. ¶13, Ex. G).** Wachovia designated the Wachovia Corporation Safety and

Disability Benefits Committee to handle appeals from Liberty. **(Beaver Certif. ¶ 3).**

57.    By letter dated June 26, 2008, Plaintiff's counsel wrote to Jim Beaver

("Beaver") of the Wachovia Corporation Safety and Disability Benefits Committee and

requested a reconsideration of the January 18, 2008 denial of LTD benefits.   **(Beaver**

**Certif. ¶ 25, Ex. J).**

58.    By letter dated July 25, 2008, Beaver advised Plaintiff's counsel in

pertinent part:

> In the absence of submission of a written request for
> review within 60 days of receipt of Liberty Mutual's
> January 18, 2008 letter, the Benefits Committee is
> unable to review the closing of Mr. Conrad's LTD
> claim as requested.

**(Beaver Certif. ¶ 26, Ex. K).**

59.    The 2004 LTD Plan conferred exclusive discretionary authority on the Plan

Administrator to interpret the terms and provisions of the Plan and to resolve all

questions arising thereunder, including, without limitation, the authority to determine

eligibility for benefits and the right to resolve and remedy ambiguities, inconsistencies or

omissions in the Plan, and, subject to Section 4.7 [governing procedures upon denial of claims], such action will be conclusive. **(Beaver Certif., ¶ 13, Ex. G, §4.3).**

60.     By letter dated August 20, 2008, Plaintiff's counsel wrote to Beaver regarding, *inter alia*, "Mr. Conrad's right, as a current employee, to seek long-term disability benefits." **(Beaver Certif. ¶ 27, Ex. L).**

61.     By letter dated August 28, 2008, Beaver advised Plaintiff's counsel in pertinent part:

> Mr. Conrad would be eligible to seek benefits under the Wachovia Short-Term Disability (STD) Plan and the Wachovia Long-Term Disability (LTD) Plan as long as he remains eligible for the plans.

**(Beaver Certif. ¶ 28, Ex. M).**

62.     Beaver also referred Plaintiff's counsel to the specific sections of Wachovia's 2008 Benefits SPD regarding eligibility and how to apply for benefits under both the STD and LTD plans, respectively. *(Id).*

63.     Plaintiff never applied for benefits under Wachovia's 2008 STD and LTD Plans. **(Beaver Certif. ¶ 29).**