A

2002-2003

# Wachovia Corporation

## BENEFITS SUMMARY PLAN DESCRIPTIONS

**Wachovia/Conrad 250**

# Short-Term Disability and Long-Term Disability Plans

## Short-Term Disability Summary and Long-Term Disability Summary Plan Description

### Highlights

Your disability benefits are designed to provide income if you become injured or sick and are unable to work.

The Short-Term Disability (STD) Plan continues a percentage of your salary for up to 26 weeks (130 work days) of disability, based on your length of service or officer title.

The Long-Term Disability (LTD) Plan begins when the STD Plan ends, replacing part of your salary after you have been disabled for 26 weeks (130 work days).

Also, the LTD Plan is coordinated with other sources of disability income. Your benefits are reduced by other disability income benefits you may be receiving—for example, state disability, Workers' Compensation, and/or Social Security.

The information contained in this STD Summary and LTD Summary Plan Description does not replace or change the meaning of Wachovia's employer-sponsored benefits plan documents. If there is a conflict between the official plan documents and this STD Summary and LTD Summary Plan Description, the plan documents are controlling.

Wachovia Corporation reserves the right to amend, modify, or terminate these plans at any time for current and/or future participants; no provision in this STD Summary and LTD Summary Plan Description shall grant a vested or guaranteed right to any future benefit.

## Short-Term Disability Plan Eligibility

If you are an employee of a participating employer or affiliate, you may participate in the plan provided you are regularly scheduled to work. Cooperative education students, casual employees, leased employees, independent contractors, nonresident aliens, temporary employees, zero-hour employees, and certain employees transferring to the United States from a work location outside the country are not eligible for participation. You are eligible for the STD Plan after three months of service, provided you are actively at work on the date you are first eligible. "Actively at work" means that you perform work as a regularly scheduled full-time or part-time employee at your usual work location or at a location to which Wachovia requires you to travel. Once you have satisfied the eligibility period, you will be considered actively at work if you were physically at work on the day immediately before:

*The information contained in this summary does not replace or change the meaning of Wachovia's employer-sponsored benefits plan documents. If there is a conflict between the official plan documents and the summaries in this section, the plan documents are controlling.*

**Wachovia/Conrad 251**

- A weekend;

- A holiday;

- A paid time off (PTO) day; or

- Any nonscheduled work day.

If you are provided with notice of your termination of employment under the Worker Adjustment and Retraining Notification Act and you remain on-call and available for work, you will be deemed to be actively at work for purposes of the plan.

### Rehire Policy

If you terminate your employment with Wachovia Corporation and are rehired within six months of your termination date, you will receive an adjusted service date which will be used to determine eligibility for the STD Plan. This adjusted service date is determined by using your original hire date and adjusting it to reflect the amount of time you were not employed with Wachovia.

*For Example:*

An employee who is hired on February 1, 1995, terminates employment as of March 1, 2001, and is then rehired as of June 1, 2001. The adjusted service date would be calculated by taking the original hire date and adjusting it by the amount of time between the termination date and the rehire date (in the case above, three months). The adjusted service date would be May 1, 1995, and eligibility for the STD Plan would be August 1, 1995, three months of employment from the service date.

If you terminate your employment with Wachovia Corporation and are rehired six months or more after your termination date, your rehire date becomes your new service date. As a result, your eligibility for the STD Plan would be three months of employment from your new service date.

### Enrolling for Coverage

You do not have to enroll for short-term disability coverage.

### Definition of Disability

To qualify for STD, you must be unable to perform all of the material and substantial duties of your own occupation on an active employment basis because of an injury or sickness.

### Calculation of Pre-disability Earnings

The level of disability benefits to which you are entitled under the plan is determined using the concept of Benefits Eligible Compensation (BEC). As used in the plan, the terms BEC and "Pre-disability Earnings" have the same meaning.

"Disability benefits" means the amount payable by the plan to you if you are disabled or partially disabled. Disability benefits are calculated on a weekly basis but are paid to you according to Wachovia's payroll cycle for paying normal salary and hourly wages for employees in similar positions as you. For example, if the applicable payroll cycle were every two weeks, one payment representing two weeks of disability benefits would be paid to you during each regular pay period. In no event shall you receive more than the maximum permitted number of weeks of disability benefits as determined by the plan, regardless of the frequency of the payroll cycle.

The following terms are used in calculating BEC.

"Compensation" is defined as the sum of your:

- Base salary;

- Hourly wages;

- Seventy percent (70%) of "eligible functional incentive pay" (see Appendix A for a list of eligible functional incentive earnings codes);

- Pretax contributions on your behalf, determined on a salary-reduction basis, to the

**Wachovia/Conrad 252**

Wachovia Savings Plan or Wachovia's Health and Welfare Benefits Program; and

- Pretax contributions to a Transportation Spending Account.

Any element set forth above shall only be counted once in the definition of Compensation (i.e., double counting is prohibited).

Your Compensation *excludes:*

- Overtime and shift differential pay;

- Salary deferrals under a nonqualified deferred compensation plan;

- Severance pay;

- Wachovia's contributions to benefit plans; and

- All other forms of remuneration that are not expressly listed above as being included in the definition of Compensation.

 For purposes of this definition, Compensation includes only amounts actually paid to you or amounts that should have been paid but for a payroll processing delay; it does not include earned but unpaid amounts.

"BEC" or "Pre-disability Earnings" means the greatest of the following amounts divided by 52 (i.e., the number of weeks in a calendar year):

- Your Grandfathered Annual Benefits Base Rate (ABBR);

- Your Comp Rate; or

- Your Rolling 12-Month Amount.

Your BEC or Pre-disability Earnings is determined as of the business day immediately preceding the date you incur a disability. Note, however, that the Rolling 12-Month Amount is actually calculated once each month. During 2002, certain limitations may apply. See the

section entitled "Additional Special Rules" on page 47 for additional information.

"Business Unit Default Amount" or "BUDA" means your Earnings (expressed in an annual amount) as determined by your Business Unit when you have less than one Month of Participation. See definition of "Rolling 12-Month Amount" on page 46.

"Month of Participation" means any calendar month in which you are eligible to participate in either the Health and Welfare Benefits Program or the Short-Term Disability Plan of Wachovia.

"Earnings" is determined each month during which you have earned a Month of Participation. Your history of Earnings is then used in computing your Rolling 12-Month Amount. Your Earnings for a particular month is equal to the greatest of:

- Your Compensation for that month;

- 1/12 of your Grandfathered ABBR for that month; or

- 1/12 of your Comp Rate for that month.

"Grandfathered Annual Benefits Base Rate" or "Grandfathered ABBR" means the amount of earnings on which pay-related employee benefits were formerly calculated for certain grandfathered participants, as specified in the Frozen ABBR field of Wachovia's payroll records.

"Comp Rate" means:

- If you are paid a salary, your base salary, as specified in the Comp Rate field of Wachovia's payroll records for you; or

- If you are paid an hourly wage, your "hourly rate" multiplied by your "scheduled number of hours," as such amounts are set forth in Wachovia's payroll records for you.

Disability Plans

**Wachovia/Conrad 253**

The "Rolling 12-Month Amount" is determined as of the last business day of each month for you if you are eligible to participate in the plan on such date. For example, if you become eligible for benefits during April, the Rolling 12-Month Amount is calculated for the 12 months ending March 31.

12 Months of Participation. If you have 12 Months of Participation during the most recent 12 consecutive calendar months, your Rolling 12-Month Amount is the sum of your Earnings for such 12 consecutive calendar months.

Less Than 12 But More Than One Month of Participation. If you have less than 12 Months of Participation during the most recent 12 consecutive calendar months, but at least one Month of Participation during such 12-consecutive-month period, your Rolling 12-Month Amount is determined as follows:

- Step One. Determine the number of Months of Participation earned by you during the most recent 12-consecutive-calendar-month period.

- Step Two. Compute the sum of your Earnings for each of the months identified in Step One above.

- Step Three. Determine the monthly average of your Earnings identified in Step Two above.

- Step Four. Multiply the average Earnings determined in Step Three above by the number of calendar months out of the most recent 12 consecutive calendar months for which you did not earn a Month of Participation (e.g., 12 months minus the number of months identified in Step One above).

- Step Five. Add the amount in Step Four to the amount in Step Two. The resulting sum is your Rolling 12-Month Amount.

## Special Rule for Calculating Rolling 12-Month Amount for New Hires and Rehires

- This special rule applies to you if you were hired or rehired during the most recent 12 consecutive calendar months and have less than one Month of Participation. The Rolling 12-Month Amount for you is your Comp Rate, if you have a Comp Rate, or your BUDA, if you do not have a Comp Rate. Therefore, your Earnings for your first Month of Participation following your date of hire or rehire shall be 1/12 of your Comp Rate, if you have a Comp Rate, or 1/12 of your BUDA, if you do not have a Comp Rate.

- This special rule applies to you if you had at least one Month of Participation during the most recent 12 consecutive calendar months. Your Earnings for the initial month is the greater of:

  — The Earnings calculated according to Business Unit Default Amount (BUDA), or

  — 1/12 of your BUDA or 1/12 of your Comp Rate, whichever applies.

*For Example*
Assume you received Earnings as follows:

| | |
|---|---|
| October 2004 | $4,000 |
| November 2004 | $4,000 |
| December 2004 | $4,000 |
| January 2005 | $4,000 |
| February 2005 | $4,000 |

You terminated employment in February 2005. You are then rehired on August 25, 2005, with a Comp Rate of $60,000 ($5,000/month). You would receive the following Earnings:

| | |
|---|---|
| August 2005 | $5,000* |
| September 2005 | $5,000 |

*You actually received only five days of pay (because you were hired on August 25). However, the entire $5,000 is counted.

**Wachovia/Conrad 254**

Your Rolling 12-Month Amount is computed as follows:

- Step One. You have seven Months of Participation in the most recent 12 consecutive months (October 2004 through February 2005 and August 2005 through September 2005).

- Step Two. Your aggregate Earnings during the seven-month period is $30,000 ($4,000 x five months plus $5,000 x two months).

- Step Three. The monthly average Earnings during this period is $4,285.72 ($30,000 divided by seven months).

- Step Four. You did not have Months of Participation during five of the most recent 12 consecutive months (March 2005 through July 2005). The product of $4,285.72 and five months is $21,428.60 ($4,285.72 x 5).

- Step Five. The sum of $30,000 (Step Two) and $21,428.60 (Step Four) is $51,428.60.

Accordingly, your Rolling 12-Month Amount is $51,428.60.

## Additional Special Rules
### 1) Transition Rule for Legacy Wachovia Employees
Background. On September 1, 2001, Wachovia Corporation merged into First Union Corporation. Immediately thereafter, First Union Corporation changed its name to Wachovia Corporation. To explain an important transition rule, we need to define the pre-merger companies.

- The term "Pre-Merger Wachovia Corporation" means Wachovia Corporation prior to the merger with First Union. It also includes anyone paid under the Pre-Merger Wachovia Corporation payroll system from September 1 through December 31, 2001.

- The term "First Union" means First Union Corporation prior to changing its name to Wachovia Corporation. It also includes anyone paid under the First Union payroll system from September 1 through December 31, 2001.

Employees of First Union participated in this Plan during all of 2001. On the other hand, employees of the Pre-Merger Wachovia Corporation did not participate in this Plan during 2001. Instead, employees of the Pre-Merger Wachovia Corporation as well as new hires and transferred employees (to the extent applicable) who were paid under the Pre-Merger Wachovia Corporation payroll system participated in a different plan during 2001. We refer to these employees as "Legacy Wachovia Employees."

The Pre-Merger Wachovia Corporation plan did not use the concept of any consecutive 12-Month Amount. Accordingly, during 2002, a special transition rule is necessary to compute the Rolling 12-Month Amount for the Legacy Wachovia Employees.

### a) Rolling 12-Month Amount for Legacy Wachovia Employees
The Rolling 12-Month Amount for a Legacy Wachovia Employee who is eligible to participate in the Plan is the sum of two numbers:

- First, the Legacy Wachovia Employee's actual Earnings (as defined on page 45) during any full Month of Participation (as defined on page 45) during 2002.

- Second, the Legacy Wachovia Employee's 2001 "Benefits Pay" (as defined on page 48) based on the number of months in 2001 for which the Legacy Wachovia Employee does not have a corresponding full Month of Participation in 2002.

For example, if the Legacy Wachovia Employee has January, February, and March as full Months

**Wachovia/Conrad 255**

of Participation in 2002, then the Plan will use Earnings for these three months in computing the Rolling 12-Month Amount.

Because the Legacy Wachovia Employee received Earnings during January, February, and March 2002, 9/12 of the Legacy Wachovia Employee's 2001 Benefits Pay (representing nine months of 2001 or April through December of 2001) would be used in determining the Rolling 12-Month Amount.

*b) 2001 Benefits Pay*
A Legacy Wachovia Employee's 2001 Benefits Pay is the greater of (1) or (2) below:

(1) The Legacy Wachovia Employee's annualized production income plus nonforgiveable draw for January 2001 through June 2001; or

(2) The Legacy Wachovia Employee's actual 2000 production income.

The terms "production income" and "nonforgiveable draw" shall be determined by the Plan Administrator in its sole discretion. The Plan Administrator may consider payroll records and the terms as used by the Pre-Merger Wachovia Corporation's plan document.

*c) Exception for Certain Employees*
The maximum 2001 Benefits Pay for a Legacy Wachovia Employee who works in any of the following positions during 2002 is $200,000. Thus, the maximum monthly Benefits Pay for such individual is $200,000 divided by 12.

| Investment Consultant Associate | Investment Consultant I |
|---|---|
| Investment Consultant Senior | BEJS Managing Director, Sales |
| Branch Manager | Sales Manager |
| Financial Consultant | Financial Associate |
| Financial Consultant/Trainee | Consulting Director/CT |

| Consulting Manager/CT | Consulting Associate/CT |
|---|---|
| CT Analyst Associate | Producer Insurance Services |
| Trader | Trader Equity |
| Salesperson III | Senior Trader Equity |
| Senior Trader Equity $5mm+ | Salesperson II Equity |
| Salesperson III Equity | IJL Capital Market (Exempt/Temp.) |

The maximum 2001 Benefits Pay for a Legacy Wachovia Employee who works in any of the following positions during 2002 is $80,000. Thus, the maximum monthly Benefits Pay for such individual is $80,000 divided by 12.

| Mortgage Loan Originator | Mortgage Loan Sales |
|---|---|
| Mortgage Sales Manager | Affordable Housing MLO |
| Mortgage Sales Team Leader | |

This transition rule and the exceptions described above shall not apply after December 31, 2002.

*2) Severance Pay*
If you are receiving severance pay, you are not eligible to receive benefits under this plan. However, in certain circumstances (as described below), severance pay may be taken into account in computing your BEC.

- Eligible for Health and Welfare Benefits Program. If you are eligible to participate in the Health and Welfare Benefits Program while receiving severance pay, severance benefits paid to you while eligible for such plan shall (on an annualized basis) be substituted for your Comp Rate and used in determining your BEC or Pre-disability Earnings under this plan. Thus, for example, if you received severance pay while eligible for the Health and Welfare Benefits Program and were later rehired, your BEC would reflect severance pay.

- Not Eligible for Health and Welfare Benefits Program. If you are not eligible to participate

**Wachovia/Conrad 256**

in the Health and Welfare Benefits Program, any severance paid to you during such period of ineligibility shall not be used in determining BEC under this plan.

<u>Change in Eligibility Status</u>. This paragraph addresses how BEC is computed for you if you move from an ineligible status to an eligible status under this plan.

- If you move from an ineligible status to an eligible status under this plan and become eligible for the first time to participate in the plan, or if during the most recent 12 consecutive calendar months you were ineligible to participate in the plan, your BEC shall be determined as if you were a new hire.

- If you move from an ineligible status to an eligible status under this plan, but you had (within the most recent 12 consecutive calendar months) been eligible to participate in this plan, you will be treated as a rehire; however, the Special Rules for Calculating the Rolling 12-Month Amount for New Hires and Rehires (as described on page 46) shall not apply.

## When Benefits Begin and End

If you are absent from work due to your own injury or sickness for seven consecutive calendar days or less, you may use Paid Time Off (PTO) days (if available) for your absence. However, if your absence lasts for eight or more consecutive calendar days, you may apply for STD benefits. If you are approved for STD benefits, all days absent would be charged to STD. In other words, your STD benefits would be retroactive to your first day of approved disability, and no PTO days would be used.

Your STD benefits end when:

- You no longer meet the definition of disability;

- You fail to provide information requested by the Plan Administrator sufficient to prove continued disability;

- You have exhausted your allotted 26 weeks;

- You are able to work in your own occupation on a part-time basis (with or without reasonable accommodation or modification), and you are offered such a position by Wachovia, but you choose not to accept it;

- You are able to work on a part-time basis, but choose not to do so;

- Your weekly earnings from all employment exceed 80% of your Pre-disability Earnings from Wachovia;

- You are no longer under the regular attendance of a legally qualified physician;

- You cease to comply with the course of treatment recommended by your physician for the disabling condition;

- You refuse to be examined or evaluated for purposes of determining the continuing nature of your disability;

- Wachovia determines that you are engaging or have engaged in conduct that would result in "termination for cause"; or

- You die.

## How Your Benefit Is Determined

Your STD benefit is based on your length of service or officer title as of January 1 of each year and the number of days you work per week.

Service is defined as Calendar Years of Service— the number of calendar years included in an employee's length of service, assuming the time was continuous (e.g., an employee hired in March 1998 would have five years of service on January 1, 2002, consisting of years 1998, 1999, 2000, 2001, and 2002).

**Wachovia/Conrad 257**

If you are regularly scheduled to work fewer than five days per week, you are entitled to a prorated benefit based on the five-day-per-week schedule. For example, if you work three days per week, you are entitled to 3/5 or 60% of the allocated time available to a five-day-per-week employee with a similar length of service. See the chart beginning on page 50 to determine your STD allotment.

Unused STD days cannot be carried forward to the next year. In addition, time away from work due to a job-related injury covered by Workers' Compensation counts toward your available STD days.

STD benefit payments are calculated using your BEC.

Your STD benefits will be reduced by the amount of any disability benefits you are eligible to receive under the Social Security Act or any other governmental program or under any other coverage. If you retroactively receive Social Security benefits and your STD benefits have not been offset by those benefits, you must pay these retroactive benefits, usually paid in a lump sum, to Wachovia.

***Example: Your STD Benefit***
Assume you work five days per week and your hire date is March 19, 1997. If you were disabled in January 2002, you would receive 100% of your salary for 10 weeks (50 work days), followed by 60% of your salary for 16 weeks (80 work days).

The years of service are calculated as follows:

1997
1998
1999
2000
2001
2002
6 years of service
10 weeks at 100% salary
16 weeks at 60% salary

## STD Benefits at a Glance

| If you work... | Your length of service" or officer title | Number of paid weeks (work days) per calendar year at 100% salary | Number of paid weeks (work days) per calendar year at 60% salary |
|---|---|---|---|
| 5 days per week | Less than 3 months | 0 | 0 |
| | 3 months – 2 calendar years | 4 weeks (20 work days) | 22 weeks (110 work days) |
| | 3 – 4 calendar years | 6 weeks (30 work days) | 20 weeks (100 work days) |
| | 5 – 7 calendar years | 10 weeks (50 work days) | 16 weeks (80 work days) |
| | 8 – 9 calendar years | 13 weeks (65 work days) | 13 weeks (65 work days) |
| | 10 or more calendar years or title of assistant vice president or above | 26 weeks (130 work days) | 0 |
| 4 days per week | Less than 3 months | 0 | 0 |
| | 3 months – 2 calendar years | 4 weeks (16 work days) | 22 weeks (88 work days) |
| | 3 – 4 calendar years | 6 weeks (24 work days) | 20 weeks (80 work days) |
| | 5 – 7 calendar years | 10 weeks (40 work days) | 16 weeks (64 work days) |
| | 8 – 9 calendar years | 13 weeks (52 work days) | 13 weeks (52 work days) |
| | 10 or more calendar years or title of assistant vice president or above | 26 weeks (104 work days) | 0 |

Disability Plans

**Wachovia/Conrad 258**

| If you work... | Your length of service* or officer rule | Number of paid weeks (work days) per calendar year at 100% salary | Number of paid weeks (work days) per calendar year at 60% salary |
|---|---|---|---|
| 3 days per week | Less than 3 months | 0 | 0 |
| | 3 months – 2 calendar years | 4 weeks (12 work days) | 22 weeks (66 work days) |
| | 3 – 4 calendar years | 6 weeks (18 work days) | 20 weeks (60 work days) |
| | 5 – 7 calendar years | 10 weeks (30 work days) | 16 weeks (48 work days) |
| | 8 – 9 calendar years | 13 weeks (39 work days) | 13 weeks (39 work days) |
| | 10 or more calendar years or title of assistant vice president or above | 26 weeks (78 work days) | 0 |
| 2 days per week | Less than 3 months | 0 | 0 |
| | 3 months – 2 calendar years | 4 weeks (8 work days) | 22 weeks (44 work days) |
| | 3 – 4 calendar years | 6 weeks (12 work days) | 20 weeks (40 work days) |
| | 5 – 7 calendar years | 10 weeks (20 work days) | 16 weeks (32 work days) |
| | 8 – 9 calendar years | 13 weeks (26 work days) | 13 weeks (26 work days) |
| | 10 or more calendar years or title of assistant vice president or above | 26 weeks (52 work days) | 0 |

*Service is defined as Calendar Years of Service—the number of calendar years included in an employee's length of service, assuming the time was continuous (e.g., an employee hired in March 1998, would have five years of service on January 1, 2002, consisting of years 1998, 1999, 2000, 2001, and 2002).

### Legacy Wachovia Short-Term Medical Leave Benefit

If you incur a disability prior to January 1, 2004, and had at least 10 years of service with legacy Wachovia Corporation as of December 31, 1998 (for this purpose "service" is defined as the number of years completed prior to January 1, 1999), and were eligible for grandfathered, extended sick leave benefits under the Wachovia Short-Term Medical Leave Plan, you may be eligible for a different benefit under the plan. If you are eligible, you have already been separately notified.

### Disabilities That Cover Two Calendar Years

If your disability covers two calendar years, the STD days you use in each calendar year count against your STD allotment for the calendar year in which they were used. This applies whether the benefit amount is at 100% or 60%.

For example, assume you go out on disability November 1 of a calendar year and return to work on February 28 of the following year. Also assume that, in both calendar years, you are eligible for 4 weeks (20 work days) of STD at 100% of salary and 22 weeks (110 work days) at 60% of salary.

Your STD will be charged as follows:

- Year 1 (assume eight weeks in November and December) = four weeks at 100% of salary and four weeks at 60% of salary; and

- Year 2 (assume eight weeks in January and February) = eight weeks at 60% of salary.

Therefore, you have four weeks (20 work days) at 100% of salary and 14 weeks (70 work days) at 60% of salary left in your Year 2 STD allotment. You must have a new occurrence to use the 100% days that are available in Year 2.

Disability Plans

Wachovia/Conrad 259

Please note, however, that if you use all your STD days in a calendar year, you must return to work in the next calendar year either on a full-time basis or on a partial disability which has been approved by Liberty Life Assurance Company of Boston ("Liberty"), a member of the Liberty Mutual Group, in order to be able to use the next years' allotment of days.

### If Your Claim Is Denied

If your STD claim is denied, you may choose to use your available PTO days or take an unpaid absence. For information on claim denial and the appeal procedure, see page 57.

### Intermittent Chronic Disability

The STD plan provides for coverage of intermittent disabilities in certain instances. "Intermittent chronic disability" is defined as a disability of long duration characterized as a disease showing little change or slow progression. It may have remissions and/or acute periods during the course of the condition. Employees who suffer from intermittent chronic disabilities may obtain STD payments for days when they are out of work, even though the days are not consecutive. You may accumulate days required for the elimination period (eight calendar days of disability accumulated in a calendar year due to the same or related condition for which no benefit is payable) on an intermittent basis over the course of a 12-month calendar year beginning January 1 and ending December 31.

You and your manager will be responsible for tracking the days of absence from work as they occur. Once you have been absent for eight calendar days, you must contact Liberty at 1-800-853-7108 to file a claim for STD benefits. Your manager will be responsible for completing the Manager's STD Reporting form, indicating the days on which you have been absent from work and faxing it to Liberty. Liberty will then process the claim.

If your claim for STD benefits is approved, the days on which you were absent from work will

be charged to STD and any PTO days that were applied to your absence will be reinstated. Subsequent absences for the same illness may be covered by STD as long as you contact your assigned Case Manager at Liberty on each occasion during which you are absent. If your condition of intermittent chronic disability continues, you must have your claim for intermittent STD benefits requalified and approved every two years.

If your claim for STD benefits is denied, either you will be charged with PTO days for your absence or your absence will be unpaid. You have the right to appeal denial of any claim for STD benefits. For information on claim denial and the appeal procedure, see page 57.

### Partial Disability

In calculating the eight days of absence from work (which are required to establish entitlement to STD benefits), you also may include absences of partial work days due to disability. If you are required to be absent from work for a partial day due to an injury or sickness, then you may be eligible for STD benefits after eight consecutive calendar days—whether fully or partially disabled.

To apply for STD benefits based on a partial disability, you must follow the application procedure described on page 53. As with applications based on total disability, Liberty will process your claim, obtain medical information from your physician, and render a decision on your claim. If your claim is approved, you will receive STD benefits for the partial days on which you were absent. If you are a nonexempt employee and your claim is denied, you may choose to use your available PTO days or take the absence unpaid. For information on claim denial and the appeal procedure, see page 57.

### Return to Work Program

Some partially disabled employees may be eligible to participate in Wachovia's Return to Work Program. This program enables a partially

**Wachovia/Conrad 260**

disabled employee to rejoin the work force sooner and be more productive while still receiving disability benefits. If you are able to work and earn more than 80% of your Pre-disability Earnings, you are no longer considered disabled.

If you are receiving disability benefits from Wachovia, the Liberty Case Manager may develop a return to work plan in conjunction with your attending physician and Wachovia manager. A return to work plan will take into consideration limitations on your job duties and your capacity to work scheduled hours. You may be able to participate in the Return to Work Program if you are able to perform one or more, but not all, of the material and substantial duties of your occupation or another Wachovia occupation on a full or part-time basis, or if you are able to perform all of the material and substantial duties of your occupation or another Wachovia occupation on a part-time basis.

If a suitable work plan is approved and you return to work, your Wachovia manager will report the number of hours worked to Liberty, and the amount of your disability benefit may be reduced to take into account your increased earnings.

Wachovia and Liberty will select and enable employees to participate in the Return to Work Program on a case-by-case basis. Its specific objective is your early return to work while ensuring that you do not return to work before you are able to do so.

### Applying for Benefits

To apply for STD benefits, you must call Liberty at 1-800-853-7108 on or before the eighth consecutive calendar day of illness to report the claim and to provide the information Liberty will need in order to review and process the claim. If you know beforehand that you will be out for eight or more consecutive calendar days, you may call Liberty to file a claim anytime within two weeks before your disability is scheduled to begin.

You will be assigned a Case Manager who will handle your claim throughout the approved STD period. This individual will be your point of contact should you have any questions or concerns regarding your claim.

Liberty will also contact your attending physician to obtain specific medical information about your condition and prognosis. Be sure to provide your physician with authorization to release medical information to Liberty to avoid delays in the processing of your claim. The Authorization to Release Medical Information form is available online through FirstForms.

Once Liberty receives all the required information, a decision on the claim will be made. Both you and your manager at Wachovia will be notified of the decision. If your claim is approved, you and your manager will be given an anticipated "return to work" date, if known.

If at any time during the duration of your disability your medical condition changes in a way that would impact your expected return to work, notify Liberty immediately so your Case Manager can review your claim. Your Wachovia manager will be notified of the changes in your expected return to work date, if applicable.

### Notifying Your Manager

You must contact your supervisor or manager if you are unable to work and let him or her know how long your absence will last. Your supervisor or manager will be responsible for completing the Manager's STD Reporting form. This form should be faxed by your manager to Liberty at 1-888-443-4212 immediately after your notification that your disability is expected to last eight or more consecutive calendar days. In addition, your manager will be responsible for submitting the proper documentation to the Human Resources Support Center if your disability will last more than 20 consecutive work days. (Note: New Jersey, New York, California, Rhode Island, and Hawaii have state-mandated disability benefits and, as a result, payroll documentation will be completed and

---

Disability Plans

**Wachovia/Conrad 261**

submitted to the Human Resources Support Center by Wachovia's Disability Unit.)

## Taking Time Away from Work for Your Disability

To request an extended leave, you will need to submit a completed Leave Request Form to your manager, specifying the type of leave you are requesting. You must give your manager 30 days' notice of your intent to take extended leave, or as much notice as is possible under the circumstances. The completed Leave Request Form should be returned to your manager at the time of your leave request. However, when advance notice is not possible, the completed Leave Request Form should be returned to your manager no later than 15 days after you begin

leave. If your leave is covered under Family Medical Leave Act (FMLA), you may be required to provide additional documentation.

For more information about your rights under FMLA, visit the FMLA section under Policies and Procedures in HR Online.

### FYI: State-Mandated Disability Benefits

Certain states mandate that employers provide Temporary Disability Income Benefits to employees. Most employees are eligible, and all employees (including temporary, and zero-hour) who work in these locations should file for benefits as follows:

| State | To file for Wachovia STD benefits... | Claims Procedure |
|-------|--------------------------------------|------------------|
| | | To file for state disability benefits... |
| California | Contact Liberty at 1-800-853-7108 | Contact the Employment Development Department nearest your home. |
| New Jersey | Contact Liberty at 1-800-853-7108 | If you are an active employee or you leave Wachovia within 14 days of disability, you should file a claim with Liberty by calling 1-800-853-7108. You should not file an individual claim with the state. |
| New York | Contact Liberty at 1-800-853-7108 | If you are an active employee or you leave Wachovia within four weeks of disability, you should file a claim with Liberty by calling 1-800-853-7108. You should not file an individual claim with the state. |
| Rhode Island | Contact Liberty at 1-800-853-7108 | Contact the Employment Development Department nearest your home. |
| Hawaii | Contact Liberty at 1-800-853-7108 | You should file a claim with Liberty by calling 1-800-853-7108. You should not file an individual claim with the state. |

## If You Are Disabled Again

If you return to active work and become disabled again, your disability may be considered a continuation of your prior disability if:

- The disability is a recurrence resulting from the same illness or injury or a related cause;

- You experience more than a 20% loss of your Pre-disability Earnings; and

- The disability occurs within two continuous weeks after your return to work.

If approved as a continuation of your prior disability, you will not have to satisfy an elimination period.

If your disability occurs two continuous weeks or more after the first disability, it is considered a separate disability, even if it is a recurrence resulting from the same illness or injury or a

**Wachovia/Conrad 262**

related cause. You must be absent for eight or more consecutive calendar days to apply again for STD benefits. If the second disability is approved as a separate disability, STD benefits will be retroactive to the first approved day of your second disability and any PTO days that were applied to your absence will be reinstated.

### Notice and Proof of Claim
#### Notice
- Notice of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date of the loss on which the claim is based, or as soon thereafter as it is reasonably possible to do. Such notice of claim must be received in a form satisfactory to the Claims Administrator. In the case of intermittent chronic disability, notice of claim must be given within 60 calendar days after the end of the elimination period (eight calendar days of disability accumulated in a calendar year due to the same or related condition for which no benefit is payable), or as soon thereafter as it is reasonably possible to do.

- After the STD elimination period for an intermittent chronic disability has been satisfied, notice of the claim must be given within 60 calendar days of any day of absence due to a disability for the same or related condition, or as soon thereafter as it is reasonably possible to do.

- If you are not able to submit notice of claim, notice may be submitted by your representative (including a member of your family), Wachovia, or your physician.

#### Proof
- Proof of claim must be given to the Claims Administrator no later than 60 calendar days after the end of the STD elimination period (eight consecutive calendar days for STD benefits or as defined above for an intermittent chronic disability). For this purpose, "proof" means (a) the evidence in

support of a claim for benefits in a form satisfactory to the Claims Administrator, (b) an attending physician's statement in a form satisfactory to the Claims Administrator, completed and verified by your attending physician, and (c) provision by the attending physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence that may be required by the Claims Administrator in support of a claim for benefits. Notwithstanding the foregoing, the Claims Administrator may also consider other evidence of a claimed disability, including, but not limited to, evidence discovered or otherwise developed by the Claims Administrator.

- Failure to furnish such proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required, and the Claims Administrator is able to certify the period of disability.

- Proof of continued disability and regular attendance of a physician must be given to the Claims Administrator within 60 calendar days of the request for the proof.

### Exclusions
No STD benefits will be paid in connection with any disability due to:

- War, declared or undeclared, or any act of war;

- Intentionally self-inflicted injuries, while sane or insane;

- Active participation in a riot;

- Your committing of or attempting to commit an indictable offense or criminal act, whether

or not you know the action constitutes an indictable offense or criminal act;

- Any injury that arises out of or in the course of employment; or

- Any sickness for which a benefit is payable under a Workers' Compensation act or law.

## Right of Recovery

If there is an overpayment of benefits for any reason, including overpayment due to fraud or claims paid in error, you must reimburse the plan within 60 days of such overpayment. If you do not make repayment, your future benefit payments may be reduced until the overpayment is recovered. In addition, the Plan Administrator, or the Claims Administrator acting on behalf of the Plan Administrator, has the right to seek recovery directly from you or your estate.

The STD Plan reserves the right of recovery of any benefits paid if you receive proceeds of any settlement or judgment as the result of another person being held legally responsible for the injury for which the plan benefits were paid.

If you begin a liability claim against any third party, benefits payable under the plan must be included in the claim, and when the claim is settled, you must reimburse the plan for the benefits that were provided. You are obligated to avoid doing anything that would prejudice the plan's rights of reimbursement, and you may be required to sign and deliver documents to evidence or secure those rights as a condition of receiving benefits. When the claim is resolved, you must hold any monies recovered in constructive trust and reimburse the STD Plan for the benefits provided.

The plan will have first priority in any recovery regardless of the manner in which the recovery is structured or worded (e.g., the recovery may seek to limit the plan's reimbursement by stating that amounts paid do not represent income

replacement). The plan's reimbursement will not be reduced by attorney fees.

## Administrative Information for Short-Term Disability

This section contains information about the funding and administration of the Short-Term Disability (STD) Plan as well as certain rights you have as a plan participant. Although you may not need this information on a day-to-day basis, you should read through this section. It is important for you to understand your rights, the procedures you need to follow, and the contacts you may need in certain situations.

Participation in the STD Plan does not give you any right to continued employment with Wachovia.

### Plan Sponsor and Administrator

Wachovia Corporation is the sponsor of the STD Plan. The STD Plan is administered by Wachovia's Benefits Committee (the "Plan Administrator"). The members of the committee are officers of Wachovia. The members are appointed by the Board of Directors of Wachovia Corporation and serve without compensation. The committee has delegated to Human Resources the responsibility in its sole discretion to administer and interpret the terms of the STD Plan, to determine and decide all questions of eligibility for entitlement to plan benefits, and to resolve all interpretive, equitable, and other questions that arise in the operation and administration of the plan, and its decisions on these matters are conclusive.

### Plan Documents

This summary outlines the key features of the STD Plan and applies to eligible employees of Wachovia. Complete details of the plan can be found in the official plan document that legally governs the operation of the plan. All statements made in this summary are subject to the provisions and terms of the plan document. In the event of a conflict between the official plan document and this summary, the plan document is controlling.

**Wachovia/Conrad 264**

## Claiming Benefits

You or your beneficiary must file the appropriate forms, if applicable, to receive any benefits or to take any other action under the STD Plan, as described in this summary.

All forms required to take any action under the plan are available through the HR Support Center, if not found in your business unit. All completed forms must be submitted to the appropriate office.

Claims under the STD Plan are administered by Liberty Life Assurance Company of Boston. Claims information should be sent to Liberty Life Assurance Company at the following address:

Liberty Life Assurance Company of Boston
P.O. Box 242484
Charlotte, NC 28224-2484

### Appealing a Denied Claim

If a benefit claim, or any part of it, is denied, you or your beneficiary will be notified within a reasonable amount of time after the Claims Administrator (Liberty) receives the claim.

If the Claims Administrator denies all or part of your claim, you or your beneficiary will be notified in writing. This notice will include:

- Specific reasons why the claim was denied;

- Specific reference to the provisions of the plan document or other pertinent records or papers, and information regarding where you may see them;

- Descriptions of any additional material or information which must be supplied in order to satisfy the claim requirements, along with an explanation of why such material or information is necessary; and

- How to appeal for reconsideration of the Claims Administrator's decision.

If you receive a notice that your disability claim has been denied, you may request to see any of the documents pertinent to the denial. You may also request, in writing, that the Claims Administrator review the denial (first level of appeal). However, your request must be made within 60 days of notification of the denial. When requesting this review, you may also submit to the Claims Administrator, in writing, any information or comments pertinent to the review.

The review process does not permit you, your beneficiary, or authorized representative to appear in person before, or meet with, the Claims Administrator.

The Claims Administrator must review the appeal as expeditiously as possible and must also give due consideration to any information or comments submitted in writing by, or on behalf of, the claimant. In reviewing an appeal, the Claims Administrator will reach a decision within 60 days if reasonably possible.

If there are special circumstances and a decision cannot be made within 60 days, the Claims Administrator will be allowed additional time, but must reach a decision within 120 days after being asked to review the appeal.

If the Claims Administrator denies all or part of your appeal, you or your beneficiary will be notified in writing. This notice will include specific references to the pertinent provisions of the plan on which the decision is based.

If you receive a notice that the appeal has been denied by the Claims Administrator, you may request to see any of the documents pertinent to the denial of the appeal. You may also request, in writing, that the Plan Administrator review the denial (second level of appeal). However, your request must be made within 60 days of notification of the denial. When requesting this review, you may also submit to the Plan Administrator, in writing, any information or comments pertinent to the review.

Wachovia/Conrad 265

The review process does not permit you, your beneficiary, or authorized representative to appear in person before, or meet with, the Plan Administrator.

The Plan Administrator must review the appeal as expeditiously as possible and must also give due consideration to any information or comments submitted in writing by, or on behalf of, the claimant. In reviewing an appeal, the Plan Administrator will reach a decision within 60 days if reasonably possible.

If there are special circumstances and a decision cannot be made within 60 days, the Plan Administrator will be allowed additional time, but must reach a decision within 120 days after being asked to review the denial of the appeal.

After the Plan Administrator has completed the review of the appeal, a decision must be submitted in writing, and must include the specific references to the pertinent provisions of the plan on which the decision is based. If no decision is made in writing within the prescribed time periods, the denial of the appeal will be considered upheld.

## Funding of the Disability Plan

The Wachovia STD Plan is "self-insured." "Self-insured" means that the total cost of benefits and administration is actually paid by Wachovia directly. In such cases, there are no insurance contracts for the plan and the Claims Administrator functions as a plan service provider, for a fee, and not as an insurer.

## Legal Action

No legal action for a claim can be made before you have exhausted the plan's administrative remedies. You or your authorized representative cannot start any legal action pertaining to a claim more than one year after the time proof of claim is required under the plan's claims procedures.

### Agent for Service of Legal Process

The agent for service of legal process is the Wachovia Benefits Committee. All correspondence should be directed to Wachovia at:

### Interoffice Address

Human Resources
Charlotte, NC0960

### Street Address

Human Resources
Two Wachovia Center, T-4
301 South Tryon Street
Charlotte, NC 28288-0960

## Plan Termination and Amendment

Wachovia reserves the right to terminate the STD Plan, in whole or in part, without notice and for any reason. Wachovia also reserves the right to amend the plan at any time.

Wachovia may also increase or decrease its contributions or your required contributions to the plan.

Wachovia's decision to terminate or amend the plan may be due to changes in applicable federal or state laws governing welfare benefits, the requirements of the Internal Revenue Code, or for any other reason. A plan change may transfer plan assets and debts to another plan or split a plan into two or more parts. If Wachovia does terminate or amend the plan, it may decide to set up a different plan providing similar or identical benefits.

If the STD Plan is terminated, you will not have any further rights, other than the payment of benefits up to the date of the termination of the plan. The amount and form of any final benefit you or your beneficiary receives will depend on any contract provisions affecting the plan and Wachovia's decision.

Wachovia/Conrad 266

B

# STD: 2003 Plan Year:
## Wachovia Corporations Short Term Disability Plan (As Amended and Restated Effective January 1, 2003)

)

Wachovia/Conrad 1

## STD: 2003 Plan Year:

**Wachovia Corporation STD and LTD Plan**

- Wachovia Corporation Long Term Disability Plan (As Amended and Restated Effective January 1, 2003)
- Wachovia Corporation Short Term Disability Plan (As Amended and Restated Effective January 1, 2003)
- Amendment/Resolution, dated March 26, 2003, to the Wachovia Long Term Disability Plan and Short Term Disability Plan, revising the definition of eligible functional incentive pay.
- Amendment/Resolution, dated July 31, 2003, to the Wachovia Corporation Long Term Disability Plan and Short Term Disability Plan, revising the definition of eligible functional incentive pay.

Wachovia/Conrad 2

# WACHOVIA CORPORATION
# SHORT TERM DISABILITY PLAN

(As Amended and Restated Effective January 1, 2003)

Wachovia/Conrad 3

# TABLE OF CONTENTS

Page

ARTICLE I   DEFINITIONS AND CONSTRUCTION.................................................. 1
    1.1    Definitions................................................................................................ 1
    1.2    Gender and Number ................................................................................ 4
ARTICLE II   PARTICIPATION..................................................................................... 5
    2.1    Commencement of Participation............................................................ 5
    2.2    Agreement to Participate........................................................................ 5
    2.3    Cessation of Participation ...................................................................... 5
    2.4    Rehire Terms.......................................................................................... 6
    2.5    Family/Medical Leave ........................................................................... 6
ARTICLE III   BENEFITS ............................................................................................. 7
    3.1    Benefits Eligible Compensation or BEC ............................................... 7
    3.2    Payment of Disability Benefits ............................................................ 14
    3.3    Amount and Duration of Benefits......................................................... 15
    3.4    Discontinuation of Benefits ................................................................. 16
    3.5    Successive Periods of Disability........................................................... 17
    3.6    Work Incentive Benefits ...................................................................... 17
    3.7    Cost of Living Freeze............................................................................ 18
    3.8    Lump Sum Payments ............................................................................ 18
    3.9    Estimated Benefits ............................................................................... 18
    3.10   Prorated Benefits.................................................................................. 19
    3.11   Exclusions............................................................................................ 19
    3.12   Notice and Proof of Claim ................................................................... 20
    3.13   Source of Payments.............................................................................. 21
    3.14   Examination ......................................................................................... 21
    3.15   Right of Recovery ................................................................................ 21
    3.16   Reimbursement Agreement, Subrogation ............................................ 21
    3.17   Workers' Compensation ...................................................................... 22
ARTICLE IV   ADMINISTRATION .............................................................................. 23
    4.1    Administrator ....................................................................................... 23

**Wachovia/Conrad 5**

| 4.2 | Rules of Administration | 23 |
| 4.3 | Services to the Plan | 23 |
| 4.4 | Funding Policy | 23 |
| 4.5 | Claims Procedure | 23 |
| 4.6 | Denial of Claim | 23 |
| 4.7 | Legal Proceedings | 24 |
| 4.8 | Operation | 25 |
| 4.9 | Responsibility for Administration | 25 |
| 4.10 | Indemnification of Administrative Personnel | 25 |
| ARTICLE V | AMENDMENT AND TERMINATION | 26 |
| 5.1 | Amendment | 26 |
| 5.2 | Termination | 26 |
| ARTICLE VI | MISCELLANEOUS | 27 |
| 6.1 | Effect on Employment | 27 |
| 6.2 | Alienation of Benefits | 27 |
| 6.3 | Facility of Payment | 27 |
| 6.4 | Lost Distributees | 27 |
| 6.5 | Severability | 27 |
| 6.6 | Applicable Law | 27 |
| ANNEX A-1 | | Annex A-1 |
| APPENDIX A | | A-1 |
| APPENDIX B | | B-1 |
| APPENDIX C | | C-1 |

Wachovia/Conrad 6

# WACHOVIA CORPORATION
## SHORT TERM DISABILITY PLAN

Wachovia Corporation (the "Employer") has established a plan to provide short term disability income benefits for its eligible employees and eligible employees of its participating affiliates. This instrument sets forth provisions which constitute the plan as amended and restated effective January 1, 2003. The Plan is not intended to be subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), pursuant to Department of Labor Regulation §2510.3-1(b)(2).

Wachovia/Conrad 4

ARTICLE I
DEFINITIONS AND CONSTRUCTION

1.1     Definitions.  Whenever used in this Plan:

"Active Employment" means the Employee must be actively at work for the Participating Employer on a full-time or a part-time regularly scheduled basis and paid regular earnings and perform such work either (i) at the Participating Employer's usual place of business, or (ii) at a location to which the Participating Employer's business requires the Employee to travel.  An Employee will be considered actively at work if he or she was physically at work on the day immediately preceding (i) a weekend (except where one or both of these days are scheduled days of work), (ii) holidays (except when such holiday is a scheduled work day), (iii) paid approved leave, (iv) paid time off,  (v) any non-scheduled work day, and (vi) leave required under applicable law, or a combination of any of the foregoing.  In cases where notice is provided to an Employee under the Worker Adjustment and Retraining Notification Act and the Employee remains on-call and available for work, such Employee will deemed to be in Active Employment for purposes of the Plan.

"Benefits Eligible Compensation" or "BEC" has the same meaning as "Pre-Disability Earnings" as defined in Section 3.1 of the Plan.

"Benefits from Other Income" means the amount of any disability benefits which the Participant is eligible to receive (i) under the United States Social Security Act or any other governmental program or coverage required or provided by statute (including  any amount his or her spouse, child or children receives or are eligible for because of his or her Disability) or (ii) under any workers' compensation act or law or any other act or law of like intent or application due to employment with an employer other than a Participating Employer or an affiliated company for the same or related condition.

"Calendar Year" means the twelve consecutive month period beginning on any January 1 and ending on the following December 31.

"Claims Administrator" means any third party with which the Employer has entered into an agreement relating to the provision of third party administrative services under the Plan.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Disability" or "Disabled" means the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness.  The loss of a license for any reason does not, in itself, constitute Disability.

"Disability Benefits" means the amount payable by the Plan to the Disabled or Partially Disabled Participant.  Disability Benefits are calculated based upon a weekly basis but are paid to an eligible Participant according to the payroll cycle used by the Participating

Wachovia/Conrad 7

Employer for paying normal salary and hourly wages for Employees in a similar position as the eligible Participant. Thus, for example, if the applicable payroll cycle were every two weeks, one payment representing two weeks of Disability Benefits would be paid during each regular pay period. In no event will a Participant receive more than the maximum permitted number of weeks of Disability Benefits as determined by the Plan regardless of the frequency of the payroll cycle.

"Effective Date" means January 1, 2003, the effective date of this amendment and restatement.

"Eligible Employee" means any Employee who is regularly scheduled to work for a Participating Employer. Whether an Employee is "regularly scheduled" will be determined by the Employer, in its sole discretion, in accordance with the personnel policies and practices of the Participating Employer.

"Elimination Period" means a period of eight consecutive calendar days of Disability during which time no benefit is paid. For purposes of Intermittent Chronic Disability, the term "Elimination Period" means a period of eight calendar days of Disability accumulated in a Plan Year due to the same or related condition for which no benefit is payable. Once qualified as an Intermittent Chronic Disability during a Plan Year, a new Elimination Period will not be required during the Plan Year following the Plan Year in which the Elimination Period is first satisfied, but will again need to be satisfied in the second Plan Year following the Plan Year in which the Elimination Period is first satisfied.

"Employee" means any individual employed by a Participating Employer, who is classified as an employee by the Participating Employer, and who is on the payroll of the Participating Employer. An Employee will cease to be such on his or her retirement, resignation, discharge, or death. An individual who is on leave of absence from a Participating Employer or who is receiving severance payments from a Participating Employer will be considered an Employee during such period to the extent provided in the personnel policies and practices of the Participating Employer. For any Disability that occurs prior to January 1, 2002, Employee also means any employee or member of CapTrust, LLC. For any Disability that occurs on or after January 1, 2002, Employee includes an employee or member of CapTrust, LLC only to the extent that such individual is employed by a Participating Employer (and not by CapTrust, LLC).

"Employer" means Wachovia Corporation, the sponsor and named fiduciary of the Plan, and any successor thereto that adopts the Plan.

"Hospital" or "Institution" means a facility licensed to provide care and treatment for the condition causing the Participant's Disability.

"Injury" means bodily impairment resulting directly from an accident and independently of all other causes.

"Intermittent Chronic Disability" is a Disability of long duration which is

Wachovia/Conrad 8

characterized as a disease showing little change or of slow progression. It may be marked by intermissions in the course of such disease. It also includes an acute exacerbation of the same or related condition in the course of such disease. Acute has a sudden onset, severe symptoms, and a short course.

"Partial Disability" or "Partially Disabled" means as a result of the Injury or Sickness, the Participant is:

(a)     able to perform one or more, but not all, of the material and substantial duties of his or her own or any other occupation on an Active Employment or a part-time basis; or

(b)     able to perform all of the material and substantial duties of his or her own or any other occupation on a part-time basis.

Loss of a license for any reason does not, in itself, constitute a Partial Disability.

"Participant" means any Eligible Employee who has become a Participant as provided in Article II and who may be eligible to receive Disability Benefits under the Plan.

"Participating Employer" means the Employer and any company, corporation, or firm that is subsidiary to, or affiliated with, the Employer that is designated by the Employer as a Participating Employer for purposes of this Plan. As they relate to this Plan, all actions, agreements, and notices between the Claims Administrator and the Employer will be binding on such related entities. Unless otherwise provided by the Employer, Employees of any related entity that ceases to be a related entity for any reason, will be deemed to have transferred to a class of Employees not eligible for coverage under this Plan.

"Physician" means a person who:

(a)     is licensed and legally qualified to practice medicine and prescribe and administer drugs or to perform surgery; or

(b)     is a licensed and legally qualified practitioner of the healing arts in a category specifically favored under the health insurance laws of the State in which the policy was delivered and who is practicing within the terms of his or her license.

The term "Physician" will not include the Participant or his or her spouse, daughter, son, father, mother, sister, or brother.

"Plan" means the Wachovia Corporation Short Term Disability Plan set forth herein and in any Appendix hereto, and as amended from time to time.

"Plan Administrator" means the person or committee appointed by the Employer to administer the Plan, or in the absence of such appointment, the Employer.

Wachovia/Conrad 9

"Plan Year" means a twelve consecutive month period that begins on any January 1 and ends on the next following December 31.

"Pre-Disability Earnings" will have the same meaning as "Benefits Eligible Compensation" or "BEC" as defined in Section 3.1 of the Plan.

"Sickness" means illness, disease, pregnancy, or complications of pregnancy.

"Termination for Cause" means activities that cause termination of the Participant's employment (or would have caused termination of employment if the activities were discovered while the Participant was an Employee) with the Participating Employer or an affiliated company as a result of:

(a)     any act or omission that constitutes a breach of the Participant's obligation to the Participating Employer or an affiliated company, or the failure or refusal of the Participant to perform satisfactorily any duties reasonably required of the Participant, after written notification by the Participating Employer of such breach, failure or refusal and the failure of the Participant within ten (10) business days of such notification to correct such breach, failure, or refusal (other than failure by reason of incapacity due to physical or mental illness);

(b)     the commission of any fraud, misappropriation, embezzlement, or other dishonest act that may reasonably be expected to have injurious effect on the Participating Employer or an affiliated company;

(c)     reporting to work under the influence of alcohol, narcotics, or unlawful controlled substances, or any other material violation of any Employer employment policy or procedure;

(d)     conviction of a felony or of a misdemeanor, or conduct in violation of state or federal law or that would constitute a basis for a criminal charge or indictment of a felony or of a misdemeanor involving moral turpitude;

(e)     violation of any securities or commodities laws, any rules or regulations pursuant to such laws, or the rules and regulations of any securities or commodities exchange or association of which the Participating Company is a member, or violation of any similar federal, state, or local law, regulation, ordinance, or licensing requirement applicable to employees of financial institutions; or

(f)     conduct that may reasonably be expected to have a material adverse effect on the financial interest or business reputation of the Participating Employer or an affiliated company.

"Weekly Earnings" means the Participant's earnings from all employment.

1.2     Gender and Number. The masculine pronoun will include the feminine; the singular will include the plural; and vice versa.

Wachovia/Conrad 10

## ARTICLE II
## PARTICIPATION

2.1     Commencement of Participation. Participation in the Plan will commence as follows:

(a)     Each Eligible Employee who was a Participant on the date immediately preceding the Effective Date will be eligible to continue as a Participant in the Plan as of the Effective Date.

(b)     Each other Eligible Employee will be eligible to become a Participant in the Plan on the first day he or she is physically at work on or after the date on which he or she completes three months of Active Employment.

Coverage for an Eligible Employee will commence on the date the Eligible Employee becomes a Participant; provided, however, that coverage will be delayed for an Eligible Employee if he or she is not in Active Employment because of Injury or Sickness. Such coverage will commence on the date the individual returns to Active Employment. Notwithstanding the foregoing, coverage for an individual who was a Participant on December 31, 1997 or who was employed by an acquired company on the day immediately preceding the date on which employees of the acquired company became eligible for coverage under this Plan, but who was not in Active Employment because of an Injury or Sickness on January 1, 1998 or the day on which employees of the acquired company became eligible for coverage under this Plan, will not be delayed under the preceding sentence if such individual was an Eligible Employee in Active Employment immediately prior to the Injury or Sickness. Whether an Eligible Employee becomes a Participant (and when coverage commences) will be determined by the Plan Administrator in its sole discretion.

2.2     Agreement to Participate. By becoming a Participant, each Eligible Employee will for all purposes be deemed conclusively to have assented to the provisions of the Plan and all amendments thereto.

2.3     Cessation of Participation. Coverage for a Participant will cease on the earliest of the following dates:

(a)     the date this Plan terminates, but without prejudice to any claim originating prior to the time of termination;

(b)     the date the Participant is no longer an Eligible Employee;

(c)     the last day the Participant is in Active Employment. Cessation of Active Employment will be deemed termination of employment even if the Participant continues to receive pay following his or her termination date. However, the Participant's coverage will be continued if he or she is absent due to Disability during the Elimination Period: and

Wachovia/Conrad 11

      (d)    the date of the Participant's written resignation or the date of the Participating Employer's receipt of the Participant's written resignation, whichever is earlier.

2.4    <u>Rehire Terms</u>.  If a former Employee, who was displaced (involuntarily terminated), as determined by the Employer under the Wachovia Corporation Severance Pay Plan, due to layoff, merger, or consolidation, is re-hired by a Participating Employer within 12 months of his or her termination date, all past periods of Active Employment with the Participating Employer will be counted for purposes of the service requirement under Section 2.1.

If a former Employee, who was displaced (involuntarily terminated), as determined by the Employer under the Wachovia Corporation Severance Pay Plan, due to layoff, merger, or consolidation, is re-hired by a Participating Employer more than 12 months after his or her termination date, he or she is considered to be a new Employee for purposes of Section 2.1.

2.5    <u>Family/Medical Leave</u>.  A Participant's coverage may be continued under this Plan during any period that he or she is not in Active Employment because he or she is absent due to an approved leave of absence under the Family and Medical Leave Act of 1993. Coverage will be provided at the same benefit levels in effect on the day immediately prior to the day the leave begins.  Any change in the Plan's benefit levels that may occur while the Employee is on Family/Medical Leave will apply to such Participant.

Wachovia/Conrad 12

## ARTICLE III
## BENEFITS

3.1    <u>Benefits Eligible Compensation or BEC</u>.

(a)    <u>Overview</u>. Effective January 1, 2001, benefits under the Plan were determined using a concept of Benefits Eligible Compensation or BEC. In this Plan, the terms "BEC" and "Pre-Disability Earnings" are equivalent.

(b)    <u>Definitions for BEC</u>.

(1)    <u>"Grandfathered Annual Benefits Base Rate" or "Grandfathered ABBR"</u> means the amount of earnings on which pay-related employee benefits were formerly calculated for certain grandfathered Participants, as specified in the Frozen ABBR field of the Participating Employer's payroll records.

(2)    <u>"Business Unit Default Amount" or "BUDA"</u> means the Participant's Earnings (expressed in an annual amount) as determined by the Participant's Business Unit when a Participant has less than one (1) Month of Participation. See definition of "Rolling Twelve Month Amount."

(3)    <u>"Comp Rate"</u> means (i) for a salaried Participant, the Participant's base salary, as specified in the Comp Rate field of the Participating Employer's payroll records for such Participant or (ii) for a Participant paid an hourly wage. the Participant's "hourly rate" multiplied by the Participant's "scheduled number of hours," as such amounts are set forth in the Participating Employer's payroll records for such Participant.

(4)    <u>"Compensation"</u> means the sum of a Participant's

(i)    base salary;

(ii)    hourly wages;

(iii)    seventy percent (70%) of "eligible functional incentive pay" (as set forth in Appendix B); and

(iv)    contributions on behalf of the Participant determined on a salary-reduction basis to the Participating Employer's 401(k) savings plan. the Participating Employer's flexible benefit program. or the Participating Employer's qualified transportation fringe benefit plan.

An element of Compensation set forth above will only be counted once in the definition of Compensation (i.e., double counting is prohibited).

A Participant's Compensation expressly *excludes*

-7-

Wachovia/Conrad 13

(i)    overtime and shift differential pay;

(ii)    salary deferrals under a non-qualified deferred compensation plan;

(iii)    severance pay;

(iv)    Participating Employer contributions to benefit plans; and

(v)    all other forms of remuneration which are not expressly listed above as being included in the definition of Compensation.

For purposes of this definition, "Compensation" includes only amounts actually paid to the Participant or amounts that should have been paid but for a payroll processing delay; it does not include earned but unpaid amounts.

(5)    "Months of Participation" means any calendar month in which the Participant is eligible to participate in either the flexible benefit plan or the short term disability plan of the Participating Employer.

(6)    "Pre-Disability Earnings" or "BEC" means the greatest of the following three figures divided by fifty-two (52) (i.e., the number of weeks in a calendar year):

(i)    the Participant's Grandfathered ABBR;

(ii)    the Participant's Comp Rate; and

(iii)    the Participant's Rolling Twelve Month Amount.

A Participant's BEC is determined as of the business day immediately preceding the date the Participant incurs a Disability. Note, however, that the Rolling Twelve Month Amount is actually calculated once each month as set forth in Section 3.1(b)(7) below.

(7)    "Rolling Twelve Month Amount"

(i)    General Definition. The following is determined as of the last business day of each month for each Participant who is eligible to participate in this Plan on such date. For example, if one becomes Disabled during April, the Rolling Twelve Month Amount is calculated for the twelve (12) months ending March 31.

1.    Twelve Months of Participation. If a Participant has twelve (12) Months of Participation during the most recent twelve (12) consecutive calendar months, the Participant's Rolling Twelve Month Amount is the sum of the Participant's Earnings (as defined below) for such twelve (12) consecutive calendar months.

Wachovia/Conrad 14

2.    <u>Less than Twelve but more than One Month of Participation</u>. If a Participant has less than twelve (12) Months of Participation during the most recent twelve (12) consecutive calendar months but at least one (1) Month of Participation during such twelve (12) consecutive month period, the Participant's Rolling Twelve Month Amount is determined as follows:

A.    <u>Step One</u>. Determine the number of Months of Participation earned by the Participant during the most recent twelve (12) consecutive calendar month period.

B.    <u>Step Two</u>. Compute the sum of the Participant's Earnings (as defined below) for each of the months identified in Step One above.

C.    <u>Step Three</u>. Determine the monthly average of the Participant's Earnings identified in Step Two above.

D.    <u>Step Four</u>. Multiple the average Earnings determined in Step Three above by the number of calendar months out of the most recent twelve (12) consecutive calendar months for which the Participant did <u>not</u> earn a Month of Participation (e.g., 12 months minus the number of months identified in Step One above).

E.    <u>Step Five</u>. Add the amount in Step Four to the amount in Step Two. The resulting sum is the Participant's Rolling Twelve Month Amount.

F.    Special Rule for New Hires and Rehires.

(I)    If a Participant is hired or rehired within the most recent twelve (12) consecutive calendar months, the Participant's Earnings for his or her first Month of Participation following his or her date of hire or rehire will be one-twelfth (1/12th) of the Participant's Comp Rate, if the Participant has a Comp Rate, or one-twelfth (1/12th) of the Participant's BUDA, if the Participant does not have a Comp Rate.

(II)    After the Participant's initial Month of Participation following his date of hire or rehire, the Participant's Earnings for such initial month will be the greater of (x) the Earnings described in subparagraph F(I) above or (y) the Participant's actual Compensation for such initial month.

Wachovia/Conrad 15

G.    <u>Example</u>.  Assume a Participant received Earnings as follows:

| | |
|---|---|
| October 2004 | $4,000 |
| November 2004 | $4,000 |
| December 2004 | $4,000 |
| January 2005 | $4,000 |
| February 2005 | $4,000 |

The Participant terminated employment in February 2005. The Participant is then rehired on August 25, 2005 with a Comp Rate of $60,000 ($5,000/month).  The Participant receives the following Earnings:

| | |
|---|---|
| August 2005 | $5,000* |
| September 2005 | $5,000 |

* The Participant actually received only five days of pay (Participant was hired on 8/25.)  However, the entire $5,000 is  counted – See subparagraph F above for special rule.

The Participant's Rolling Twelve Month Amount is computed as follows:

Step One – The Participant has seven Months of Participation in the most recent twelve (12) consecutive months (October 2004 through February 2005 and August 2005 through September 2005).

Step Two – The Participant's aggregate Earnings during the seven month period is $30,000 ($4,000 x 5 months plus $5,000 x 2 months).

Step Three – The average monthly Earnings during this period is $4,285.72 ($30,000 divided by seven months).

Step Four – The Participant did not have Months of Participation during five of the most recent twelve (12) consecutive months  (March 2005 through July 2005).  The product of $4,285.72 and five months is $21,428.60 ($4,285.72 x 5).

Step Five – The sum of $30,000 (Step Two) and $21,428.60 (Step Four) is $51,428.60).

Accordingly, the Participant's Rolling Twelve Month Amount is $51,428.60.

Wachovia/Conrad 16

3.    Less than One Month of Participation. If a Participant has less than one (1) Month of Participation, the Participant's Rolling Twelve Month Amount is either (1) the Participant's Comp Rate, when the Participant has a Comp Rate; or (2) the Participant's Business Unit Default Amount, when the Participant has no Comp Rate.

4.    Definition of Earnings. A Participant's "Earnings" (as defined below) is determined each month during which the Participant has earned a Month of Participation. A Participant's "history" of Earnings is then used in computing the Participant's Rolling Twelve Month Amount. A Participant's Earnings for a particular month is equal to the greatest of (i) the Participant's Compensation for that month, (ii) one-twelfth (1/12th) of the Participant's Grandfathered ABBR for that month or (iii) one-twelfth (1/12th) of the Participant's Comp Rate for that month.

(ii)    Special Transition Rule for Rolling Twelve Month Amounts in 2001.

1.    Background. Prior to 2001, the Plan utilized a different definition of Compensation. The current Plan utilizes a Rolling Twelve Month Amount in determining a Participant's Pre-Disability Earnings. For a Participant who becomes disabled at any time in 2001 this requires the Plan to look back to 2000 to determine the Rolling Twelve Month Amount.

2.    2001 Transition Rule. For a Participant who becomes disabled between February 1, 2001 and December 31, 2001, his or her Rolling Twelve Month Amount is the sum of the following two components:

A.    The Participant's Earnings received during any full Month(s) of Participation in 2001; and

B.    The Participant's "401 Accumulator" minus overtime and shift differential for each month in 2000 for which the Participant does not have a corresponding full Month of Participation in 2001 (i.e., if Participant has January, February, and March as full Months of Participation in 2001, then April through December of 2000 would be used in determining the Rolling Twelve Month Amount).

3.    January 2001 Transition Rule. If a Participant becomes Disabled during January 2001 and becomes entitled to benefits under this Plan, the Participant's Rolling Twelve Month Amount will equal the amount set forth in the Participant's "Life Annual Amount" (as set forth in the Participating Employer's January 2001 payroll records for such Participant).

(iii)    Special Transition Rule for Rolling Twelve Month Amounts in 2002.

1.    Background. Wachovia Corporation (previously unrelated to First Union Corporation) ("Pre-Merger Wachovia") merged into First Union

Wachovia/Conrad 17

Corporation on September 1, 2001. Immediately thereafter First Union changed its name to Wachovia Corporation ("Post-Merger Wachovia"). From September 1, 2001 until December 31, 2001, employees of Pre-Merger Wachovia as well as new hires or other employees who were put on the Pre-Merger Wachovia payroll ("Legacy Wachovia Employees"), participated in the long term disability plan maintained by Pre-Merger Wachovia. Effective January 1, 2002, Legacy Wachovia Employees who are otherwise eligible to participate under this Plan will begin participation in this Plan. However, the Legacy Wachovia Employees do not have a Rolling Twelve Month Amount. Accordingly, the following special rules will be used during 2002 to determine the Rolling Twelve Month Amount for a Legacy Wachovia Employee who is eligible to participate in this Plan.

      2.    <u>2002 Transition Rule</u>. For a Participant described in the preceding paragraph, his or her rolling Twelve Month Amount for the 2002 calendar year shall be the sum of the following two components:

      A.    The Participant's Earnings received during any full Month(s) of Participation in 2002 and

      B.    A portion of the Participant's "2001 Benefits Pay" (as defined in subparagraph C below) based on the number of months in 2001 for which the Participant does not have a corresponding full Month of Participation in 2002. For example, if the Participant has January, February and March as full Months of Participation in 2002, then nine-twelfths of the Participant's 2001 Benefits Pay (representing nine months of 2001 or April through December of 2001) would be used in determining the Rolling Twelve Month Amount.

      C.    A Participant's 2001 Benefits Pay shall be the greater of (I) or (II) below:

      (I)    The Participant's annualized production income plus nonforgiveable draw for January 2001 through June 2001; or

      (II)    the Participant's actual 2000 production income.

      The terms "production income" and "nonforgiveable draw" shall be determined by the Plan Administrator in its sole discretion. In making its determination, the Plan Administrator may consider the Participant's payroll records and the terms as used by the severance plan maintained by Pre-Merger Wachovia Corporation in effect prior to the Effective Date.

      D.    Notwithstanding the general definition of a Participant's Benefits Pay, during 2002, the monthly Benefits Pay for Participants described in paragraph E(I) below is limited to $200,000 divided by twelve (12). Notwithstanding the general definition of a Participant's Benefits Pay, during 2002, the monthly Benefits Pay for Participants described in paragraph E(II) below is limited to $80,000 divided by twelve (12).

Wachovia/Conrad 18

E.   The following Participant's are identified for purposes of the limitation on benefits Pay (see subsection D above).

(I)   The following positions are the only positions for which commissions and other production-related earnings paid to a Participant are included in the computation of the Participant's Benefits Pay and for which the Participant's Benefits Pay is limited during 2002.

| | |
|---|---|
| Investment Consultant Associate | Investment Consultant I |
| Investment Consultant Senior | BEJS Managing Director, Sales |
| Branch Manager | Sales Manager |
| Financial Consultant | Financial Associate |
| Financial Consultant/Trainee | Consulting Director/CT |
| Consulting Manager/CT | Consulting Associate/CT |
| CT Analyst Associate | Producer Insurance Services |
| Trader | Trader Equity |
| Salesperson III | Senior Trader Equity |
| Senior Trader Equity $5mm+ | Salesperson II Equity |
| Salesperson III Equity | IJL Capital Market (Exempt/Temp.) |

(II)   The following positions are the only Mortgage jobs in which the Participants working in such Mortgage jobs are subject to the limitations on Benefits Pay during 2002.

| | |
|---|---|
| Mortgage Loan Originator | Mortgage Loan Sales |
| Mortgage Sales Manager | Affordable Housing, MLO |
| Mortgage Sales-Team Leader | |

(iv)   Example of Rolling Twelve Month Amount. Assume a Participant becomes disabled on October 15, 2001. The Participant had Earnings of $4,000 per month for all of 2001 up until the date of her Disability. The Participant had Earnings of $3,000 per month for all of 2000. The Participant's Rolling Twelve Month Amount is $45,000 calculated as follows:

1.   Participant's actual Earnings for 2001 equals $36,000 ($4,000 for each of the nine full months from January through September; because Participant did not earn Compensation for the full month of October, any actual Compensation from October is not counted in computing this number); and

2.   Participant's actual Earnings for 2000 equals $9,000 ($3,000 for each of the three months of October, November, and December.)

3.   The sum of $36,000 and $9,000 is $45,000.

Wachovia/Conrad 19

(c)    Special Rules.

(1)    Severance Pay.  Note, a Participant who is receiving severance pay is not eligible to receive benefits under this Plan.  However, in certain circumstances (as described below), severance pay may be taken into account in computing a Participant's BEC.

(i)    Eligible for Flexible Benefit Plan.  If a Participant is eligible to participate in the flexible benefit plan while receiving severance pay, severance benefits paid to the Participant while eligible for such plan will (on an annualized basis) be substituted for the Participant's Comp Rate and used in determining the Participant's BEC or Pre-Disability Earnings under this Plan.  Thus, for example, if a Participant who received severance pay while eligible for the flexible benefit plan was later rehired, the individual's BEC would reflect severance pay.

(ii)    Not Eligible for Flexible Benefit Plan.  If a Participant is not eligible to participate in the flexible benefit plan, any severance paid to the Participant during such period of ineligibility will not be used in determining BEC under this Plan.

(2)    Change in Eligibility Status.  This paragraph addresses how BEC is computed for a Participant who moves from an ineligible status to an eligible status (e.g., from authorized leave of absence to an active/benefits eligible position).

(i)    If a Participant moves from an ineligible status to an eligible status under this Plan and is eligible for the first time to participate in the Plan or if during the most recent twelve (12) consecutive calendar months the Participant was ineligible to participate in the Plan, the Participant's BEC will be determined as if the Participant were a new hire.

(ii)    If a Participant moves from an ineligible status to an eligible status under this Plan, but such Participant had within the most recent twelve (12) consecutive calendar months been eligible to participate in this Plan, the Participant will be treated as a rehire; however, the special rule described in Section 3.1(b)(7)(i)(2)(F)(I) will not apply.

3.2    Payment of Disability Benefits.

(a)    When the Plan receives proof that a Participant is Disabled and requires the regular attendance of a Physician, the Plan will pay the Participant a Disability Benefit after the end of the Elimination Period; provided, however, that if the Participant continues to be Disabled after the end of the Elimination Period, Disability Benefits will be paid retroactive to the first day of Disability.  Subject to the provisions of this Article III, the Disability Benefit will be paid for the period of Disability if the Participant provides proof of continued (i) Disability, and (ii) regular attendance of a legally qualified Physician and compliance with the recommended course of treatment for the disabling condition.  Such proof must be given upon

Wachovia/Conrad 20

the request of the Plan Administrator or the Claims Administrator and at the Participant's expense.

        (b)     For the purpose of determining Disability, the Injury must occur and Disability must begin while the Employee is a Participant.

    3.3    <u>Amount and Duration of Benefits</u>.

        (a)     The amount and duration of Disability Benefits will be determined in accordance with the following schedule:

| | Weeks of Disability Benefits Per Year Paid at Stated Percentage of Pre-Disability Earnings | |
| --- | --- | --- |
| **Length of Service** | **100% (less Benefits from Other Income)** | **60% (less Benefits from Other Income)** |
| Less than 3 months of service | 0 | 0 |
| 3 months – 2 calendar years | 4 | 22 |
| 3 – 4 calendar years | 6 | 20 |
| 5 – 7 calendar years | 10 | 16 |
| 8 – 9 calendar years | 13 | 13 |
| 10 or more calendar years | 26 | 0 |

The following rules will apply for purposes of this paragraph (a):

        (1)     A Participant's length of service for a Plan Year will be determined as of January 1 of such Plan Year.

        (2)     No Disability Benefits will be payable with respect to any week during which the Participant is receiving benefits under any workers' compensation act or law or any other act or law of like intent or application on account of such Disability and the number of weeks of Disability Benefits payable with respect to any period of Disability will be reduced by the number of weeks of benefits received by the Participant under any such workers' compensation or similar act or law on account of such Disability.

        (3)     If Disability Benefits commence in a Plan Year and continue to be paid during the following Plan Year, the weeks of Disability Benefits paid in the second Plan Year will be counted against that Plan Year's annual allotment of weeks of Disability Benefits, whether Disability Benefits are being paid at 100% or 60%. Furthermore, the level of payments (100% or 60%) will continue to be determined in accordance with the schedule above. The foregoing will apply equally in the case of a Participant who has a Successive Disability that is

treated a as part of the prior period of Disability under Section 3.5(a) and returns to employment in a subsequent Plan Year.

(4)    In no event will the Plan pay more than 26 weeks of Disability Benefits in any Plan Year.

(5)    Notwithstanding the foregoing, any Participant who has an officer title of assistant vice president (or an equivalent officer title) or above as of December 31, 2002 and has continued on as an Employee since such time shall be entitled to 26 weeks of Disability Benefits paid at 100% of Pre-Disability Earnings less Benefits from Other Income, provided the Participant's Disability occurs on or prior to August 31, 2004. For purposes of the foregoing, a Participant will be deemed to have continued on as an Employee if he is reemployed with the Employer after being terminated due to a divestiture or displacement, provided such reemployment occurs on or prior to August 31, 2004.

(b)    Notwithstanding the foregoing, the Disability Benefit of a Participant who was receiving benefits on December 31, 1997, under the terms of the Plan in effect on such date will continue to be paid in the accordance with the terms of the Plan in effect on such date.

(c)    Notwithstanding the foregoing, the Disability Benefit of a Participant who was receiving benefits under a disability plan sponsored by a Participating Employer immediately preceding the date on which such entity became a Participating Employer will continue to be paid in the accordance with the terms of the disability plan in effect on such date. If such prior disability plan contains a provision regarding successive periods of disability, such rules will continue to apply (and benefits will be paid under the prior plan) even if the Participant engages in Active Employment under this Plan.

3.4    Discontinuation of Benefits. The Disability Benefit will cease on the earliest of:

(a)    the date the Participant is no longer Disabled;

(b)    the end of the maximum benefit period in Section 3.3(a) or the date the Participant is able to work in his or her own occupation on a part-time basis (with or without reasonable accommodation or modification), and is offered such a position by the Employer, but chooses not to;

(c)    the date the Participant's Weekly Earnings exceed 80% of his or her Pre-Disability Earnings;

(d)    except as prohibited by applicable law, the Employer determines that the Participant is engaging or has engaged in conduct that would result in Termination for Cause;

(e)    the date the Participant is no longer under the regular attendance of a legally qualified Physician;

Wachovia/Conrad 22

(f)    the date the Participant ceases to comply with the course of treatment recommended by his or her Physician for the disabling condition;

(g)    the date the Participant refuses to be examined or evaluated for purposes of determining the continuing nature of the Disability; or

(h)    the date the Participant dies.

3.5    <u>Successive Periods of Disability</u>.  With respect to this Section, "Successive Periods of Disability" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Disability Benefit was payable.

(a)    A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability Benefits under this Plan, a Participant:

(1)    returns to his or her own occupation on an Active Employment basis for less than two (2) continuous weeks; and

(2)    performs all the material and substantial duties of his or her own occupation.

(b)    To qualify for a Successive Period of Disability Benefit, the Participant must experience more than a 20% loss of Pre-Disability Earnings.

(c)    Benefit payments on account of a Successive Period of Disability that is treated as part of the prior period of Disability under paragraph (a) will be subject to the terms of this coverage for the prior Disability.

(d)    If a Participant returns to his or her own occupation on an Active Employment basis for two (2) continuous weeks or more, the Successive Period of Disability will be treated as a new period of Disability and the Participant must complete another Elimination Period.

(e)    If a Participant becomes eligible for coverage under any other group short-term disability plan, this Successive Period of Disability provision will cease to apply to that Participant.

3.6    <u>Work Incentive Benefits</u>.  To encourage Participants to return to work, a Participant who has satisfied the Elimination Period may be eligible to continue to receive a Disability Benefit while engaging in Active Employment in accordance with the provisions of this Section 3.6.

(a)    For the purposes of this provision, the Participant may satisfy the Elimination Period if he or she is Disabled or Partially Disabled, or a combination of Disabled and Partially Disabled, during such time.

Wachovia/Conrad 23

(b)     A Disability Benefit will be paid for the period of Partial Disability if proof is provided upon request of the Plan Administrator or the Claims Administrator and at the Participant's expense of continued:

(1)     Partial Disability; and

(2)     regular attendance of a legally qualified Physician and compliance with the recommended course of treatment for the disabling condition.

(c)     For the purpose of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while the Employee is a Participant.

(d)     If the Participant is eligible for benefits described in this Section 3.6, the Plan will pay Disability Benefits as follows:

(1)     If, at any time which Disability Benefits are payable under Section 3.3, the Participant's Weekly Earnings are less than 20% of his Pre-Disability Earnings, a Disability Benefit determined under Section 3.3(a) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.

(2)     If the Participant's Weekly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than 80% of his or her Pre-Disability Earnings, a Disability Benefit determined under Section 3.3(a) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan. If the Disability Benefit plus the Participant's Weekly Earnings would exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be reduced so that the Disability Benefit plus the Participant's Weekly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.

(3)     If the Participant's Weekly Earnings are greater than or equal to 80% of his Pre-Disability Earnings, Disability Benefits will cease.

3.7     Cost of Living Freeze.  After the first deduction for each of the Benefits from Other Income, the Disability Benefit will not be further reduced due to any cost of living increases payable under the Benefits from Other Income provision of this Plan.  This provision does not apply to increases received from any form of employment.

3.8     Lump Sum Payments.  Benefits from Other Income which are paid in a lump sum will be prorated on a weekly basis over the time period to which the lump sum relates or the maximum benefit period described in Section 3.3(a), whichever is less.  If the lump sum does not relate to a specific time period, the lump sum will be prorated over the expected benefit payment period.

3.9     Estimated Benefits.  The Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, may estimate and include in the computation of benefits the

Wachovia/Conrad 24

amount the Participant is eligible to receive under any of the plans referred to Benefits from Other Income.

With respect to benefits payable under the Social Security Act, the Participant must make application with the Social Security Administration for benefit payments under that plan, when the Claims Administrator determines that the Disability will extend beyond a 12 month period. If he or she does not make application for Social Security disability benefits when the Claims Administrator requires, the Claims Administrator will begin to reduce the Participant's benefit by an estimated Social Security disability benefit amount. If the application is denied by the Social Security Administration, and the Claims Administrator is not in agreement with that agency's decision, the Participant is obligated to make timely appeals of the denial through all administrative appeal processes including the Administrative Law Judge level. If the Participant does not appeal the denial, the Claims Administrator will begin to reduce the Participant's benefit by an estimated Social Security disability benefit amount.

Benefit payments from any other source, referred to in the Benefits from Other Income provision of the Plan, will reduce the benefits payable under the Plan if the Claims Administrator makes a reasonable determination that the Participant:

> (a)    will be paid upon completion of the claim made under such plan; or

> (b)    would have been paid if the Participant pursued the claim under such plan within the required time.

In the event that the Claims Administrator overestimates an amount the Participant would have received from any plans referred to in the Benefits from Other Income provision of the Plan, the Claims Administrator will reimburse the Participant for such amount.

3.10    _Prorated Benefits_. For any period which a Disability Benefit is payable that does not extend through a full week, the benefit will be paid on a prorated basis. The rate will be 1/7th per day for such period of Disability.

3.11    _Exclusions_. This Plan will not pay benefits in connection with any Disability due to:

> (a)    war, declared or undeclared or any act of war;

> (b)    intentionally self-inflicted injuries, while sane or insane;

> (c)    active Participation in a Riot;

> (d)    the Participant's committing of or the attempting to commit an indictable offense, or criminal act whether or not the Participant knows the actions they have taken constitute an indictable offense or criminal act; or

**Wachovia/Conrad 25**

(e)     any Injury or Sickness that arises out of or in the course of employment with an employer other than a Participating Employer or an affiliated company.

For purposes of paragraph (c):

"Participation" will include promoting, inciting conspiring to promote or incite, aiding abetting, and all forms of taking part in, but will not include actions taken in defense of public or private property, or actions taken in defense of the person of the Participant, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and firemen.

"Riot" will include all forms of public violence, disorder, or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

3.12   <u>Notice and Proof of Claim.</u>

(a)     *Notice.*  Notice of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date of the loss upon which the claim is based, or as soon thereafter as it is reasonably possible to do so.  Notwithstanding the foregoing, in the case of an Intermittent Chronic Disability, the following notice requirements will apply:

(1)     Notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date on which the Elimination Period has been satisfied, or as soon thereafter as it is reasonably possible to do so.

(2)     After the Elimination Period has been satisfied, notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of any day of absence due to Disability for the same or related condition, or as soon thereafter as it is reasonably possible to do so.

Any notice of claim under this Section 3.11(a) must be received in a form or format satisfactory to the Claims Administrator.

(b)     *Proof.*

(1)     Proof of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, no later than 60 calendar days after the end of the Elimination Period.  For this purpose, "proof" means (a) the evidence in support of a claim for benefits in a form or format satisfactory to the Claims Administrator, (b) an attending Physician's statement in a form or format satisfactory to the Claims Administrator, completed and verified by the Participant's attending Physician, and (c) provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or

Wachovia/Conrad 26

other forms of objective medical evidence that may be required by the Claims Administrator in support of a claim for benefits. Notwithstanding the foregoing, the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, may also consider other evidence of a claimed Disability, including, but not limited to evidence discovered or otherwise developed by the Plan Administrator or the Claims Administrator.

(2)     Failure to furnish such proof within such time will not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required, and the Claims Administrator is able to certify the period of Disability.

(3)     Proof of continued Disability and regular attendance of a Physician must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the request for the proof.

3.13    Source of Payments. All Disability Benefits and associated expenses (unless paid by the Employer) under the Plan will be paid exclusively by a Participating Employer out of its general assets (including payments made by a Claims Administrator as agent for the Participating Employer).

3.14    Examination. The Plan Administrator, at its own expense, will have the right and opportunity to have a Participant, whose Injury or Sickness is the basis of a claim, examined by a Physician or vocational expert of its choice. This right may be used as often as reasonably required.

3.15    Right of Recovery. If a benefit overpayment on any claim occurs, including overpayment resulting from fraudulent claims or claims paid in error, reimbursement must be made by the Participant to the Plan within 60 days of such overpayment, or the Plan has the right to reduce future benefit payments until such reimbursement is received. The Plan, or the Claims Administrator acting as agent for the Plan, has the right to recover such overpayments from the Participant or the Participant's estate.

3.16    Reimbursement Agreement, Subrogation.

(a)     If a Participant receives or becomes eligible to receive any benefit (a "Reimbursable Benefit") arising from an accident, injury or illness for which the Participant has, may have, or has asserted any claim or rights to recovery against a third party or parties, then any payments by this Plan with respect to such Reimbursable Benefit shall be made on the condition that this Plan will be reimbursed by the Participant, to the extent of any amount or amounts received or receivable from or with respect to the third party or parties, whether by way of suit, judgment, settlement, compromise, or otherwise and without regard to how the amount received from the third party or parties is characterized.

Wachovia/Conrad 27

(b)     The "make whole doctrine" arising under federal common law and under state law does not apply to the Plan's reimbursement or subrogation rights. The Plan retains its reimbursement and subrogation rights described herein regardless of whether the Participant's receipt of payment from other sources fully reimburses the Participant or whether the Participant has been "made whole." The Plan's reimbursement and subrogation rights apply to the full amount the Participant receives without regard to the nature or characterization of the proceeds (unreduced by attorney's fees and other expenses). The Plan does not share in the cost of the Participant's recovery.

(c)     To the extent set forth in the summary plan descriptions and any subsequently issued summary of material modifications, the Participant may be obligated to sign a reimbursement agreement, as prescribed by the Plan Administrator, before any Reimbursable Benefits are paid from this Plan. If Reimbursable Benefits are to be paid with respect to a dependent who is a minor, the Plan Administrator may require the Participant to execute a reimbursement agreement on the minor's behalf. All Participants shall be obligated to cooperate with this Plan in its efforts to enforce its reimbursement rights and to refrain from any actions that interfere with those rights. The Plan shall have the right to take all appropriate actions necessary to enforce its reimbursement rights in the event that a Participant refuses to sign a reimbursement agreement, refuses to reimburse this Plan in accordance with the Plan's reimbursement rights, or takes any other action inconsistent with the Plan's reimbursement rights. In such situations, the Plan's options shall include, without limitation, the right in appropriate cases to deny benefits to an individual who refuses to sign a reimbursement agreement; to institute legal actions to recover sums wrongfully withheld or to obtain other relief, and/or to offset wrongfully withheld sums against future benefit payments otherwise owed the Participant.

(d)     The Plan shall be subrogated to all claims, demands, actions, and rights of recovery of the Participant against a third party or parties to the extent of any and all payments made by the Plan with respect to Reimbursable Benefits, and the reimbursement agreement shall so provide. The Plan shall have a lien against the proceeds of any recovery by the Participant and against future benefits due under the Plan in the amount of any claims paid. This lien shall attach as soon as any person or entity agrees to pay any money to or on behalf of any covered individual that would be subject to the Plan's right of recovery if and when received by the Participant. If the Participant fails to repay the Plan from the proceeds of any recovery, the Plan Administrator may satisfy the lien by deducting the amount from future claims otherwise payable under the Plan.

3.17   <u>Workers' Compensation</u>. Disability Benefits under the Plan are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

Wachovia/Conrad 28

## ARTICLE IV
## ADMINISTRATION

4.1     Administrator. The Employer is the Plan Administrator of the Plan. The Employer may, however, delegate to any person or entity any powers or duties of the Employer under the Plan, and to the extent of any such delegation, the delegate will become a named fiduciary (if the delegate is a fiduciary by reason of the delegation); and references herein to the Employer will apply instead to its delegate. Any action by the Employer assigning any of its responsibilities to specific persons who are all Employees of the Employer will not constitute delegation of the Employer's responsibility but rather will be treated as the manner in which the Employer has determined internally to discharge such responsibility.

4.2     Rules of Administration. The Employer will adopt such rules for administration of the Plan as it considers desirable, provided they do not conflict with the Plan or applicable law. The Plan Administrator will have the exclusive right and the sole discretionary authority to interpret the terms and provisions of the Plan and to resolve all questions arising thereunder, including, without limitation, the authority to determine eligibility for Benefits and the right to resolve and remedy ambiguities, inconsistencies, or omissions in the Plan, and, subject to Section 4.6, such action will be conclusive. Records of administration of the Plan will be kept, and Participants may examine records pertaining directly to them.

4.3     Services to the Plan. The Employer may contract for legal, actuarial, investment advisory, medical, accounting, clerical, and other services to carry out the Plan. The costs of such services and other administrative expenses will be paid by the Employer.

4.4     Funding Policy. The Plan's funding policy and method are to provide benefits through the general assets of Participating Employers.

4.5     Claims Procedure. Claims are to be submitted to the Claims Administrator in accordance with procedures approved by the Plan Administrator.

4.6     Denial of Claim.

(a)     The Claims Administrator will review claims for benefits, including claims resulting after the termination of the Participant's benefits, and respond thereto within a reasonable time after receiving the claim. The Claims Administrator will provide to every claimant who is denied a claim for benefits a notice (either written or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i). (iii), and (iv)) setting forth in a manner calculated to be understood by the claimant:

(1)     the specific reason or reasons for the denial;

(2)     specific references to pertinent Plan provisions upon which denial is based;

Wachovia/Conrad 29

(3)     a description of any additional material or information necessary for the claimant to perfect the claim; and

(4)     an explanation of the claim review procedure set forth below.

(b)     Within 60 days from the date of the notice from the Claims Administrator denying a claim under paragraph (a), the claimant or his or her duly authorized representative may request in writing a full and fair review of the claim by the Claims Administrator. The Claims Administrator may extend the sixty-day period where the nature of the benefit involved or other attendant circumstances make such extension appropriate. In connection with such review, the claimant or his or her duly authorized representative may review pertinent documents and may submit issues and comments in writing. The Claims Administrator will make a decision promptly, and not later than 60 days after the Claims Administrator receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the Claims Administrator deems one necessary) require an extension of time for processing, in which case a decision will be rendered as soon as possible, but not later than 120 days after receipt of a request for review. The decision on review will be in writing or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), and will include specific reasons for the decision, drafted in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions upon which the decision is based.

(c)     A claimant or his or her duly authorized representative may request in writing a further review of the claim by the Plan Administrator or such person or persons designated by the Plan Administrator (the "Claims Appeal Reviewer"); provided such request is made within 60 days of receipt by a claimant of a notice from the Claims Administrator denying a claim under paragraph (b). The Claims Appeal Reviewer may extend the 60-day period where the nature of the benefit involved or other attendant circumstances make such extension appropriate. In connection with such review, the claimant or his or her duly authorized representative may review pertinent documents and may submit issues and comments in writing. The Claims Appeal Reviewer will make a decision promptly, and not later than 60 days after the Claims Appeal Reviewer's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the Claims Appeal  Reviewer deems one necessary) require an extension of time for processing, in which case a decision will be rendered as soon as possible, but not later than 120 days after receipt of a request for review. The decision on review will be in writing or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), and will include specific reasons for the decision, drafted in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions upon which the decision is based.

4.7     Legal Proceedings. A claimant or the claimant's authorized representative cannot start any legal action:

(a)     until after the exhaustion of the administrative remedies under Section 4.6; nor

Wachovia/Conrad 30

(b)     more than one (1) year after the time proof of claim is required under the claim procedures approved by the Plan Administrator.

4.8     Operation.  All interpretations, decisions, and designations by the Employer under the Plan will be made in a manner in which persons similarly situated are treated alike.

4.9     Responsibility for Administration.  Neither the Employer, nor any of its directors, officers, employees, or agents will be liable for any loss due to error or omission in administration of the Plan unless the loss is due to the gross negligence or willful misconduct of the party to be charged or is due to the failure of the party to be charged to exercise a fiduciary responsibility with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

4.10    Indemnification of Administrative Personnel.  The Employer will indemnify each officer or employee of the Employer for all expenses (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him or her in connection with any action to which he or she may be a party by reason of his or her performance of administrative functions and duties under the Plan, except in relation to matters as to which he or she will be adjudged in such action to be personally guilty of gross negligence or willful misconduct in the performance of his or her duties.  The foregoing rights to indemnification will be in addition to such other rights as the individual may enjoy as a matter of law or by reason of insurance coverage of any kind.  Rights granted hereunder will be in addition to and not in lieu of any rights to indemnification to which the individual may be entitled pursuant to the Employer's by-laws or applicable law.

Wachovia/Conrad 31

## ARTICLE V
## AMENDMENT AND TERMINATION

5.1     Amendment.  The Employer will have the right at any time, by or pursuant to action of its Board of Directors or the Human Resources Committee of the Board, to amend the Plan.  In addition, the Human Resources Division may amend the Plan, at any time, to the extent it deems necessary in order to accomplish the following:

(a)     To comply with the requirements of the Code and any amendment thereto, any other law, or any rule or regulation issued in interpretation of the Code or any applicable law;

(b)     To make all technical, administrative, regulatory, and compliance amendments;

(c)     To make all amendments that it deems appropriate in connection with an acquisition by the Employer or its subsidiaries or affiliates of a corporation or other legal entity; and

(d)     To make any other amendment or election that will not significantly increase the cost of the Plan to the Employer.

Any action to amend the Plan taken by the Human Resources Division may be taken by any appropriate human resources officer of the Employer.  An amendment will become effective as provided therein.

5.2     Termination.  Although the Employer intends to maintain the Plan for an indefinite period, the Employer reserves the absolute right to terminate or partially terminate the Plan at any time, for any reason, by or pursuant to action of its Board of Directors.  Furthermore, each Participating Employer may terminate its participation in the Plan at any time.  Any termination or partial termination of the Plan will not adversely affect the payment of Benefits to which to which a covered individual was entitled under the terms of the Plan prior to the date of termination or partial termination.  Thereafter, no covered individual nor any Participating Employer will have any liability or obligation to make any further contributions under the Plan.

Wachovia/Conrad 32

## ARTICLE VI
### MISCELLANEOUS

6.1    Effect on Employment.  This Plan will not confer upon a person any right to be continued in the employment of a Participating Employer.

6.2    Alienation of Benefits.  Except as otherwise provided by law and by contract governing any Benefit under this Plan, no Benefit under this Plan may be voluntarily or involuntarily assigned or alienated.

6.3    Facility of Payment.  If a benefit is payable to a Participant's estate, a Participant who is a minor, or who is not competent, the Plan Administrator may direct the Claims Administrator to pay up to $2,000 to any of the Participant's relatives or any other person whom the Plan Administrator considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Participant.  If the Plan in good faith, pays the benefit in such a manner, the Plan will not have to pay such benefit again.

6.4    Lost Distributees.  Any benefit payable hereunder will be deemed forfeited if the Employer or Claims Administrator is unable to locate the Participant to whom payment is due; provided, however, that such benefit be reinstated if a claim is made by such person for the forfeited benefit within one year of the date of loss.

6.5    Severability.  If any provision of this Plan is be held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision. and this Plan will be construed and enforced as if such provision had not been included.

6.6    Applicable Law.  Except as may otherwise be required by the controlling law of the United States, the Plan will be construed, administered, and enforced in accordance with the laws of the State of North Carolina.

IN WITNESS of its adoption of this amended and restated Plan, the Employer has caused this instrument to be executed by its duly authorized officer this $26 th$ day of _Decem ber_ 2002.

WACHOVIA CORPORATION

By: _Benjamin J. Jelley_
Senior Vice President

Wachovia/Conrad 33

**LIBERTY**
**MUTUAL**

Liberty Mutual Group

**ANNEX A-1**
of
**DISABILITY RISK MANAGEMENT AGREEMENT**

Effective January 1, 1998 between Liberty Life Assurance Company of Boston *(hereinafter referred to as Liberty)* and Wachovia Corporation *(hereinafter referred to as the Sponsor)*. This Plan's anniversary date will occur each succeeding January 1st.

The Sponsor agrees to pay the benefits provided by the Plan in accordance with its provisions and Liberty agrees to provide the administrative and other services described in this Agreement.

**Participating Employers**

As they relate to this Plan, all actions, agreements and notices between Liberty and the Sponsor will be binding on the Participating Employers (as defined in the Plan).

**Plan Changes**

The Plan may be terminated or changed in whole or in part by the Employer. The change must be in writing and endorsed on or attached to the Plan.

No other person, including an agent, may change this Plan or waive any part of it.

**Time of Payment of Claims**

When Liberty, on behalf of the Sponsor, receives satisfactory proof of claim, the benefit payable under this Plan will be paid at least monthly depending on the coverage for which claim is made, during any period for which the Sponsor is liable.

**Subrogation**

Liberty will gather information as a part of its normal procedures to determine the existence of possible subrogation claims. Liberty will identify possible subrogation claims in accordance with guidelines established by Liberty and Sponsor. Liberty will, at the Sponsor's request and in accordance with plan provisions, cooperate fully in the facilitation of recoveries.

I-PH/974599.11

Wachovia/Conrad 34

# APPENDIX A
## SPECIAL RULES FOR EMPLOYEES IN STATES
## WITH MANDATED DISABILITY BENEFITS

This Appendix A will apply to any Employee (hereinafter referred to a "State Plan Employee") for whom a Participating Employer is required by state law to provide short term disability benefits through the purchase of insurance, by the establishment of a state-approved "private plan," by paying into a state benefit fund, or otherwise. Any such state-mandated coverage will be referred to herein as a "State Plan."

     1.    <u>Benefits</u>. A State Plan Employee who otherwise meets the definition of "Eligible Employee" in Section 1.1 will receive Disability Benefits as described in this Plan, offset by any disability benefits provided under the State Plan. A State Plan Employee who does not meet the definition of "Eligible Employee" in Section 1.1 will receive Disability Benefits only to the extent provided under the State Plan.

     2.    <u>Other Provisions</u>. The provisions of this Plan will supersede the provisions of any State Plan, except as required by law

**Wachovia/Conrad 35**

## APPENDIX B
## ELIGIBLE FUNCTIONAL INCENTIVE PAY

| | Earnings Code | Start Date |
|---|---|---|
| A4 | CBG FUMC Com Mort Sales Inct | 01-Jan-01 |
| AC3 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AC4 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AS | CMG FUBS Reg Reps Sales Inct | 01-Jan-01 |
| BA | CMG Personal Inv Couns Inct | 01-Jan-01 |
| BA7 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA8 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA9 | Key Contributor (FUBS expense account) | 01-Jan-01 |
| BE2 | Everen Commissions Plan | 01-Jan-01 |
| BE3 | Everen Guarantee | 01-Jan-01 |
| BE5 | Everen Trainee Pay | 01-Jan-01 |
| BE6 | Everen Enhanced Payout | 01-Jan-01 |
| BE7 | Everen Giveaway | 01-Jan-01 |
| BE8 | Everen IC Electv LKBK | 01-Jan-01 |
| BE9 | Everen BOM COM Adj | 01-Jan-01 |
| BEA | Everen Accel Payout | 01-Jan-01 |
| BEC | Everen Recruiting Bonus | 01-Jan-01 |
| BED | Everen Scorecard Bonus | 01-Jan-01 |
| BEE | Everen Profitability Bonus | 01-Jan-01 |
| DF | Wholesale/Correspondent Acct Exec Plan | 01-Jan-01 |
| DRW | Draw Earnings | 01-Jan-01 |
| EC | CMG FUBS Disc/Broker Direct | 01-Jan-01 |
| G3 | Sls Mgrs | 01-Jan-01 |
| K4 | CMG Ins Advanced Mkt Incent | 01-Jan-01 |
| KAB | FinConsult | 01-Jan-01 |
| KCJ | GBG FC Premium | 01-Jan-01 |
| KCR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| KK | CMG Insurance Spec Incentive | 01-Jan-01 |
| KZB | FinConsult | 01-Jan-01 |
| SIE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| SSE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |
| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |

B-1

Wachovia/Conrad 36

| | | |
|---|---|---|
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | CMG Trust/Inv Sls Spec Inct | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral - Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ABO | Asset Bonus 401k Elig | 01-Jan-02 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMG | Branch Manager Bonus 401k Elig | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| CM6 | Give Up Registered 401k Elig | 01-Jan-02 |
| CMG | Commission Give Up 401k Elig | 01-Jan-02 |
| CMS | Commission 401k Elig | 01-Jan-02 |
| DBK | Davis Baldwin Comm 401k Elig | 01-Jan-02 |
| FDF | Finders Fee 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| ICG | Investment Counselor Give Up | 01-Jan-02 |
| ICM | Investment Counselor 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| PDB | Production Bonus 401k Elig | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Comm Plan Insurance Advisor | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |

B-2

Wachovia/Conrad 37

## APPENDIX C
## WACHOVIA SHORT-TERM MEDICAL LEAVE PLAN

This Appendix C will apply to any Employee who had at least 10 years of service with the Corporation as of December 31, 1998 and who was eligible for grandfathered Extended Sick Leave benefits under the Wachovia Short-Term Medical Leave Plan (hereinafter referred to as an "Extended Sick Leave Employee") which was sponsored by Wachovia Corporation prior to its merger with First Union Corporation.

Benefits.  The Disability Benefits for an Extended Sick Leave Employee will be equal to 100% of Pre-Disability Earnings (less Benefits from Other Income) for up to 26 weeks in accordance with the terms of the Wachovia Short-Term Medical Leave Plan (the "Legacy Plan").

Effective for any Disability which occurs on or after January 1, 2004, Disability Benefits for all Extended Sick Leave Employees will be determined in accordance with the terms of the Plan without regard to this Appendix C.

Notwithstanding the foregoing, the provisions of Section 4.6 of the Plan relating to the denial of claims will supercede any similar provision in the Legacy Plan.

1-PH/974599.11

Wachovia/Conrad 38

# AMENDMENT TO THE

## WACHOVIA CORPORATION LONG TERM DISABILITY PLAN

## WACHOVIA CORPORATION SHORT TERM DISABILITY PLAN

**WHEREAS,** Wachovia Corporation (the "Corporation") maintains the Wachovia Corporation Long Term Disability Plan (the "LTD Plan") for the benefit of its employees;

**WHEREAS,** The Corporation maintains the Wachovia Corporation maintains the Wachovia Corporation Short Term Disability Plan (the "STD Plan") for the benefit of its employees;

**WHEREAS,** the Corporation wishes to amend the LTD Plan and the STD Plan to revise the definition of "eligible functional incentive pay" used in the definition of compensation to determine benefits; and

**WHEREAS,** pursuant to Section 5.1 of the LTD Plan and Section 5.1 of the STD Plan, the Human Resources Division of the Corporation has the authority to make technical or administrative amendments; and

**WHEREAS,** pursuant to Section 5.1 of the LTD Plan and Section 5.1 of the STD Plan, any action to amend the Plan by the Human Resources Division may be taken by any appropriate human resources officer of the Corporation;

NOW, **THEREFORE,** the LTD Plan and the STD Plan are hereby amended as follows:

1. Appendix B of the LTD Plan is deleted in its entirety and the attached Appendix B substituted therefore, effective as provided therein.

2. Appendix B of the STD Plan is deleted in its entirety and the attached Appendix B substituted therefore, effective as provided therein

**IN WITNESS WHEREOF,** and as evidence of the adoption of the amendment set forth herein, the Senior Vice President for Human Resources, Wachovia Corporation, has execute this Amendment to the LTD Plan and STD Plan, this 26th day of _March_, 2003.

WACHOVIA CORPORATION

*Benjamin J. Jolley*

Wachovia/Conrad 39

| | | |
|---|---|---|
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |
| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | CMG Trust/Inv Sls Spec Inct | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral – Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ABO | Asset Bonus 401k Elig | 01-Jan-02 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMG | Branch Manager Bonus 401k Elig | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| CM6 | Give Up Registered 401k Elig | 01-Jan-02 |
| CMG | Commission Give Up 401k Elig | 01-Jan-02 |
| CMS | Commission 401k Elig | 01-Jan-02 |
| DBK | Davis Baldwin Comm 401k Elig | 01-Jan-02 |
| FDF | Finders Fee 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| ICG | Investment Counselor Give Up | 01-Jan-02 |
| ICM | Investment Counselor 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| PDB | Production Bonus 401k Elig | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Comm Plan Insur Advisor - A | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |
| CMV | WM Comm Plan Insur Advisor – S | 30-Mar-03 |

## APPENDIX B

## WACHOVIA CORPORATION LONG TERM DISABILITY PLAN

### ELIGIBLE FUNCTIONAL INCENTIVE PAY

| | Earnings Code | Start Date |
|---|---|---|
| A4 | CBG FUMC Com Mort Sales Inct | 01-Jan-01 |
| AC3 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AC4 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AS | CMG FUBS Reg Reps Sales Inct | 01-Jan-01 |
| BA | CMG Personal Inv Couns Inct | 01-Jan-01 |
| BA7 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA8 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA9 | Key Contributor (FUBS expense account) | 01-Jan-01 |
| BE2 | Everen Commissions Plan | 01-Jan-01 |
| BE3 | Everen Guarantee | 01-Jan-01 |
| BE5 | Everen Trainee Pay | 01-Jan-01 |
| BE6 | Everen Enhanced Payout | 01-Jan-01 |
| BE7 | Everen Giveaway | 01-Jan-01 |
| BE8 | Everen IC Electv LKBK | 01-Jan-01 |
| BE9 | Everen BOM COM Adj | 01-Jan-01 |
| BEA | Everen Accel Payout | 01-Jan-01 |
| BEC | Everen Recruiting Bonus | 01-Jan-01 |
| BED | Everen Scorecard Bonus | 01-Jan-01 |
| BEE | Everen Profitability Bonus | 01-Jan-01 |
| DF | Wholesale/Correspondent Acct Exec Plan | 01-Jan-01 |
| DRW | Draw Earnings | 01-Jan-01 |
| EC | CMG FUBS Disc/Broker Direct | 01-Jan-01 |
| G3 | SIs Mgrs | 01-Jan-01 |
| K4 | WIS Producer Commission | 01-Jan-01 |
| KAB | FinConsult | 01-Jan-01 |
| KCJ | GBG FC Premium | 01-Jan-01 |
| KCR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| KK | CMG Insurance Spec Incentive | 01-Jan-01 |
| KZB | FinConsult | 01-Jan-01 |
| SIE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| SSE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |

| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | CMG Trust/Inv Sls Spec Inct | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral - Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ABO | Asset Bonus 401k Elig | 01-Jan-02 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMG | Branch Manager Bonus 401k Elig | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| CM6 | Give Up Registered 401k Elig | 01-Jan-02 |
| CMG | Commission Give Up 401k Elig | 01-Jan-02 |
| CMS | Commission 401k Elig | 01-Jan-02 |
| DBK | Davis Baldwin Comm 401k Elig | 01-Jan-02 |
| FDF | Finders Fee 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| ICG | Investment Counselor Give Up | 01-Jan-02 |
| ICM | Investment Counselor 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| PDB | Production Bonus 401k Elig | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Comm Plan Insur Advisor - A | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |
| CMV | WM Comm Plan Insur Advisor – S | 30-Mar-03 |

# AMENDMENT TO THE

## WACHOVIA CORPORATION LONG TERM DISBILITY PLAN

## WACHOVIA CORPORATION SHORT TERM DISBILITY PLAN

**WHEREAS,** Wachovia Corporation (the "Corporation") maintains the Wachovia Corporation Long Term Disability Plan (the "LTD Plan") for the benefit of its employees;

**WHEREAS,** the Corporation maintains the Wachovia Corporation Short Term Disability Plan (the "STD Plan") for the benefit of its employees;

**WHEREAS,** the Corporation wishes to amend the LTD Plan and the STD Plan to revise the definition of "eligible functional incentive pay" used in the definition of compensation to determine benefits; and

**WHEREAS,** pursuant to Section 5.1 of the LTD Plan and Section 5.1 of the STD Plan, the Human Resources Division of the Corporation has the authority to make technical or administrative amendments; and

**WHEREAS,** pursuant to Section 5.1 of the LTD Plan and Section 5.1 of the STD Plan, any action to amend the Plan by the Human Resources Division may be taken by any appropriate human resources officer of the Corporation.

**NOW, THEREFORE,** the LTD Plan and the STD Plan are hereby amended as follows:

1. Appendix B of the LTD Plan is deleted in its entirety and the attached Appendix B substituted therefore, effective as provided therein.

2. Appendix B of the STD Plan is deleted in its entirety and the attached Appendix B substituted therefore, effective as provided therein.

**IN WITNESS WHEREOF,** and as evidence of the adoption of the amendment set forth herein, the Senior Vice President for Human Resources, Wachovia Corporation, has executed this Amendment to the Pension Plan and Savings Plan, this 31st day of _July_, 2003.

WACHOVIA CORPORATION

_Benjamin J. Jolley_

Wachovia/Conrad 43

## APPENDIX B

## WACHOVIA CORPORATION LONG TERM DISABILITY PLAN

### ELIGIBLE FUNCTIONAL INCENTIVE PAY

| Earnings Code | | Start Date |
|---|---|---|
| A4 | CBG FUMC Com Mort Sales Inct | 01-Jan-01 |
| AC3 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AC4 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AS | CMG FUBS Reg Reps Sales Inct | 01-Jan-01 |
| BA | CMG Personal Inv Couns Inct | 01-Jan-01 |
| BA7 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA8 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA9 | Key Contributor (FUBS expense account) | 01-Jan-01 |
| BE2 | Everen Commissions Plan | 01-Jan-01 |
| BE3 | Everen Guarantee | 01-Jan-01 |
| BE5 | Everen Trainee Pay | 01-Jan-01 |
| BE6 | Everen Enhanced Payout | 01-Jan-01 |
| BE7 | Everen Giveaway | 01-Jan-01 |
| BE8 | Everen IC Electv LKBK | 01-Jan-01 |
| BE9 | Everen BOM COM Adj | 01-Jan-01 |
| BEA | Everen Accel Payout | 01-Jan-01 |
| BEC | Everen Recruiting Bonus | 01-Jan-01 |
| BED | Everen Scorecard Bonus | 01-Jan-01 |
| BEE | Everen Profitability Bonus | 01-Jan-01 |
| DF | Wholesale/Correspondent Acct Exec Plan | 01-Jan-01 |
| DRW | Draw Earnings | 01-Jan-01 |
| EC | CMG FUBS Disc/Broker Direct | 01-Jan-01 |
| G3 | Sls Mgrs | 01-Jan-01 |
| K4 | WIS Producer Commission | 01-Jan-01 |
| KAB | FinConsult | 01-Jan-01 |
| KCJ | GBG FC Premium | 01-Jan-01 |
| KCR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| KK | CMG Insurance Spec Incentive | 01-Jan-01 |
| KZB | FinConsult | 01-Jan-01 |
| SIE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| SSE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |

Wachovia/Conrad 44

| | | |
|---|---|---|
| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | WM FSO Commission | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ABO | Asset Bonus 401k Elig | 01-Jan-02 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMG | Branch Manager Bonus 401k Elig | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| CM6 | Give Up Registered 401k Elig | 01-Jan-02 |
| CMG | Commission Give Up 401k Elig | 01-Jan-02 |
| CMS | Commission 401k Elig | 01-Jan-02 |
| DBK | Davis Baldwin Comm 401k Elig | 01-Jan-02 |
| FDF | Finders Fee 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| ICG | Investment Counselor Give Up | 01-Jan-02 |
| ICM | Investment Counselor 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| PDB | Production Bonus 401k Elig | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Insurance Advisor Commission - A | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |
| CMV | WM Comm Plan Insur Advisor – S | 20-Mar-03 |

## APPENDIX B

## WACHOVIA CORPORATION SHORT TERM DISABILITY PLAN

## ELIGIBLE FUNCTIONAL INCENTIVE PAY

| | Earnings Code | Start Date |
|---|---|---|
| A4 | CBG FUMC Com Mort Sales Inct | 01-Jan-01 |
| AC3 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AC4 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AS | CMG FUBS Reg Reps Sales Inct | 01-Jan-01 |
| BA | CMG Personal Inv Couns Inct | 01-Jan-01 |
| BA7 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA8 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA9 | Key Contributor (FUBS expense account) | 01-Jan-01 |
| BE2 | Everen Commissions Plan | 01-Jan-01 |
| BE3 | Everen Guarantee | 01-Jan-01 |
| BE5 | Everen Trainee Pay | 01-Jan-01 |
| BE6 | Everen Enhanced Payout | 01-Jan-01 |
| BE7 | Everen Giveaway | 01-Jan-01 |
| BE8 | Everen IC Electv LKBK | 01-Jan-01 |
| BE9 | Everen BOM COM Adj | 01-Jan-01 |
| BEA | Everen Accel Payout | 01-Jan-01 |
| BEC | Everen Recruiting Bonus | 01-Jan-01 |
| BED | Everen Scorecard Bonus | 01-Jan-01 |
| BEE | Everen Profitability Bonus | 01-Jan-01 |
| DF | Wholesale/Correspondent Acct Exec Plan | 01-Jan-01 |
| DRW | Draw Earnings | 01-Jan-01 |
| EC | CMG FUBS Disc/Broker Direct | 01-Jan-01 |
| G3 | Sls Mgrs | 01-Jan-01 |
| K4 | WIS Producer Commission | 01-Jan-01 |
| KAB | FinConsult | 01-Jan-01 |
| KCJ | GBG FC Premium | 01-Jan-01 |
| KCR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| KK | CMG Insurance Spec Incentive | 01-Jan-01 |
| KZB | FinConsult | 01-Jan-01 |
| SIE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| SSE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |

| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | WM FSO Commission | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ABO | Asset Bonus 401k Elig | 01-Jan-02 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMG | Branch Manager Bonus 401k Elig | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| CM6 | Give Up Registered 401k Elig | 01-Jan-02 |
| CMG | Commission Give Up 401k Elig | 01-Jan-02 |
| CMS | Commission 401k Elig | 01-Jan-02 |
| DBK | Davis Baldwin Comm 401k Elig | 01-Jan-02 |
| FDF | Finders Fee 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| ICG | Investment Counselor Give Up | 01-Jan-02 |
| ICM | Investment Counselor 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| PDB | Production Bonus 401k Elig | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Insurance Advisor Commission - A | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |
| CMV | WM Comm Plan Insur Advisor – S | 20-Mar-03 |