C

# 2003
## HANDBOOK EXCERPTS

Wachovia/Conrad 267

Human Resources

^ Home > Human Resources > Policies & Programs > Time Away From Work > Medical Leave

Advanced Search
- Search Exchange
- Search Human Resources Only

HR Home
HR Online Login
Benefits
Pay
Policies & Programs
Time Away From Work
Code of Conduct &
Ethics
Employment
Diversity
Reasonable
Accommodations
Flexible Work Options
Work Environment
Corrective Action
Dispute Resolution
Rewards and
Recognition
RAVE Employee
Referral Program
Educational Matching
Gifts
Scholarship Program
Disaster Recovery
Expense Policies
Severance Pay &
Benefits
Career Development
New Employee
Orientation
Learning Connection
Manager Handbook
Contact HR
Content Updates

# Medical Leave

You may request a medical leave of up to one year if you are unable to work because of illness, injury, pregnancy and/or childbirth. If you are approved for Long-Term Disability, this leave may be extended beyond one year to last the duration of the Long-Term Disability period.

Your health care provider must complete the Health Care Provider's Certification Form #533890 (18kb, [PDF]), indicating the date you became disabled and the expected date you will return to work. The Health Care Provider's Certification Form must be submitted to your supervisor or manager within 15 calendar days of notification of the intended leave. The length of a medical leave is determined by the period of disability documented by your health care provider on the Health Care Provider's Certification Form.

Provided you meet the eligibility requirements, Short-Term Disability (STD) and Long-Term Disability (LTD) may continue all or a portion of your salary during this leave. If you are approved for LTD, medical leave may last the duration of the LTD period. Different requirements may apply for employees receiving workers' compensation.

If your medical related absence is less than 8 calendar days or, is not approved for short-term and/or long-term disability, you may elect to take earned but unused Paid Time Off (PTO) to provide for pay during your absence.

If you are approved for medical leave, you must return to work on the day your physician says you are able to return to work, and you must give your supervisor or manager the completed Health Care Provider's Certification Form #533890 (18kb, [PDF]) releasing you to return to work.

If you wish to take a parental leave following a medical leave due to maternity, contact your supervisor or manager 30 days before the end of your medical leave.

This leave may qualify under the Family Medical Leave Act.

For more details, see Leaves of Absence.

Holidays
Carryover PTO
Paid Time Off (PTO)
California PTO
Guidelines
Legacy Wachovia
Grandfathering
Provision
Leaves of Absence
Employee Leaves
Medical Leave
Determining Available
STD Days
Family Care Time
Family and Medical
Leave Act
Parental/Infant Care
Leave
Adoption Leave and
Assistance
Critical Care
Personal Leave
Bereavement Time
Away
Military Leave
Jury Duty
Required Job Absence
Inclement Weather
Workers'
Compensation
Educational Leave
Time Away for
Community Service

Wachovia/Conrad 268

☒ Human Resources

⌐ Home > Human Resources > Policies & Programs > Time Away From Work > Determining Available STD Days

Advanced Search
◉ Search Exchange
○ Search Human Resources Only
☒

HR Home
HR Online Login
Benefits
Pay
Policies & Programs
  Time Away From Work
  ☐ Code of Conduct & Ethics
  ☐ Employment
  ☐ Diversity
  ☐ Reasonable Accommodations
  ☐ Flexible Work Options
  ☐ Work Environment
  ☐ Corrective Action
  ☐ Dispute Resolution
  ☐ Rewards and Recognition
  ☐ RAVE Employee Referral Program
  ☐ Educational Matching Gifts
  ☐ Scholarship Program
  ☐ Disaster Recovery
  ☐ Expense Policies
  ☐ Severance Pay & Benefits
Career Development
New Employee Orientation
Learning Connection
Manager Handbook
Contact HR
Content Updates

☐ Holidays
☐ Carryover PTO
☐ Paid Time Off (PTO)
☐ California PTO Guidelines
☐ Legacy Wachovia Grandfathering Provision
☐ Leaves of Absence
☐ Employee Leaves
☐ Medical Leave
☐ Determining Available STD Days
☐ Family Care Time
☐ Family and Medical Leave Act
☐ Parental/Infant Care Leave
☐ Adoption Leave and Assistance
☐ Critical Care
☐ Personal Leave
☐ Bereavement Time Away
☐ Military Leave
☐ Jury Duty
☐ Required Job Absence
☐ Inclement Weather
☐ Workers' Compensation
☐ Educational Leave
☐ Time Away for Community Service

# Determining Available STD Days

Use this table to determine the annual allowances of paid Short-Term Disability (STD) days available to an employee, based on his or her length of service* as of January 1 each year.

| Length of Service* as of January 1 | Annual STD Allowance** | | | |
| --- | --- | --- | --- | --- |
| | At 100% | | At 60% | |
| | Weeks | Days | Weeks | Days |
| Less than 3 months | 0 | 0 | 0 | 0 |
| 3 months to 2 calendar years | 4 | 20 | 22 | 110 |
| 3 to 4 calendar years | 6 | 30 | 20 | 100 |
| 5 to 7 calendar years | 10 | 50 | 16 | 80 |
| 8 to 9 calendar years | 13 | 65 | 13 | 65 |
| 10 calendar years of service or more | 26 | 130 | 0 | 0 |

*Service is defined as **Calendar Years of Service** - the number of calendar years included in an employee's length of service, assuming the time was continuous (e.g. an employee hired in March 1998 would have 5 years of service on January 1, 2002, consisting of years 1998, 1999, 2000, 2001, 2002).

**If you work a schedule other than five days per week, multiply the number of scheduled days per week you work by the number of available weeks in the table above to determine available days.

Wachovia/Conrad 269

Page last updated

Human Resources

Home > Human Resources > Policies & Programs > Time Away From Work

# Time Away From Work

Advanced Search
◉ Search Exchange
○ Search Human
Resources Only

HR Home
HR Online Login
Benefits
Pay
Policies & Programs
  Time Away From
  Work
  Code of Conduct &
  Ethics
  Employment
  Diversity
  Reasonable
  Accommodations
  Flexible Work Options
  Work Environment
  Corrective Action
  Dispute Resolution
  Rewards and
  Recognition
  RAVE Employee
  Referral Program
  Educational Matching
  Gifts
  Scholarship Program
  Disaster Recovery
  Expense Policies
  Severance Pay &
  Benefits
Career Development
New Employee
Orientation
Learning Connection
Manager Handbook
Contact HR
Content Updates

Because each employee's attendance at work is essential to ensure that customers are served properly and schedules and deadlines are met, it is important that you report to work on a regular and timely basis in accordance with your scheduled hours. In addition, Wachovia also recognizes that time away from work is important to help you balance and manage the responsibilities of your life.

Wachovia's time away from work programs allow you to take time off to observe holidays that are important to you and your family, and provide Paid Time Off (PTO) as well as other available leaves for brief illnesses, vacations, hobbies, attendance to personal business, or just relaxing and spending time with your family. PTO and other available leaves also provide time off for family events and obligations, such as the birth, adoption or foster care of a child, or to care for an immediate family member who needs medical attention or preventive care.

If you need to be away from work for an extended period of time, Wachovia allows several types of extended leaves, including medical, parental/infant care, critical care, personal, educational, and military leave. Information on medical leave related to pregnancy/maternity is covered under Leaves of Absence, Medical Leave. In addition, your leave may qualify under the provisions of the Family and Medical Leave Act (FMLA).

The Short-Term Disability and Long-Term Disability Plans are located in the Disability section under Benefits.

Voting Time - Wachovia believes it is important for every citizen to take an active interest in our political and governmental process. Employees are encouraged to keep themselves well-informed concerning political issues and candidates and to voluntarily participate in elections. Managers are encouraged to be flexible in allowing employees to arrange reasonable PTO time to vote. Likewise, employees are expected to make every effort to schedule this activity outside of their scheduled work hours. The time allowed will be with pay providing the employee has available PTO.

Holidays
Carryover PTO
Paid Time Off (PTO)
California PTO
Guidelines
Legacy Wachovia
Grandfathering
Provision
Leaves of Absence
Employee Leaves
Medical Leave
Determining Available
STD Days
Family Care Time
Family and Medical
Leave Act
Parental/Infant Care
Leave
Adoption Leave and
Assistance
Critical Care
Personal Leave
Bereavement Time
Away
Military Leave
Jury Duty
Required Job Absence
Inclement Weather
Workers'
Compensation
Educational Leave
Time Away for
Community Service

Page last updated

D

# WACHOVIA CORPORATION
# SHORT TERM DISABILITY PLAN

(As Amended and Restated Effective January 1, 2004)

ATL01/11561879v1

Wachovia/Conrad 48

# WACHOVIA CORPORATION
## SHORT TERM DISABILITY PLAN

Wachovia Corporation (the "Employer") has established a plan to provide short term disability income benefits for its eligible employees and eligible employees of its participating affiliates. This instrument sets forth provisions which constitute the plan as amended and restated effective January 1, 2004. The Plan is not intended to be subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), pursuant to Department of Labor Regulation §2510.3-1(b)(2).

# TABLE OF CONTENTS

Page

ARTICLE I   DEFINITIONS AND CONSTRUCTION........................................................... 1

   1.1   Definitions..................................................................................................... 1

   1.2   Gender and Number ...................................................................................... 5

ARTICLE II   PARTICIPATION................................................................................................. 6

   2.1   Commencement of Participation................................................................... 6

   2.2   Agreement to Participate............................................................................... 6

   2.3   Cessation of Participation ............................................................................. 6

   2.4   Rehire Terms................................................................................................. 7

   2.5   Family/Medical Leave .................................................................................. 7

ARTICLE III   BENEFITS ............................................................................................................. 8

   3.1   Benefits Eligible Compensation or BEC ...................................................... 8

   3.2   Payment of Disability Benefits ................................................................... 17

   3.3   Amount and Duration of Benefits............................................................... 18

   3.4   Discontinuation of Benefits ........................................................................ 19

   3.5   Successive Periods of Disability ................................................................. 20

   3.6   Work Incentive Benefits ............................................................................. 20

   3.7   Cost of Living Freeze.................................................................................. 21

   3.8   Lump Sum Payments ................................................................................... 21

   3.9   Estimated Benefits ...................................................................................... 21

   3.10   Prorated Benefits......................................................................................... 22

   3.11   Exclusions................................................................................................... 22

   3.12   Notice and Proof of Claim .......................................................................... 23

   3.13   Source of Payments..................................................................................... 24

   3.14   Examination ................................................................................................ 24

   3.15   Right of Recovery ....................................................................................... 24

   3.16   Reimbursement Agreement, Subrogation ................................................... 24

   3.17   Workers' Compensation .............................................................................. 26

ARTICLE IV   ADMINISTRATION ......................................................................................... 27

   4.1   Administrator .............................................................................................. 27

-i-

Wachovia/Conrad 50

|       | 4.2 | Rules of Administration ................................................................................. 27 |
|       | 4.3 | Services to the Plan ...................................................................................... 27 |
|       | 4.4 | Funding Policy .............................................................................................. 27 |
|       | 4.5 | Claims Procedure .......................................................................................... 27 |
|       | 4.6 | Denial of Claim ............................................................................................. 27 |
|       | 4.7 | Legal Proceedings ......................................................................................... 28 |
|       | 4.8 | Operation ....................................................................................................... 29 |
|       | 4.9 | Responsibility for Administration ................................................................. 29 |
|       | 4.10 | Indemnification of Administrative Personnel .............................................. 29 |
| ARTICLE V | | AMENDMENT AND TERMINATION ......................................................... 30 |
|       | 5.1 | Amendment .................................................................................................... 30 |
|       | 5.2 | Termination .................................................................................................... 30 |
| ARTICLE VI | | MISCELLANEOUS ....................................................................................... 31 |
|       | 6.1 | Effect on Employment .................................................................................. 31 |
|       | 6.2 | Alienation of Benefits ................................................................................... 31 |
|       | 6.3 | Facility of Payment ....................................................................................... 31 |
|       | 6.4 | Lost Distributees ........................................................................................... 31 |
|       | 6.5 | Severability .................................................................................................... 31 |
|       | 6.6 | Applicable Law .............................................................................................. 31 |
| ANNEX A-1 | | ...................................................................................................... Annex A-1 |
| APPENDIX A | | .................................................................................................................. A-1 |
| APPENDIX B | | .................................................................................................................. B-1 |
| APPENDIX C | | .................................................................................................................. C-1 |
| APPENDIX D | | .................................................................................................................. D-1 |

ATL01/11561879v1

Wachovia/Conrad 51

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION

1.1     Definitions.  Whenever used in this Plan:

"Active Employment" means the Employee must be actively at work for the Participating Employer on a full-time or a part-time regularly scheduled basis and paid regular earnings and  perform such work either (i) at the Participating Employer's usual place of business, or (ii) at a location to which the Participating Employer's business requires the Employee to travel.  An Employee will be considered actively at work if he or she was physically at work on the day immediately preceding (i) a weekend (except where one or both of these days are scheduled days of work), (ii) holidays (except when such holiday is a scheduled work day), (iii) paid approved leave, (iv) paid time off,  (v) any non-scheduled work day, and (vi) leave required under applicable law, or a combination of any of the foregoing.  In cases where notice is provided to an Employee under the Worker Adjustment and Retraining Notification Act and the Employee remains on-call and available for work, such Employee will deemed to be in Active Employment for purposes of the Plan.

"Benefits Eligible Compensation" or "BEC" has the same meaning as "Pre-Disability Earnings" as defined in Section 3.1 of the Plan.

"Benefits from Other Income" means the amount of any disability benefits which the Participant is eligible to receive (i) under the United States Social Security Act or any other governmental program or coverage required or provided by statute (including  any amount his or her spouse, child or children receives or are eligible for because of his or her Disability) or (ii) under any workers' compensation act or law or any other act or law of like intent or application due to employment with an employer other than a Participating Employer or an affiliated company for the same or related condition.

"Calendar Year" means the twelve consecutive month period beginning on any January 1 and ending on the following December 31.

"Claims Administrator" means any third party with which the Employer has entered into an agreement relating to the provision of third party administrative services under the Plan.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Disability" or "Disabled" means the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness.  The loss of a license for any reason does not, in itself, constitute Disability.

"Disability Benefits" means the amount payable by the Plan to the Disabled or Partially Disabled Participant.  Disability Benefits are calculated based upon a weekly basis but

Wachovia/Conrad 52

are paid to an eligible Participant according to the payroll cycle used by the Participating Employer for paying normal salary and hourly wages for Employees in a similar position as the eligible Participant. Thus, for example, if the applicable payroll cycle were every two weeks, one payment representing two weeks of Disability Benefits would be paid during each regular pay period. In no event will a Participant receive more than the maximum permitted number of weeks of Disability Benefits as determined by the Plan regardless of the frequency of the payroll cycle.

"Effective Date" means January 1, 2004, the effective date of this amendment and restatement.

"Eligible Employee" means any Employee who is regularly scheduled to work for a Participating Employer. Whether an Employee is "regularly scheduled" will be determined by the Employer, in its sole discretion, in accordance with the personnel policies and practices of the Participating Employer.

"Elimination Period" means a period of eight consecutive calendar days of Disability during which time no benefit is paid. For purposes of Intermittent Chronic Disability, the term "Elimination Period" means a period of eight calendar days of Disability accumulated in a Plan Year due to the same or related condition for which no benefit is payable. Once qualified as an Intermittent Chronic Disability during a Plan Year, a new Elimination Period will not be required during the Plan Year following the Plan Year in which the Elimination Period is first satisfied, but will again need to be satisfied in the second Plan Year following the Plan Year in which the Elimination Period is first satisfied.

"Employee" means any individual employed by a Participating Employer, who is classified as an employee by the Participating Employer, and who is on the payroll of the Participating Employer. An Employee will cease to be such on his or her retirement, resignation, discharge, or death. An individual who is on leave of absence from a Participating Employer or who is receiving severance payments from a Participating Employer will be considered an Employee during such period to the extent provided in the personnel policies and practices of the Participating Employer. For any Disability that occurs prior to January 1, 2002, Employee also means any employee or member of CapTrust, LLC. For any Disability that occurs on or after January 1, 2002, Employee includes an employee or member of CapTrust, LLC only to the extent that such individual is employed by a Participating Employer (and not by CapTrust, LLC).

"Employer" means Wachovia Corporation, the sponsor and named fiduciary of the Plan, and any successor thereto that adopts the Plan.

"Hospital" or "Institution" means a facility licensed to provide care and treatment for the condition causing the Participant's Disability.

"Injury" means bodily impairment resulting directly from an accident and independently of all other causes.

Wachovia/Conrad 53

"Intermittent Chronic Disability" is a Disability of long duration which is characterized as a disease showing little change or of slow progression. It may be marked by intermissions in the course of such disease. It also includes an acute exacerbation of the same or related condition in the course of such disease. Acute has a sudden onset, severe symptoms, and a short course.

"Partial Disability" or "Partially Disabled" means as a result of the Injury or Sickness, the Participant is:

(a)     able to perform one or more, but not all, of the material and substantial duties of his or her own or any other occupation on an Active Employment or a part-time basis; or

(b)     able to perform all of the material and substantial duties of his or her own or any other occupation on a part-time basis.

Loss of a license for any reason does not, in itself, constitute a Partial Disability.

"Participant" means any Eligible Employee who has become a Participant as provided in Article II and who may be eligible to receive Disability Benefits under the Plan.

"Participating Employer" means the Employer and any company, corporation, or firm that is subsidiary to, or affiliated with, the Employer that is designated by the Employer as a Participating Employer for purposes of this Plan. As they relate to this Plan, all actions, agreements, and notices between the Claims Administrator and the Employer will be binding on such related entities. Unless otherwise provided by the Employer, Employees of any related entity that ceases to be a related entity for any reason, will be deemed to have transferred to a class of Employees not eligible for coverage under this Plan.

"Physician" means a person who:

(a)     is licensed and legally qualified to practice medicine and prescribe and administer drugs or to perform surgery; or

(b)     is a licensed and legally qualified practitioner of the healing arts in a category specifically favored under the health insurance laws of the State in which the policy was delivered and who is practicing within the terms of his or her license.

The term "Physician" will not include the Participant or his or her spouse, daughter, son, father, mother, sister, or brother.

"Plan" means the Wachovia Corporation Short Term Disability Plan set forth herein and in any Appendix hereto, and as amended from time to time.

Wachovia/Conrad 54

"Plan Administrator" means the person or committee appointed by the Employer to administer the Plan, or in the absence of such appointment, the Employer.

"Plan Year" means a twelve consecutive month period that begins on any January 1 and ends on the next following December 31.

"Pre-Disability Earnings" will have the same meaning as "Benefits Eligible Compensation" or "BEC" as defined in Section 3.1 of the Plan.

"Sickness" means illness, disease, pregnancy, or complications of pregnancy.

"Termination for Cause" means activities that cause termination of the Participant's employment (or would have caused termination of employment if the activities were discovered while the Participant was an Employee) with the Participating Employer or an affiliated company as a result of:

(a)    any act or omission that constitutes a breach of the Participant's obligation to the Participating Employer or an affiliated company, or the failure or refusal of the Participant to perform satisfactorily any duties reasonably required of the Participant, after written notification by the Participating Employer of such breach, failure or refusal and the failure of the Participant within ten (10) business days of such notification to correct such breach, failure, or refusal (other than failure by reason of incapacity due to physical or mental illness);

(b)    the commission of any fraud, misappropriation, embezzlement, or other dishonest act that may reasonably be expected to have injurious effect on the Participating Employer or an affiliated company;

(c)    reporting to work under the influence of alcohol, narcotics, or unlawful controlled substances, or any other material violation of any Employer employment policy or procedure;

(d)    conviction of a felony or of a misdemeanor, or conduct in violation of state or federal law or that would constitute a basis for a criminal charge or indictment of a felony or of a misdemeanor involving moral turpitude;

(e)    violation of any securities or commodities laws, any rules or regulations pursuant to such laws, or the rules and regulations of any securities or commodities exchange or association of which the Participating Company is a member, or violation of any similar federal, state, or local law, regulation, ordinance, or licensing requirement applicable to employees of financial institutions; or

(f)    conduct that may reasonably be expected to have a material adverse effect on the financial interest or business reputation of the Participating Employer or an affiliated company.

Wachovia/Conrad 55

"Weekly Earnings" means the Participant's earnings from all employment.

1.2     Gender and Number.  The masculine pronoun will include the feminine; the singular will include the plural; and vice versa.

ATL01/11561879v1

**Wachovia/Conrad 56**

## ARTICLE II
## PARTICIPATION

2.1    <u>Commencement of Participation</u>.  Participation in the Plan will commence as follows:

(a)    Each Eligible Employee who was a Participant on the date immediately preceding the Effective Date will be eligible to continue as a Participant in the Plan as of the Effective Date.

(b)    Each other Eligible Employee will be eligible to become a Participant in the Plan on the first day he or she is physically at work on or after the date on which he or she completes three months of Active Employment.

Coverage for an Eligible Employee will commence on the date the Eligible Employee becomes a Participant; provided, however, that coverage will be delayed for an Eligible Employee if he or she is not in Active Employment because of Injury or Sickness.  Such coverage will commence on the date the individual returns to Active Employment.  Notwithstanding the foregoing, coverage for an individual who was a Participant on December 31, 2003 or who was employed by an acquired company on the day immediately preceding the date on which employees of the acquired company became eligible for coverage under this Plan, but who was not in Active Employment because of an Injury or Sickness on January 1, 2004 or the day on which employees of the acquired company became eligible for coverage under this Plan, will not be delayed under the preceding sentence if such individual was an Eligible Employee in Active Employment immediately prior to the Injury or Sickness.  Whether an Eligible Employee becomes a Participant (and when coverage commences) will be determined by the Plan Administrator in its sole discretion.

2.2    <u>Agreement to Participate</u>.  By becoming a Participant, each Eligible Employee will for all purposes be deemed conclusively to have assented to the provisions of the Plan and all amendments thereto.

2.3    <u>Cessation of Participation</u>.  Coverage for a Participant will cease on the earliest of the following dates:

(a)    the date this Plan terminates, but without prejudice to any claim originating prior to the time of termination;

(b)    the date the Participant is no longer an Eligible Employee;

(c)    the last day the Participant is in Active Employment.  Cessation of Active Employment will be deemed termination of employment even if the Participant continues to receive pay following his or her termination date.  However, the Participant's coverage will be continued if he or she is absent due to Disability during the Elimination Period; and

Wachovia/Conrad 57

(d)    the date of the Participant's written resignation or the date of the Participating Employer's receipt of the Participant's written resignation, whichever is earlier.

2.4    <u>Rehire Terms</u>. If a former Employee, who was displaced (involuntarily terminated), as determined by the Employer under the Wachovia Corporation Severance Pay Plan, due to layoff, merger, or consolidation, is re-hired by a Participating Employer within 12 months of his or her termination date, all past periods of Active Employment with the Participating Employer will be counted for purposes of the service requirement under Section 2.1.

If a former Employee, who was displaced (involuntarily terminated), as determined by the Employer under the Wachovia Corporation Severance Pay Plan, due to layoff, merger, or consolidation, is re-hired by a Participating Employer more than 12 months after his or her termination date, he or she is considered to be a new Employee for purposes of Section 2.1.

2.5    <u>Family/Medical Leave</u>. A Participant's coverage may be continued under this Plan during any period that he or she is not in Active Employment because he or she is absent due to an approved leave of absence under the Family and Medical Leave Act of 1993. Coverage will be provided at the same benefit levels in effect on the day immediately prior to the day the leave begins. Any change in the Plan's benefit levels that may occur while the Employee is on Family/Medical Leave will apply to such Participant.

Wachovia/Conrad 58

**ARTICLE III**
**BENEFITS**

3.1    Benefits Eligible Compensation or BEC.

(a)    Overview.  Benefits under the Plan are determined using a concept of Benefits Eligible Compensation or BEC.  In this Plan, the terms "BEC" and "Pre-Disability Earnings" are equivalent.

(b)    Definitions for BEC.

(1)    "Grandfathered Annual Benefits Base Rate" or "Grandfathered ABBR" means the amount of earnings on which pay-related employee benefits were formerly calculated for certain grandfathered Participants, as specified in the Frozen ABBR field of the Participating Employer's payroll records.

(2)    "Business Unit Default Amount" or "BUDA" means the Participant's Earnings (expressed in an annual amount) as determined by the Participant's Business Unit when a Participant has less than one (1) Month of Participation.  See definition of "Rolling Twelve Month Amount."

(3)    "Comp Rate" means (i) for a salaried Participant, the Participant's base salary, as specified in the Comp Rate field of the Participating Employer's payroll records for such Participant or (ii) for a Participant paid an hourly wage, the Participant's "hourly rate" multiplied by the Participant's "scheduled number of hours," as such amounts are set forth in the Participating Employer's payroll records for such Participant.

(4)    "Compensation" means the sum of a Participant's

(i)    base salary;

(ii)    hourly wages;

(iii)    seventy percent (70%) of "eligible functional incentive pay" (as set forth in Appendix B); and

(iv)    contributions on behalf of the Participant determined on a salary-reduction basis to the Participating Employer's 401(k) savings plan, the Participating Employer's flexible benefit program, or the Participating Employer's qualified transportation fringe benefit plan.

An element of Compensation set forth above will only be counted once in the definition of Compensation (i.e., double counting is prohibited).

A Participant's Compensation expressly *excludes*

-8-

Wachovia/Conrad 59

(i)     overtime and shift differential pay;

(ii)     salary deferrals under a non-qualified deferred compensation plan;

(iii)     severance pay;

(iv)     Participating Employer contributions to benefit plans; and

(v)     all other forms of remuneration which are not expressly listed above as being included in the definition of Compensation.

For purposes of this definition, "Compensation" includes only amounts actually paid to the Participant or amounts that should have been paid but for a payroll processing delay; it does not include earned but unpaid amounts.

(5)     "Months of Participation" means any calendar month in which the Participant is eligible to participate in either the flexible benefit plan or the short term disability plan of the Participating Employer.

(6)     "Pre-Disability Earnings" or "BEC" means the greatest of the following three figures divided by fifty-two (52) (i.e., the number of weeks in a calendar year):

(i)     the Participant's Grandfathered ABBR;

(ii)     the Participant's Comp Rate; and

(iii)     the Participant's Rolling Twelve Month Amount.

A Participant's BEC is determined as of the business day immediately preceding the date the Participant incurs a Disability. Note, however, that the Rolling Twelve Month Amount is actually calculated once each month as set forth in Section 3.1(b)(7) below.

(7)     "Rolling Twelve Month Amount"

(i)     General Definition. The following is determined as of the last business day of each month for each Participant who is eligible to participate in this Plan on such date. For example, if one becomes Disabled during April, the Rolling Twelve Month Amount is calculated for the twelve (12) months ending March 31.

1.     Twelve Months of Participation. If a Participant has twelve (12) Months of Participation during the most recent twelve (12) consecutive calendar months, the Participant's Rolling Twelve Month Amount is the sum of the Participant's Earnings (as defined below) for such twelve (12) consecutive calendar months.

Wachovia/Conrad 60

      2.    <u>Less than Twelve but more than One Month of Participation</u>. If a Participant has less than twelve (12) Months of Participation during the most recent twelve (12) consecutive calendar months but at least one (1) Month of Participation during such twelve (12) consecutive month period, the Participant's Rolling Twelve Month Amount is determined as follows:

      A.    <u>Step One</u>. Determine the number of Months of Participation earned by the Participant during the most recent twelve (12) consecutive calendar month period.

      B.    <u>Step Two</u>. Compute the sum of the Participant's Earnings (as defined below) for each of the months identified in Step One above.

      C.    <u>Step Three</u>. Determine the monthly average of the Participant's Earnings identified in Step Two above.

      D.    <u>Step Four</u>. Multiple the average Earnings determined in Step Three above by the number of calendar months out of the most recent twelve (12) consecutive calendar months for which the Participant did <u>not</u> earn a Month of Participation (e.g., 12 months minus the number of months identified in Step One above).

      E.    <u>Step Five</u>. Add the amount in Step Four to the amount in Step Two. The resulting sum is the Participant's Rolling Twelve Month Amount.

      F.    Special Rule for New Hires and Rehires.

      (I)    If a Participant is hired or rehired within the most recent twelve (12) consecutive calendar months, the Participant's Earnings for his or her first Month of Participation following his or her date of hire or rehire will be one-twelfth (1/12th) of the Participant's Comp Rate, if the Participant has a Comp Rate, or one-twelfth (1/12th) of the Participant's BUDA, if the Participant does not have a Comp Rate.

      (II)    After the Participant's initial Month of Participation following his date of hire or rehire, the Participant's Earnings for such initial month will be the greater of (x) the Earnings described in subparagraph F(I) above or (y) the Participant's actual Compensation for such initial month.

Wachovia/Conrad 61

G.   <u>Example</u>.  Assume a Participant received Earnings as follows:

| | |
|---|---|
| October 2004 | $4,000 |
| November 2004 | $4,000 |
| December 2004 | $4,000 |
| January 2005 | $4,000 |
| February 2005 | $4,000 |

The Participant terminated employment in February 2005. The Participant is then rehired on August 25, 2005 with a Comp Rate of $60,000 ($5,000/month). The Participant receives the following Earnings:

| | |
|---|---|
| August 2005 | $5,000* |
| September 2005 | $5,000 |

\* The Participant actually received only five days of pay (Participant was hired on 8/25.)  However, the entire $5,000 is  counted – See subparagraph F above for special rule.

The Participant's Rolling Twelve Month Amount is computed as follows:

Step One – The Participant has seven Months of Participation in the most recent twelve (12) consecutive months (October 2004 through February 2005 and August 2005 through September 2005).

Step Two – The Participant's aggregate Earnings during the seven month period is $30,000 ($4,000 x 5 months plus $5,000 x 2 months).

Step Three – The average monthly Earnings during this period is $4,285.72  ($30,000 divided by seven months).

Step Four – The Participant did not have Months of Participation during five of the most recent twelve (12) consecutive months  (March 2005 through July 2005).  The product of $4,285.72 and five months is $21,428.60 ($4,285.72 x 5).

Step Five – The sum of $30,000 (Step Two) and $21,428.60 (Step Four) is $51,428.60.

Accordingly, the Participant's Rolling Twelve Month Amount is $51,428.60.

ATL01/11561879v1

Wachovia/Conrad 62

3.    Less than One Month of Participation. If a Participant has less than one (1) Month of Participation, the Participant's Rolling Twelve Month Amount is either (1) the Participant's Comp Rate, when the Participant has a Comp Rate; or (2) the Participant's Business Unit Default Amount, when the Participant has no Comp Rate.

4.    Definition of Earnings. A Participant's "Earnings" (as defined below) is determined each month during which the Participant has earned a Month of Participation. A Participant's "history" of Earnings is then used in computing the Participant's Rolling Twelve Month Amount. A Participant's Earnings for a particular month is equal to the greatest of (i) the Participant's Compensation for that month, (ii) one-twelfth (1/12th) of the Participant's Grandfathered ABBR for that month or (iii) one-twelfth (1/12th) of the Participant's Comp Rate for that month.

(ii)    Special Transition Rule for Rolling Twelve Month Amounts in 2001.

1.    Background. Prior to 2001, the Plan utilized a different definition of Compensation. The current Plan utilizes a Rolling Twelve Month Amount in determining a Participant's Pre-Disability Earnings. For a Participant who becomes disabled at any time in 2001 this requires the Plan to look back to 2000 to determine the Rolling Twelve Month Amount.

2.    2001 Transition Rule. For a Participant who becomes disabled between February 1, 2001 and December 31, 2001, his or her Rolling Twelve Month Amount is the sum of the following two components:

A.    The Participant's Earnings received during any full Month(s) of Participation in 2001; and

B.    The Participant's "401 Accumulator" minus overtime and shift differential for each month in 2000 for which the Participant does not have a corresponding full Month of Participation in 2001 (i.e., if Participant has January, February, and March as full Months of Participation in 2001, then April through December of 2000 would be used in determining the Rolling Twelve Month Amount).

3.    January 2001 Transition Rule. If a Participant becomes Disabled during January 2001 and becomes entitled to benefits under this Plan, the Participant's Rolling Twelve Month Amount will equal the amount set forth in the Participant's "Life Annual Amount" (as set forth in the Participating Employer's January 2001 payroll records for such Participant).

(iii)    Special Transition Rule for Rolling Twelve Month Amounts in 2002.

Wachovia/Conrad 63

1.    <u>Background</u>. Wachovia Corporation (previously unrelated to First Union Corporation) ("Pre-Merger Wachovia") merged into First Union Corporation on September 1, 2001. Immediately thereafter First Union changed its name to Wachovia Corporation ("Post-Merger Wachovia"). From September 1, 2001 until December 31, 2001, employees of Pre-Merger Wachovia as well as new hires or other employees who were put on the Pre-Merger Wachovia payroll ("Legacy Wachovia Employees"), participated in the long term disability plan maintained by Pre-Merger Wachovia. Effective January 1, 2002, Legacy Wachovia Employees who are otherwise eligible to participate under this Plan will begin participation in this Plan. However, the Legacy Wachovia Employees do not have a Rolling Twelve Month Amount. Accordingly, the following special rules will be used during 2002 to determine the Rolling Twelve Month Amount for a Legacy Wachovia Employee who is eligible to participate in this Plan.

2.    <u>2002 Transition Rule</u>. For a Participant described in the preceding paragraph, his or her Rolling Twelve Month Amount for the 2002 calendar year will be the sum of the following two components:

A.    The Participant's Earnings received during any full Month(s) of Participation in 2002 and

B.    A portion of the Participant's "2001 Benefits Pay" (as defined in subparagraph C below) based on the number of months in 2001 for which the Participant does not have a corresponding full Month of Participation in 2002. For example, if the Participant has January, February and March as full Months of Participation in 2002, then nine-twelfths of the Participant's 2001 Benefits Pay (representing nine months of 2001 or April through December of 2001) would be used in determining the Rolling Twelve Month Amount.

C.    A Participant's 2001 Benefits Pay will be the greater of (I) or (II) below:

(I)    The Participant's annualized production income plus nonforgiveable draw for January 2001 through June 2001; or

(II)    the Participant's actual 2000 production income.

The terms "production income" and "nonforgiveable draw" will be determined by the Plan Administrator in its sole discretion. In making its determination, the Plan Administrator may consider the Participant's payroll records and the terms as used by the severance plan maintained by Pre-Merger Wachovia Corporation in effect prior to the Effective Date.

D.    Notwithstanding the general definition of a Participant's Benefits Pay, during 2002, the monthly Benefits Pay for Participants described in paragraph E(I) below is limited to $200,000 divided by twelve (12). Notwithstanding the general

Wachovia/Conrad 64

definition of a Participant's Benefits Pay, during 2002, the monthly Benefits Pay for Participants described in paragraph E(II) below is limited to $80,000 divided by twelve (12).

        E.    The following Participants are identified for purposes of the limitation on benefits Pay (see subsection D above).

        (I)    The following positions are the only positions for which commissions and other production-related earnings paid to a Participant are included in the computation of the Participant's Benefits Pay and for which the Participant's Benefits Pay is limited during 2002.

| | |
|---|---|
| Investment Consultant Associate | Investment Consultant I |
| Investment Consultant Senior | BEJS Managing Director, Sales |
| Branch Manager | Sales Manager |
| Financial Consultant | Financial Associate |
| Financial Consultant/Trainee | Consulting Director/CT |
| Consulting Manager/CT | Consulting Associate/CT |
| CT Analyst Associate | Producer Insurance Services |
| Trader | Trader Equity |
| Salesperson III | Senior Trader Equity |
| Senior Trader Equity $5mm+ | Salesperson II Equity |
| Salesperson III Equity | IJL Capital Market (Exempt/Temp.) |

        (II)    The following positions are the only Mortgage jobs in which the Participants working in such Mortgage jobs are subject to the limitations on Benefits Pay during 2002.

| | |
|---|---|
| Mortgage Loan Originator | Mortgage Loan Sales |
| Mortgage Sales Manager | Affordable Housing, MLO |
| Mortgage Sales-Team Leader | |

        (iv)    Special Transition Rule for Rolling Twelve Month Amounts in 2004

        1.    Background.  On July 1, 2003, Wachovia Corporation and Prudential Financial, Inc. entered into a joint venture to form a new limited liability corporation known as Wachovia Prudential Financial Advisors ("WPFA").  WPFA has a wholly owned subsidiary known as Wachovia Securities, LLC ("Wachovia Securities").  As a result of forming WPFA and Wachovia Securities, substantially all the former employees of Prudential Securities, Inc. ("PSI") and certain employees of entities related to PSI transferred employment to Wachovia Corporation or to Wachovia Securities ("PSI Transferred Employees").  From July 1, 2003 to December 31, 2003, the PSI Transferred Employees remained participants in the short-term disability plan maintained by PSI.  Accordingly, prior to January 1, 2004, PSI

Wachovia/Conrad 65

Transferred Employees were not eligible under this Plan. Effective January 1, 2004, PSI Transferred Employees who are otherwise eligible to participate under this Plan will begin participation in this Plan. However, the PSI Transferred Employees do not have a Rolling Twelve Month Amount. Accordingly, the following special rules will be used during 2004 to determine the Rolling Twelve Month Amount for a PSI Transferred Employee who is eligible to participate in this Plan.

Since Wachovia Corporation does not have independent information to recompute a PSI Transferred Employee's 2004 Rolling Twelve Month Amount, the information provided by PSI to Wachovia Corporation will be deemed conclusive and determinative and cannot be challenged by a PSI Transferred Employee.

        2.    2004 Transition Rule. For a Participant described in the preceding paragraph, his or her Rolling Twelve Month Amount for the 2004 calendar year will be is the sum of the following two components:

        A.    The Participant's Earnings during any full Month(s) of Participation in 2004 and

        B.    A portion of the Participant's "PTE 2003 Benefits Earnings (as defined in paragraph C below) based on the number of months in 2004 for which the Participant does not have a corresponding full Month of Participation in 2004. For example, if the Participant has January, February and March as full Months of Participation in 2004, then nine-twelfths of the Participant's PTE 2003 Benefits Earnings (representing nine months of 2003 or April through December 2003) would be used in determining the Rolling Twelve Month Amount.

        C.    A Participant's PTE 2003 Benefit Earnings depends upon the Participant's job title at PSI as of July 1, 2003 (or the Participant's most recent job at PSI if the Participant left PSI earlier than July 1, 2003 and was hired by Wachovia.)

        (I)    If the Participant last held the job title of Financial Advisor, Financial Advisor in Training, or Branch Manager (as such job titles were determined by PSI), the Participant's PTE 2003 Benefits Earnings is the sum of the Participant's "monthly earnings" for the twelve months of employment with PSI ending on June 30, 2003 (i.e., the period beginning July 1, 2002 and ending June 30, 2003). If the Participant did not receive "monthly earnings" from PSI for the entire twelve-month period ending on June 30, 2003, the actual "monthly earnings" that the Participant did receive during such twelve month period will be annualized. "Monthly earnings" has the same definition as defined in the Participant's PSI Group Policy Number DG-16171-NY for employees of Prudential Securities, Incorporated underwritten by Prudential Insurance Company of America in effect as of July 31, 2003 (the "PSI Group Policy"). In general, "monthly earnings" means base pay, commissions, overtime, deferred compensation when earned (not paid), bonuses, and other forms of compensation paid by PSI during a calendar month.

Wachovia/Conrad 66

(II)     If the Participant's last job title was anything other than Financial Advisor, Financial Advisor in Training, or Branch Manager, the Participant's PTE 2003 Benefit Earnings is the greater of the following two amounts:

i.      The amount of the Participant's "benefit earnings" (as defined in the PSI Group Policy) for the 2002 calendar year.  In general, "benefit earnings" means income from commissions, bonuses and overtime.

ii.     The amount of the Participant's gross monthly base pay from PSI for the month of July 2003.

(v)     <u>Example of Rolling Twelve Month Amount</u>.  Assume a Participant becomes disabled on October 15, 2001.  The Participant had Earnings of $4,000 per month for all of 2001 up until the date of her Disability.  The Participant had Earnings of $3,000 per month for all of 2000.  The Participant's Rolling Twelve Month Amount is $45,000 calculated as follows:

1.      Participant's actual Earnings for 2001 equals $36,000 ($4,000 for each of the nine full months from January through September; because Participant did not earn Compensation for the full month of October, any actual Compensation from October is not counted in computing this number); and

2.      Participant's actual Earnings for 2000 equals $9,000 ($3,000 for each of the three months of October, November, and December.)

3.      The sum of $36,000 and $9,000 is $45,000.

(c)     <u>Special Rules</u>.

(1)     <u>Severance Pay</u>.  Note, a Participant who is receiving severance pay is <u>not</u> eligible to receive benefits under this Plan.  However, in certain circumstances (as described below), severance pay may be taken into account in computing a Participant's BEC.

(i)     <u>Eligible for Flexible Benefit Plan</u>.  If a Participant is eligible to participate in the flexible benefit plan while receiving severance pay, severance benefits paid to the Participant while eligible for such plan will (on an annualized basis) be substituted for the Participant's Comp Rate and used in determining the Participant's BEC or Pre-Disability Earnings under this Plan.  Thus, for example, if a Participant who received severance pay while eligible for the flexible benefit plan was later rehired, the individual's BEC would reflect severance pay.

(ii)    <u>Not Eligible for Flexible Benefit Plan</u>.  If a Participant is not eligible to participate in the flexible benefit plan, any severance paid to the Participant during such period of ineligibility will not be used in determining BEC under this Plan.

Wachovia/Conrad 67

(2)      Change in Eligibility Status. This paragraph addresses how BEC is computed for a Participant who moves from an ineligible status to an eligible status (e.g., from authorized leave of absence to an active/benefits eligible position).

(i)      If a Participant moves from an ineligible status to an eligible status under this Plan and is eligible for the first time to participate in the Plan or if during the most recent twelve (12) consecutive calendar months the Participant was ineligible to participate in the Plan, the Participant's BEC will be determined as if the Participant were a new hire.

(ii)      If a Participant moves from an ineligible status to an eligible status under this Plan, but such Participant had within the most recent twelve (12) consecutive calendar months been eligible to participate in this Plan, the Participant will be treated as a rehire; however, the special rule described in Section 3.1(b)(7)(i)(2)(F)(I) will not apply.

3.2      Payment of Disability Benefits.

(a)      When the Plan receives proof that a Participant is Disabled and requires the regular attendance of a Physician, the Plan will pay the Participant a Disability Benefit after the end of the Elimination Period; provided, however, that if the Participant continues to be Disabled after the end of the Elimination Period, Disability Benefits will be paid retroactive to the first day of Disability. Subject to the provisions of this Article III, the Disability Benefit will be paid for the period of Disability if the Participant provides proof of continued (i) Disability, and (ii) regular attendance of a legally qualified Physician and compliance with the recommended course of treatment for the disabling condition. Such proof must be given upon the request of the Plan Administrator or the Claims Administrator and at the Participant's expense.

(b)      For the purpose of determining Disability, the Injury must occur and Disability must begin while the Employee is a Participant.

Wachovia/Conrad 68

3.3    Amount and Duration of Benefits.

(a)    The amount and duration of Disability Benefits will be determined in accordance with the following schedule:

| Length of Service | Weeks of Disability Benefits Per Year Paid at Stated Percentage of Pre-Disability Earnings | |
| --- | --- | --- |
| | 100% (less Benefits from Other Income) | 60% (less Benefits from Other Income) |
| Less than 3 months of service | 0 | 0 |
| 3 months – 2 calendar years | 4 | 22 |
| 3 – 4 calendar years | 6 | 20 |
| 5 – 7 calendar years | 10 | 16 |
| 8 – 9 calendar years | 13 | 13 |
| 10 or more calendar years | 26 | 0 |

The following rules will apply for purposes of this paragraph (a):

(1)    A Participant's length of service for a Plan Year will be determined as of January 1 of such Plan Year.

(2)    No Disability Benefits will be payable with respect to any week during which the Participant is receiving benefits under any workers' compensation act or law or any other act or law of like intent or application on account of such Disability and the number of weeks of Disability Benefits payable with respect to any period of Disability will be reduced by the number of weeks of benefits received by the Participant under any such workers' compensation or similar act or law on account of such Disability.

(3)    If Disability Benefits commence in a Plan Year and continue to be paid during the following Plan Year, the weeks of Disability Benefits paid in the second Plan Year will be counted against that Plan Year's annual allotment of weeks of Disability Benefits, whether Disability Benefits are being paid at 100% or 60%. Furthermore, the level of payments (100% or 60%) will continue to be determined in accordance with the schedule above. The foregoing will apply equally in the case of a Participant who has a Successive Disability that is treated a as part of the prior period of Disability under Section 3.5(a) and returns to employment in a subsequent Plan Year.

(4)    In no event will the Plan pay more than 26 weeks of Disability Benefits in any Plan Year.

Wachovia/Conrad 69

(5)     Notwithstanding the foregoing, any Participant who has an officer title of assistant vice president (or an equivalent officer title) or above as of December 31, 2002 and has continued on as an Employee since such time will be entitled to 26 weeks of Disability Benefits paid at 100% of Pre-Disability Earnings less Benefits from Other Income, provided the Participant's Disability occurs on or prior to August 31, 2004.  For purposes of the foregoing, a Participant will be deemed to have continued on as an Employee if he is reemployed with the Employer after being terminated due to a divestiture or displacement, provided such reemployment occurs on or prior to August 31, 2004.

(b)     Notwithstanding the foregoing, the Disability Benefit of a Participant who was receiving benefits on December 31, 1997, under the terms of the Plan in effect on such date will continue to be paid in the accordance with the terms of the Plan in effect on such date.

(c)     Notwithstanding the foregoing, the Disability Benefit of a Participant who was receiving benefits under a disability plan sponsored by a Participating Employer immediately preceding the date on which such entity became a Participating Employer will continue to be paid in the accordance with the terms of the disability plan in effect on such date.  If such prior disability plan contains a provision regarding successive periods of disability, such rules will continue to apply (and benefits will be paid under the prior plan) even if the Participant engages in Active Employment under this Plan.

3.4     <u>Discontinuation of Benefits</u>.  The Disability Benefit will cease on the earliest of:

(a)     the date the Participant is no longer Disabled;

(b)     the end of the maximum benefit period in Section 3.3(a) or the date the Participant is able to work in his or her own occupation on a part-time basis (with or without reasonable accommodation or modification), and is offered such a position by the Employer, but chooses not to;

(c)     the date the Participant's Weekly Earnings exceed 80% of his or her Pre-Disability Earnings;

(d)     except as prohibited by applicable law, the Employer determines that the Participant is engaging or has engaged in conduct that would result in Termination for Cause;

(e)     the date the Participant is no longer under the regular attendance of a legally qualified Physician;

(f)     the date the Participant ceases to comply with the course of treatment recommended by his or her Physician for the disabling condition;

(g)     the date the Participant refuses to be examined or evaluated for purposes of determining the continuing nature of the Disability; or

Wachovia/Conrad 70

(h)     the date the Participant dies.

3.5     <u>Successive Periods of Disability</u>. With respect to this Section, "Successive Periods of Disability" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Disability Benefit was payable.

(a)     A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability Benefits under this Plan, a Participant:

(1)     returns to his or her own occupation on an Active Employment basis for less than two (2) continuous weeks; and

(2)     performs all the material and substantial duties of his or her own occupation.

(b)     To qualify for a Successive Period of Disability Benefit, the Participant must experience more than a 20% loss of Pre-Disability Earnings.

(c)     Benefit payments on account of a Successive Period of Disability that is treated as part of the prior period of Disability under paragraph (a) will be subject to the terms of this coverage for the prior Disability.

(d)     If a Participant returns to his or her own occupation on an Active Employment basis for two (2) continuous weeks or more, the Successive Period of Disability will be treated as a new period of Disability and the Participant must complete another Elimination Period.

(e)     If a Participant becomes eligible for coverage under any other group short-term disability plan, this Successive Period of Disability provision will cease to apply to that Participant.

3.6     <u>Work Incentive Benefits</u>. To encourage Participants to return to work, a Participant who has satisfied the Elimination Period may be eligible to continue to receive a Disability Benefit while engaging in Active Employment in accordance with the provisions of this Section 3.6.

(a)     For the purposes of this provision, the Participant may satisfy the Elimination Period if he or she is Disabled or Partially Disabled, or a combination of Disabled and Partially Disabled, during such time.

(b)     A Disability Benefit will be paid for the period of Partial Disability if proof is provided upon request of the Plan Administrator or the Claims Administrator and at the Participant's expense of continued:

(1)     Partial Disability; and

ATL01/11561879v1

Wachovia/Conrad 71

(2)    regular attendance of a legally qualified Physician and compliance with the recommended course of treatment for the disabling condition.

(c)    For the purpose of determining Partial Disability, the Injury or Sickness must occur and Partial Disability must begin while the Employee is a Participant.

(d)    If the Participant is eligible for benefits described in this Section 3.6, the Plan will pay Disability Benefits as follows:

(1)    If, at any time while Disability Benefits are payable under Section 3.3, the Participant's Weekly Earnings are less than 20% of his Pre-Disability Earnings, a Disability Benefit determined under Section 3.3(a) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.

(2)    If the Participant's Weekly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than or equal to 80% of his or her Pre-Disability Earnings, a Disability Benefit determined under Section 3.3(a) will continue to be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan. If the Disability Benefit plus the Participant's Weekly Earnings would exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be reduced so that the Disability Benefit plus the Participant's Weekly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.

(3)    If the Participant's Weekly Earnings exceed 80% of his Pre-Disability Earnings, Disability Benefits will cease.

3.7    <u>Cost of Living Freeze</u>. After the first deduction for each of the Benefits from Other Income, the Disability Benefit will not be further reduced due to any cost of living increases payable under the Benefits from Other Income provision of this Plan. This provision does not apply to increases received from any form of employment.

3.8    <u>Lump Sum Payments</u>. Benefits from Other Income which are paid in a lump sum will be prorated on a weekly basis over the time period to which the lump sum relates or the maximum benefit period described in Section 3.3(a), whichever is less. If the lump sum does not relate to a specific time period, the lump sum will be prorated over the expected benefit payment period.

3.9    <u>Estimated Benefits</u>. The Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, may estimate and include in the computation of benefits the amount the Participant is eligible to receive under any of the plans referred to Benefits from Other Income.

With respect to benefits payable under the Social Security Act, the Participant must make application with the Social Security Administration for benefit payments under that plan, when the Claims Administrator determines that the Disability will extend beyond a 12 month period.

Wachovia/Conrad 72

If he or she does not make application for Social Security disability benefits when the Claims Administrator requires, the Claims Administrator will begin to reduce the Participant's benefit by an estimated Social Security disability benefit amount. If the application is denied by the Social Security Administration, and the Claims Administrator is not in agreement with that agency's decision, the Participant is obligated to make timely appeals of the denial through all administrative appeal processes including the Administrative Law Judge level. If the Participant does not appeal the denial, the Claims Administrator will begin to reduce the Participant's benefit by an estimated Social Security disability benefit amount.

Benefit payments from any other source, referred to in the Benefits from Other Income provision of the Plan, will reduce the benefits payable under the Plan if the Claims Administrator makes a reasonable determination that the Participant:

> (a)     will be paid upon completion of the claim made under such plan; or

> (b)     would have been paid if the Participant pursued the claim under such plan within the required time.

In the event that the Claims Administrator overestimates an amount the Participant would have received from any plans referred to in the Benefits from Other Income provision of the Plan, the Claims Administrator will reimburse the Participant for such amount.

 3.10   Prorated Benefits. For any period which a Disability Benefit is payable that does not extend through a full week, the benefit will be paid on a prorated basis. The rate will be 1/7th per day for such period of Disability.

 3.11   Exclusions. This Plan will not pay benefits in connection with any Disability due to:

> (a)     war, declared or undeclared or any act of war;

> (b)     intentionally self-inflicted injuries, while sane or insane;

> (c)     active Participation in a Riot;

> (d)     the Participant's committing of or the attempting to commit an indictable offense, or criminal act whether or not the Participant knows the actions they have taken constitute an indictable offense or criminal act; or

> (e)     any Injury or Sickness that arises out of or in the course of employment with an employer other than a Participating Employer or an affiliated company.

For purposes of paragraph (c):

"Participation" will include promoting, inciting conspiring to promote or incite, aiding abetting, and all forms of taking part in, but will not include actions taken in defense of public or private

**Wachovia/Conrad 73**

property, or actions taken in defense of the person of the Participant, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and firemen.

"Riot" will include all forms of public violence, disorder, or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

3.12    Notice and Proof of Claim.

(a)    *Notice.* Notice of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date of the loss upon which the claim is based, or as soon thereafter as it is reasonably possible to do so. Notwithstanding the foregoing, in the case of an Intermittent Chronic Disability, the following notice requirements will apply:

(1)    Notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date on which the Elimination Period has been satisfied, or as soon thereafter as it is reasonably possible to do so.

(2)    After the Elimination Period has been satisfied, notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of any day of absence due to Disability for the same or related condition, or as soon thereafter as it is reasonably possible to do so.

Any notice of claim under this Section 3.11(a) must be received in a form or format satisfactory to the Claims Administrator.

(b)    *Proof.*

(1)    Proof of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, no later than 60 calendar days after the end of the Elimination Period. For this purpose, "proof" means (a) the evidence in support of a claim for benefits in a form or format satisfactory to the Claims Administrator, (b) an attending Physician's statement in a form or format satisfactory to the Claims Administrator, completed and verified by the Participant's attending Physician, and (c) provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence that may be required by the Claims Administrator in support of a claim for benefits. Notwithstanding the foregoing, the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, may also consider other evidence of a claimed Disability, including, but not limited to evidence discovered or otherwise developed by the Plan Administrator or the Claims Administrator.

Wachovia/Conrad 74

property, or actions taken in defense of the person of the Participant, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and firemen.

"Riot" will include all forms of public violence, disorder, or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

3.12   Notice and Proof of Claim.

(a)   *Notice.*   Notice of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date of the loss upon which the claim is based, or as soon thereafter as it is reasonably possible to do so. Notwithstanding the foregoing, in the case of an Intermittent Chronic Disability, the following notice requirements will apply:

(1)   Notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the date on which the Elimination Period has been satisfied, or as soon thereafter as it is reasonably possible to do so.

(2)   After the Elimination Period has been satisfied, notice of the claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of any day of absence due to Disability for the same or related condition, or as soon thereafter as it is reasonably possible to do so.

Any notice of claim under this Section 3.11(a) must be received in a form or format satisfactory to the Claims Administrator.

(b)   *Proof.*

(1)   Proof of claim must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, no later than 60 calendar days after the end of the Elimination Period. For this purpose, "proof" means (a) the evidence in support of a claim for benefits in a form or format satisfactory to the Claims Administrator, (b) an attending Physician's statement in a form or format satisfactory to the Claims Administrator, completed and verified by the Participant's attending Physician, and (c) provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence that may be required by the Claims Administrator in support of a claim for benefits. Notwithstanding the foregoing, the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, may also consider other evidence of a claimed Disability, including, but not limited to evidence discovered or otherwise developed by the Plan Administrator or the Claims Administrator.

Wachovia/Conrad 75

(2)      Failure to furnish such proof within such time will not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required, and the Claims Administrator is able to certify the period of Disability.

(3)      Proof of continued Disability and regular attendance of a Physician must be given to the Plan Administrator, or the Claims Administrator acting as agent of the Plan Administrator, within 60 calendar days of the request for the proof.

3.13    Source of Payments. All Disability Benefits and associated expenses (unless paid by the Employer) under the Plan will be paid exclusively by a Participating Employer out of its general assets (including payments made by a Claims Administrator as agent for the Participating Employer).

3.14    Examination. The Plan Administrator, at its own expense, will have the right and opportunity to have a Participant, whose Injury or Sickness is the basis of a claim, examined by a Physician or vocational expert of its choice. This right may be used as often as reasonably required.

3.15    Right of Recovery. If a benefit overpayment on any claim occurs, including overpayment resulting from fraudulent claims or claims paid in error, reimbursement must be made by the Participant to the Plan within 60 days of such overpayment, or the Plan has the right to reduce future benefit payments until such reimbursement is received. The Plan, or the Claims Administrator acting as agent for the Plan, has the right to recover such overpayments from the Participant or the Participant's estate.

3.16    Reimbursement Agreement, Subrogation.

(a)      If a Participant receives or becomes eligible to receive any benefit (a "Reimbursable Benefit") arising from an accident, injury, or illness for which the Participant has, may have, or has asserted any claim or rights to recovery against a third party or parties, then any payments by this Plan with respect to such Reimbursable Benefit will be made on the condition that this Plan will be reimbursed by the Participant or the Participant's estate, to the extent of any amount or amounts received or receivable from or with respect to the third party or parties, whether by way of suit, judgment, settlement, compromise, or otherwise and without regard to how the amount received from the third party or parties is characterized. Any monies recovered by the Participant or the Participant's estate must be held in constructive trust for the benefit of the Plan until such time that the Plan is reimbursed.

(b)      The "make whole doctrine" arising under federal common law and under state law does not apply to the Plan's reimbursement or subrogation rights. The Plan has the right to first reimbursement out of any recovery and retains its subrogation rights described herein regardless of whether the Participant's receipt of payment from other sources fully reimburses the Participant or whether the Participant has been "made whole." The Plan's

-24-

Wachovia/Conrad 76

reimbursement and subrogation rights apply to the full amount the Participant receives without regard to the nature or characterization of the proceeds whether by judgment, settlement, arbitration award, or otherwise (unreduced by attorney's fees and other expenses of recovery). The Plan does not share in the cost of the Participant's recovery.

(c)     To the extent set forth in the summary plan descriptions and any subsequently issued summary of material modifications, the Participant may be obligated to sign a reimbursement agreement, as prescribed by the Plan Administrator, before any Reimbursable Benefits are paid from this Plan. If Reimbursable Benefits are to be paid with respect to a dependent who is a minor, the Plan Administrator may require the Participant to execute a reimbursement agreement on the minor's behalf. All Participants will be obligated to cooperate with this Plan in its efforts to enforce its reimbursement rights and to refrain from any actions that interfere with those rights. The Plan will have the right to take all appropriate actions necessary to enforce its reimbursement rights in the event that a Participant refuses to sign a reimbursement agreement, refuses to reimburse this Plan in accordance with the Plan's reimbursement rights, or takes any other action inconsistent with the Plan's reimbursement rights. In such situations, the Plan's options will include, without limitation, the right in appropriate cases to deny benefits to an individual who refuses to sign a reimbursement agreement; to institute legal actions to recover sums wrongfully withheld or to obtain other relief; and/or to offset wrongfully withheld sums against future benefit payments otherwise owed the Participant.

(d)     The Plan will be subrogated to all claims, demands, actions, and rights of recovery of the Participant against a third party or parties to the extent of any and all payments made by the Plan with respect to Reimbursable Benefits, and the reimbursement agreement will so provide. The Plan will have a lien against the proceeds of any recovery by the Participant and against future benefits due under the Plan in the amount of any claims paid. This lien will attach as soon as any person or entity agrees to pay any money to or on behalf of any covered individual that would be subject to the Plan's right of recovery if and when received by the Participant. If the Participant fails to repay the Plan from the proceeds of any recovery, the Plan Administrator may satisfy the lien by deducting the amount from future claims otherwise payable under the Plan.

(e)     If the Participant fails to take action against a responsible third party to recover damages within one year or within 30 days of a request by the Plan Administrator, the Plan will be deemed to have acquired, by assignment or subrogation, a portion of the Participant's claim equal to the Plan's prior payments of Reimbursable Benefits. The Plan may thereafter start proceedings directly against any responsible third party. The Plan will not be deemed to waive its rights to begin action against a third party if it fails to act after expiration of one year, nor will the Plan's failure to act be deemed a waiver or discharge of the lien described in (d) above. The Participant must cooperate fully with the Plan in asserting claims against a responsible third party, and such cooperation will include, where requested, the filing of suit by the Participant against a responsible third party and the giving of testimony in any action filed by

Wachovia/Conrad 77

the Plan.  If the Participant fails or refuses to cooperate in connection with the assertion of claims against a responsible third party, the Plan Administrator may deny future Disability Benefits.

      3.17   <u>Workers' Compensation</u>.  Disability Benefits under the Plan are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

Wachovia/Conrad 78

## ARTICLE IV
## ADMINISTRATION

4.1    Administrator. The Employer is the Plan Administrator of the Plan. The Employer may, however, delegate to any person or entity any powers or duties of the Employer under the Plan, and to the extent of any such delegation, the delegate will become a named fiduciary (if the delegate is a fiduciary by reason of the delegation); and references herein to the Employer will apply instead to its delegate. Any action by the Employer assigning any of its responsibilities to specific persons who are all Employees of the Employer will not constitute delegation of the Employer's responsibility but rather will be treated as the manner in which the Employer has determined internally to discharge such responsibility.

4.2    Rules of Administration. The Employer will adopt such rules for administration of the Plan as it considers desirable, provided they do not conflict with the Plan or applicable law. The Plan Administrator will have the exclusive right and the sole discretionary authority to interpret the terms and provisions of the Plan and to resolve all questions arising thereunder, including, without limitation, the authority to determine eligibility for Benefits and the right to resolve and remedy ambiguities, inconsistencies, or omissions in the Plan, and, subject to Section 4.6, such action will be conclusive. Records of administration of the Plan will be kept, and Participants may examine records pertaining directly to them.

4.3    Services to the Plan. The Employer may contract for legal, actuarial, investment advisory, medical, accounting, clerical, and other services to carry out the Plan. The costs of such services and other administrative expenses will be paid by the Employer.

4.4    Funding Policy. The Plan's funding policy and method are to provide benefits through the general assets of Participating Employers.

4.5    Claims Procedure. Claims are to be submitted to the Claims Administrator in accordance with procedures approved by the Plan Administrator.

4.6    Denial of Claim.

(a)    The Claims Administrator will review claims for benefits, including claims resulting after the termination of the Participant's benefits, and respond thereto within a reasonable time after receiving the claim. The Claims Administrator will provide to every claimant who is denied a claim for benefits a notice (either written or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv)) setting forth in a manner calculated to be understood by the claimant:

(1)    the specific reason or reasons for the denial;

(2)    specific references to pertinent Plan provisions upon which denial is based;

**Wachovia/Conrad 79**

(3)     a description of any additional material or information necessary for the claimant to perfect the claim; and

(4)     an explanation of the claim review procedure set forth below.

(b)     Within 60 days from the date of the notice from the Claims Administrator denying a claim under paragraph (a), the claimant or his or her duly authorized representative may request in writing a full and fair review of the claim by the Claims Administrator. The Claims Administrator may extend the sixty-day period where the nature of the benefit involved or other attendant circumstances make such extension appropriate. In connection with such review, the claimant or his or her duly authorized representative may review pertinent documents and may submit issues and comments in writing. The Claims Administrator will make a decision promptly, and not later than 60 days after the Claims Administrator receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the Claims Administrator deems one necessary) require an extension of time for processing, in which case a decision will be rendered as soon as possible, but not later than 120 days after receipt of a request for review. The decision on review will be in writing or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), and will include specific reasons for the decision, drafted in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions upon which the decision is based.

(c)     A claimant or his or her duly authorized representative may request in writing a further review of the claim by the Plan Administrator or such person or persons designated by the Plan Administrator (the "Claims Appeal Reviewer"); provided such request is made within 60 days of receipt by a claimant of a notice from the Claims Administrator denying a claim under paragraph (b). The Claims Appeal Reviewer may extend the 60-day period where the nature of the benefit involved or other attendant circumstances make such extension appropriate. In connection with such review, the claimant or his or her duly authorized representative may review pertinent documents and may submit issues and comments in writing. The Claims Appeal Reviewer will make a decision promptly, and not later than 60 days after the Claims Appeal Reviewer's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the Claims Appeal Reviewer deems one necessary) require an extension of time for processing, in which case a decision will be rendered as soon as possible, but not later than 120 days after receipt of a request for review. The decision on review will be in writing or by means of an electronic medium that satisfies the requirements of 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv), and will include specific reasons for the decision, drafted in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions upon which the decision is based.

4.7     Legal Proceedings. A claimant or the claimant's authorized representative cannot start any legal action:

(a)     until after the exhaustion of the administrative remedies under Section 4.6; nor

Wachovia/Conrad 80

       (b)     more than one (1) year after the time proof of claim is required under the claim procedures approved by the Plan Administrator.

    4.8     <u>Operation</u>.  All interpretations, decisions, and designations by the Employer under the Plan will be made in a manner in which persons similarly situated are treated alike.

    4.9     <u>Responsibility for Administration</u>.  Neither the Employer, nor any of its directors, officers, employees, or agents will be liable for any loss due to error or omission in administration of the Plan unless the loss is due to the gross negligence or willful misconduct of the party to be charged or is due to the failure of the party to be charged to exercise a fiduciary responsibility with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

    4.10    <u>Indemnification of Administrative Personnel</u>.  The Employer will indemnify each officer or employee of the Employer for all expenses (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him or her in connection with any action to which he or she may be a party by reason of his or her performance of administrative functions and duties under the Plan, except in relation to matters as to which he or she will be adjudged in such action to be personally guilty of gross negligence or willful misconduct in the performance of his or her duties.  The foregoing rights to indemnification will be in addition to such other rights as the individual may enjoy as a matter of law or by reason of insurance coverage of any kind.  Rights granted hereunder will be in addition to and not in lieu of any rights to indemnification to which the individual may be entitled pursuant to the Employer's by-laws or applicable law.

Wachovia/Conrad 81

## ARTICLE V
## AMENDMENT AND TERMINATION

5.1    <u>Amendment</u>.  The Employer will have the right at any time, by or pursuant to action of its Board of Directors or the Human Resources Committee of the Board, to amend the Plan.  In addition, the Human Resources Division may amend the Plan, at any time, to the extent it deems necessary in order to accomplish the following:

(a)    To comply with the requirements of the Code and any amendment thereto, any other law, or any rule or regulation issued in interpretation of the Code or any applicable law;

(b)    To make all technical, administrative, regulatory, and compliance amendments;

(c)    To make all amendments that it deems appropriate in connection with an acquisition by the Employer or its subsidiaries or affiliates of a corporation or other legal entity; and

(d)    To make any other amendment or election that will not significantly increase the cost of the Plan to the Employer.

Any action to amend the Plan taken by the Human Resources Division may be taken by any appropriate human resources officer of the Employer.  An amendment will become effective as provided therein.

5.2    <u>Termination</u>.  Although the Employer intends to maintain the Plan for an indefinite period, the Employer reserves the absolute right to terminate or partially terminate the Plan at any time, for any reason, by or pursuant to action of its Board of Directors.  Furthermore, each Participating Employer may terminate its participation in the Plan at any time.  Any termination or partial termination of the Plan will not adversely affect the payment of Benefits to which to which a covered individual was entitled under the terms of the Plan prior to the date of termination or partial termination.  Thereafter, no covered individual nor any Participating Employer will have any liability or obligation to make any further contributions under the Plan.

Wachovia/Conrad 82

## ARTICLE VI
## MISCELLANEOUS

6.1    Effect on Employment. This Plan will not confer upon a person any right to be continued in the employment of a Participating Employer.

6.2    Alienation of Benefits. Except as otherwise provided by law and by contract governing any Benefit under this Plan, no Benefit under this Plan may be voluntarily or involuntarily assigned or alienated.

6.3    Facility of Payment. If a benefit is payable to a Participant's estate, a Participant who is a minor, or who is not competent, the Plan Administrator may direct the Claims Administrator to pay up to $2,000 to any of the Participant's relatives or any other person whom the Plan Administrator considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Participant. If the Plan in good faith, pays the benefit in such a manner, the Plan will not have to pay such benefit again.

6.4    Lost Distributees. Any benefit payable hereunder will be deemed forfeited if the Employer or Claims Administrator is unable to locate the Participant to whom payment is due; provided, however, that such benefit be reinstated if a claim is made by such person for the forfeited benefit within one year of the date of loss.

6.5    Severability. If any provision of this Plan will be held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision, and this Plan will be construed and enforced as if such provision had not been included.

6.6    Applicable Law. Except as may otherwise be required by the controlling law of the United States, the Plan will be construed, administered, and enforced in accordance with the laws of the State of North Carolina.

IN WITNESS of its adoption of this amended and restated Plan, the Employer has caused this instrument to be executed by its duly authorized officer this _____ day of _____ 2003.

### WACHOVIA CORPORATION

By:_____
        Executive Vice President

Wachovia/Conrad 83

**LIBERTY
MUTUAL**

Liberty Mutual Group

**ANNEX A-1
of
DISABILITY RISK MANAGEMENT AGREEMENT**

Effective January 1, 1998 between Liberty Life Assurance Company of Boston (*hereinafter referred to as Liberty)* and Wachovia Corporation *(hereinafter referred to as the Sponsor*). This Plan's anniversary date will occur each succeeding January 1st.

The Sponsor agrees to pay the benefits provided by the Plan in accordance with its provisions and Liberty agrees to provide the administrative and other services described in this Agreement.

**Participating Employers**

As they relate to this Plan, all actions, agreements and notices between Liberty and the Sponsor will be binding on the Participating Employers (as defined in the Plan).

**Plan Changes**

The Plan may be terminated or changed in whole or in part by the Employer. The change must be in writing and endorsed on or attached to the Plan.

No other person, including an agent, may change this Plan or waive any part of it.

**Time of Payment of Claims**

When Liberty, on behalf of the Sponsor, receives satisfactory proof of claim, the benefit payable under this Plan will be paid at least monthly depending on the coverage for which claim is made, during any period for which the Sponsor is liable.

**Subrogation**

Liberty will gather information as a part of its normal procedures to determine the existence of possible subrogation claims. Liberty will identify possible subrogation claims in accordance with guidelines established by Liberty and Sponsor. Liberty will, at the Sponsor's request and in accordance with plan provisions, cooperate fully in the facilitation of recoveries.

Annex A-1

Wachovia/Conrad 84

**APPENDIX A**
**SPECIAL RULES FOR EMPLOYEES IN STATES**
**WITH MANDATED DISABILITY BENEFITS**

This Appendix A will apply to any Employee (hereinafter referred to as a "State Plan Employee") for whom a Participating Employer is required by state law to provide short term disability benefits through the purchase of insurance, by the establishment of a state-approved "private plan," by paying into a state benefit fund, or otherwise. Any such state-mandated coverage will be referred to herein as a "State Plan."

1.      <u>Benefits</u>. A State Plan Employee who otherwise meets the definition of "Eligible Employee" in Section 1.1 will receive Disability Benefits as described in this Plan, offset by any disability benefits provided under the State Plan. In the event that a State Plan Employee is eligible to receive a disability benefit from a State Plan, the State Plan Employee is required to apply for such disability benefit and the Plan Administrator will presume that the disability benefit has been approved under the State Plan. Until such time that a State Plan Employee provides satisfactory evidence that he or she is not entitled to a disability benefit under the applicable State Plan, the presumed disability benefit under the State Plan will be offset against his or her Disability Benefits. A State Plan Employee who does not meet the definition of "Eligible Employee" in Section 1.1 will receive Disability Benefits only to the extent provided under the State Plan.

2.      <u>Other Provisions</u>. The provisions of this Plan will supersede the provisions of any State Plan, except as required by law.

A-1

Wachovia/Conrad 85

## APPENDIX B
## ELIGIBLE FUNCTIONAL INCENTIVE PAY

| | **Earnings Code** | **Start Date** |
|---|---|---|
| A4 | CBG FUMC Com Mort Sales Inct | 01-Jan-01 |
| AC3 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AC4 | CMKG Equity Commissions Supp | 01-Jan-01 |
| AS | CMG FUBS Reg Reps Sales Inct | 01-Jan-01 |
| BA | CMG Personal Inv Couns Inct | 01-Jan-01 |
| BA7 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA8 | Key Contributor (FUBS accrual account) | 01-Jan-01 |
| BA9 | Key Contributor (FUBS expense account) | 01-Jan-01 |
| BE2 | Everen Commissions Plan | 01-Jan-01 |
| BE3 | Everen Guarantee | 01-Jan-01 |
| BE5 | Everen Trainee Pay | 01-Jan-01 |
| BE6 | Everen Enhanced Payout | 01-Jan-01 |
| BE7 | Everen Giveaway | 01-Jan-01 |
| BE8 | Everen IC Electv LKBK | 01-Jan-01 |
| BEC | Everen Recruiting Bonus | 01-Jan-01 |
| BED | Everen Scorecard Bonus | 01-Jan-01 |
| BEE | Everen Profitability Bonus | 01-Jan-01 |
| DF | Wholesale/Correspondent Acct Exec Plan | 01-Jan-01 |
| DRW | Draw Earnings | 01-Jan-01 |
| K4 | WIS Producer Commission | 01-Jan-01 |
| KAB | FinConsult | 01-Jan-01 |
| KCJ | GBG FC Premium | 01-Jan-01 |
| KCR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| KK | CMG Insurance Spec Incentive | 01-Jan-01 |
| KZB | FinConsult | 01-Jan-01 |
| SIE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| SSE | Deferral of Monthly/Qtrly Incentives | 01-Jan-01 |
| UA1 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UA2 | CMG Wheat Spy Bonus | 01-Jan-01 |
| UC1 | Profit Formula Earnings | 01-Jan-01 |
| UC2 | Profit Formula Earnings | 01-Jan-01 |
| UL1 | Comm/Pretax Earnings | 01-Jan-01 |
| UL2 | CMG Wheat Commission S/Rate | 01-Jan-01 |
| UN1 | Retail Recruiting Bonus A/Rate | 01-Jan-01 |
| UN2 | Retail Recruiting Bonus S/Rate | 01-Jan-01 |
| UR1 | Finders Fees/Spec Bonus Pmts | 01-Jan-01 |
| UR2 | Finders Fee/Spec Bonus Pmt | 01-Jan-01 |
| UT1 | CMG Wheat Mgr Ovr A/Rate | 01-Jan-01 |

B-1

Wachovia/Conrad 86

| | | |
|---|---|---|
| UT2 | CMG Wheat Mgr Ovr S/Rate | 01-Jan-01 |
| UXR | Direct Roll-over from Key Contributor | 01-Jan-01 |
| UX3 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| UX4 | Key Contributor (Securities expense acct) | 01-Jan-01 |
| ET | WM FSO Commission | 01-June-01 |
| GH5 | CMG - Worksite Comml IS | 01-June-01 |
| UAI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| USI | Deferral – Broker Vol. Plan ISG | 31-July-01 |
| UCC | Defpayout - Broker Vol. Plan ISG | 31-July-01 |
| UCA | DefRoll - Broker Vol. Plan ISG | 31-July-01 |
| UAV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| USV | Deferral  - Broker Vol. Plan PCG | 31-July-01 |
| UBV | Defpayout - Broker Vol. Plan PCG | 31-July-01 |
| URB | DefRoll - Broker Vol. Plan PCG | 31-July-01 |
| BBF | CMG Corp/Inst Tr Sales ITS | 01-Nov-01 |
| BBH | CMG Corp/Inst Tr Sls Del Trust | 01-Nov-01 |
| ASC | Atlantic Savings Comm | 01-Jan-02 |
| BMT | Brnch Man Profit Bon 401k Elig | 01-Jan-02 |
| HCO | Commission 401k Elig | 01-Jan-02 |
| MCM | Mortgage Commission | 01-Jan-02 |
| BBG | CMG Corp/Inst Tr Sales Corp Tr | 01-Jan-03 |
| CMW | WM Insurance Advisor Commission - A | 01-July-02 |
| FN1 | Commissions BEC Annualized | 15-Nov-02 |
| FN2 | Commissions BEC Supplemental | 15-Nov-02 |
| CMV | WM Comm Plan Insur Advisor – S | 20-Mar-03 |
| WCM | WIS Commission – Monthly Pay | 10-Dec-03 |
| WDS | WIS Draw – Semi-monthly Pay | 10-Dec-03 |
| WCS | WIS Commission – Semi-monthly Pay | 10-Dec-03 |
| WDM | WIS Draw – Monthly Pay | 10-Dec-03 |
| 031 | Style of Business P/O (FAIT) | 01- Jan-04 |
| 032 | Commissions | 01-Jan-04 |
| 034 | Managers Forgivable Adj. | 01-Jan-04 |
| RSB | Managers Step Down Forgivable Draw | 01-Jan-04 |
| 039 | Referral Back End Bonus – Non AL | 01-Jan-04 |
| 041 | FAIT Training Gty (Type - L) | 01-Jan-04 |
| 042 | FAIT Training GTY (Type – N) | 01-Jan-04 |
| 050 | FAIT Guarantee (Pay Adj. – K) | 01-Jan-04 |
| 051 | Managers Forgivable Draw | 01-Jan-04 |
| 052 | Asst Mgrs Forgivable Draw | 01-Jan-04 |
| 053 | AE – FA Guarantee | 01-Jan-04 |
| 068 | FAIT Bonus | 01-Jan-04 |
| 06W | FACDP 2001 Cash Bonus Award | 01-Jan-04 |
| 092 | Draw | 01-Jan-04 |

B-2

Wachovia/Conrad 87

| | | |
|---|---|---|
| 093 | Guarantee Draw | 01-Jan-04 |
| 094 | Commissions ADJ | 01-Jan-04 |
| 095 | FACDP Draw | 01-Jan-04 |
| OPC | Pre-Paid Commissions | 01-Jan-04 |
| OSB | Back End Bonus | 01-Jan-04 |
| 127 | BIA-MA | 01-Jan-04 |
| 176 | BIN-NV | 01-Jan-04 |
| 182 | BIO-OK | 01-Jan-04 |
| 185 | BIAL-AL | 01-Jan-04 |
| 399 | Deficit Recoup | 01-Jan-04 |
| 459 | Referral Reward | 01-Jan-04 |
| 469 | FAIT Referral Reward | 01-Jan-04 |
| B23 | 2003 Location Profit Bonus | 01-Jan-04 |
| BM3 | 2003 Branch Manager Cash | 01-Jan-04 |
| BMF | BM Front-End Bonus 99+ | 01-Jan-04 |
| FSB | FA Backend Bonus 99+ | 01-Jan-04 |

B-3

Wachovia/Conrad 88

**APPENDIX C**
**WACHOVIA SHORT-TERM MEDICAL LEAVE PLAN**

This Appendix C will apply to any Employee who had at least 10 years of service with the Corporation as of December 31, 1998 and who was eligible for grandfathered Extended Sick Leave benefits under the Wachovia Short-Term Medical Leave Plan (hereinafter referred to as an "Extended Sick Leave Employee") which was sponsored by Wachovia Corporation prior to its merger with First Union Corporation.

Benefits. The Disability Benefits for an Extended Sick Leave Employee will be equal to 100% of Pre-Disability Earnings (less Benefits from Other Income) for up to 26 weeks in accordance with the terms of the Wachovia Short-Term Medical Leave Plan (the "Legacy Plan").

Effective for any Disability which occurs on or after January 1, 2004, Disability Benefits for all Extended Sick Leave Employees will be determined in accordance with the terms of the Plan without regard to this Appendix C.

Notwithstanding the foregoing, the provisions of Section 4.6 of the Plan relating to the denial of claims will supercede any similar provision in the Legacy Plan.

C-1

Wachovia/Conrad 89

# APPENDIX D
# NEW JERSEY PRIVATE PLAN

## PROVISIONS RELATING TO A PRIVATE PLAN
### under the
### NEW JERSEY TEMPORARY DISABILITY BENEFITS LAW

1.   INTRODUCTION

This document sets forth the terms of a "State Plan" described in Appendix A of the Wachovia Corporation Short Term Disability Plan and is intended to constitute a "Private Plan" under the New Jersey Temporary Disability Benefits Law, established in accordance with Chapter 21 of Title 43 of New Jersey Revised Statutes.

2.   PRIVATE PLAN COVERAGE

This Private Plan covers each Eligible Employee of a Participating Employer that is a Covered Employer and each former Eligible Employee of a Participating Employer that is a Covered Employer who is a Covered Individual and who has been out of such employment for less than two weeks, unless covered by a Covered Employer that is not a Participating Employer. Participating Employers that are Covered Employers are listed in Exhibit I.

3.   BENEFITS PROVIDED

(A)   *Weekly and Daily Benefit Amounts*

For each Period of Disability, a Covered Individual covered by this Private Plan shall receive a weekly benefit amount of two-threads of the employee's Average Weekly Wage, subject to a maximum of 53% of the Statewide Average Weekly Remuneration as determined and promulgated from time to time by the New Jersey Commissioner of Labor pursuant to law; provided, however, that the Covered Individual's weekly benefit rate shall be computed to the next lower multiple of $1.00 if not already a multiple thereof. The amount of benefits for each day of Disability for which benefits are payable shall be 1/7 of the corresponding weekly benefit amount, provided that the total benefits for a fractional part of a week shall be computed to the next lower multiple of $1.00, if not already a multiple thereof.

(B)   *Commencement of Benefits*

Benefits under this Private Plan not in excess of a Covered Individual's maximum benefits (as defined below) shall be payable with respect to the eighth consecutive day of Disability and each day thereafter that the period of Disability continues; and if benefits shall be payable for three consecutive weeks with respect to any

D-1

Wachovia/Conrad 90

Period of Disability, then benefits shall be payable with respect to the first seven days thereof.

(C)     *Maximum Benefits*

The maximum total benefits payable to any Covered Individual for any Period of Disability shall be either 26 times his or her weekly benefit amount or one-third of his or her total Wages in his or her Base Year, whichever is the lesser; provided that such maximum amount shall be computed to the next lower multiple of $1.00 if not already a multiple thereof.

4.     EMPLOYEE CONTRIBUTIONS

There are no contributions required by Eligible Employees covered by this Private Plan.

5.     REQUIREMENTS FOR ENTITLEMENT

To be entitled to benefits, the Covered Individual must have been in employment with a Participating Employer or another Covered Employer. The Covered Individual must have established at least 20 Base Weeks within the Base Year. In the alternative, the Covered Individual must have been in such employment and have earned 12 times the Statewide Average Weekly Remuneration or more within the Base Year.

6.     COMPENSABLE DISABILITY

A Disability shall be compensable, subject to the limitations of the New Jersey Temporary Disability Benefits Law, where an individual covered by this Private Plan suffers any accident or sickness not arising out of or in the course of his or her employment or if so arising not compensable under the New Jersey Workers' Compensation Law, and resulting in his or her total inability to perform the duties of his or her employment.

7.     DEFINITIONS

Capitalized terms used herein and not defined below shall have the meaning set forth in the Wachovia Corporation Short Term Disability Plan.

"Average Weekly Wage" means the amount derived by dividing a Covered Individual's total Wages earned from his or her most recent Covered Employer during the Base Weeks in the 8 calendar weeks immediately preceding the calendar week in which the Disability commenced, by the number of such Base Weeks. If this computation yields a result which is less than the Covered Individual's average weekly earnings in employment, as defined in the chapter to which the New Jersey Temporary Disability Benefits Law is a supplement, with all Covered Employers, during the Base Weeks in such eight calendar weeks, then the Average Weekly Wage shall be computed on the basis of earnings from

D-2

Wachovia/Conrad 91

all Covered Employers during the eight Base Weeks immediately preceding the week in which the Disability commenced.

"Base Week" means any calendar week during which an individual earned in employment from a Covered Employer remuneration equal to not less than 20% of the Statewide Average Weekly Remuneration.

"Base Year" means the 52 calendar weeks preceding the week in which the employee's Period of Disability commenced.

"Covered Employer" means a covered employer within the meaning of section 21-27 of the New Jersey Temporary Disability Benefits Law, as amended from time to time.

"Covered Individual" means any person who is in employment as defined by the New Jersey Unemployment Compensation law, for which he or she is entitled to remuneration from a Covered Employer, or who has been out of such employment for less than two weeks.

"Division" means the Division of Unemployment and Temporary Disability Insurance of the New Jersey Department of Labor, or any successor thereof.

"Period of Disability" with respect to any Covered Individual shall mean the entire period of time, during which he or she is continuously and totally unable to perform the duties of his or her employment, except that two Periods of Disability due to the same or related cause or condition and separated by a period of not more than 14 days shall be considered as one continuous Period of Disability; provided the individual has earned Wages during such 14 day period with the Covered Employer who was his or her last employer immediately preceding the first Period of Disability.

"Statewide Average Weekly Remuneration" means the average weekly remuneration paid to workers by employers subject to the New Jersey Temporary Disability Benefits Law as computed and determined by the Commissioner of Labor on or before September 1 of each year on this basis of 1/52 of the total remuneration reported for the preceding calendar year by employers subject to the New Jersey Temporary Disability Benefits Law, divided by the average of workers reported by such employers.

"Wages" shall mean all compensation payable by Covered Employers to Covered Individuals for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash.

8.     NON-DUPLICATION OF BENEFITS

In accordance with the provisions of the New Jersey Temporary Disability Benefits Law, no benefits shall be paid under this Private Plan for any period with respect to which benefits are paid or are payable under any unemployment compensation or similar law, or under any disability or cash sickness benefits or similar law, or New Jersey or of any

D-3

other state or of the federal government. Nor shall benefits be paid for any period with respect to which benefits, other than benefits for permanent partial or permanent total disability previously incurred, are paid or are payable on account of the disability of a covered individual under any workers' compensation law, occupational disease law, or similar legislation, of New Jersey or any other state or the federal government. Where a claimant's claim for compensation for temporary disability, under the provisions of the New Jersey Workers' Compensation Law, is contested and thereby delayed and such claimant is otherwise eligible for benefits under this Private Plan, said claimant shall be paid the benefits provided by the Private Plan until and unless said claimant receives compensation under the provisions of the New Jersey Workers' Compensation Law. In the event that workers' compensation benefits, other than benefits for permanent partial or permanent total disability previously incurred are subsequently awarded for weeks with respect to which the claimant has received disability benefits pursuant to this Private Plan, this Private Plan shall be entitled to be subrogated to such claimant's rights in such award to the extent of the amount of disability payments made hereunder, disability benefits otherwise required hereunder shall be reduced by the amount paid concurrently under any governmental or private retirement, pension or permanent disability benefit or allowance program to which the individual's most recent employer contributed on his or her behalf.

9.    FURTHER LIMITATION OF BENEFITS

Notwithstanding any other provisions of this Private Plan, no benefits shall be payable hereunder:

A.    For the first seven consecutive days of each Period of Disability, except that if benefits are payable for three consecutive weeks with respect any Period of Disability, then benefits shall also be payable with respect to the first seven days thereof;

B.    For more than 26 weeks with respect to any one Period of Disability;

C.    For any Period of Disability which did not commence while the claimant was a Covered Individual;

D.    For any period during which the claimant is not under the care of a legally licensed physician, dentist, optometrist, practicing psychologist, podiatrist, or chiropractor, who when requested by the Plan Administrator, shall certify within the scope of his or her practice, the Disability of the claimant, the probable duration thereof, and , the medical facts within his or her knowledge;

E.    For any Period of Disability due to willfully and intentionally self-inflicted injury, or to injury sustained in the perpetration by the claimant of a crime of the first, second or third degree.

D-4

Wachovia/Conrad 93

F.    For any period during which the claimant performs any work for remuneration or profit;

G.    In a weekly amount which together with any remuneration the claimant continues to receive from the Participating Employer would exceed his or her regular weekly Wages immediately prior to the Period of Disability;

H.    For any period during that which the claimant would be disqualified for unemployment compensation benefits under the New Jersey Unemployment Law due to a labor dispute, unless the Disability commenced prior to such disqualification.

10.    CLAIMS PROCEDURES

Benefits under the Private Plan will be determined and paid to eligible employees and former employees on the basis of the Participating Employer's employment records by the Plan Administrator. In lieu of which, no later than 30 days after the commencement of the Period of Disability, the claimant shall furnish to the Plan Administrator a notice and claim for the disability benefits under this Private Plan. Upon the submission of such notice and claim the Plan Administrator may issue benefit payments for periods not exceeding 3 weeks pending the receipt of medical proof. When requested such notice and proof shall include certification of such Disability by the attending physicians or a record of hospital confinement. Failure to furnish notice and proof within the time or in the manner above provided shall not invalidate or reduce any claim if it shall be shown to the satisfaction of the Plan Administrator not to have been reasonably possible.

An employee claiming benefits under this Private Plan shall, when requested by the Plan Administrator, submit himself or herself at intervals, but not more often than once a week, for examination by a legally licensed physician, dentist, optometrist, practicing psychologist, podiatrist, chiropractor or public health nurse designated by the Plan Administrator, during the duration of the claim.

If a person claiming benefits hereunder is unable to agree with the Plan Administrator as to the benefits hereunder, he or she may, within one year of the date from which benefits are claimed, appeal to the:

New Jersey Department of Labor
Private Plan Operations
Claims Review Unit
P.O. Box 957
Trenton, New Jersey 08625-0957

D-5

**Wachovia/Conrad 94**

11.   GOVERNING LAW

This Private Plan and its interpretation and administration shall be governed by the New Jersey Temporary Disability Benefits Law.  In the event of ambiguity or conflict, the law will prevail.

12.   AMENDMENT AND TERMINATION

No reduction in the amount of duration of benefits or increase in the rate of employee contributions shall be made without prior approval of the Division.  Approval shall be given if the Division finds that the Private Plan, after such modification, continues to meet the requirements of the New Jersey Temporary Disability Benefits Law and, if the employees are to contribute toward the cost of such modified Private Plan, that a majority of the employees covered by the Private Plan have agreed to the modification by written election (by ballot or otherwise) in accordance with the New Jersey Temporary Disability Benefits Law.  The Division shall be given prompt notice of any modification of the Private Plan, which modification does not require such approval under this Section 12. This Private Plan may be terminated by the Employer upon proper notice to the Division.

13.   GUARANTEEING CLAUSE

The benefits payable to each Eligible Employee covered under this Private Plan shall be at least equal, in both weekly amount and duration, to those which would be payable to the employee under the State plan under the New Jersey Temporary Disability Benefits Law, but for his or her inclusion in this Private Plan.

ATL01/11561879v1

Wachovia/Conrad 95

Exhibit I
(As of October 1, 2003)

The following Participating Employers are Covered Employers under the Private Plan:

     Wachovia Mortgage Corporation
     First Union Commercial Shared Resources, LLC
     Wachovia Bank, N.A.
     Wachovia Bank of Delaware, N.A.
     Wachovia Services, Inc.
     Wachovia Securities, Inc.
     Class Notes Inc.
     Evergreen Investment Services, Inc.
     Rhodes Agency Incorporated
     Wachovia SBA Lending, Inc.
     HomEq Servicing Corporation
     Wachovia Capital Markets, LLC
     Wachovia Insurance Agency, Inc.
     Wachovia Insurance Services, Inc.
     First Clearing Corporation, LLC
     The Money Store/Service Corp.

1

Wachovia/Conrad 96