# EXHIBIT A

NoteSubject : Closed
Other Subject : NO MEDS
Text: [01/19/2004 - DARBY, TOSHA]CLOSED DUE TO FAILURE TO PROVIDE PROOF

**01/19/2004 2:22 PM - CLAIM Note 6**
Claim/Leave: 1201957
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [01/19/2004 - HARMON, MARGRET]AGREE WITH DENIAL/TEMP CLOSURE DUE TO FTPP. WE WILL REOPEN
AND REVIEW CLAIMS IF MEDICAL INFO. IS RECEIVED WITHIN 60 DAYS OF THE DATE OF THE
DENIAL/CLOSURE LETTER.[01/19/2004 - HARMON, MARGRET]DCM TO CALL CLMT.'S MANAGERAND GET WORK
NUMBER AS CLMT. HAS RTW.

**01/19/2004 9:58 AM - PHONE Note 1**
Claim/Leave: 1201957
NoteSubject : Called EE
Other Subject :
Text: [01/19/2004 - DARBY, TOSHA]9:57 - CALLED CLMT TO DISCUSS CLM AND TO PROVIDED STATUS
UPDATE.....PHONE RANG REPEATEDLY WITH NO ANSWER/ANSWERING MACHINE.

**01/13/2004 9:17 AM - CLAIM Note 5**
Claim/Leave: 1201957
NoteSubject : Medical Status
Other Subject :
Text: [01/13/2004 - DARBY, TOSHA]FAXED INITIAL MED REQUEST TO DR GEORGE'S OFFICE ON 1/12/04,
REQUESTING TESTS RESULTS, OV NOTES AND COMPLETED RESTRICTIONS FORM, REGARDING TX FROM
11/24/03 TO PRESENT....ARM INCLUDED[01/13/2004 - DARBY, TOSHA]REQUESTED RESPONSE BY 1/15/04

**01/12/2004 9:26 AM - CLAIM Note 4**
Claim/Leave: 1201957
NoteSubject : Other
Other Subject : NO PRIOR CLMS
Text: [01/12/2004 - DARBY, TOSHA]CLMT DOES NOT HAVE ANY PRIOR CLMS WHICH WOULD CREATE GAP IN
CURRENT BENEFITS.

**12/22/2003 1:36 PM - CLAIM Note 3**
Claim/Leave: 1201957
NoteSubject : Other
Other Subject : SENT LTR
Text: [12/22/2003 - GREENE, LINDA]NEW CLM LTR

**12/22/2003 12:00 PM - CLAIM Note 1**
Claim/Leave: 1201957
NoteSubject : Telephonic Intake
Other Subject : EXPRSCALL CLAIM NOTE
Text: COLONOSTOMY AND ENDOSCOPY DONE AS OUTPATIENT ON 12-11-03. RTW 12-1-03. HE IS STILL HAVING
TESTING DONE TO SEE IF CONDT. IS MENTAL OR PHYSICAL. D REGAN TCC 12-22-03.

**12/22/2003 12:00 PM - CLAIM Note 2**
Claim/Leave: 1201957
NoteSubject : Telephonic Intake
Other Subject : MEDICAL CONDITION
Text: EMP HAD AN ENDOSCOPY AND COLONOSTOMY DONE- POLLUP REMOVED. ALSO STRESS
TREATMENT,& TESTING ON SLEEP APNEA & PROSTATE.

Liberty/Conrad 1294

# EXHIBIT B



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-2484
Phone No.: (868) 291-0112
Secure Fax No.: (888) 443-4212

January 19, 2004

Larry Brundick

Robert Conrad
44 Longwood Drive
Sicklerville, NJ 08081-0000

RE:     Short Term Disability Benefits
        Wachovia Corporation
        Claim #: 1201957

Dear Mr. Conrad:

We are in receipt of your claim for Short Term Disability (STD) leave under the Wachovia
Corporation Group STD plan. However, we are unable to complete our review as necessary
medical information has not been provided.

*"Disability" means you are unable to perform all of the material and substantial duties of your
occupation on an Active Employment basis because of an Injury or Sickness."*

We have not received medical information to support a condition of such severity as to
preclude you from performing your occupation as a Financial Advisor. To support your claim,
on January 12, 2004, a request for medical information was faxed to the office of Dr. George
Petrunzio. To date, we have not received a response. Therefore, your claim for STD leave has
been closed.

This claim determination reflects an evaluation of the claim facts and plan provisions. We
reserve the right to make a determination on any additional information that may be submitted.

You have the right to have your claim reopened by providing the documentation requested
above within 60 days from the date of this letter to the Liberty Life Assurance Company of
Boston representative signing this letter. In addition, please feel free to include any additional
information that you feel support why your claim should not have been closed. Under normal
circumstances, you will be notified of the final decision within 60 days of the date that your
request is received. If there are special circumstances requiring delay, you will be notified of
the final decision no later than 120 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Wachovia Corporation and
defenses under the above captioned plan, and all of these rights and defenses are reserved to
the Company, whether or not they are specifically mentioned herein.

**Wachovia/Conrad 193**

If you have any questions, please feel free to contact our office at the number below.

Sincerely,

*Tosha Darby*

Tosha Darby
Disability Case Manager
Phone No.: (800) 291-0112 Ext. 326
Secure Fax No.: (888) 443-4212

**Wachovia/Conrad 194**

# EXHIBIT C

*George M. Sanders, Ph.D.*
*Diplomate in Clinical Psychology*
*American Board of Professional Psychology*

*Executive Mews*
*Suite C-15*
*1930 E. Marlton Pike*
*Cherry Hill, New Jersey 08003*
*(856) 424-6312*

*1043B North Main Street*
*Pitman, New Jersey 08071*
*(856) 582-0047*

10 January 2005

Ms. Janice Borner
Liberty Mutual
Disability Claims
Box 242484
Charlotte, NC 28224-2484

**Re:  Robert Conrad**
**Claim # 1248676**

Dear Ms. Borner,

As you know, Mr. Conrad and I have met on several occasions and as part of our discussions, we have decided that his return to work on a part-time basis might be a therapeutic step for him at this time.  He still experiences many of his presenting symptoms about which you are familiar but he would like to try to experience a partial work experience

Therefore, with the concurrence of his family doctor, George Petruncio, MD, I would ask that you allow him to begin working on a less than full time basis.  If you have any questions, please feel free to contact me.

Yours Truly,

George M. Sanders, Ph.D.

*NJ License #1018*

**Liberty/Conrad 1166**

GEORGE J. PETRUNCIO, M.D., P.A.

FRIES MILL PAVILION
188 FRIES MILL ROAD, SUITE E-1
TURNERSVILLE, NEW JERSEY 08012
—
TELEPHONE: (856) 875-7700
FAX: (856) 262-0428

January 10, 2005

To Whom It May concern:
Re: Robert Conrad

Mr. Robert Conrad has been cleared to return to a reduced hour
reduced work load schedule at this time. He has be cleared to
work on Monday, Wednesday, and Friday and has been restricted
to three hours at a time.

If you have any questions, please do not hesitate to contact
the office.

Respectfully,

George J. Petruncio, M.D.

Liberty/Conrad 1162

# EXHIBIT D

SOCIAL SECURITY ADMINISTRATION
RETIREMENT, SURVIVORS, AND DISABILITY INSURANCE
Notice of Disapproved Claim

Telephone: (856) 757-5337

Date:  JUL 0 2 2005

ROBERT S CONRAD
44 LONGWOOD DR
SICKLERVILLE NJ 08081

Claim Number: 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

We are writing about your claim for Social Security disability benefits.  Based on a
review of your health problems you do not qualify for benefits on this claim.  This
is because you are not disabled under our rules.

We have enclosed information about the disability rules.

An explanation is provided below of why we decided you are not disabled.

The following report, covering the period listed was considered in deciding
your claim:
DR JEFFREY ABRAMS MD        02/15/05
WSHNGTN TWNSHP NEURO ASSOC
W JERSEY HLTH SYSTEM
UMDNJ
GEORGE J PETRUNICIO II MD        04/20/05
RUSTICO C POLUTAN MD
NICHOLAS DEPACE MD        03/23/05
DR GEORGE M SANDERS PHD        03/15/05
LELAND D MOSBY PHD Psychiatry Consultative Exam 03/28/05
ADVANCED FAM & OCCUP HLTH Internal Medicine Consultative Exam 04/21/05

We did not obtain any other reports because the one shown above had enough
information to evaluate your condition.

We have determined that your condition does not keep you from working.  We
considered the medical and other information, your age, education, training, and
work experience in determining how your condition affects your ability to work.

You said you were disabled because of chronic fatigue syndrome, sleep apnea,
hypertension, anxiety and depression.

The following was considered in making our decision:

> * Your condition has not affected your ability to understand, remember,
> cooperate with others and perform normal daily activities.
>
> * Your blood pressure has been high in the past.  However, it is being
> controlled with treatment.
>
> * You have some restriction in the use of your legs.  However, your
> condition has not resulted in severe weakness, paralysis or loss of

Liberty/Conrad 1037

control of limbs.

Your chronic fatigue syndrome and sleep apnea are not causing any problems which would prevent you from working.

* The evidence shows no other condition which significantly limits your ability to work.

* Although you are not able to do any of the work you have done during the past 15 years, there are other kinds of work you should be able to do.

IF YOUR CONDITION GETS WORSE AND KEEPS YOU FROM WORKING, WRITE, CALL OR VISIT ANY SOCIAL SECURITY OFFICE ABOUT FILING ANOTHER APPLICATION.

ABOUT THE DECISION

Doctors and other trained staff looked at your case and made this decision.  They work for your State but used our rules.

Please remember that there are many types of disability programs, both government and private, which use different rules.  A person may be receiving benefits under another program and still not be entitled under our rules.  This may be true in your case.

IF YOU DISAGREE WITH THE DECISION

If you disagree with this decision, you have the right to appeal.  We will review your case and consider any new facts you have.  A person who did not make the first decision will decide your case.

* You have 60 days to ask for an appeal.

* The 60 days start the day after you get this letter.  We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

* You must have a good reason for waiting more than 60 days to ask for an appeal.

* You have to ask for an appeal in writing.  We will ask you to sign a form SSA-561-U2, called "Request for Reconsideration." You may complete this form oneline at http://www.socialsecurity.gov/online/ssa-561.pdf. Contact one of our offices if you want help.

* IN ADDITION, YOU HAVE TO COMPLETE A "RECONSIDERATION DISABILITY REPORT" TO TO TELL US ABOUT YOUR MEDICAL CONDITION SINCE YOU FILED YOUR CLAIM.  YOU MAY CONTACT ONE OF OUR OFFICES OR CALL 1-800-772-1213 TO REQUEST THIS FORM.  OR, YOU MAY COMPLETE THIS REPORT ONLINE AT www.socialsecurity.gov/disability/recon

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim."  It contains more information about the appeal.

NEW APPLICATION

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with this decision and you file a new application instead of appealing:

* you might lose some benefits, or not qualify for any benefits, and

Liberty/Conrad 1038

# EXHIBIT E

SOCIAL SECURITY ADMINISTRATION
RETIREMENT, SURVIVORS, AND DISABILITY INSURANCE
NOTICE OF RECONSIDERATION

---

Date: MAR 2 4 2006
Claim Number: 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

ROBERT S CONRAD
44 LONGWOOD DR
SICKLERVILLE NJ 08081

Claim for
(X)   Disability Insurance Benefits
()    Disabled Widow/Widower Benefits
()    Childhood Disability Benefits
()    Medicare Coverage Only

Upon receipt of your request for reconsideration we had your claim independently reviewed by a physician and disability examiner in the State agency which works with us in making disability determinations. The evidence in your case has been thoroughly evaluated; this includes the medical evidence and the additional information received since the original decision. We find that previous determination denying your claim was proper under the law. Below is an explanation of the decision we made on your claim and how we arrived at it.

The following reports were considered in deciding your claim:
WSHNGTN TWNSHP NEURO ASSOC        12/05/05
KENNEDY MEM HOSP        12/12/05
THOMAS MORLY        01/27/06
DR GEORGE M SANDERS PHD        12/06/05        12/06/05
LAWRENCE G MINTZER PHD Psychiatry Consultative Exam 03/08/06
ADVANCED FAM/OCCUP HLTH Internal Medicine Consultative Exam 02/23/06

In your original application for disability benefits you stated that you were disabled due to chronic fatigue syndrome, sleep apnea, hypertension, anxiety and depression.

In your application for reconsideration you indicated your condition has gotten worse.

After reconsidering the evidence received in processing your initial claim along with evidence acquired during the reconsideration process, the following was considered in making our decision:
        * You experience some pain and discomfort. However, there is no severe muscle weakness or loss of feeling in your limbs. You are able to stand, sit, use your arms, hands and move about well enough to work.

        * Your blood pressure has been high in the past. However, it is being controlled with treatment.

        * You suffer from sleep apnea. However, this condition is not causing any problem that would be considered disabling.

        * You have difficulty performing certain tasks. However, you should be

Liberty/Conrad 838

able to take care of your personal needs, understand and follow simple instructions and perform simple jobs.

* The evidence shows no other condition which significantly limits your ability to work.

* Although you are not able to do any of the work you have done in the past, there are other kinds of work you should be able to do.

The determination on your claim was made by an agency of the State. It was not made by your own doctor or by other people or agencies writing reports about you. However, any evidence they gave us was used in making this determination. Doctors and other people in the State agency who are trained in disability evaluation reviewed the evidence and made the determination based on Social Security law and regulations.

If you believe that the reconsideration determination is not correct, you may request a hearing before an administrative law judge of the Office of Hearing and Appeals. If you want a hearing, you must request it not later than 60 days from the date you receive this notice. You may make your request through any Social Security office. As part of the appeal process, you must also complete a "Disability Report - Appeal" to tell us about your medical condition. You may contact one of our offices or call 1-800-772-1213 to request this form. Or, you may complete the report online at www.socialsecurity.gov/disability/hearing. Read the enclosed leaflet for a full explanation of your right to appeal.

NEW APPLICATION

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with this decision and you file a new application instead of appealing:

* you might lose some benefits or not qualify for any benefits, and
* we could deny the new application using this decision, if the facts and issues are the same.

So, if you disagree with this decision, you should file an appeal within 60 days.

This decision refers only to your claim for benefits under the Social Security Disability Insurance Program. If you applied for other benefits, you will receive a separate notice when a decision is made on that claim(s).

If you have questions about your claim, you should get in touch with any Social Security office. Most questions can be handled by telephone or mail. If you visit an office, however, please take this letter with you. The office that serves your area is located at:

Five Executive Campus
Suite 100
Cherry Hill NJ 08002

Summarized below are legal requirements for the various types of disability claims:

DISABILITY INSURANCE CLAIM
To be considered disabled, a person must be unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last for at least

Liberty/Conrad 839

12 months in a row.  The condition must be severe enough to keep a person from working not only in his or her usual job, but in any other substantial gainful work. We look at the person's age, education, training and work experience when we decide whether he or she can work.

DISABLED WIDOW (WIDOWER) CLAIM
A widow, widower, or surviving divorced wife (age 50-60) must meet the disability requirement of the law within a specified 7 year period.  A person may be considered disabled only if he or she has a physical or mental impairment that is so severe as to ordinarily prevent a person from working.  The disability must have lasted or be expected to last for a continuous period of at least 12 months.

CHILDHOOD DISABILITY BENEFITS
Childhood disability benefits may be paid to a person age 18 or older if the person has a disability which began before age 22 or within 84 months of the end of a earlier period of childhood disability.  The condition, whether physical or mental, must be severe enough to keep the person from doing any substantial gainful work.  We look at the person's age, education and previous training when we decide whether he or she can work.  In addition, the condition must have lasted or be expected to last for at least 12 months in a row.

Enclosure:
SSA Pub. No. 70-10281

SSA-L928 (7/91)EFO

Liberty/Conrad 840

# EXHIBIT F

# EXHIBIT G

 **Liberty Mutual.**

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904
Phone No.: (800) 853-7108  Ext. 369
Secure Fax No.: (888) 443-4212

December 8, 2006

Robert Conrad
44 Longwood Drive
Sicklerville, NJ 08081-0000

RE:   Long Term Disability Benefits
      Wachovia Corporation
      Claim #: 2021495

Dear Mr. Conrad:

We are writing in regard to your claim for Long Term Disability (LTD) under the Wachovia
Corporation Group LTD plan.  At this time, you are receiving LTD benefits based on your
inability to perform the duties of your own occupation as a Financial Advisor.  However, the
above plan contains a change in the definition of disability which states the following:

*"Disability" or "Disabled" means:*

   *(a) during the Elimination Period and the next 24 months, the Participant's inability to
   perform all of the material and substantial duties of his or her own occupation on an
   Active Employment basis because of an Injury or Sickness; and*

   *(b) after the period described in paragraph (a) above, the Participant's inability to
   perform all of the material and substantial duties of his or her own or any other
   occupation for which he or she is or becomes reasonably fitted by training,
   education, or experience because of an Injury or Sickness.*

To remain eligible for LTD benefits beyond the 24th month, you must be disabled from any
occupation as stated above.  As your LTD benefits began on February 01, 2005, the change in
definition will occur on January 31, 2006.

We are currently gathering information to assess your continued eligibility for LTD benefits
beyond this date.  On December 8, 2006, we requested updated medical information from Dr.
Petruncio.  Please follow up with this provider to ensure that this information is submitted **by
January 8, 2006**.

In reviewing the Aetna Protected Health Information reports you provided to us, we also note
all of the following doctors providing services since July 1, 2006:

Dr. Bruce D. Hopper
Dr. Thomas Morley
Dr. Raphael Dehoratuis

**Liberty/Conrad 480**

In order to obtain complete information (test results, office notes, and assessment of capacity) from the above providers, we are in need of office address (street, city, state, zip code), telephone number and fax number for each provider listed above on the preceding page.

In addition, please complete the enclosed Authorization to Obtain and Release Information, Claimant Supplementary Statement and Social Security Consent for Release of Information and return them in the envelope provided as soon as possible, but **no later than January 8, 2007**. If all of the requested information is not received by this date, there may be an interruption in your LTD benefit. You will be notified in writing as to the outcome of our investigation.

Should you have any questions about this change in definition, please contact our office.

Sincerely,

*Kate Schulz*

Kate Schulz
Sr. Disability Case Manager
Phone No.: (800) 853-7108   Ext. 369
Secure Fax No.: (888) 443-4212

Forms Attached:
    Authorization
    Claimant Supplementary Statement
    SSA Authorization

**Liberty/Conrad 481**



**Liberty Mutual.**

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904
Phone No.: (800) 853-7108   Ext. 369
Secure Fax No.: (888) 443-4212



March 23, 2007

Robert Conrad
C / O Hagner & Zohlman, LLC
Attorneys At Law
1820 Chapel Avenue West   Suite 160
Cherry Hill, NJ 08002-0000

RE:   Long Term Disability Benefits
      Wachovia Corporation
      Claim #: 2021495

Dear Robert Conrad:

We are writing in regard to your claim for Long Term Disability (LTD) benefits under the Wachovia Corporation Group LTD plan. You have been receiving LTD benefits based on your inability to perform the duties of your own occupation as a Financial Advisor. The above plan contains a change in the definition of disability which states the following:

*"Disability" or "Disabled" means:*

*(a) during the Elimination period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*

*(b) after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, or experience because of an Injury or Sickness.*

On December 8, 2006, we advised you that to remain eligible for LTD benefits beyond the 24th month, you must be disabled from any occupation as stated above. Since your LTD benefits began on February 01, 2005, the change in definition occurred on February 1, 2007.

As part of our continuing review, we are awaiting the results of an independent physician review of your claim, as we advised in our letter dated March 1, 2007.

You will continue to receive LTD benefits during this review; however, this payment, or any future payments, should not be interpreted as an admission of present or ongoing liability. We reserve the right to enforce any and all provisions of the plan at any time.

We will notify you of our decision upon completion of our review.  Should our decision be unfavorable, you will not be required to make reimbursement of benefits issued.   **Liberty/Conrad 330**



If you have any questions about the change in definition or our ongoing investigation, please contact our office.

Sincerely,

Kate Schulz
Sr. Disability Case Manager
Phone No.: (800) 853-7108   Ext. 369
Secure Fax No.: (888) 443-4212

Liberty/Conrad 331

# EXHIBIT H

 

# MLS National Medical Evaluation Services, Inc.

### An MLS Group Company

March 28, 2007

Ms. Bonnie Moneymaker
Liberty Mutual Insurance Company
P.O. Box 242484
Charlotte, NC 28224-2484

Re: Conrad, Robert
Social Security Number: N/A
Your Claim/File Number: 2021495

Dear Ms. Moneymaker:

Enclosed is the Independent Peer Review Report rendered by Paul Howard, M.D.,

regarding Mr. Robert Conrad, per your request. If we can be of any further assistance,

please do not hesitate to contact us.

Sincerely,



MLS National Medical Evaluation Services, Inc.

c: File

Enclosures

**Liberty/Conrad 345**

Corporate Headquarters • 29792 Telegraph Road • Southfield, MI 48034 • P 248.945.9001 • F 248.356.6757 • www.mls-ime.com

 

# MLS National Medical Evaluation Services, Inc.

### An MLS Group Company

March 26, 2007

Re:   Robert Conrad
      Claim Number:        2021495
      Social Security:     XXX-XX-1807

## INDEPENDENT PEER REVIEW

To Whom It May Concern:

## LIST OF MEDICAL DOCUMENTATION

- Patient letter, 01/17/05.
- List of physicians, undated.
- Medical records of Dr. Thomas Morley beginning on 03/04/04 through 06/15/06.
- Medical records of Dr. Dean Drezner, 09/24/04.
- Medical records of Dr. Praven Vasoya, D.O., 10/21/04.
- Medical records of Dr. George Petruncio beginning on 01/10/05 through 10/03/05 with multiple handwritten notes that are not legible through 12/18/06.
- Medical records of Dr. Praven Vasoya, 02/03/05 through 07/11/05.
- Medical records of Amy Evangelisto, M.D., 09/12/05 through 11/07/05.
- Medical records of Dr. Jason Cerutti, D.C., 01/04/06 through 10/23/06.
- Medical records of Dr. Gus Slotman, M.D., 07/13/06.
- Medical records from the Arthritis Center, Dr. Oscar Irigoyan.
- Hospital records from Kennedy Health Systems, 05/03/05.
- Diagnostic studies, MRI scans, cervical spine, 02/18/05.
- MRI scan of the brain, 02/18/05.
- Motor and nerve conduction study, 02/22/05, Dr. Praven Vasoya.
- EKG, 12/18/06.

**Liberty/Conrad 346**

Robert Conrad   
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 2

- Colonoscopy, Jeff Abrams, M.D., 12/22/06.
- Laboratory studies from 03/03/04 through 01/30/07.
- Attending Physician Statement from Dr. Thomas Morley, 10/14/04, Dr. George Sanders, 11/17/04 and Dr. George Petruncio, 11/19/04 and 07/06/05.
- Thomas Morley, M.D., Restrictions form.
- Praven Vasoya, M.D., Attending Physician Statement, 07/05/05 and 08/09/05, Dr. George Sanders, 07/12/05.
- Letter, George Sanders, Ph.D., and medical records, 10/01/05.
- Restrictions form, Dr. Irigoyan, 01/06/07.
- Restrictions form, Dr. Sanders, 01/10/07.
- Restrictions form, Dr. George Pretruncio, 01/12/07.
- Restrictions form, Dr. Jason Cerutti, D.C., 01/24/07.

## SUMMARY OF MEDICAL DOCUMENTATION

Mr. Robert Conrad is a 52-year-old male who went out of work in 2004 and is currently on a restricted work schedule, three days a week, between 9 a.m. and 1 p.m.  He has been out of work because of obstructive sleep apnea, fibromyalgia, difficulty concentration and history of depression.

I have been asked to review his medical records provided above and render an opinion whether the presence of fibromyalgia is supported by the medical records, provide a description of the claimant's impairments and how these translate into restrictions and limitations on physical activities, expected duration of any restrictions and limitations, comment on whether an increase in the current work schedule is supported by the medical records and contact the attending rheumatologist to clarify restrictions and limitations and how they impact on the claimant's ability to function in a setting of an eight hour work day.

Medical records begin with evaluation of Mr. Conrad by Dr. Morley on March 4, 2004.  He was found to be overweight with excessive snoring.  Evaluation pursued, finding evidence of obstructive sleep apnea, with mild oxygen desaturation.  Subsequent study demonstrated no significant periodic leg movements or oxygen desaturation after placement of CPAP at 9 cm with adequate control of his sleep disorder breathing.

Subsequent evaluation over the course of the summer and fall found him to have some difficulty wearing the mask, but he was not having any frank pathologic sleep.  He denied falling asleep while driving, during conversation or meals, although he reported poor concentration.  He was evaluated by Dr. Drezner, an ears, nose and throat specialist, who did not feel that surgical intervention would be of benefit.  A repeat

Liberty/Conrad 347

Robert Conrad 
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 3

polysomnogram in October 2004 identified moderate severe obstructive sleep apnea with mild oxygen desaturation and adequate control of the patient's sleep disorder breathing on his nasal CPAP of 9 cm of water.   Weight reduction and exercise were advised.

Throughout the records there are handwritten notes that are not legible.  They begin on November 1, 2004, through December 18, 2006.  Blood pressures in 2006 were all in the normal range with weights varying between over 300 pounds to 294 pounds on December 1, 2006.  It is presumed that these are from Dr. George Petruncio.  They contain no physical examination notes that are legible.  Dr. Petruncio has a letter of January 10, 2005, which authorizes his return to work for nine hours a week.

Dr. Praven Vasoya evaluated him on February 3, 2005, for numbness and tingling involving the feet along with foot pain.  He found diminished sensation in hands and feet with an ataxic gait.  He felt he had peripheral neuropathy.  Nerve conduction studies were entirely normal.  There was report of a cerebral spinal fluid showing an elevated protein, but objective evidence of this is not present in the records provided. He was felt to have an autoimmune neuropathy and underwent plasmapheresis with questionable benefit and Trileptal and Adderall were also added.

There was no change in his physical examination throughout the notes of Dr. Vasoya through July 11, 2005 and IVIG was recommended.

Dr. Amy Evangelisto evaluated him on September 12, 2005, with an excellent comprehensive evaluation.  There was no evidence of trigger points on examination. She felt he had osteoarthritis involving the knees and a trigger finger which she injected.  She saw him back in followup on November 7, 2005, and injected both knees because of objective evidence of osteoarthritis involving the knees on x-ray (x-ray report not available for review).

Dr. Cerutti began seeing him on January 4, 2006, through October 23, 2006.  These notes, near monthly visits, do not identify any significant musculoskeletal abnormalities that are legible with the exception of some mild decrease in range of motion, but it is not identified as to the site.  There is mention of being stiff and not sleeping well.

A visit at the Arthritis Center with Dr. Irigoyan on November 28, 2006, is handwritten and is without a physical examination.  The assessment is one of fibromyalgia.

**Liberty/Conrad 348**

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 4

## DIAGNOSTIC / LABORATORY STUDY SUMMARY

The Kennedy Health System records noted an evaluation by Dr. Haenel, D.O., on May 3, 2005, for aid in carrying out plasmapheresis. Diagnostic studies including an MRI scan on February 18, 2005, with the cervical spine demonstrating early cervical disc disease at C5-C6 and an MRI scan of the brain on February 18, 2005, which is normal.

Motor and sensory nerve conduction study on February 22, 2005, was entirely normal. An EKG was present on December 18, 2006, without interpretation.

Dr. Jeff Abrams performed a colonoscopy on December 22, 2006, finding hemorrhoids and some diverticulosis and a solitary polyp removed.

Laboratory studies between March 30, 2004, and January 30, 2007, notes repeatedly normal chemistry panels and complete blood count, elevated lipid panels with triglycerides and cholesterol, normal thyroid function, CPK, ANA, rheumatoid factor and other autoantibodies, Lyme serologies and syphilis serologies. Heavy metal testing was negative.

## ANCILLARY DOCUMENTATION

Attending Physician Statement by Dr. Morley on October 14, 2004, notes obstructive sleep apnea as an inability to work.

Dr. Sanders notes that depression on November 17, 2004, is the impedment to work and Dr. Petruncio on November 19, 2004, notes chronic fatigue syndrome, obstructive sleep apnea and hypertension.

Similarly, on July 6, 2005, notes depression, autoimmune disorder, sleep apnea, chronic fatigue and hypertension.

Dr. Thomas Morley, in a response letter, identifies obstructive sleep apnea, depression as primary causes of inability to work and the fact that he is unable to concentrate.

Dr. Vasoya, on July 5, 2005, notes peripheral neuropathy and on August 9, 2005, notes fibromyalgia and neuropathy as causes for inability to work.

Dr. Sanders re-affirms on July 12, 2005, that depression was in remission and he confirms similarly that on January 10, 2007, noting that disability was really the physical measures and not depression.

Liberty/Conrad 349

Robert Conrad 
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 5

Dr. Irigoyan filled out a restrictions form on January 6, 2007, noting fibromyalgia, but he was capable of sedentary physical activity on a full time basis.

Dr. Petruncio felt that he was capable of only working up to four hours a day and Dr. Jason Cerutti felt he was capable of sedentary activity of less than five and a half hours a day.

PEER-TO-PEER CONSULTATION

Attempts were made to speak with Dr. Oscar Irigoyan at 215-955-8430.  The first call was on March 8, 2007, at which time, a message was left on "Cindy's" voicemail requesting a return phone call.  Additional calls were made on March 15, March 23, and March 26, 2007.  Messages were left, however, no return call has been received.

CONCLUSION

**1.     The claimant's diagnosis is Fibromyalgia.  Based on your review of the medical information provided and prevailing medical standards, is the correct diagnosis?  If not, please provide a primary diagnosis based on your review of the medical evidence provided.**

The medical records and the available medical evidence therein, does not provide evidence of fibromyalgia.  Excellent comprehensive evaluation is well documented by Dr. Amy Evangelisto and notes no trigger points or myofascial abnormalities beyond trigger finger involving the hand and osteoarthritis of both knees.  There is no other objective evidence of fibromyalgia, although it is mentioned in Dr. Irigoyan's note of November 28, 2006, without physical examination findings present.

Based on objective evidence from the primary medical records available for review, there is no evidence of fibromyalgia.  The presence of fatigue and a sleep disorder are seen in fibromyalgia, but do not constitute fibromyalgia based on the American College of Rheumatology Criteria (1990) defining fibromyalgia syndrome.

**2.     Please provide a description of the claimant's impairments, if any, and outline how any impairment translates to restrictions and limitations on physical activities.**

The claimant's impairments include osteoarthritis involving the knees with minimal reference to significant pain involving the knees.  They were injected in late 2005 on a solitary occasion by Dr. Evangelisto without further references in 2006 of knee

Liberty/Conrad 350

Robert Conrad 
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 6

discomfort. There is morbid obesity present, sleep apnea and an isolated trigger finger which was treated and responded to therapy by Dr. Evangelisto in September 2005. There is also a fatigue syndrome that is self-reported and without other corresponding rheumatic diagnoses to account for functional impairment.

As described above, peripheral neuropathy, sensory in nature, is present without evidence of significant motor involvement, and as a result should not result in any degree of impairment related to his ability to work. The presence of trigger finger was treated and has not resulted in any degree of impairment, and as such he would be unrestricted in his ability to perform repetitive and fine motor hand activities of gripping, grasping, handling, fingering, feeling, fine finger dexterity, typing and writing. It is beyond the scope of this review to further comment on any functional impairment related to obstructive sleep apnea. Mr. Conrad's primary source of impairment is due to his morbid obesity and presence of osteoarthritis of his knees. This would result in some restrictions in terms of limited walking, and heavy lifting or carrying. Specifically, his morbid obesity and osteoarthritis of the knees would limit his ability to walk occasionally (a third of the day), stand occasionally (a third of the day). More specifically, he would be limited to standing and/or walking up to 30 minutes at a time, 2.5 hours in cumulative total to stand and similar such restrictions would be indicated for walking. Mr. Conrad would not have any specific physical restrictions in terms of sitting. His lifting and carrying would be restricted to up to 20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be restricted to a maximum of 35 pounds given his morbid obesity. Overall, no more specific restrictions or limitations would be indicated based upon his primary source of impairment related to his morbid obesity and resultant osteoarthritis of the knees.

**3.     Please provide an expected duration for any restrictions and limitations you may have provided.**

In terms of duration of the above-described restrictions and limitations, they would be indefinite unless he were to lose a significant amount of weight in which his present level of impairment would be reduced and he would have less limitation in terms of standing, walking, lifting and carrying.

**4.     The claimant is currently working a reduced hourly scheduled at an average of 20 per hours per week. Based on the review of the medical information, is there evidence to support the claimant's medical capacity to increase his hours?**

 

Robert Conrad
Claim Number 2021495
Paul Howard, M.D.
March 26, 2007
Independent Peer Review - Page 7

As described, Mr. Conrad is presently working a reduced hourly schedule with an average of 20 hours per workweek.  Based upon review of the available medical evidence, he is certainly capable of increasing his work hours to a full-time work schedule, 40 hours a week, 8 hours per day.  There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy of a nonprogressive nature, osteoarthritis of a mild nature as it relates to his bilateral knees, and complaints of self-reported fatigue.  As described in Question Number 1 above, the available medical evidence does not support that Mr. Conrad has fibromyalgia, and that he does not meet the specific diagnostic criteria for such.  Based on the available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week at the present time.

I further declare under penalty of applicable law that I personally performed this evaluation and prepared this report on the date and location specified.  Furthermore, I state under penalty of applicable law that I dictated this report to the MLS transcription service and that I have reviewed the transcribed report and that this report is true and correct.

Sincerely yours,



> RECEIVED
>
> APR 0 9 2007

Paul F. Howard, M.D.
Board Certified, American Board of Internal Medicine
 Subspecialty Board in Rheumatology
Fellow, American College of Physicians
Fellow, American College of Rheumatology
Clinical Lecturer, University of Arizona
Affiliate Assistant Professor, Division of Clinical Education, Midwestern University

PH:nmb

**Liberty/Conrad 352**