# EXHIBIT I



## Transferable Skills Analysis

**DATE**    **:** 4/30/07
**TO**     **:** Kate Schulz, DCM
**FROM**   **:** Janette Purtell, VCM ~ X: 293

**RE**    **:** Claimant:  Robert Conrad
            Claim #  :  2021495
            Employer:  Wachovia

### INTRODUCTION:
At DOD (8/3/04), Mr. Conrad, now age 52, had worked for the employer for approximately 9 years.

Monthly salary    : $5,327.66  ($63,931.92 per year;  $30.73 per hour)
Gross monthly benefit: $3,196.60  ($38,359.20 per year;  $18.44 per hour)

This TSA was based on a review of information available in the claim file. Standard vocational resources were used. Claimant was not contacted.

### MEDICAL STATUS ~ FUNCTIONAL CAPACITIES:
Per the DCM's instructions, this TSA is based on the 3/26/07 Peer Review by Paul Howard, MD, who provided the following:

- <u>Diagnoses:</u>  Osteoarthritis of the knees and morbid obesity are primary sources of impairment;  sleep apnea, fatigue syndrome, peripheral neuropathy. Dr. Howard did not find evidence of Fibromyalgia

- <u>Unrestricted:</u>  Mr. Conrad may work a full 40 hour work week, 8-hour days. Repetitive and fine motor hand activities of gripping, grasping, fingering, feeling, fine finger dexterity, typing, writing; sitting.

    <u>Frequent:</u>  Lifting to 10 pounds.

    <u>Occasional:</u>  Stand/walk,  up to 30 minutes at a time; lift to 20 pounds. Push/pull to 35 pounds.

### EDUCATION:
Per the TE&E form, Mr. Conrad completed high school and industry related courses in brokerage and insurance.  As he continues to work, licenses are current.

**Liberty/Conrad 339**

1

 

## WORK HISTORY:

| Dates | Employer | Position |
|---|---|---|
| 1995- present | Wachovia | Financial advisor – licensed, commissioned broker. VP. Mr. Conrad continues to work approximately 12 hours per week, in his occ, for Wachovia. |
| 1981-1995 | Janney Montgomery | Financial advisor – licensed, commissioned broker. VP. |
| 1976-1981 | Mutual of Omaha | Insurance sales agent. |

## SKILLS:

- Sales and customer service.
- Research, analysis, plan development.
- Adherence to industry and government regulations.
- Communication – verbal and written.
- Basic computer skills.

## VOCATIONAL ALTERNATIVES:

Mr. Conrad would be able to perform the following occupations based on his education, training, work experience, age, and the above functional capacities.

Mr. Conrad's best chance to stay in his own occ would be to return to full time status with Wachovia. Otherwise, his competitiveness for his own occ at a new employer is compromised by his lack of a college degree. Therefore, his own occ is not referenced in this TSA as an "alternative occ".

| OCCUPATION | NJ ANNUAL WAGE Source: State of NJ 7/2006 | NATIONAL ANNUAL WAGE Source: US DOL BLS 5/2005 |
|---|---|---|
| Sales representative, business services. (Salary estimate reflects beginning in a new industry.) | $41,060.00 (25%-ile) | $32,680.00 (25%-ile) |
| Brokerage clerk. | $36,380.00 Average | $38,140.00 Average |
| CSR – telephonic. | $32,660.00 Average | $29,680.00 Average |
| New Accounts clerk, financial institution. | $28,790.00 Average | $28,460.00 Average |

**SUMMARY:** Mr. Conrad is reasonably expected to earn in the range of $28,460.00 to $41,060.00 per year, full time, for the identified occupations.

Janette Purtell, MRC, CRC, CDMS, CCM, Vocational Case Manager
Charlotte, NC SDN: 8675-2293
Liberty Life Assurance Company of Boston ~   Group Disability Claims

**Liberty/Conrad 340**

2

 

**VOC Suite**

# VOCATIONAL CASE MANAGEMENT
## Any Occ Review

### PLEASE HAVE THE FOLLOWING IN THE CLAIM FILE BEFORE REFERRING

☐ JOB DESCRIPTION (if cannot obtain in writing, must have phone doc from discussions with EE/ER detailing job duties)

☐ PHYSICAL JOB EVALUATION FORM (if available)

☑ UPDATED MEDICAL WITH CLEAR R&L'S   ☑ TRAINING-EDUCATION-EXPERIENCE FORM

☐ MANAGER APPROVAL (if required)   ☐ ATTORNEY INFO (if applicable)

FROM:   Kathyrn Schulz          DATE:          Friday, April 27, 2007

## CLAIM BACKGROUND

| | | | |
|---|---|---|---|
| Claimant Name: | ROBERT CONRAD | Claim Number: | 2021495 |

☐ STD  ☐ FULLY INSURED   ( THRESHOLD $ )   $2,000.00

☑ LTD  ☑ ASO   Has MDS worked the claim? ☑ YES ☐ NO

Employer:  WACHOVIA CORPORATION

Change In DEF. Date:   02/01/2007   Rehab. Incentive Benefit ? ☐ YES ☑ NO

Pre-Disability Earnings:   $5,327.66   / M (mode)   Claim Service Type:   REG

**Case Manager's Recommendations / Reason For Referral:**

This claim is under Reservation of Rights (ROR) based on the Change In Definition date of 2/1/2007 with completion of Any Occ investigation still pending at that point.  Please complete a TSA based R/L's described in the 3/26/2007 Peer Review conclusions.

Thank You.
Janette X293

DP 512

Liberty/Conrad 341

# EXHIBIT J

 

 **Liberty Mutual.**

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904
Phone No.: (800) 853-7108   Ext. 369
Secure Fax No.: (888) 443-4212

May 23, 2007

Robert Conrad
C / O Hagner & Zohlman, LLC
ATTN: Thomas J. Hagner
1820 Chapel Ave West   Suite 160
Cherry Hill, NJ 08002-0000

RE:   Long Term Disability Benefits
        Wachovia Corporation
        Claim #: 2021495

Dear Mr. Conrad:

This letter is in regard to your claim for Long Term Disability (LTD) benefits under the Wachovia Corporation Group LTD Plan. The above Plan requires that to receive benefits, you must meet the following definition of disability.

*"Disability" is defined as:*

   (a)   *during the Elimination period and the next 24 month, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*

   (b)   *after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, or experience because of an Injury or Sickness.*

A review of your file indicates your date last worked was August 2, 2004 and your date of disability was August 03, 2004. According to our records, you were approved for LTD benefits effective February 1, 2005 with the diagnoses of sleep apnea, chronic fatigue, and depression. You initially received LTD benefits on the basis of your inability to perform your own occupation as of your LTD benefit effective date. You subsequently returned to work in a reduced hours capacity, which Wachovia accommodated, and thus you began receiving Partial LTD benefits effective October 10, 2005. To date, your most recent LTD benefits have been paid through March 2007, pending verification of your reduced hours earnings for April 2007.

Throughout the course of your claim we have requested updated medical documentation to determine whether or not you meet the above Plan definition of disability. The medical documentation provided in response to our requests covered the time period from March 3, 2004 through January 24, 2007, from Dean A. Drezner, M.D. – Robert Wood Johnson Medical School; Thomas Morley, D.O. – University of Medicine and Dentistry of New Jersey, School of Medicine; Praven Vasoya, D.O. - Washington Township Neurological Associates,

**Liberty/Conrad 225**

 

Liberty/Conrad 226

Department of Neurology JFK; George Petruncio, M.D.; Amy M. Evangelisto, M.D - University of Medicine and Dentistry of New Jersey; George Sanders, Ph.D.; Joseph Zingrone, D.O. - Kennedy Health Systems; Jason Cerutti, D.C. – Dynamic Chiropractic; Gus Slotman, M.D.; Oscar Irigoyan, M.D. – Arthritis Cener, Kennedy Health Systems; Jeff Abrams, M.D. - DiMarino-Kroop-Prieto-Instestinal Associates, P.A; Quest Diagnostics; and Medical Imaging and Telemedicine Company.   The records reflect that you have been evaluated by your physicians for a sleep disorder, fatigue, fibromyalgia, difficulty with concentration, depression, numbness and tingling involving the feet, along with foot pain, pain in the knee joints bilaterally, hypertension, morbid obesity, and trigger finger.

In order to clarify your level of functional ability and to help assess whether or not you continue to meet the Plan definition of disability, we obtained a physician review of your file by Paul F. Howard, M.D. Board Certified in Internal Medicine, with subspecialty Board in Rheumatology.  Upon reviewing all of the available medical documentation from all medical providers as indicated above, Dr. Howard opined *"Diagnostic studies including an MRI scan of February 18, 2005, with the cervical spine which demonstrating early cervical disc disease at C5-6 and an MRI scan of the brain on February 18, 2005, which was normal. Motor and sensory nerve conduction study on February 22, 2005 was entirely normal.  An EKG was present on December 18, 2006, without interpretation. A colonoscopy on December 22, 2006 found hemorrhoids and some diverticulosis and a solitary polyp was removed.  Laboratory studies between March 20, 2004, and January 30, 2007, notes repeatedly normal chemistry panels and complete blood count, elevated lipid panels with triglycerides and cholesterol, normal thyroid function, CPK, ANA, rheumatoid factor and other autoantibodies, Lyme serologies and syphilis serologies. Heavy metal testing was negative."*

*"The claimant's impairments include osteoarthritis involving the knees with minimal reference to significant pain involving the knees.  They were injected in late 2005 on a solitary occasion by Dr. Evangelisto without further references in 2006 of knee discomfort.  There is morbid obesity present, sleep apnea and an isolated trigger finger which was treated and responded to therapy by Dr. Evangelisto in September 2005.  There is also fatigue syndrome that is self-reported and without other corresponding rheumatic diagnoses to account for functional impairment."*

*"As described above, peripheral neuropathy, sensory in nature, is present without evidence of significant motor involvement, and as a result should not result in any degree of impairment related to his ability to work.  The presence of trigger finger was treated and has not resulted in any degree of impairment, and as such he would be unrestricted in his ability to perform repetitive and fine motor hand activities of gripping, grasping, handling, fingering, feeling, fine finger dexterity, typing and writing. It is beyond the scope of this review to further comment on any functional impairment related to obstructive sleep apnea.  Mr. Conrad's primary source of impairment is due to his morbid obesity and presence of osteoarthritis in his knees.  This would result in some restrictions in terms of limited walking, and heavy lifting or carrying. Specifically, his morbid obesity and osteoarthritis of the knees would limit his ability to walk occasionally (a third of the day), stand occasionally (a third of the day).  More specifically, he would be limited to standing and/or walking up to 30 minutes at a time, 2.5 hours in cumulative total to stand and similar such restrictions would be indicated for walking. Mr. Conrad would not have any specific physical restrictions in terms of his sitting.  His lifting and carrying would be restricted to up to 20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be restricted to a maximum of 35 pounds given his morbid obesity.*

 

Liberty/Conrad 227

*Overall, no more specific restrictions or limitations would be indicated based upon his primary source of impairment related to his morbid obesity and resultant osteoarthritis of the knees."*
*"As described, Mr. Conrad is presently working a reduced hours schedule with an average of 20 hours per week. Based upon review of the available medical evidence, he is certainly capable of increasing his work hours to a full-time work schedule, 40 hours a week, 8 hours per day. There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy or a nonprogressive nature, osteoarthritis of a mild nature as relates to his bilateral knees, and complaints of self-reported fatigue."*

Prior to providing the above assessment in his report, Dr. Howard attempted to speak with Dr. Oscar Irigoyan. Calls were made on March 8, 2007, March 23, 2007, and March 26, 2007. Messages requesting return calls were made, but the no return calls were received.

Following the conclusion of the above review, we obtained a Transferable Skills Analysis (TSA) to determine other occupations for which you may qualify. Other occupations were identified based on your ability to function within the restrictions and limitations as described above, and also based on your experience, age, training, and education. Below is a listing of the occupations identified:

| Occupation | NJ Annual Wage | National Annual Wage |
|---|---|---|
| Sales representative, business Services. (Salary estimate Reflects beginning in a new Industry.) | $41,060.00 25th percentile | $32,680.00  25th percentile |
| Brokerage clerk. | $36,380.00 Average | $38,140.00 Average |
| CSR – telephonic | $32,660.00 Average | $29,680.00 Average |
| New Accounts clerk, Financial institution | $28,790.00 Average | $28,460.00 Average |

These occupations can be performed in a variety of work settings and have been identified to exist within your local and regional economy.

Our role in the management of your Long Term Disability (LTD) claim is to determine whether or not your medical condition(s) and the medical information in your file support that you are unable to perform the material and substantial dues of any occupation according to the definition of disability under the Wachovia Group LTD Plan as described on page one of this letter.

Based upon the above explanation of the medical documentation provided for your claim, the medical evidence does not support that your medical conditions continue to be of such severity as to preclude you from performing any occupation. Benefits have continued while we finalized our review; however, benefits beyond May 23, 2007 are denied and your claim is closed effective May 24, 2007. Since you have been receiving Partial LTD benefits based upon the reduced hours schedule you have been working, to calculate your final benefits, we

 

are in need of written documentation in verification of your earnings for April 2007, as well as for May 1, 2007 through May 23, 2007. Please provide this documentation within thirty days from the date on this letter so that we may finalize any remaining benefits due to you.

If you have a pending Social Security, Workers' Compensation or Pension benefit that is awarded retroactive to your period of disability with Liberty, someone from our Claims Recovery Unit will contact you shortly. Please be advised that you are expected to repay the amount of any disability benefit you received during the time periods that you received income from other sources, per the language of your disability Plan.

This claim determination reflects an evaluation of the claim facts and Plan provisions. We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

The Liberty Life Assurance Company of Boston
Attn: Kate Schulz
Disability Claims
P.O. Box 242484
Charlotte, NC  28224-9904

The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review please include the following documentation: medical documentation beyond that which has been previously provided, to include current restrictions and limitations with supporting test results (e.g. laboratory reports, reports of radiographic, radiological, imaging, and/or electrodiagnostic study results, and any results of any other form of diagnostic test or study); office notes, consultation reports, hospital records, therapy and/or rehabilitation evaluation and progress notes, pharmacy records; as well as any additional information which you feel will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted. Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request is received. If special circumstances cause a delay in our decision, you will be notified of the final decision no later than 90 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Wachovia Corporation rights and defenses under the above captioned Plan, and all of these rights and defenses are reserved to the Plan Sponsor, whether or not they are specifically mentioned herein.

If you have any questions about this determination please call me.

**Liberty/Conrad 228**



Sincerely,

Kate Schulz
Sr. Disability Case Manager
Phone No.: (800) 853-7108   Ext. 369
Secure Fax No.: (888) 443-4212

Liberty/Conrad 229

# EXHIBIT K



# HAGNER & ZOHLMAN, LLC
### ATTORNEYS AT LAW

JOHN A. ZOHLMAN III ◊ *
THOMAS J. HAGNER ◊

---

◊ CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY

* ALSO MEMBER OF PA. BAR

COMMERCE CENTER
1820 CHAPEL AVENUE WEST
SUITE 160
CHERRY HILL, NJ 08002
PHONE 856.663.9090
FAX 856.663.9199

JZOHLMAN@HZLAWPARTNERS.COM
THAGNER@HZLAWPARTNERS.COM

November 13, 2007

Liberty Life Assurance Company
Attn: Kate Schulz, Sr. Disability Case Manager
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904

> RECEIVED
> NOV 2 0 2007
> CHARLOTTE

**Re:   Robert Conrad**
**Claim No.  2021495**

Dear Ms. Schulz:

Please consider this letter as an appeal regarding your denial of long-term disability benefits to Mr. Conrad.  This appeal relates both to the amount of benefits previously received as well as the termination of benefits as set forth in your letter of May 23, 2007.  Initially, we incorporate herein our letter of May 25, 2007 together with all the attachments to that letter. According to the disability plan, the date of disability applicable to Mr. Conrad's claim is September, 2003.

Mr. Conrad was out of work on September 8, 2003.  He saw Dr. Petruncio on that date and was unable to work for the rest of that week.  He saw Dr. Petruncio again on the following Monday, September 15, 2003 in which he did not work either.

He worked a full day on September 16th, 17th and 18th and then only a half day on Friday, September 19th when he saw Dr. Petruncio again.

Mr. Conrad did not work on September 23rd and then only a half day on the 24th which was the day that he left in order to do some lab work.  He was out on the 25th as well as he was on September 30th.

In October, he was out on the 2nd, the 7th (visit with Dr. Petruncio), the 9th (more lab work), the 10th, 13th, 15th, 16th and 17th, 20th, 22nd, 24th and 28th.

**Liberty/Conrad 150**

Liberty Life Assurance Company
November 13, 2007
Page 2

In November he worked part of the day on November 6th (more lab work), and was out the 10th, 12th, 13th, 17th, 19th, 20th, and 21st.

On November 24th, he reported for work but in the middle of a meeting he began sweating uncontrollably and indicated that he had to leave the meeting and go to the hospital which he did. He was hospitalized through Friday the 28th. He was out again on December 1st (visit with Dr. Petruncio), and also the 2nd, 3rd, 5th, 8th, 12th, 16th, 18th, and 22nd.

Therefore the onset date of Mr. Conrad's disability for purposes of the LTD Plan at issue is September, 2003 and his benefits should be recalculated accordingly.

Regarding Mr. Conrad's disability I enclose herewith a medical report from Mr. Conrad's primary treating physician Dr. Petruncio dated July 17, 2007 as well as a report from a specialist to whom he was referred, Dr. James Dwyer whose report is dated July 19, 2007.

Dr. Petruncio confirms that "It was around September 8, 2003, when Robert started to experience symptoms such as spontaneous diaphoresis (of unknown etiology, depression, multiple myalgis, sleep apnea and chronic fatigue. These symptoms persisted and resulted in weekly visits and led to hospitalizations to diagnose his condition."

Dr. Petruncio further explains that Mr. Conrad "continues to complain of multiple symptoms including chronic fatigue, decreased concentration, memory loss, and outbreaks of diaphoresis, which is still unexplained." Dr. Petruncio recommends that Mr. Conrad not work a full schedule and essentially limit his work to approximately 3 half-days per week.

Both Dr. Petruncio and Dr. Dwyer, as well as multiple other specialists including those at Jefferson Hospital and Cooper Hospital have diagnosed Mr. Conrad as suffering from fibromyalgia, among other things.

Fibromyalgia is a complex, chronic condition which causes widespread pain and fatigue as well as a variety of other symptoms. The fatigue of fibromyalgia varies from person to person and ranges from a mild tired feeling to the exhaustion of a severe flu-like illness.

Typically patients suffer from one or more of the following in addition to pain and fatigue:

    (a)   Sleep disturbances
    (b)   Cognitive disorders
    (c)   Depression
    (d)   Anxiety

The medical records submitted relating to Mr. Conrad clearly establishes that Mr. Conrad is indeed disabled as a result of his fibromyalgia. If you contend that Mr. Conrad is not suffering from the fatigue, memory and other concentration problems which he has articulated,

kindly indicate specifically and in detail why either you do not believe that Mr. Conrad is suffering
Liberty Life Assurance Company
November 13, 2007
Page 3

from these symptoms or why you believe that in spite of the symptoms Mr. Conrad is capable of working a fulltime job on a regular and reliable basis.

We are supplying in connection with this appeal records of compensation from April 2007 through October 2007. Reference is made to your letter of July 20, 2007 indicating that you had not received confirmation from Wachovia Corporation's payroll department confirming Mr. Conrad's lack of earnings for April 2007 and May 2007.

Enclosed for your reference is a copy of a fax from Mr. Conrad to you dated May 2, 2007 enclosing an accounting which Mr. Haddam gave to him proving that he did not receive a check.

The attached earnings indicate the compensation received and not received by Mr. Conrad on a monthly basis. The schedules which show "Commission Date" with the last day of each month reflect compensation earned by Mr. Conrad on a monthly basis under the category "MTD Net".

The schedule with the commission date of April 30, 2007 represents April production which would be paid in May. You will note the $0.00 sum under the category MTD Net.

Similarly, the schedule with the commission date of March 31, 2007 reflects a negative $60.00 paid in April for March production. Therefore, the attached records demonstrate unequivocally that Mr. Conrad's compensation for March and April 2007 was a negative $60.00.

Under the circumstances, it is clear that Mr. Conrad's benefits need to be recalculated in order to take into consideration the higher BEC based upon the onset date of the disability of September 2003. Additionally, his benefits need to be reinstated effective April 2007.

When additional compensation information is received, we will supplement this appeal accordingly.

Very truly yours,

THOMAS J. HAGNER

TJH/bg/mck
Enclosure
cc:   Robert Conrad

GEORGE J. PETRUNCIO, M.D., P.A.
FRIES MILL PAVILION
188 FRIES MILL ROAD, SUITE E-1
TURNERSVILLE, NEW JERSEY 08012

TELEPHONE: (856) 875-7700
FAX: (856) 262-0428

July 17, 2007

Wachovia Securities, LLC
Five Greentree Centre, Ste. 400
Marlton NJ 08053

Re: Robert Conrad

Mr. Stanley Hadam

Robert Conrad has been a patient of this office since 1994. Prior to September 2003 he was healthy and worked as a successful stockbroker. It was around September 8,2003, when Robert started to experience symptoms such as spontaneous diaphoresis(of unknown etiology), depression, multiple myalgias, sleep apnea, and chronic fatigue. These symptoms persisted and resulted in weekly visits and led to hospitalizations to diagnose his condition.

In March of 2004, he was diagnosed with sleep apnea by Dr. Thomas Morley. Although this new diagnosis was an important finding, Mr. Conrad continued to experience various symptoms with little to no improvement. His overall health continued to decline and further diagnostic tests including plasmaphoresis, spinal tap, frequent bloodwork,and radiology tests including MRI and Ct studies were performed. He did experience some improvement with the plasmaphoresis. During this time, he was referred to multiple specialists, and in July of 2005 was given a diagnosis of fibromyalgia and reactive depression resulting from his disability and continued symptoms of unknown etiology.

To date, Robert continues to complain of multiple symptoms including chronic fatigue, decreased concentration, memory loss, and outbreaks of diaphoresis, which is still unexplained. He uses a CPAP machine daily for treatment of his sleep apnea and does aqua therapy twice daily for his multiple myalgias. He currently treats with a chiropractor twice a week with minimal improvement.

At this point he should limit his work schedule to no more than three days a week with a limit of four to five hours a day, as working a full time schedule may be detrimental to his health.

If you are in need of any additional information, please do not hesitate to contac me at my office.

Respectfully,

*George J. Petruncio M.D.*

RECEIVED
AUG 0 6 2007
By_____

Liberty/Conrad 153



*Arthritis, Rheumatic & Back Disease Associates, P. A.*
*Greentree Osteoporosis Center*

Fellows in the American College of Rheumatology

Sheldon D. Solomon, M.D., F.A.C.P.
Brian L. Grimmett, M.D.
Kenneth H. Maurer, M.D.
James P. Dwyer, D.O.
Adrienne R. Hollander, M.D.
Arielle S. Silver, M.D.
Stephen Burnstein, D.O.

2309 Evesham Road, Suite :
Voorhees, NJ 08(
856-424-5(
Fax 856-424-4;

3201 Route 38 West, Suite 1
Mount Laurel, NJ 080
856-235-00
Fax 856-235-02

July 19, 2007

Dr. George Petruncio
188 Fries Mill Rd #E1
Turnersville, NJ 08012

Re: Robert Conrad

Dear George,

Thanks for the opportunity to see your patient, Robert Conrad, a very pleasant gentleman who has been relatively incapacitated since 2003 with a myriad of unusual symptoms. He relates his bug bite during a trip to New York in August, 2003, followed by weight loss, low grade fevers, myalgias, arthralgias and after a negative work-up he went through "massive antibiotics" without any significant improvement. He continued with symptoms of fatigue, memory loss, aches and pains, diarrhea and hyperhydrosis which is localized to the head and scalp region. He has been diagnosed in March of 2004 with severe sleep apnea and has been using C-PAP for this. Despite this he continues to have significant sleep disturbances. He has been evaluated by multiple physicians, rheumatologists, neurologists and continues to seen on a regular basis by pulmonologists and chiropractors. Prior visits to rheumatology at Jefferson and Cooper have resulted in diagnoses of fibromyalgia but no specific autoimmune condition. Laboratory studies that have been thorough in the past have failed to demonstrate any serologic abnormalities to suggest either infection or autoimmune condition. Bob indicates he has been treated for depression most recently with Lexapro. He has been on multiple medications for fibromyalgia in the past including Amitriptyline as well as Flexeril without any benefit. He is presently taking ibuprofen 2000 mg daily which

RECEIVED
JUL    2007

Liberty/Conrad 154

Dr. George Petruncio

Page two

Re: Robert Conrad

July 19, 2007

provides some minimal benefit. He does have some chronic GI symptoms with chronic abdominal discomfort and has had a colonoscopy as recent as December of 2006 which was relatively unremarkable.

Physical examination shows Bob to be 324 lbs and a height of 5'11". HEENT, cardiopulmonary and abdominal examination are all unremarkable with the exception of mild diffuse abdominal tenderness. Extremity examination shows good range of motion in both upper and lower extremities without any evidence of arthropathy or synovitis. He does have a small pustule on his right dorsal hand which looks to be an "ingrown hair" rather than something that would be the result of hematologic spread of infection.

Neurologic examination shows some light touch sensation changes on his feet. He does have passive congestion of the veins about his lower extremities and about his feet but pulses are normal in both upper and lower extremities.

In review of all Bob's data, laboratory and x-ray results, it certainly is clear that he has some yet undiagnosed systemic disorder that causes manifestations as mentioned above. Although he clearly does have fibromyalgic symptoms, I feel that these are largely a secondary manifestation of the primary condition as well as perhaps aggravated by sleep apnea which continues to be an issue.

I had a long discussion with Bob about this indicating that it is doubtful that one would be able to come up with any surprising or enlightening findings particularly in light of the thorough work-up that you have done, however, I have suggested we recheck a few serologic studies including Sjogren's antibodies and extractable nuclear antigen antibodies to see if there is anything that would suggest an occult rheumatologic process. If these studies are normal or negative, I suggested Bob continue to work with you and with his pulmonary consultant to try to help better manage his sleep apnea problem and continue to keep an open mind about the possibilities of some other systemic process. It is doubtful infectious etiologies would explain this in light of the

Liberty/Conrad 155

Dr. George Petruncio

Page three                                          Re: Robert Conrad

July 19, 2007


normal laboratory studies particularly his normal blood count.  It is also unlikely this
would be an occult malignancy since it has been existing for four years without any
manifestations of other clues.  Endocrine abnormalities have been fully evaluated
and the only other thought is some neurologic process that would trigger periodic
hyperhydrosis.

I appreciate your allowing me to participate in his care.  I will be in touch with you in
regard to lab results.

Sincerely,

James P. Dwyer, DO

JPD:G133tpj

George –
2+ stain ⊖
ANA⁻
D₁ DNA
Sm, RNA nb⁻
SSA⁻
SSB
– culture – gr⊕
suspect S.

**Liberty/Conrad 156**



**Quest Diagnostics**

QUEST DIAGNOSTICS INCORPORATED
CLIENT SERVICE 800.825.7330

SPECIMEN INFORMATION
SPECIMEN:    NE740715L
REQUISITION: 0001674
LAB REF: TUV

COLLECTED:  07/19/2007    14:21 ET
RECEIVED:   07/19/2007    18:26 ET
REPORTED:   07/26/2007    07:53 ET

PATIENT INFORMATION
CONRAD,ROBERT

DOB: 02/26/1955 AGE: 52
GENDER: M

ID:
PHONE: 856.875.1739

REPORT STATUS FINAL REPRINT

ORDERING PHYSICIAN
BURNSTEIN,STEPHEN

CLIENT INFORMATION
N08054017                    ML11
SOLOM,GRIMMETT & MAURER
SUITE 103
3201 ROUTE 38
MOUNT LAUREL, NJ 08054-9721

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ANA SCREEN EIA W/REFL |  |  |  | QHO |
|   TITER IFA |  |  |  |  |
|   ANA SCREEN | NEGATIVE |  | NEGATIVE |  |
| DNA (DS) ANTIBODIES | <30 |  | IU/mL | QHO |

```
                      INTERPRETATION
                      < 30       NEGATIVE
                      0-60       LOW POSITIVE
                      61-200     POSITIVE
                      > 200      STRONG POSITIVE
```

| SM AND SM/RNP ANTIBODIES |  |  |  | QHO |
|---|---|---|---|---|
|   SM ANTIBODY | <1.00 |  | index |  |

REFERENCE RANGE

INDEX VALUES < OR = 1.00    = NEGATIVE
INDEX VALUES > 1.00         = POSITIVE

THE PRESENCE OF SM ANTIBODIES IS HIGHLY SPECIFIC FOR SLE.
SM ANTIBODIES ARE PRESENT IN 30% OF SLE PATIENTS.

Liberty/Conrad 157

CONRAD,ROBERT - NE740715L

Page 1 - Continued on Page 2

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics Incorporated. All rights reserved. PE-DPXM. 2/91
07/26/07 05:26 NE55063  1/4



**Quest Diagnostics**®

QUEST DIAGNOSTICS INCORPORATED

| | |
|---|---|
| COLLECTED: 07/19/2007 14:21 ET | |
| REPORTED: 07/26/2007 07:53 ET | |

PATIENT INFORMATION
CONRAD,ROBERT

DOB: 02/26/1955 AGE: 52
GENDER: M

REPORT STATUS FINAL REPRINT

ORDERING PHYSICIAN
BURNSTEIN,STEPHEN

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| SM/RNP ANTIBODY | <1.00 | | index | |

### REFERENCE RANGE

INDEX VALUES < OR = 1.00    = NEGATIVE
INDEX VALUES > 1.00         = POSITIVE

RNP ANTIBODIES ARE FOUND IN MIXED CONNECTIVE TISSUE
DISEASE (MCTD), SLE, RA, SJOGREN'S SYNDROME,
PROGRESSIVE SYSTEMIC SCLEROSIS, AND DRUG INDUCED LE.
THE PRESENCE OF RNP ANTIBODIES AND THE ABSENCE OF SM
AND DS DNA ANTIBODIES STRONGLY SUGGESTS MCTD, WHILE
THE ABSENCE OF RNP USUALLY RULES OUT MCTD.

| | | | | |
|---|---|---|---|---|
| SJOGREN'S ANTIBODIES (SSA,SSB) | | | | QHD |
| SJOGRENS ANTIBODIES (SSA) | <1.00 | | index | |

### REFERENCE RANGE

INDEX VALUES < OR = 1.00    = NEGATIVE
INDEX VALUES > 1.00         = POSITIVE

| | | | |
|---|---|---|---|
| SJOGRENS ANTIBODIES (SSB) | <1.00 | | index |

### REFERENCE RANGE

INDEX VALUES < OR = 1.00    = NEGATIVE
INDEX VALUES > 1.00         = POSITIVE

ANTIBODIES TO SSA (RO) AND SSB (LA) ARE OBSERVED
WITH THE HIGHEST FREQUENCY IN SJOGREN'S SYNDROME,
ALTHOUGH THESE ANTIBODIES ARE ALSO FOUND IN A
SIGNIFICANT PERCENTAGE OF PATIENTS WITH SLE.

================================

**Liberty/Conrad 158**

CONRAD,ROBERT - NE740715L

Page 2 - Continued on Page 3

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics Incorporated. All rights reserved. RN-RPAPA. 7/01
07/26/07 09:26 04355868  2/4



**Quest Diagnostics**®

QUEST DIAGNOSTICS INCORPORATED

COLLECTED:   07/19/2007   14:21 ET
REPORTED:    07/26/2007   07:53 ET

PATIENT INFORMATION
CONRAD,ROBERT

DOB: 02/26/1955 AGE: 52
GENDER: M

REPORT STATUS FINAL REPRINT

ORDERING PHYSICIAN
BURNSTEIN,STEPHEN

---

CULTURE, ANAEROBIC BACTERIA W/GRAM STAIN                                      QHO

MICRO NUMBER:        70522928
TEST STATUS:         FINAL
SPECIMEN SOURCE:     HAND
SPECIMEN COMMENTS: ADEQUATE
GRAM STAIN:          MODERATE GRAM POSITIVE COCCI

RESULT:              NO ANAEROBES ISOLATED.
                     CULTURE FOR ANAEROBES REQUESTED. IN THE COURSE OF
                     TESTING, AEROBIC ORGANISM(S) ISOLATED. PLEASE
                     NOTIFY THE LABORATORY WITHIN THREE DAYS IF
                     FURTHER IDENTIFICATION AND SUSCEPTIBILITIES ARE
                     DESIRED.


        HARD COPY TO FOLLOW


PERFORMING LABORATORY INFORMATION
QHO  QUEST DIAGNOSTICS-HORSHAM, 900 BUSINESS CENTER DRIVE, HORSHAM, PA  19044
     Laboratory Director:  HERMAN HURWITZ, MD, FCAP, CLIA: 39D0204404

**Liberty/Conrad 159**

CONRAD,ROBERT - NE740715L

Page 3 - End of Report

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics Incorporated.  All rights reserved. DO-UPWR.  7/01
07/26/07  09:26  NE955869   3/4

# EXHIBIT L



# HAGNER & ZOHLMAN, LLC
### ATTORNEYS AT LAW

JOHN A. ZOHLMAN III ◊ *
THOMAS J. HAGNER ◊

COMMERCE CENTER
1820 CHAPEL AVENUE WEST
SUITE 160
CHERRY HILL, NJ 08002
PHONE 856.663.9090
FAX 856.663.9199

◊ CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A CIVIL TRIAL
ATTORNEY
* ALSO MEMBER OF PA. BAR

JZOHLMAN@HZLAWPARTNERS.COM
THAGNER@HZLAWPARTNERS.COM

November 16, 2007

Liberty Life Assurance Company
Attn: Kate Schulz, Sr. Disability Case Manager
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-9904

> **Re:  Robert Conrad**
> **Claim No.  2021495**

Dear Ms. Schulz:

This letter supplements our previous letter dated November 13, 2007.    With respect to additional documentation concerning Mr. Conrad's lack of documentation, I enclose herewith the following:

(1)    Fax from Wachovia to you dated May 2, 2007 with the March, 2007 compensation statement reflecting a deficit of $160.00.  Mr. Hadam's note on the compensation statement indicates that March compensation was paid in April and was a deficit of $160.00.

(2)    Copies of Wachovia non-exempt time sheets for the months of March, 2007 through June, 2007, all signed by Mr. Hadam.   They indicate that Mr. Conrad worked as follows:

| | | |
|---|---|---|
| March, 2007 | 52 hours | Over 13 partial days |
| April, 2007 | 58.5 hours | Over 15 partial days |
| May, 2007 | 43 hrs. 40 min. | Over 12 partial days |
| June, 2007 | 39 hrs. 50 min. | Over 11 partial days |

(3)    Correspondence dated April 12, 2007 indicating that Mr. Conrad was not going to receive a paycheck on April 15, 2007;

RECEIVED
NOV 2 7 2007
BY

**Liberty/Conrad 139**

Page Two
November 16, 2007

_____

(4)    Correspondence from Mr. Conrad to you dated May 15, 2007 indicating that he did
       not receive a paycheck on May 15, 2007;

(5)    Correspondence from Mr. Conrad to you dated June 11, 2007 indicating that he did
       not receive a paycheck on either May 15, 2007 or April 15, 2007 and that the last
       LTD check that he received was for the month of March, 2007 and was received on
       May 8, 2007.

Very truly yours,

THOMAS J. HAGNER

TJH/bg
Enclosures
cc:    Robert Conrad

Liberty/Conrad 140

# EXHIBIT M



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 49470
Charlotte, NC 28277-9470
Phone No.: (800) 291-0112
Secure Fax No.: (888) 443-4212

December 3, 2007

Thomas J. Hagner
Hagner & Zohlman, LLC
1820 Chapel Ave. W. Suite 160
Cherry Hill, NJ 08002-0000

RE:   Long Term Disability Benefits
      Robert Conrad
      Claim #: 2021495

Dear Mr. Hagner:

This is in reference to your client, Mr. Robert Conrad, and his claim for Long Term Disability
(LTD) benefits under the Wachovia Corporation Group LTD Plan. We have received your
request for a review of the claims determination on Mr. Conrad's Long Term Disability
Benefits. We are in the process of reviewing his claim.

In accordance with the Employee Retirement Income Security Act (ERISA), under normal
circumstances, you will be notified of the final decision within 45 days of the date that your
request for review is received. If there are special circumstances requiring delay, you will be
notified of the final decision within 90 days after your request for review is received.

We have also addressed his past benefit's due for March 2007 and April 2007, as you have
requested in the appeal letter provided.

The Wachovia Corporation LTD plan provides the following partial return to work provision:

(1)   *If, at any time while Disability Benefits are payable under Section 3.2, the Participant's
      Monthly Earnings are less than 20% of his Pre-Disability Earnings, a Disability
      Benefit determined under Section 3.2(b) will continue to be paid, and all other benefit
      provisions and terms applicable to Disability will apply as stated in this Plan.*

(2)   *If, during the first 12 months of a Participant's return to employment of any kind, the
      Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability
      Earnings, but less than 80% of his or her Pre-Disability Earnings, a Disability Benefit
      determined under Section 3.2(b) will continue to be paid, and all other benefit
      provisions and terms applicable to Disability will apply as stated in this Plan.
      However, if the Disability Benefit plus the Participant's Monthly Earnings would
      exceed 100% of the Participant's Pre-Disability Earnings, the Disability Benefit will be*

**Liberty/Conrad 136**

*reduced so that the Disability Benefit plus the Participant's Monthly Earnings does not exceed 100% of the Participant's Pre-Disability Earnings.*

(3)   *If, after the first 12 months of a Participant's return to employment of any kind, the Participant's Monthly Earnings are greater than or equal to 20% of his Pre-Disability Earnings, but less than 80% of his Pre-Disability Earnings, the Disability Benefit otherwise payable will be further reduced by 50% of the Participant's Monthly Earnings. All other benefit provisions and terms applicable to Disability will apply as stated in this Plan.*

Based on the information provided by Mr. Conrad, and confirmed by Wachovia Corporation, Mr. Conrad has been paid $3,944.00 for his retroactive earnings for March 2007 and April 2007. The amount paid is his for his monthly draw of $1,972.00 per month, for the months of March 2007 and April 2007. This is reflected in his May 2007 Compensation Statement.

On May 3, 2007, Mr. Conrad was paid $3,196.60, which represents his full Long Term Disability benefit for the March 2007 benefit period. Based on the information on file, Mr. Conrad has received $862.86 for his commission sales for the March 2007 and $1,972.00 monthly draw for March 2007, retroactively as addressed above. These earnings were not considered when his check was released, thus, an overpayment of $1,417.43 has occurred for March 2007.

| | |
|---|---|
| March 2007 partial earnings: | $2,834.86 |
| | x    50% |
| March 2007 offset: | $1,417.43 |
| | |
| Disability benefit paid: | $3,196.00 |
| March 2007 partial offset: | - $1,417.43 |
| March 2007 benefit payable: | $1,778.57 |
| | |
| Disability benefit paid: | $3,196.00 |
| March 2007 benefit payable: | - $1,778.57 |
| Overpayment due: | $1,417.43 |

Benefits are also are payable for April 2007. As addressed above, Mr. Conrad has received $1,972.00 of his retroactive earnings for April 2007, creating an offset of $986.00 and a payable benefit of $2,210.00.

| | |
|---|---|
| April 2007 partial earnings: | $1,972.00 |
| | x    50% |
| April 2007 offset: | $986.00 |
| | |
| Partial benefit: | $3,196.00 |
| 50% earnings: | - $986.00 |
| April 2007 benefit due: | $2,210.00 |

**Liberty/Conrad 137**

Subsequently, a check will be issued to Mr. Conrad in the amount of $792.57.  This represents benefits due for April 2007 less the overpayment due for the March 2007 benefit.

Mr. Conrad's file is being forwarded to our Appeals Unit.  You will be contacted shortly; however, if you have any questions about Mr. Conrad's appeal for benefits please contact me at 1-800-291-0112 ext. 14181 during the hours of 7:00am to 4:00pm Eastern Standard Time.

Sincerely,

June Arrington
Sr. Disability Case Manager II
Phone No.: (800) 291-0112 Ext. 14181
Secure Fax No.: (888) 443-4212

Liberty/Conrad 138

# EXHIBIT N



# MLS National Medical Evaluation Services, Inc.

### An MLS Group Company

January 18, 2008

Ms. Lindsay Mack
Liberty Mutual Insurance Company
P.O. Box 49470
Charlotte, NC 28277

Re: Conrad, Robert
Social Security Number: N/A
Your Claim/File Number: 2021495

Dear Ms. Mack:

Enclosed is the Independent Peer Review Report rendered by Theodore Hubley, M.D.,

regarding Mr. Robert Conrad, per your request. If we can be of any further assistance,

please do not hesitate to contact us.

Sincerely,

MLS National Medical Evaluation Services, Inc.

c:  File

Enclosures

**Liberty/Conrad 100**

# MLS National Medical Evaluation Services, Inc.

### An MLS Group Company

January 16, 2008

Re:   Robert Conrad
      Claim Number:         2021495
      Social Security:      XXX-XX-1807

<u>INDEPENDENT PEER REVIEW</u>

To Whom It May Concern:

<u>LIST OF MEDICAL DOCUMENTATION</u>

- Letter from Dr. Michael Barnish to Dr. George Petruncio, 11/3/03.
- Clinic note with an illegible signature, presumptively from Dr. Petruncio, dated 11/8/03, 11/15/03, 11/22/03, 11/29/03, 12/1/03, and 12/30/03.  These notes are generally illegible.
- Summary note, attention Denise Welsh, consisting of three pages signed by Robert Conrad 1/17/05.
- Letter, Dr. Petruncio from Dr. Thomas Morley dated 9/16/04.
- Letter to Dr. Petruncio from Dr. Dean Drezner dated 12/23/04.
- Addendum dated 12/24/04, Dr. Dean Drezner.
- Sleep study dated 10/10/04, interpreted by Dr. Amita Vasoya.
- Clinic note dated 11/1/04, Dr. Petruncio, 11/8/04.
- Letter to Dr. Petruncio from Dr. Morley dated 3/4/04.
- Sleep study interpretation by Dr. Morley dated 3/17/04.
- Polysomnogram with CPAP titration interpretation dated 4/7/04, Dr. Morley.
- Letter to Dr. Petruncio from Dr. Morley dated 4/22/04.
- Clinic notes, Dr. Petruncio dated 9/8/03, 9/15/03, 9/19/03, and 10/7/03.
- Letter to Dr. Petruncio from Dr. Morley dated 7/22/04.

**Liberty/Conrad 101**

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 2

- To Whom It May Concern letter, Dr. George Petruncio, dated 1/10/05.
- Letter to Janice Borner dated 1/10/05, Dr. George Sanders, Ph.D.
- Consultation note, Dr. Pravin Vasoya, dated 2/3/05.
- Letter to Dr. Petruncio from Dr. Nicholas Depace dated 2/25/05.
- Clinic note dated 3/2/05, Dr. Vasoya.
- Clinic notes, Dr. Petruncio, dated 4/4/05.
- Clinic note, Dr. Vasoya, dated 4/15/05.
- Clinic notes, Dr. Petruncio, dated 5/10/05, and 5/20/05.
- Clinic note, Dr. Vasoya, dated 5/26/05.
- Clinic note, Dr. Petruncio, dated 6/10/05.
- Clinic note, Dr. Morley, dated 6/16/05.
- Clinic note, Dr. Petruncio, dated 6/17/05, 6/29/05, and 7/8/05.
- Clinic note, Dr. Vasoya, dated 7/11/05.
- Clinic note, Dr. Petruncio, dated 7/15/05, and 8/19/05.
- Consultation note dated 9/12/05, by Dr. Amy Evangelisto.
- Clinic note, Dr. Petruncio, dated 9/14/05.
- Return to work letter dated 10/3/05, Dr. Petruncio.
- Clinic note, Dr. Petruncio, dated 10/11/05.
- Consultation note, Amy Evangelisto, dated 11/7/05.
- Clinic note dated 11/11/05, Dr. Petruncio.
- Unlabeled notes from 1/4/06 to 2/24/06, possibly physical therapy notes, unclear.
- Clinic note, Dr. Petruncio, dated 1/10/06, 1/13/06, and 2/16/07.
- What appears to be therapy notes dated 2/27/06 through 3/20/06.
- Clinic note, Dr. Jason Cerutti, dated 3/31/06.
- Further, again, apparent therapy notes from 3/22/06 through 5/26/06.
- Clinic note, Dr. Cerutti, dated 4/28/06, and 6/1/06.
- Clinic note, unsigned, dated 6/15/06.
- Clinic note, Dr. Morley, dated 6/15/06.
- Clinic note dated 7/5/06, Dr. Jason Cerutti.
- Letter to Dr. Petruncio from Dr. Slotman dated 7/13/06.
- What appears to be therapy notes dated 8/4/06 through 1/3/07.
- Clinic notes, Dr. Petruncio dated 8/14/06.
- Clinic note, Dr. Cerutti, dated 9/11/06, 11/1/06.
- Arthritis Center note dated 11/28/06.
- Illegible note dated 12/10/06.
- Dr. Petruncio note dated 12/18/06.
- Letter to Mr. Hagner, undated, from Dr. Petruncio.
- Letter to Wachovia Securities dated 7/17/07, Dr. Petruncio.
- Letter to Dr. Petruncio from Dr. James Dwyer dated 7/19/07.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 3

- Release of Information form dated 1/12/07, signed by Robert Conrad.
- 12-lead EKG dated 12/24/01.
- MRI report dated 2/18/05.
- Consultation note dated 5/2/05, Dr. Vingrone.
- Initial MRI of the brain dated 2/18/05.
- Nerve conduction studies dated 2/22/05.
- Additional EKG report dated 12/18/06.
- Colonoscopy report dated 12/22/06.
- Chiropractic note dated 12/27/06.
- Laboratory testing dated 3/30/04.
- Laboratory testing dated 11/1/04.
- Laboratory testing dated 3/4/05.
- Laboratory testing dated 5/11/05.
- Laboratory testing dated 5/12/05.
- Laboratory testing dated 7/15/05.
- Laboratory testing dated 8/29/05, and 10/12/05.
- Laboratory testing dated 1/30/07, and 7/19/07.
- Restrictions form dated 11/17/04, Dr. Saunders.
- Restriction form, Dr. Petruncio, dated 11/19/04.
- Letter with answers by Dr. Morley from 11/23/04.
- Restrictions form completed by Dr. Vasoya dated 7/5/05.
- Restrictions form completed by Dr. Petruncio dated 7/6/05.
- Restrictions form completed by Dr. Vasaya 8/9/05.
- Restrictions form by Dr. Saunders dated 7/12/05.
- Restrictions form, illegible, rheumatology, dated 1/15/07.
- Restrictions form, Dr. Saunders, dated 1/10/07.
- Restrictions form, Dr. Petruncio, dated 1/12/07.
- Restrictions form, Dr. Cerutti, dated 1/24/07.

## SUMMARY OF MEDICAL DOCUMENTATION

Mr. Conrad is a 52-year-old male residing in Sicklerville, New Jersey. He was employed by the Wachovia Corporation before his date of disability on 08/03/04. The available data starts in November of 2003 and reveals that the patient began to complain of symptoms of fatigue, poor sleep and snoring. As a result of these complaints he underwent further testing. Included in that testing was a sleep study performed in March 2004 that revealed findings consistent with obstructive sleep apnea hypopnea syndrome. His sleep study revealed an apnea hypopnea index of 39 events per hour. He went on to have a CPAP titration polysomnogram performed on 4/7/04, that revealed that CPAP at 9 cm of water pressure controlled his sleep disordered breathing

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 4

and eliminated the respiratory events to a point where his respiratory disturbance index was zero. He tolerated the CPAP and had satisfactory oxygen saturations.

From the clinic notes, he continued to complain of symptoms of fatigue and hypersomnolence. There is no record of any examples of where he had fallen asleep inappropriately.

He had his CPAP pressures empirically increased to 11 cm with the assumption that perhaps his sleep apnea was ineffectively treated with his previous pressure setting.

He had another sleep study performed on 10/10/04. This again revealed the presence of obstructive sleep apnea syndrome. This again revealed that a CPAP pressure of 9 cm reduced the respiratory disturbance index to zero and allowed for satisfactory oxygen saturations. There is no evidence of other sleep disorders. Specifically, there is no periodic limb movements of sleep observed. The patient's sleep efficiency was 85%.

From the available records, the patient was seen in consultation on 2/3/05 for symptoms of chronic fatigue and numbness in his toes. He was evaluated by Dr. Vasoya. His workup with EEG testing, MRI testing ultimately revealed a peripheral neuropathy. This was presumptively felt to be an autoimmune peripheral neuropathy. The patient underwent plasmapheresis therapy.

The records indicate that the patient had good CPAP compliance. The records do not reveal any evidence that the patient had fallen asleep at inappropriate times.

Because of his persistent somnolence, he underwent a trial of 200 mg of Provigil daily and did not notice any improvement. He was ultimately placed on Adderall XR 10 mg twice daily and continued to complain of subjective fatigue and somnolence.

He was seen in consultation by Dr. Evangelisto, a rheumatologist. She saw him again in followup on 11/7/05. She made a comment in the report that, "He certainly has an element of fibromyalgia, which I feel is likely secondary to severe sleep apnea noted on prior investigation." It should be noted that there is no evidence in the literature that sleep apnea causes fibromyalgia. Additionally, the patient's obstructive sleep apnea has been proven to be effectively treated on two separate occasions with his CPAP therapy.

The patient was seen most recently by Dr. Dwyer of Rheumatology, who again felt that he had a significant degree of fibromyalgia symptoms. He refers to visits at "Jefferson and Cooper" that have resulted in diagnosis of fibromyalgia. An autoimmune workup again was pursued which was negative.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 5

Dr. Morley signed a statement 11/23/04. He felt that partially treated sleep apnea and depression were causing Mr. Morley's symptoms. He felt that depression was a major contributing factor to his symptoms.

CLINICAL IMPRESSION

In summary, the available records indicate that Mr. Conrad has the diagnosis of obstructive sleep apnea hypopnea syndrome which on two occasions has been proven to be effectively treated with CPAP at 9 cm. The patient has been compliant with CPAP therapy. There is no evidence that his CPAP therapy is ineffective. There is no objective evidence such as by a multiple sleep latency test that the patient continues to have objective hypersomnolence or any other sleep disorder contributing to his subjective complaints of somnolence. He, additionally, has fibromyalgia. This can result in symptoms of fatigue and subjective somnolence, although his rheumatologists assert that it may be aggravated by obstructive sleep apnea syndrome. The evidence demonstrates on two separate occasions that CPAP at 9 cm is effective at treating his obstructive sleep apnea syndrome and, therefore, there is no evidence that the fibromyalgia is being aggravated by obstructive sleep apnea hypopnea syndrome. The evidence would be more consistent with the patient having subjective hypersomnolence as a consequence of fibromyalgia and potentially depression. The patient also has an autoimmune peripheral neuropathy. This is not completely outlined in the most recent clinical notes. From the records and conversation with Dr. Petruncio, the patient is ambulatory. I would defer specific disability regarding this to a neurologist.

Finally, it is mentioned frequently that the patient has depression. This can also give subjective complaints of hypersomnolence. He has been seeing a psychologist for this. Depression could also give him complaints of subjective fatigue.

PEER-TO-PEER CONSULTATION, DR. PETRUNCIO

I spoke with Dr. George Petruncio on January 14th at 3:45 p.m. until 3:55 p.m. He was able to briefly review the patient's chart. He told me that to his knowledge the patient has not had any formal neurologic testing that has indicated any problems with memory or concentration. He felt that depression could certainly be a contributing factor to this. He felt that the patient was being compliant with the CPAP therapy.

I told him on two separate occasions this sleep study revealed effective treatment of obstructive sleep apnea syndrome. He reiterated that depression may be a significant factor in the patient's self-reported memory and concentration difficulties. He again felt that fatigue was a disabling symptom. Other than fibromyalgia and depression, he had

# EXHIBIT O

 

 **Liberty Mutual.**

Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 49470
Charlotte, NC 28277-9470
Phone No.: (800) 291-0112
Secure Fax No.: (888) 443-4212

January 18, 2008

Thomas J. Hagner
Hagner & Zohlman, LLC
Commerce Center
1820 Chapel Avenue West, Suite 160
Cherry Hill, NJ 08002-0000

RE:    **Robert Conrad**
       **Self-funded Plan Sponsor: Wachovia Corporation**
       **Long Term Disability Claim #: 2021495**

Dear Mr. Hagner:

On behalf of the plan sponsor, Wachovia Corporation we have completed our review of your request for reconsideration of Robert Conrad's claim for Long Term Disability benefits and are unable to alter our original determination to deny benefits.

The Wachovia Corporation Long Term Disability Plan requires that, to receive benefits, a Participant must meet the following definition of disability or partial disability:

*"Disability" or "Disabled" means:*
*(a)    during the Elimination Period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and*
*(b)    after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, and experience because of an Injury or Sickness.*

*The loss of a license for any reason does not, in itself, constitute Disability.*

*A Participant will not be Disabled unless (i) he or she received disability benefits under the Wachovia Corporation Short Term Disability Plan (or exhausted benefits under such plan) which are related or due to the same cause(s) or (ii) he or she received disability benefits under any workers' compensation act or law or any other act or law of like intent or application which are related or due to the same cause(s).*

*"Partial Disability" or "Partially Disabled" means as a result of the Injury or Sickness, the Participant is:*
*(a)    during the Elimination Period and the next 24 months, able to perform one or more, but not all, of the material and substantial duties of his or her own or any other occupation on an Active Employment or a part-time basis; or*
*(b)    after the period described in paragraph (a) above, able to perform all of the material and substantial duties of his or her own or any other occupation on a part-time basis.*

*Loss of a license for any reason does not, in itself, constitute a Partial Disability.*

**Liberty/Conrad 112**



According to our review of the information on file, Mr. Conrad's reported date of disability was August 3, 2004, and he received Long Term Disability benefits from February 1, 2005 through May 23, 2007.

On February 1, 2007, Mr. Conrad experienced the change in definition of disability, from the inability to perform all of the material and substantial duties of his own occupation to the inability to perform all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education and experience. This is an ongoing claim investigation and acceptance beyond the 24th month does not equate to acceptance until the maximum duration.

We outlined the basis for denial in our letter of May 23, 2007. At that time, Mr. Conrad was given the opportunity to submit any additional medical information that may support disability for his appeal review.

We received your written request for an appeal review on behalf of Mr. Conrad on November 13, 2007, along with a letter dated July 17, 2007 from Dr. George Petruncio, a letter dated July 19, 2007 from Dr. James Dwyer, and lab results dated July 19, 2007. No additional medical information was submitted for the appeal review.

Prior to our May 23, 2007 claim determination, all of the medical information contained in Mr. Conrad's claim file was reviewed by Dr. Paul Howard, an independent physician board certified in internal medicine and rheumatology. In his report, Dr. Howard stated:

*"The medical records and the available medical evidence therein, does not provide evidence of fibromyalgia. Excellent comprehensive evaluation is well documented by Dr. Amy Evangelisto and notes no trigger points or myofascial abnormalities beyond trigger finger involving the hand and osteoarthritis of both knees. There is no other objective evidence of fibromyalgia, although it is mentioned in Dr. Irigoyan's note of November 28, 2006, without physical examination findings present.*

*Based on objective evidence from the primary medical records available for review, there is no evidence of fibromyalgia. The presence of fatigue and a sleep disorder are seen in fibromyalgia, but do not constitute fibromyalgia based on the American College of Rheumatology Criteria (1990) defining fibromyalgia syndrome...*

*The claimant's impairments include osteoarthritis involving the knees with minimal reference to significant pain involving the knees. They were injected in late 2005 on a solitary occasion by Dr. Evangelisto without further references in 2006 of knee discomfort. There is morbid obesity present, sleep apnea and an isolated trigger finger which was treated and responded to therapy by Dr. Evangelisto in September 2005. There is also a fatigue syndrome that is self-reported and without other corresponding rheumatic diagnoses to account for functional impairment.*

**Liberty/Conrad 113**

*...[P]eripheral neuropathy, sensory in nature, is present without evidence of significant motor involvement, and as a result should not result in any degree of impairment related to his ability to work. The presence of trigger finger was treated and has not resulted in any degree of impairment, and as such he would be unrestricted in his ability to perform repetitive and fine motor hand activities of gripping, grasping, handling, fingering, feeling, fine finger dexterity, typing and writing. It is beyond the scope of this review to further comment on any functional impairment related to obstructive sleep apnea. Mr. Conrad's primary source of impairment is due to his morbid obesity and presence of osteoarthritis of his knees. This would result in some restrictions in terms of limited walking, and heavy lifting or carrying. Specifically, his morbid obesity and osteoarthritis of the knees would limit his ability to walk occasionally (a third of the day), stand occasionally (a third of the day). More specifically, he would be limited to standing and/or walking up to 30 minutes at a time, 2.5 hours in cumulative total to stand and similar such restrictions would be indicated for walking. Mr. Conrad would not have any specific physical restrictions in terms of sitting. His lifting and carrying would be restricted to up to*



*20 pounds occasionally and 10 pounds frequently. Pushing and pulling would be restricted to a maximum of 35 pounds given his morbid obesity. Overall, no more specific restrictions or limitations would be indicated based on his primary source of impairment related to his morbid obesity and resultant osteoarthritis of the knees...*

*As described, Mr. Conrad is presently working a reduced hourly schedule with an average of 20 hours per workweek. Based upon review of the available medical evidence, he is certainly capable of increasing his work hours to a full-time work schedule, 40 hours per week, 8 hours per day. There is evidence to support that the claimant could increase these hours based on the limited physical abnormalities including the sensory neuropathy of a nonprogressive nature, osteoarthritis of a mild nature as it relates to his bilateral knees, and complaints of self-reported fatigue. As described...above, the available medical evidence does not support that Mr. Conrad has fibromyalgia, and that he does not meet the specific diagnostic criteria for such. Based on the available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week at the present time."*

A vocational analysis was subsequently conducted and identified alternative occupations that Mr. Conrad could perform, based on his education, training, work experience, age, and the above functional capacities, as outlined in our May 23, 2007 denial letter.

With regard to the information submitted for Mr. Conrad's appeal review, the letters from Dr. Petruncio and Dr. Dwyer do not contain new clinical evidence as compared to the medical records already on file. However, in light of Dr. Dwyer's comment that his symptoms might be aggravated by sleep apnea, which he felt was still an issue, and Dr. Howard's indication that he was unable to comment on any functional impairment related to obstructive sleep apnea in his review, we determined to have all of the medical information on file reviewed by another independent physician, Dr. Theodore Hubley, who is board certified in sleep medicine, as well as pulmonary disease and critical care medicine. In his report, Dr. Hubley stated:

*"The claimant has obstructive sleep apnea hypopnea syndrome as evidenced by a sleep study performed in March 2004. The evidence indicates that it is effectively treated with CPAP therapy at 9 cm. The clinical notes indicate that the claimant has been compliant with the CPAP and wears it approximately seven hours per night. On both occasions, the sleep studies revealed that the respiratory disturbance index was reduced to zero with CPAP therapy. There is no evidence of periodic limb movements of sleep or other sleep disorder. The evidence indicates that CPAP effectively treats his obstructive sleep apnea. Therefore, there is no evidence that obstructive sleep apnea continues to be an impairing diagnosis. The claimant has had self-reported complaints of somnolence which have not been verified by objective testing such as a multiple sleep latency test. There are no restrictions or limitations based on the available evidence, as no impairment is supported. Mr. Conrad can perform activities such as sitting, standing, walking, reaching, lifting, carrying, as well repetitive and fine motor hand motions in an unrestricted fashion...*

*There is no evidence that the claimant cannot work full-time work at 40 hours per week. There is no functional assessment that shows that he is physically incapable of this. The sleep studies do not reveal that he has any untreated sleep disorder. He has complaints of self-reported hypersomnolence. This could be attributable to fibromyalgia or depression. This self-reported complaint, however, would not result in inability to sustain regular full-time work. There is no mention of any incident where the claimant fell asleep at an inappropriate time in the available medical record."*

Based on our review, the medical evidence on file does not support Mr. Conrad's inability to perform, on a full time basis, the material and substantial duties of any occupation for which he is qualified. Therefore, without proof of disability, we are unable to alter our determination and no further Long Term Disability benefits are payable.
**Liberty/Conrad 114**

With regard to your assertion that the onset date of Mr. Conrad's disability for the purposes of the LTD plan should be September 2003, we would like to make note of the following:



- The Wachovia Corporation Short Term and Long Term Disability plans require that notice of claim be provided within 60 days of the date of loss on which the claim is based. Mr. Conrad did not file a claim reporting a date of onset of disability in September 2003 within such timeframes.
- Mr. Conrad did file a Short Term Disability claim reporting a date of disability of November 25, 2003. This claim was denied due to failure to provide proof of disability. Mr. Conrad was notified in writing of this decision on January 19, 2004 and provided the opportunity to have the claim reopened by submitting medical information in support of his claim within 60 days. Such information was never provided.
- Mr. Conrad subsequently filed a new claim for Short Term Disability with a reported date of disability of August 3, 2004. Short Term Disability benefits were approved from August 2, 2004 through January 31, 2005. This period of 26 weeks satisfied his elimination period for Long Term Disability benefits, which began on February 1, 2005 and continued through May 23, 2007 as discussed above.

Based on the above information, we are unable to alter the date of August 3, 2004 as the appropriate date of onset of Mr. Conrad's disability for the purposes of his Long Term Disability claim at issue. Furthermore, it is our understanding that Mr. Conrad's concerns regarding his Benefits Eligible Compensation as it pertains to this claim, have been previously addressed by the Plan Sponsor, Wachovia Corporation.

This claim determination reflects an evaluation of the claim facts and Plan provisions.

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, Mr. Conrad was entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of his appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Plan Administrator and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Wachovia Corporation Long Term Disability plan. These provisions are not contingent on decisions made by the Social Security Administration or the Workers' Compensation Carrier.

If Mr. Conrad disagrees with this denial, he may make a written request to Wachovia Corporation's Benefit Committee. He may request to receive, free of charge, copies of all documents relevant to his claim. He may submit any additional information or comments he deems pertinent for review. All requests must be made in writing within 60 days of receipt of this letter and should be addressed to:

Wachovia Corporation
Safety & Disability
Benefits Committee
Attn: Jim Beaver
Two Wachovia Center, T4
301 South Tryon Street
Charlotte, NC 28288-0960

**Liberty/Conrad 115**

The Benefits Committee will provide Mr. Conrad with their decision, in writing, within 60 days of receipt of the written appeal.

Sincerely,

*Lindsay Mack*

Lindsay Mack
Appeal Review Consultant
Phone No.: (800) 291-0112 Ext. 24150
Secure Fax No.: (888) 443-4212

Liberty/Conrad 116