**HAGNER & ZOHLMAN, LLC**
Commerce Center
1820 Chapel Ave. West
Suite 160
Cherry Hill, New Jersey  08002
(856) 663-9090
Attorney for:   Plaintiff
By:  Thomas J.  Hagner, Esquire

| | |
|---|---|
| ROBERT S. CONRAD, SR.<br><br>    Plaintiff,<br><br>    vs.<br><br>THE WACHOVIA GROUP LONG-<br>TERM DISABILITY PLAN;<br><br>    Defendant. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br><br>CIVIL ACTION NO. 1:08-cv-05416 |

## DECLARATION OF THOMAS J. HAGNER, ESQ.

**THOMAS J. HAGNER**, of full age, hereby certifies:

1.      I am a partner with the firm of Hagner & Zohlman, L.L.C., attorneys for the Plaintiff.

2.      Exhibit 1 is a true and correct copy of Case Management Report submitted on behalf of Defendant dated April 14, 2009.

3.      Exhibit 2 are true and correct copies of redacted appeal determination letters issued by Cigna Group Insurance and Prudential Insurance Company.

4.      Exhibit 3 is a true and correct copy of report of Dr. Theodore J. Hubley, M.D. dated January 16, 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.   Executed February 15, 2010.


BY:    /s/ Thomas J. Hagner
           Thomas J. Hagner, Esq.

**FISHER & PHILLIPS LLP**
430 Mountain Avenue
Murray Hill, New Jersey 07974
(908) 516-1050
Attorneys for Defendant
Attorney of Record:  Kathleen McLeod Caminiti

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT S. CONRAD, SR., <br><br> Plaintiff, <br><br> vs. <br><br> THE WACHOVIA GROUP LONG-TERM DISABILITY PLAN, <br><br> Defendant. | Civil Action No. 1:08-cv-05416-RMB-JS |

**CASE MANAGEMENT REPORT**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred telephonically on April 13, 2009 and submit the following report of their meeting for the Court's consideration:

> Thomas J. Hagner appeared on behalf of the Plaintiff
> Kathleen McLeod Caminiti appeared on behalf of the Defendant

1.     **BRIEF SUMMARY OF THE CASE.**

    A.     **Plaintiff's Statement.**

This is an action to redress the wrongful denial and under-payment of long term disability benefits rightfully due to the Plaintiff pursuant to a certain Wachovia Corporation Health and Welfare Benefits Plan of which he is a participant.

In 1995, Plaintiff became employed by Wachovia as a Securities Broker achieving the status of Senior Vice-President in 1007.  In September, 2003, Mr. Conrad began struggling with various medical problems which included unexplained sweating, fatigue, diarrhea, sudden

NewJersey 156511.1

weight loss, lack of appetite and short term memory loss.  When an acute attack occurred in November, 2003, Conrad was admitted to the hospital for a five day admission.

Eventually, Conrad made a claim for and was approved to receive long-term disability benefits.

Eventually, the benefits were terminated and Plaintiff's claim includes a claim for benefits subsequent to the date of termination.

In addition, Mr. Conrad asserts that while he was on disability his benefits were substantially underpaid.

The Plan in question includes a provision entitled "Intermittent Chronic Disability" which provides for coverage of disability of long duration which are intermittent and show little change or slow progression.  The Plan provides that employees who suffer from intermittent chronic disability may claim short-term disability benefits for days when they are out of work even though the days are not consecutive.

The Plan in question provides for a somewhat complicated formula for determining the amount of benefits.  Benefits are based upon what is known as benefits eligible compensation "BEC" which essentially means pre-disability earnings.

However, given the fact that Mr. Conrad's compensation was in large part determined upon commissions, the BEC is determined based upon a "rolling 12 month amount" which begins on the business day immediately preceding the date a disability is incurred.  Here, Mr. Conrad asserts that his disability actually began in September, 2003, whereby Liberty asserts that it did not commence until August, 2004.   The difference is significant because, as a commissioned broker, Mr. Conrad's compensation began to suffer when he began suffering the medical symptoms in September, 2003.  Therefore, the "rolling 12 month amount" that began as of August 2003 was substantially lower than the "rolling 12 month amount" that began essentially a year earlier when Mr. Conrad was healthy.

Finally, Mr. Conrad remains employed and is attempting to work as much as he can.  However, he is still disabled because he is not able to earn 20% of his prior BEC on a consistent basis, if at all.  Mr. Conrad's attempts to continue his claim have been ignored as the claim administrator has taken the position that the claim is closed and will not reopen it.

### B.    Defendant's Statement.

Plaintiff initiated suit against defendant seeking Long-Term Disability ("LTD") benefits pursuant to ERISA, 29 U.S.C. § 1132, *et. seq.*  Plaintiff began receiving Short Term Disability ("STD") benefits from Wachovia in August of 2004.  Pursuant to defendant's STD Plan, the amount of plaintiff's disability benefit was calculated based upon his benefits eligible compensation ("BEC") for the prior rolling 12-month period.  Plaintiff received the maximum 26 weeks of benefits under Wachovia's STD Plan and then transitioned to LTD benefits, which he received for the next 24 month period.

Pursuant to the terms of the Wachovia Corporation LTD Plan, in order to remain eligible for LTD benefits beyond the 24th month, a participant must demonstrate that he is unable to perform any occupation (as opposed to his own occupation) for which is he reasonably fitted by training, education, or experience, because of an injury or sickness. After a thorough medical review, it was determined that plaintiff's condition did not preclude him from performing any occupation and his claim was closed.

Plaintiff alleges that (1): his monthly disability benefit amount should have been higher because he was really ill eleven (11) months prior to the time he successfully applied for STD benefits; (2) Wachovia failed to adequately explain the terms of the Plan; and (3) his LTD benefits should have continued beyond 24 months. Defendant maintains that both the amount and the duration of disability benefits paid to plaintiff were calculated in strict accordance with the applicable Plan terms, and were neither arbitrary nor capricious. Conrad is not disabled from performing "any occupation" and, thus, is not entitled to LTD benefits. Defendant's determination that plaintiff was not entitled to LTD benefits was based upon a comprehensive review of his medical condition as well as functional capability examination. Defendant also maintains that both the STD and LTD Plan information was widely disseminated and readily available to all employees, including plaintiff. Plaintiff is working and does not have an active disability claim and is free to pursue disability benefits under the Wachovia Plans in accordance with their terms.

2.    **Status of Settlement Negotiations.**

Counsel have discussed possible avenues of settlement and will raise the possibility of settlement with their respective clients.

3.    **Fed.R.Civ.P.26(a)(1) Pre-Discovery Initial Disclosures.**

Counsel for the parties agree to exchange information described in Fed.R.Civ.P.26(a)(1) on or before April 15, 2009. Below is a detailed description of information to be disclosed:

Plaintiff:

    a)    List of persons likely to have discoverable information that plaintiff may use to support his claims;

    b)    Copies of documents that plaintiff may use to support his claims; and

    c)    Damage calculations.

Defendant:

    a)    List of persons likely to have discoverable information that defendant may use to support its defenses;

    b)    Copies of documents that defendant may use to support its defenses, including documents from the administrative claims file;

    c)    Insurance agreements in force. (N/A).

8.      **Proposal with Regard to Mediation.**

Counsel agree that the matter could possibly benefit from mediation following the exchange of initial discovery and, perhaps, discovery within the limitations noted above.

Respectfully submitted,

**Hagner & Zohlman, LLC**

Dated:  April 14, 2009                  By:      /s/ Thomas J. Hagner, Esq.
                                                  **Thomas J. Hagner, Esq.**
                                                  Hagner & Zohlman, LLC
                                                  Commerce Center
                                                  1820 Chapel Avenue, West
                                                  Suite 160
                                                  Cherry Hill, NJ 08002
                                                  Telephone:     (856) 663-9090
                                                  Attorneys for Plaintiff

**FISHER & PHILIPS, LLP**

Dated:  April 14, 2009                  By:      /s/ Kathleen McLeod Caminiti
                                                  Kathleen McLeod Caminiti
                                                  430 Mountain Avenue
                                                  Murray Hill, NJ 07974
                                                  Telephone:     (908) 516-1050)
                                                  Attorney for Defendants

 **Prudential**

**Nancy L Pichette, ALHC**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84442
Fax: (877) 889-4885
**Website:  www.prudential.com/disability**

July 20, 2009

Mr. Thomas Hagner
Hagner & Zohlman LLC, Commerce Center
1820 Chapel Ave West, Suite 160
Cherry Hill, NJ  08002

Claimant:
Claim No.:
Date of Birth: 4/17/1967
Control No./Br.:

|||ɪ||ɪ|ɪ||ɪ||ɪ||ɪ|ɪ|ɪ|ɪ||ɪ||ɪ||ɪ|ɪ||ɪ||ɪ|

Dear Mr. Thomas Hagner:

We have completed our review of                              first request for reconsideration of our
decision to terminate his claim for Long Term Disability (LTD) benefits under the Group Policy
No.        issued to                        We have determined that our decision was appropriate
and have upheld our decision to terminate Mr.          claim for LTD benefits. This letter
outlines the reasons for this determination.

In order to receive benefits covered employees must meet all contractual requirements including
the following definition of "Disability":

**"How Does Prudential Define Disability?**

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you are under the *regular care* of a *doctor*; and

- you have a 20% or more loss in your *monthly earnings* due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same
sickness or injury:

- you are unable to perform the duties of any *gainful occupation* for which you are
reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and

- doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

**In addition, the following benefit limitation applies:**

"Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms have a limited pay period during your lifetime.

Disabilities which, as determined by Prudential, are due in whole or part to mental illness also have a limited pay period during your lifetime.

The limited pay period for mental illness is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1.   If you are confined to a hospital or institution at the end of the 24 month period, Prudential will continue to send you payments during your confinement.

If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement period and for one additional recovery period up to 90 more days.

2.   In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of stroke, trauma, viral infection, Alzheimer's disease or other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**In addition:**

"We will send you the monthly payment if you are disabled an your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1.   Add your monthly disability earnings to your gross disability payment.

2.   Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1.   Subtract your disability earnings from your indexed monthly earnings.

2.   Divide the answer in item 1 by your indexed monthly earnings.  This is your percentage of lost earnings.

3.   Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

During the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Beyond 24 months of disability payments, if your monthly disability earnings exceed 60% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's which we believe are necessary to substantiate your income.

(*Disability earnings* means the earnings which you receive while you are disabled and working, plus earnings you could receive if you were working to your greatest extent possible.  This would be, based on your restrictions and limitations:

•   During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training and experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.)

**Right to Appeal**

You may again appeal this decision to Prudential's Appeals Review Unit for a final decision.  If you elect to do so, the appeal must be made in writing by you or your authorized representative. Your complete appeal must be submitted within 180 days of the receipt of this letter.  The appeal may identify the issues and provide other comments or additional evidence you wish considered. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim.  Please forward your appeal request to me at the above address.

A determination on your claim appeal will be made within 45 days of the receipt of your appeal. This period may be extended by 45 days if special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However if Prudential requests additional information from you and you fail to respond, this period of time may be extended until you provide the requested information.

Please note that this second appeal is voluntary. You are entitled to receive upon request, sufficient information to make a decision about filing this appeal.

Since you have now completed the first level of appeal, you may file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA.

If you have questions about our decision on your claim, you may call the number listed above. If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,

**Nancy L Pichette, ALHC**
Nancy L Pichette, ALHC
Senior Appeals Analyst

CIGNA Group Insurance
250
Pittsburgh, PA 15222-0325

Phone: 800-238-2125 ext. 3264
Fax: 412-402-3222

www.mycigna.com

**CIGNA Group Insurance**
Life · Accident · Disability

November 6, 2009

Name:
Incident Number:
Plan/Policy Number:
Plan/Policy Holder:
Underwriting Company:                    Life Insurance Company of North America

This letter is regarding your request to appeal the denial of your Long Term Disability claim. We have completed our review and must uphold our prior decision to deny your claim.

As you are aware, your policy contains the following provision:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
1) unable to perform the material duties of his or her Regular Occupation; and
2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience; and
2. unable to earn 80% or more of his or her Indexed Earnings."

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

You may request a review of this decision by writing to the Life Insurance Company of North America representative signing this letter at the address noted on the letterhead. The written request for review must be sent within 180 days of the receipt of this letter. In addition to any written comments, your request for review must include new documentation you wish us to consider.

This documentation includes, but is not limited to:

--Abnormal diagnostic testing from August 1, 2009 through the present
--Office notes outlining sensory, motor, neurological deficits in your lower
extremities from August 1, 2009 through the present.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that you have a right to bring legal action regarding your claim under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a). You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Please contact our office at 800-238-2125 ext. 3264 should you have any questions.

Sincerely,

*Melissa Graham*

Melissa Graham
Appeal Claim Manager

# MLS National Medical Evaluation Services, Inc.

### A MLS Group Company

January 16, 2008

Re:  Robert Conrad
     Claim Number:        2021495
     Social Security:     XXX-XX-1807

INDEPENDENT PEER REVIEW

To Whom It May Concern:

LIST OF MEDICAL DOCUMENTATION

- Letter from Dr. Michael Barnish to Dr. George Petruncio, 11/3/03.
- Clinic note with an illegible signature, presumptively from Dr. Petruncio, dated 11/8/03, 11/15/03, 11/22/03, 11/29/03, 12/1/03, and 12/30/03.  These notes are generally illegible.
- Summary note, attention Denise Welsh, consisting of three pages signed by Robert Conrad 1/17/05.
- Letter, Dr. Petruncio from Dr. Thomas Morley dated 9/16/04.
- Letter to Dr. Petruncio from Dr. Dean Drezner dated 12/23/04.
- Addendum dated 12/24/04, Dr. Dean Drezner.
- Sleep study dated 10/10/04, interpreted by Dr. Amita Vasoya.
- Clinic note dated 11/1/04, Dr. Petruncio, 11/8/04.
- Letter to Dr. Petruncio from Dr. Morley dated 3/4/04.
- Sleep study interpretation by Dr. Morley dated 3/17/04.
- Polysomnogram with CPAP titration interpretation dated 4/7/04, Dr. Morley.
- Letter to Dr. Petruncio from Dr. Morley dated 4/22/04.
- Clinic notes, Dr. Petruncio dated 9/8/03, 9/15/03, 9/19/03, and 10/7/03.
- Letter to Dr. Petruncio from Dr. Morley dated 7/22/04.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 2

- To Whom It May Concern letter, Dr. George Petruncio, dated 1/10/05.
- Letter to Janice Borner dated 1/10/05, Dr. George Sanders, Ph.D.
- Consultation note, Dr. Pravin Vasoya, dated 2/3/05.
- Letter to Dr. Petruncio from Dr. Nicholas Depace dated 2/25/05.
- Clinic note dated 3/2/05, Dr. Vasoya.
- Clinic notes, Dr. Petruncio, dated 4/4/05.
- Clinic note, Dr. Vasoya, dated 4/15/05.
- Clinic notes, Dr. Petruncio, dated 5/10/05, and 5/20/05.
- Clinic note, Dr. Vasoya, dated 5/26/05.
- Clinic note, Dr. Petruncio, dated 6/10/05.
- Clinic note, Dr. Morley, dated 6/16/05.
- Clinic note, Dr. Petruncio, dated 6/17/05, 6/29/05, and 7/8/05.
- Clinic note, Dr. Vasoya, dated 7/11/05.
- Clinic note, Dr. Petruncio, dated 7/15/05, and 8/19/05.
- Consultation note dated 9/12/05, by Dr. Amy Evangelisto.
- Clinic note, Dr. Petruncio, dated 9/14/05.
- Return to work letter dated 10/3/05, Dr. Petruncio.
- Clinic note, Dr. Petruncio, dated 10/11/05.
- Consultation note, Amy Evangelisto, dated 11/7/05.
- Clinic note dated 11/11/05, Dr. Petruncio.
- Unlabeled notes from 1/4/06 to 2/24/06, possibly physical therapy notes, unclear.
- Clinic note, Dr. Petruncio, dated 1/10/06, 1/13/06, and 2/16/07.
- What appears to be therapy notes dated 2/27/06 through 3/20/06.
- Clinic note, Dr. Jason Cerutti, dated 3/31/06.
- Further, again, apparent therapy notes from 3/22/06 through 5/26/06.
- Clinic note, Dr. Cerutti, dated 4/28/06, and 6/1/06.
- Clinic note, unsigned, dated 6/15/06.
- Clinic note, Dr. Morley, dated 6/15/06.
- Clinic note dated 7/5/06, Dr. Jason Cerutti.
- Letter to Dr. Petruncio from Dr. Slotman dated 7/13/06.
- What appears to be therapy notes dated 8/4/06 through 1/3/07.
- Clinic notes, Dr. Petruncio dated 8/14/06.
- Clinic note, Dr. Cerutti, dated 9/11/06, 11/1/06.
- Arthritis Center note dated 11/28/06.
- Illegible note dated 12/10/06.
- Dr. Petruncio note dated 12/18/06.
- Letter to Mr. Hagner, undated, from Dr. Petruncio.
- Letter to Wachovia Securities dated 7/17/07, Dr. Petruncio.
- Letter to Dr. Petruncio from Dr. James Dwyer dated 7/19/07.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 3

- Release of Information form dated 1/12/07, signed by Robert Conrad.
- 12-lead EKG dated 12/24/01.
- MRI report dated 2/18/05.
- Consultation note dated 5/2/05, Dr. Vingrone.
- Initial MRI of the brain dated 2/18/05.
- Nerve conduction studies dated 2/22/05.
- Additional EKG report dated 12/18/06.
- Colonoscopy report dated 12/22/06.
- Chiropractic note dated 12/27/06.
- Laboratory testing dated 3/30/04.
- Laboratory testing dated 11/1/04.
- Laboratory testing dated 3/4/05.
- Laboratory testing dated 5/11/05.
- Laboratory testing dated 5/12/05.
- Laboratory testing dated 7/15/05.
- Laboratory testing dated 8/29/05, and 10/12/05.
- Laboratory testing dated 1/30/07, and 7/19/07.
- Restrictions form dated 11/17/04, Dr. Saunders.
- Restriction form, Dr. Petruncio, dated 11/19/04.
- Letter with answers by Dr. Morley from 11/23/04.
- Restrictions form completed by Dr. Vasoya dated 7/5/05.
- Restrictions form completed by Dr. Petruncio dated 7/6/05.
- Restrictions form completed by Dr. Vasaya 8/9/05.
- Restrictions form by Dr. Saunders dated 7/12/05.
- Restrictions form, illegible, rheumatology, dated 1/15/07.
- Restrictions form, Dr. Saunders, dated 1/10/07.
- Restrictions form, Dr. Petruncio, dated 1/12/07.
- Restrictions form, Dr. Cerutti, dated 1/24/07.

## SUMMARY OF MEDICAL DOCUMENTATION

Mr. Conrad is a 52-year-old male residing in Sicklerville, New Jersey. He was employed by the Wachovia Corporation before his date of disability on 08/03/04. The available data starts in November of 2003 and reveals that the patient began to complain of symptoms of fatigue, poor sleep and snoring. As a result of these complaints he underwent further testing. Included in that testing was a sleep study performed in March 2004 that revealed findings consistent with obstructive sleep apnea hypopnea syndrome. His sleep study revealed an apnea hypopnea index of 39 events per hour. He went on to have a CPAP titration polysomnogram performed on 4/7/04, that revealed that CPAP at 9 cm of water pressure controlled his sleep disordered breathing

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 4

and eliminated the respiratory events to a point where his respiratory disturbance index was zero. He tolerated the CPAP and had satisfactory oxygen saturations.

From the clinic notes, he continued to complain of symptoms of fatigue and hypersomnolence. There is no record of any examples of where he had fallen asleep inappropriately.

He had his CPAP pressures empirically increased to 11 cm with the assumption that perhaps his sleep apnea was ineffectively treated with his previous pressure setting.

He had another sleep study performed on 10/10/04. This again revealed the presence of obstructive sleep apnea syndrome. This again revealed that a CPAP pressure of 9 cm reduced the respiratory disturbance index to zero and allowed for satisfactory oxygen saturations. There is no evidence of other sleep disorders. Specifically, there is no periodic limb movements of sleep observed. The patient's sleep efficiency was 85%.

From the available records, the patient was seen in consultation on 2/3/05 for symptoms of chronic fatigue and numbness in his toes. He was evaluated by Dr. Vasoya. His workup with EEG testing, MRI testing ultimately revealed a peripheral neuropathy. This was presumptively felt to be an autoimmune peripheral neuropathy. The patient underwent plasmapheresis therapy.

The records indicate that the patient had good CPAP compliance. The records do not reveal any evidence that the patient had fallen asleep at inappropriate times.

Because of his persistent somnolence, he underwent a trial of 200 mg of Provigil daily and did not notice any improvement. He was ultimately placed on Adderall XR 10 mg twice daily and continued to complain of subjective fatigue and somnolence.

He was seen in consultation by Dr. Evangelisto, a rheumatologist. She saw him again in followup on 11/7/05. She made a comment in the report that, "He certainly has an element of fibromyalgia, which I feel is likely secondary to severe sleep apnea noted on prior investigation." It should be noted that there is no evidence in the literature that sleep apnea causes fibromyalgia. Additionally, the patient's obstructive sleep apnea has been proven to be effectively treated on two separate occasions with his CPAP therapy.

The patient was seen most recently by Dr. Dwyer of Rheumatology, who again felt that he had a significant degree of fibromyalgia symptoms. He refers to visits at "Jefferson and Cooper" that have resulted in diagnosis of fibromyalgia. An autoimmune workup again was pursued which was negative.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 5

Dr. Morley signed a statement 11/23/04. He felt that partially treated sleep apnea and depression were causing Mr. Morley's symptoms. He felt that depression was a major contributing factor to his symptoms.

CLINICAL IMPRESSION

In summary, the available records indicate that Mr. Conrad has the diagnosis of obstructive sleep apnea hypopnea syndrome which on two occasions has been proven to be effectively treated with CPAP at 9 cm. The patient has been compliant with CPAP therapy. There is no evidence that his CPAP therapy is ineffective. There is no objective evidence such as by a multiple sleep latency test that the patient continues to have objective hypersomnolence or any other sleep disorder contributing to his subjective complaints of somnolence. He, additionally, has fibromyalgia. This can result in symptoms of fatigue and subjective somnolence, although his rheumatologists assert that it may be aggravated by obstructive sleep apnea syndrome. The evidence demonstrates on two separate occasions that CPAP at 9 cm is effective at treating his obstructive sleep apnea syndrome and, therefore, there is no evidence that the fibromyalgia is being aggravated by obstructive sleep apnea hypopnea syndrome. The evidence would be more consistent with the patient having subjective hypersomnolence as a consequence of fibromyalgia and potentially depression. The patient also has an autoimmune peripheral neuropathy. This is not completely outlined in the most recent clinical notes. From the records and conversation with Dr. Petruncio, the patient is ambulatory. I would defer specific disability regarding this to a neurologist.

Finally, it is mentioned frequently that the patient has depression. This can also give subjective complaints of hypersomnolence. He has been seeing a psychologist for this. Depression could also give him complaints of subjective fatigue.

PEER-TO-PEER CONSULTATION, DR. PETRUNCIO

I spoke with Dr. George Petruncio on January 14th at 3:45 p.m. until 3:55 p.m. He was able to briefly review the patient's chart. He told me that to his knowledge the patient has not had any formal neurologic testing that has indicated any problems with memory or concentration. He felt that depression could certainly be a contributing factor to this. He felt that the patient was being compliant with the CPAP therapy.

I told him on two separate occasions this sleep study revealed effective treatment of obstructive sleep apnea syndrome. He reiterated that depression may be a significant factor in the patient's self-reported memory and concentration difficulties. He again felt that fatigue was a disabling symptom. Other than fibromyalgia and depression, he had

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 6

no further explanations for the patient's fatigue.  He felt that the patient was  tolerating his part-time work schedule without difficulty.

CONCLUSION

**1.    With regard to the claimant's condition of obstructive sleep apnea, please provide a description of the claimant's impairments, if any, and outline how any impairment translates to restrictions and limitations.  Please include the expected duration for any supported restrictions.**

The claimant has obstructive sleep apnea hypopnea syndrome as evidenced by a sleep study performed in March 2004.  The evidence indicates that it is effectively treated with CPAP therapy at 9 cm.  The clinical notes indicate that the claimant has been compliant with the CPAP and wears it approximately seven hours per night.  On both occasions, the sleep studies revealed that the respiratory disturbance index was reduced to zero with CPAP therapy.  There is no evidence of periodic limb movements of sleep or other sleep disorder.  The evidence indicates that CPAP effectively treats his obstructive sleep apnea.  Therefore, there is no evidence that obstructive sleep apnea continues to be an impairing diagnosis.  The claimant has had self-reported complaints of somnolence which have not been verified by objective testing such as a multiple sleep latency test.  There are no restrictions or limitations based on the available evidence, as no impairment is supported.  Mr. Conrad can perform activities such as sitting, standing, walking, reaching, lifting, carrying, as well repetitive and fine motor hand motions in an unrestricted fashion.

**2.    The claimant has been working a reduced (part-time) schedule since October 2005.  Does the available medical evidence support the claimant's inability to sustain regular full-time work (40 hours/week)?**

There is no evidence that the claimant cannot work full-time work at 40 hours per week.  There is no functional assessment that shows that he is physically incapable of this.  The sleep studies do not reveal that he has any untreated sleep disorder.  He has complaints of self-reported hypersomnolence.  This could be attributable to fibromyalgia or depression.  This self-reported complaint, however, would not result in inability to sustain regular full-time work.  There is no mention of any incident where the claimant fell asleep at an inappropriate time in the available medical record.

Thank you for allowing me to review this file.  If I can be of any further assistance, please do not hesitate to contact me.

Robert Conrad
Claim Number 2021495
Theodore Hubley, M.D.
January 16, 2008
Independent Peer Review - Page 7


I further declare under penalty of applicable law that I personally performed this evaluation and prepared this report on the date and location specified. Furthermore, I state under penalty of applicable law that I dictated this report to the MLS transcription service and that I have reviewed the transcribed report and that this report is true and correct.


Sincerely,



Theodore J. Hubley, M.D.
Diplomate of American Board of Internal Medicine
Board Certified in Pulmonary Disease
Board Certified in Critical Care Medicine
Board Certified in Sleep Medicine
American Thoracic Society
American Academy of Sleep Medicine
Medical Director of Respiratory Care
Assistant Clinical Professor, Medical College of Wisconsin
Chief of Pulmonary Division, St. Luke's Medical Center

TH:dc:nmb