<u>NOT FOR PUBLICATION</u>                    [Dkt. Items 10 and 11]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

ROBERT S. CONRAD, SR.,

               Plaintiff,

    v.

THE WACHOVIA GROUP LONG TERM
DISABILITY PLAN,

              Defendant.

Civil No. 08-5416(RMB/JS)

**OPINION**

Appearances:

      Thomas Joseph Hagner
      Hagner & Zohlman, LLC
      1820 Chapel Avenue West
      Suite 160
      Cherry Hill, NJ 08002
          Attorney for Plaintiff

      Kathleen McLeod Caminiti
      Fisher & Phillips, LLP
      430 Mountain Avenue
      Murray, NJ 07974
          Attorney for Defendant

**BUMB**, United States District Judge:

**I.   Introduction**

    Robert S. Conrad, Sr. ("Plaintiff") brought suit against the

Wachovia Group Long Term Disability Plan[1] ("LTD Plan" or "the Plan"

or "Defendant") pursuant to the Employee Retirement Income Security

---

[1]   The Plan notes in its moving brief that it should be
properly identified as "Wachovia Corporation Long Term Disability
Plan."

Act ("ERISA"), seeking recovery of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiff and the Plan both move for summary judgment. For the following reasons, Plaintiff's motion is denied, without prejudice, and Defendant's motion for summary judgment is granted, in part, and denied in part, without prejudice. The Court shall order supplemental briefing as described herein.

**II. Background[2]**

Plaintiff was a commissioned securities broker for Wachovia Corporation ("Wachovia") who participated in Wachovia's long term disability plan ("LTD Plan" or "the Plan"). Plaintiff's Statement of Undisputed Facts ("Pl. SOF") ¶ 1; Defendant's Statement of

---

[2]

With regard to Plaintiff's Local Rule 56.1 Statement of Material Facts Not in Dispute, the Plan objects to those statements that are "not supported by specific citation to the administrative record compiled in connection with plaintiff's benefit claim." See, e.g., Def. Resp. SOF ¶ 3. The Court notes that "courts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision." Howley v. Mellon Financial Corp.,--- F.3d ----, No. 08-1748, 2010 WL 3397456 (3d Cir. Aug. 31, 2010). However, "[a] court may certainly 'consider evidence of potential biases and conflicts of interest that is not found in the administrator's record." Id. (quoting Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004)). The factual statements objectionable by the Plan generally relate to Plaintiff's 2003 medical condition, absences from work during that year and calculation of Plaintiff's 2002-2003 pre-disability earnings, items which are supported only by citations to Plaintiff's Declaration. Therefore, in its review of the plan administrator's decision, the Court considers such statements only to the extent that they find support in the administrative record.

Undisputed Facts ("Def. SOF") ¶¶ 1-2.  The 2004 LTD Plan[3]
identified "the Employer" or "Wachovia Corporation" as its "Plan
Administrator."  Beaver Cert. Ex. G at p. 5, 29.  Wachovia's
Benefits Committee was identified as administering the Plan in the
2004 LTD Summary Plan Description.  Beaver Cert. Ex. E at p. 93.
Wachovia delegated responsibility for claim administration to
Liberty Life Assurance Company of Boston ("Liberty").[4]  Def. SOF ¶
3.

### A.   Plaintiff's Short Term Disability Claim

Wachovia's STD Plan provided for short term disability
benefits after the end of an Elimination Period.  Def. SOF ¶ 7.
Defendant contends that the Elimination Period is defined as "eight
consecutive days of Disability during which time no benefit is
paid."  Def. SOF 3 n.2 (emphasis added).  However, Defendant also
admits that the Plan provides for benefits after eight non-

---

[3]

In an introduction to his Statement of Uncontested Material
Facts, Plaintiff refers to the LTD Plans effective in 2002 and
2004, as well as the Summary Plan Descriptions for 2006 and states
that "[a]rguably, one or more of these exhibits are controlling,
but it is not believed that there are any differences between and
among these exhibits which are significant to the issues raised
herein."  Defendant, by contrast, characterizes Plaintiff's long
term disability claim as governed by the 2004 LTD Plan.  See Def.
Br. in Support of Summary J. at 8.  Given that Plaintiff concedes
that the difference in plans are insignificant, and that he raises
no argument that the 2004 LTD Plan should not apply, the Court
finds undisputed that the 2004 LTD Plan governs Plaintiff's
benefits claim.

[4]    Liberty is not named as a defendant.

3

consecutive absences, described as Intermittent Chronic Disability ("ICD").  Pl. SOF ¶¶ 15 - 18; Def. SOF ¶¶ 15-18.  In either case, once the Elimination Period is satisfied benefits are calculated as, *inter alia,* a percentage of pre-disability income, known as Benefits Eligible Compensation ("BEC").

In November 2003, Plaintiff was hospitalized for a period of five days, being admitted on November 24 and discharged on November 28, for a cluster of symptoms with, as far as the Court can tell from the record, no clear etiology.  Pl. SOF ¶¶ 3-4; Def. Resp. SOF ¶¶ 3-4; Def. SOF ¶ 12.  He initially submitted a claim for short term disability benefits ("STD") in December 2003, which was denied because Plaintiff did not miss eight consecutive days of work.  Pl. SOF ¶¶ 11-12; Def. Resp. SOF ¶¶ 11-13.  The Plan contends that Liberty denied the claim by letter dated January 19, 2004.  Def. SOF ¶ 15.  Plaintiff denies receiving the January 19, 2004 letter from Liberty rejecting his STD claim, but admits receiving a telephone call that he would not qualify "so [he] dropped [his claim]".  Pl. SOF ¶¶ 12, 127, Ex. 4; Def. SOF ¶ 13.

Plaintiff contends his symptoms persisted and contributed to his absence from work for at least 10 days a month, albeit not consecutive absences.  Pl. SOF ¶¶ 5-7.  Plaintiff also contends these absences "had a devastating effect on his commission income." Pl. SOF ¶ 5.  Defendant presents no evidence to dispute these

facts, but rather contends that these facts are not supported by a citation to the administrative record. Def. Resp. SOF ¶¶ 5 - 7

In August 2004, Plaintiff stopped working entirely and was subsequently approved for STD benefits with a disability date of August 3, 2004.  Pl. SOF ¶ 8; Def. Resp. SOF ¶ 8; Def. SOF ¶ 20. On December 31, 2004, Plaintiff sent a letter to the Wachovia Benefits Committee objecting to the calculation of his "benefits eligible compensation."   Plaintiff  contends  that  the  date  of disability should be earlier than August 2, 2004, because of his intermittent  absences.   Pl.  SOF  ¶  36;  Def.  Resp.  SOF  ¶  36. Plaintiff further contends that this later disability date has resulted in an incorrect benefit calculation because it is based on earnings  that  were  artificially  depressed  by  his  intermittent disability.

**B.   Plaintiff's Long Term Disability Claim**

Upon the expiration of the 26-week elimination period for STD, Plaintiff was approved for LTD benefits on February 1, 2005.  Pl. SOF ¶ 44; Def. Resp. SOF ¶ 44; Def. SOF ¶ 28.  On March 11, 2005, Plaintiff wrote again to the Wachovia Benefits Committee objecting to his BEC calculation.  Pl. Ex. 7.  On June 23, 2005, Wachovia responded to Plaintiff's December 31, 2004[5] inquiry regarding his BEC and disability onset date, rejecting Plaintiff's argument that

_____

[5]    Wachovia's letter refers to correspondence received from Plaintiff dated February 2, 2005.  A copy of this letter was not provided to the Court.

the BEC calculation was incorrect.  Pl. SOF ¶ 48; Def. Resp. SOF ¶ 48; Pl. Ex. 8.

On October 10, 2005, Plaintiff returned to work part-time Def. SOF ¶ 37.  His medical status was changed from fully disabled to partially disabled, and he received reduced benefits under the LTD Plan.  Pl. SOF ¶ 8; Def. Resp. SOF ¶ 8; Def. SOF ¶ 37.

**C.   2006 Benefits Appeal**

On May 11, 2006, Plaintiff received notification from Liberty that his benefits were being terminated:

> Since your monthly earnings have exceeded 80% of your pre-disability earnings for three consecutive months, your disability benefits have ceased, and your claim is closed effective May 1, 2006.

Pl. SOF ¶ 49; Def. Resp. ¶ 49; Pl. Ex. 9.  On June 1 and 21, 2006, Plaintiff sent Liberty letters requesting reinstatement of his benefits.  Pl. Ex. 11, 12.  Liberty responded on June 26, 2006 by denying Plaintiff's request for reconsideration.  Pl. Ex. 13.  Liberty's denial letter instructed Plaintiff:

> If you disagree with this denial you may make a written request to Wachovia Corporation's Benefit Committee.  You may request to receive, free of charge, copies of all documents relevant to your claim.  You may submit any additional information or comments you deem pertinent for review.  All requests must be made in writing within 60 days of receipt of this letter . . . .

Id.

Three days later, on June 29, 2006, Plaintiff requested reconsideration from the Wachovia Benefits Committee, noting that

he "ha[d] been instructed by [Liberty] to send my appeal to you in regards to my BEC."  Pl. Ex. 14.  On September 5, 2006, Plaintiff received a reply from the Benefits Committee explaining that Liberty had reopened the claim based on confirmation from Plaintiff that his earnings for July 2006 were less than 80% of his pre-disability earnings.  Pl. Ex. 16.  Given that the claim was reopened, the Benefits Committee terminated Plaintiff's appeal. Id.

On September 21, 2006, Liberty informed Plaintiff that his claim had been reopened and that he would continue to receive long term disability benefits.  Pl. SOF ¶ 61; Def. Resp. SOF ¶ 61; Pl. Ex. 17.  In December 2006, Liberty wrote to Plaintiff again, apparently responding to correspondence from Plaintiff regarding adjusting his benefits amount, and explained that this issue was previously addressed by the Wachovia Benefits Committee and instructed, "any ongoing concerns . . . in this matter must be communicated in writing directly to Wachovia."  Pl. Ex. 18.  The letter further directed, however, that "any other questions concerning [Plaintiff's] Long Term Disability (LTD) claim" should be directed to Liberty.  Id.

### D.   Termination of Long Term Disability Benefits

Liberty wrote to Plaintiff on December 8, 2006 informing him that to remain eligible for LTD benefits beyond an initial twenty-four month period, he would need to meet a new definition of

7

disability under the Plan, i.e., demonstrate that he was unable "to perform all of the material and substantial duties of his . . . occupation or any other occupation . . . ." Pl. Ex. 19. The letter explained that Liberty was gathering information to assess Plaintiff's eligibility for benefits, requested Plaintiff's assistance in obtaining updated medical information from Plaintiff's physician, George Petruncio, M.D. and listed the other providers seen by Plaintiff in 2006. Id. On January 6, 2007, Plaintiff wrote to Liberty, apparently responding to a phone call from a Liberty representative regarding Plaintiff's failure to produce requested medical documentation. Pl. Ex. 22. Plaintiff explained that he interpreted Liberty's December 8 letter as though Liberty had requested documentation directly from the providers and objected that Liberty had "wait[ed] until the last day to call" and inform Plaintiff that his benefits would stop because medical documentation had not been received. Id.

Liberty suspended Plaintiff's benefits on January 10, 2007 due to his failure to produce requested medical documentation. Pl. SOF ¶ 68; Def. Resp. SOF ¶ 68. By letter dated February 15, 2007, Liberty informed Plaintiff that his benefits were terminated because Liberty did not "receive the necessary proof to verify ongoing disability" and because his gross earnings exceeded eighty percent of his pre-disability earnings. Pl. SOF ¶ 70; Def. Resp. SOF ¶ 70; Pl. Ex. 25.

Plaintiff forwarded Liberty medical documentation on February 20, 2007. Pl. SOF ¶ 71; Def. Resp. SOF ¶ 71. In response, Liberty reopened Plaintiff's claim, informed him that he would receive benefits during the claim review period and enlisted Paul F. Howard, M.D., a specialist in internal medicine and rheumatology, to assess Plaintiff's disability. Pl. SOF ¶ 73; Def. Resp. SOF ¶ 73; Def. SOF ¶¶ 45-46. Dr. Howard concluded that, "[b]ased on available medical evidence, Mr. Conrad retains the capacity to increase his work hours presently from a part-time work schedule to a full time work schedule, eight hours per day, five days per week . . . ." McGee Cert. Ex. H in Support of Summ. J.; Def. SOF ¶ 47. Liberty also obtained a Transferable Skills Analysis ("TSA"), which identified four occupations that Plaintiff could perform based on his education, training and functional capacity. McGee Cert. Ex. I in Support of Summ. J.; Def. SOF ¶ 49.

Liberty terminated Plaintiff's benefits on May 23, 2007:

> [b]ased on the medical documentation provided for your claim, the medical evidence does not support that your medical conditions continue to be of such severity as to preclude you from performing any occupation.

Pl. Ex. 32; Pl. SOF ¶ 90; Def. Resp. SOF ¶ 90; Def. SOF ¶ 50. By letter dated November 13, 2007, Plaintiff appealed both the termination of his benefits and the amount of benefits provided. Pl. SOF ¶ 108; Def. Resp. ¶ 108; Pl. Ex. 41.

9

### E.    2007 Benefits Appeal

Plaintiff's appeal letter argued that his disability onset date for purposes of the LTD Plan was September 2003 and enclosed medical documentation to support the earlier disability date.  Pl. SOF ¶¶ 109, 113-118; Def. Resp. SOF ¶¶ 109, 113-118; Pl. Ex. 41. In response to Plaintiff's appeal, Liberty obtained an Independent Peer Review Report from Theodore Hubley, M.D., who concluded that "[t]here is no evidence that the claimant cannot work full-time work at 40 hours per week."  Def. SOF ¶ 54.

By letter dated January 18, 2008, Liberty informed Plaintiff that his benefits appeal was denied:

> Based on our review, the medical evidence on file does not support [Plaintiff's] inability to perform, on a full time basis, the material and substantial duties of any occupation for which he is qualified.  Therefore, without proof of disability, we are unable to alter our determination and no further Long Term Disability benefits are payable.

Pl. Ex. 43; Pl. SOF ¶ 122; Def. Resp. SOF ¶ 122.  The letter also informed Plaintiff that he had sixty days in which to appeal Liberty's decision to Wachovia's Benefits Committee.  Pl. Ex. 43. Plaintiff, however, did not request reconsideration from Wachovia until June 26, 2008.  Pl. SOF ¶ 123; Def. Resp. SOF ¶ 123; Pl. Ex. 44.  Wachovia denied Plaintiff's request as untimely on July 25. Pl. SOF ¶ 124; Def. Resp. SOF ¶ 124; Def. SOF ¶ 58; Beaver Cert. Def. Ex. K.

**III. Summary Judgment Motions**

    **A.    Standard**

    Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); <u>Hersh v. Allen Products Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not . . .to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249.

    "In making this determination, a court must make all reasonable inferences in favor of the non-movant." <u>Oscar Mayer Corp. v. Mincing Trading Corp.</u>, 744 F.Supp. 79, 81 (D.N.J. 1990) (citing <u>Meyer v. Riegel Prods. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983), <u>cert. dismissed</u>, 465 U.S. 1091 (1984)). However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed.R.Civ.P. 56(e)); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**B.   Analysis**

Plaintiff seeks relief pursuant to 29 U.S.C. § 1132(a)(1)(B), which permits an ERISA plan participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   The Court understands Plaintiff to raise two, <u>separate</u> arguments for recovery: (1) Plaintiff's long term disability benefits were wrongfully terminated and (2) Plaintiff's long term disability benefits were miscalculated.   For simplicity's sake, the Court addresses each issue separately.

**1.   Plaintiff's Benefits Termination**

On May 23, 2007, Liberty informed Plaintiff that his long term disability benefits were being discontinued because Plaintiff no longer qualified as "disabled" under the Plan.[6]   Plaintiff argues

---

[6]   The 2004 LTD Plan defines "Disability" or "Disabled" as:

   (a)   during the Elimination Period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and

   (b)   after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, and experience because of an Injury or Sickness.

Beaver Cert. Ex. G at p. 4.

that his benefits were wrongfully terminated because the <u>Plan Administrator</u> failed to evaluate Plaintiff as partially disabled and that the <u>Claims Administrator</u> erred in finding Plaintiff capable of performing occupations that were inconsistent with his training and experience and failed to consult Plaintiff's immediate supervisor to confirm Plaintiff's disability.  The Plan responds that summary judgment must be granted in its favor because the undisputed facts demonstrate that Plaintiff failed to exhaust his administrative remedies before proceeding under ERISA.

### i.   Exhaustion

It is well settled that "[e]xcept in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." <u>Harrow v. Prudential Ins. Co. of Am.</u>, 279 F.3d 244, 249 (3d Cir. 2002) (citing <u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 800 (3d Cir. 1990); <u>Zipf v. Am. Tel. & Tel. Co.</u>, 799 F.2d 889, 892 (3d Cir. 1986); <u>Amato v. Bernard</u>, 618 F.2d 559, 567 (9th Cir. 1980) ("[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA].")).

Courts require exhaustion "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."   <u>Id.</u> (quoting <u>Amato</u>, 618 F.2d at 567).

"Moreover, trustees of an ERISA plan 'are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making process." <u>Id.</u> (quoting <u>Amato</u>, 618 F.2d at 567). <u>See also</u> <u>Zipf</u>, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants to first address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

Requiring exhaustion also serves the important purpose of "creat[ing] a record of the plan's rationales for denial of the claim." <u>Gatti v. W. Pa. Teamsters & Employers Welfare Fund</u>, No. 07-1178, 2008 WL 794516, at *4 (W.D. Pa. Mar. 24, 2008) (quoting <u>Dellavalle v. Prudential Ins. Co. of Am.</u>, Civ. No. 05-0273, 2006 WL 83449, at *5 (E.D. Pa. Jan. 10, 2006)). Failure to exhaust, however, is an affirmative defense that must be established by the defendant. <u>Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP</u>, 297 Fed.Appx. 192, 193 (3d Cir. 2008).

The record indicates that Liberty terminated Plaintiff's benefits on May 23, 2007 because he no longer met the Plan's definition of disabled. Plaintiff appealed, and Liberty denied

Plaintiff's claim upon reconsideration.  In its January 18, 2008 letter, Liberty instructed:

> If [Plaintiff] disagrees with this denial, he may make a written request to Wachovia Corporation's Benefit Committee. He may request to receive, free of charge, copies of all documents relevant to his claim.  He may submit any additional information or comments he deems pertinent for review.  All requests must be made in writing within 60 days of receipt of this letter . . . .

Pl. Ex. 43 (emphasis supplied).  Plaintiff did not request reconsideration from Wachovia until June 26, 2008, more than five months after receipt of Liberty's letter denying reconsideration. Pl. Ex. 44.  Wachovia thereafter rejected Plaintiff's request as untimely.

Section 4.7 of Wachovia's 2004 LTD Plan describes the administrative process for denial of a claim.  Beaver Cert. Ex. G at 29.  The steps for claim review may be summarized as follows. Once a claim is denied by the Claim Administrator, i.e., Liberty, the claimant may request reconsideration within 180 days of receipt of the notice of denial.  Id. at 31.  Upon a subsequent denial, the Claim Administrator must provide

> [a]n explanation of the Plan's claim review procedures and the time limits applicable to such procedures, including a statement that the Participant has a right to bring a civil action under Section 502(a) of ERISA following an adverse benefits determination on review by the Claims Appeal Reviewer.

Id.  Thereafter,

> [w]ithin 60 days of receipt by a claimant of a notice from the Claims Administrator denying a claim . . . , the claimant or his or her duly authorized representative may

15

> request in writing a further review of the claim by the Plan Administrator or such person or persons designated by the Plan Administrator (the "Claims Appeal Reviewer"). The Claims Appeal Reviewer may extend the sixty-day period where the nature of the benefit involved or other attendant circumstances make such extension appropriate.

Id. at 32.  If the Claims Appeal Reviewer affirms the denial of benefits, the claimant receives written notice that includes "a statement informing the claimant of his right to bring suit under Section 502(a) of the ERISA."  Id. at 33.

As set forth above, Plaintiff's disability benefits were terminated by Liberty on May 23, 2007.  Plaintiff timely requested reconsideration of the termination on November 13, 2007.  By letter dated January 18, 2008, Liberty informed Plaintiff that his benefits appeal was denied and that he had sixty days to seek review from the Wachovia's Benefits Committee, i.e., the Plan Administrator or "Claims Appeal Reviewer."  See Beaver Cert. Ex. E at 93 ("The LTD Plan is administered by Wachovia's Benefits Committee.").  Plaintiff did not request reconsideration from the January 18 denial until June 26, 2008, more than five months later.

The record clearly demonstrates that Plaintiff did not seek timely review of his benefits termination.  He did not exhaust the available administrative remedies under the Plan, and his claim in this regard must therefore be dismissed.  As recognized by the Third Circuit, summary judgment awards against plaintiffs who fail to exhaust their administrative remedies in an ERISA action should not be "a surprising result."  D'Amico v. CBS Corp., 297 F.3d 287,

293 (3d Cir. 2002) ("Plaintiffs' decision to bring a federal suit rather than pursuing administrative remedies plainly included the possibility of summary judgment based on failure to exhaust.").

### ii. Exceptions to Exhaustion

Plaintiff raises several arguments as to why his failure to exhaust his remedies with regard to the termination issue should not result in dismissal. First, Plaintiff maintains that pursuing the termination issue with Wachovia would be futile. It is well established that "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." Harrow, 279 F.3d at 249. When weighing the futility exception, courts consider five factors:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Id. at 250. The Court need not weigh all factors equally. Id. To prevail, a plaintiff must demonstrate a "clear and positive showing of futility." Id. at 249.

The Court cannot conclude that Plaintiff diligently pursed administrative relief given that Liberty's January 18, 2008 denial letter clearly stated that Plaintiff needed to make a written request for reconsideration from Wachovia within sixty days. He was also permitted to request, free of charge, copies of all

17

relevant documents, and he was invited to submit any additional information pertinent to his claim. Plaintiff, however, waited almost five months before writing to Wachovia. Plaintiff has presented nothing to persuade the Court that immediate judicial review was necessary under the facts presented; nor has Plaintiff proffered any record evidence demonstrating that any of the <u>Harrow</u> factors are met here. In sum, Plaintiff has not made a clear and positive showing of futility, particularly since Plaintiff eventually sought review from Wachovia, albeit untimely. It also bears note that Plaintiff had previously succeeded in using the Plan's administrative procedures to restore his benefits in 2006.

Plaintiff's other arguments seeking to excuse exhaustion are also unavailing. Plaintiff argues that Defendant's failure to plead the affirmative defense of exhaustion resulted in waiver of the defense. "Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver," and "[a] party who fails to raise an affirmative defense in a timely fashion is deemed to have waived the defense." <u>McCoy v. Board of Trustees of Laborers' Intern. Union Local No. 222 Pension Plan</u>, 188 F.Supp.2d 461, 467-68 (D.N.J. 2002), <u>aff'd</u>, 60 Fed.Appx. 396 (3rd Cir. 2003). Nonetheless, "a court may in its discretion consider an untimely assertion of an affirmative defense where delay appears not to have been for tactical or other improper reasons, or 'most important,' where delay did not prejudice the plaintiff's case." <u>Id.</u> at 468

18

(quoting <u>Eddy v. V.I. Water & Power Auth.</u>, 256 F.3d 204, 209-10 (3d Cir. 2001)).  <u>See also</u> <u>Engers v. AT & T</u>, 428 F.Supp.2d 213, 227 (D.N.J. 2006) (exhaustion defense not waived, though raised for the first time at summary judgment, where plaintiff suffered no prejudice and public policy was best served by applying the requirement).

While it is true that the Plan failed to plead exhaustion as a defense, nothing in the record suggests that the delay in raising this issue until the summary judgment stage was for tactical or other improper reasons.  Most importantly, the delay did not prejudice Plaintiff.  The undisputed facts demonstrate that Plaintiff did not request reconsideration from Wachovia until June 26, 2008, well after the sixty day period had expired.  Moreover, the only prejudice identified by Plaintiff as being caused by the failure to raise exhaustion defense earlier was his inability to take discovery regarding whether the Intermittent Chronic Disability provision, <u>i.e.</u>, whether Plaintiff's benefits calculation was considered in Liberty's January 18, 2008 claim denial.  Thus, Plaintiff has identified no prejudice suffered with regard to the termination issue.

Plaintiff next argues that the Plan's appeal procedure violates 29 C.F.R. § 2560.503-1(h)(3)(i), which requires a plan to "[p]rovide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to

19

appeal the determination." This section of the regulations applies to <u>initial</u> appeals, however. <u>See</u> <u>White v. Sun Life Assur. Co. of Canada</u>, 488 F.3d 240, 252 (4th Cir. 2007) (recognizing 29 C.F.R. § 2560.503-1(h)(3)(i) as requiring "a disability plan provide at least 180 days to appeal an <u>initial</u> benefits determination"). By contrast, 29 C.F.R. § 2560.503-1(h)(2)(i) requires that a claimant be provided "at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination."

As previously noted, the Plan afforded Plaintiff 180 days to request reconsideration upon notice that his claim was denied by the Claim Administrator. Once reconsideration is denied, Plaintiff is afforded sixty days to appeal to the Plan Administrator. Thus, the Plan's procedures comply with the requirements of 29 C.F.R. § 2560.503-1(h)(3)(i) and (h)(2)(i). Plaintiff's argument that sixty days is an unreasonable time limit to compile a proper record ignores the fact that he was afforded 180 days in the prior review period to complete this process. <u>See</u> <u>Price v. Xerox Corp.</u>, 445 F.3d 1054, 1057 (8th Cir. 2006) (argument that sixty days was unreasonable period for review "because it restricts new evidence and adequate dialogue with the administrator" rejected where plaintiff "had over 180 days to present evidence and contest the denial in the first appeal.").

Plaintiff also argues that the January 18, 2008 denial letter failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(iii), which requires that a claimant receiving an adverse benefit determination be provided with "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." First, the Court notes that "[a]n administrator need only 'substantially comply' with the foregoing regulation." Kao v. Aetna Life Ins. Co., 647 F.Supp.2d 397, 411 (D.N.J. 2009) (citing DellaValle, 2006 WL 83449, at *7). Second, as in Kao, the January 18 letter clearly states the basis for the claim denial, i.e., "the medical evidence on file does not support [Plaintiff's] inability to perform, on a full time basis, the material and substantial duties of any occupation for which he is qualified." Pl. Ex. 43. The letter goes on to explain that "without proof of disability, we are unable to alter our determination" and directs that Plaintiff "may submit additional information or comments he deems pertinent for review." Id. There is nothing "cryptic" about the meaning of Liberty's letter. See Kao, 647 F.Supp.2d at 412 (citing Mazur v. Hartford Life & Accident Co., No. 06-1045, 2007 WL 4233400, *14 (W.D.Pa. Nov. 28, 2007) ("[The administrator] clearly explained the basis for its termination decision, made [the claimant] aware of his right to appeal, provided him with access to his claim file, and told him that he was free to submit additional information

bearing on the claim.  This notification was, at the very least, in substantial compliance with the governing regulation.")).

Plaintiff also argues that the January 18 letter failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(iv), which requires that a claimant receiving an adverse benefit determination be provided with "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." Again, "[d]enial letters need only substantially comply" with 29 C.F.R. § 2560.503-1(g)(1)(iv).  DellaValle, 2006 WL 83449 at *7.

The January 18 letter explained that Plaintiff could request review by the Wachovia Benefits Committee within sixty days.  While it is true that the letter failed to state that the right to bring an ERISA action accrued only upon the adverse determination by Wachovia, any error is harmless given that Plaintiff chose first to request review from Wachovia, albeit well after the sixty day review period.  Thus, this is not a case where dismissal would be warranted because Plaintiff pursued an ERISA action prior to seeking review from the Plan Administrator.  Here, Plaintiff's request for review was simply untimely, and there can be no argument that the letter failed to state explicitly the deadline for requesting review.

Plaintiff's argument that the January 18 letter failed to comply substantially with the regulations because it directed that Plaintiff "may" request review from Wachovia, as opposed to "must" request review, also lacks merit. The process for challenging Liberty's adverse <u>benefits</u> determination was unambiguously stated in the letter, informing Plaintiff that he <u>must</u> request a review in writing within 60 days.

## 2.   Plaintiff's Benefits Calculation

Plaintiff also argues that the Plan Administrator refused to calculate properly the benefits due Plaintiff under the LTD Plan. Specifically, Plaintiff argues that he qualified for short term disability ("STD") benefits in 2003 based on a Plan reading that permits a claimant to meet the STD Plan's elimination period by demonstrating at least partial absence for eight, non-consecutive days. <u>See</u> Pl. Br. in Support of Summ. J. at 31. The question of whether Plaintiff qualified for benefits in 2003 is significant because the amount of "Benefits Eligible Compensation" or "BEC" was calculated under the LTD Plan based on Plaintiff's disability onset date. Therefore, by using a 2004 onset date, Plaintiff argues that his benefits were greatly reduced because the calculation incorporated a period when Plaintiff was earning less in commissions due to his disabling medical condition. The Plan, however, again responds that dismissal is appropriate because the

undisputed facts demonstrate that Plaintiff failed to exhaust his administrative remedies before proceeding under ERISA.

### i. Exhaustion

On this issue, the facts are less clear.  First, Plaintiff denies receiving a January 19, 2004 letter from Liberty rejecting his STD claim (although he admits receiving a telephone call that he would not qualify and admits "dropping [his claim]".  Pl.'s Ex. 4.  Nonetheless, Plaintiff thereafter sought, and was awarded, STD benefits based on a disability onset date of August 3, 2004. Thereafter, Plaintiff, who eventually retained counsel, engaged in what amounted to a letter writing campaign seeking review of Plaintiff's benefits calculation.  The record demonstrates that on December 31, 2004, Plaintiff sent his first letter to the Wachovia Benefits Committee objecting to the calculation of his BEC.  On March 11, 2005, Plaintiff wrote again to the Wachovia Benefits Committee objecting to his BEC calculation.  He wrote to Liberty on June 21, 2006 regarding the issue.

On June 23, 2005, Wachovia responded to Plaintiff's inquiries regarding his BEC and disability onset date rejecting Plaintiff's argument that the BEC calculation was incorrect.  In its response, Wachovia wrote:

> We had subsequently confirmed that the request you make in your letter to the Committee . . . did not follow the required claims procedure as communicated to employees in the Summary Plan Description for the Wachovia Short Term Disability Plan.  Before any claim appeal concerning the adjustment of benefits comes to this Committee, an

24

> employee is required to have first gone through the
> claims appeal process with Liberty.  We have confirmed
> with Liberty that they have not previously received a
> claim request to adjust your disability benefit.
> <u>Therefore, we are not considering your letter in this
> regard to be a claim appeal but rather we are treating
> this as an inquiry/complaint concerning the calculation
> of your disability benefit.</u>

Pl. Ex. 8.  The letter further explained the computation of

Plaintiff's BEC and concluded that the calculation applied was

"correct."  <u>Id.</u> (emphasis added).

Plaintiff wrote to Wachovia again on June 29, 2006, requesting

reconsideration of Liberty's decision to terminate his LTD Benefits

and noted that he <u>"ha[d] been instructed by [Liberty] to send my

appeal to you in regards to my BEC."</u>  Pl. Ex. 14 (emphasis added).

On September 5, 2006, Plaintiff received a reply from Wachovia,

which explained that Liberty had reopened the claim and terminated

Plaintiff's appeal, but said nothing about the BEC issue.  In

December 2006, Liberty wrote to Plaintiff again, apparently

responding to correspondence from Plaintiff regarding adjusting his

benefits amount, and explained that this issue was previously

addressed by the Wachovia Benefits Committee and instructed "any

ongoing concerns . . . in this matter must be communicated in

writing directly to Wachovia."  Pl. Ex. 18.

On April 25, 2007, Plaintiff, who had by now retained counsel,

wrote to Liberty again raising the BEC issue.  Counsel sent a

letter to the Wachovia HR Service Center, again raising the BEC

issue, on June 6, 2007 and August 7, 2007.  Finally, on November

25

13, 2007, counsel wrote to Liberty appealing "both . . . the amount of benefits previously received as well as the <u>termination of benefits</u> . . . ."  Pl. Ex. 41 (emphasis added).

The response by Liberty on January 18, 2008, however, did not directly and unambiguously address Plaintiff's appeal rights relating to the calculation of benefits.  Unlike the Defendant's explanation of Plaintiff's right to appeal the denial of benefits, the letter is not so clear as to the <u>calculation</u> of benefits.  The letter stated, in relevant part,

> Based on the above information, we are unable to alter the date of August 3, 2004 as the appropriate date of onset of Mr. Conrad's disability for the purposes of his Long Term Disability claim at issue.  Furthermore, it is our understanding that Mr. Conrad's concerns regarding his Benefits Eligible Compensation as it pertains to this claim, have been previously addressed by the Plan Sponsor, Wachovia Corporation.

Under these facts, a reasonable factfinder could conclude that Plaintiff had exhausted his administrative remedies as to the calculation of benefits, the BEC.  Certainly, it appears that Plaintiff substantially complied with the Plan's administrative procedures, requesting review multiple times from both Liberty and Wachovia.  This is particularly true with regard to Plaintiff's 2006 appeal, where after requesting reconsideration from Liberty he sought review of the BEC issue from Wachovia, having "been instructed by [Liberty]" to do so."  But Wachovia failed to consider the BEC issue and instead dismissed the appeal after reinstating Plaintiff's disability benefits.  Thus, the Court

26

concludes that the Plan has not met its burden of showing that Plaintiff neglected to exhaust his administrative remedies with regard to the BEC issue.

### ii.  Standard of Review

In proceeding to address the merits of Plaintiff's benefits calculation argument, the Court must first consider the applicable standard of review to apply.  A claim brought pursuant to § 1132(a)(1)(B) "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. " <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 114 (1989).  Where the plan has delegated discretionary authority, the Court reviews the plan administrator's decision to deny benefits for abuse of discretion.  <u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2348 (2008); <u>see</u> <u>also</u> <u>Conkright v. Frommert</u>, 130 S.Ct. 1640, 1644 (2010) ("an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion.").

The abuse of discretion standard applies even where a conflict of interest exists by virtue of an entity exercising the dual role of both determining benefit eligibility and paying benefit claims.[7] <u>Estate of Schwing v. Lilly Health Plan</u>, 562 F.3d 522, 525 (3d Cir.

---

[7]    Thus, Plaintiff's argument that a "heightened standard of review" should apply on the facts of this case is rejected.  <u>See</u> Pl. Br. in Support of Summ. J. at 17.

2009).  Where such a conflict exists, the Court must "take the conflict into account not in formulating the standard of review, but in determining whether the administrator or fiduciary abused its discretion."  Id.

Here, the "Plan Administrator" is defined as "the Employer," i.e., Wachovia Corporation, "the sponsor and named fiduciary of the Plan."  Beaver Cert. Ex. G at 4-5.  Section 4.3 of the Plan makes clear that

> [t]he Plan Administrator will have the exclusive right
> and the sole discretionary authority to interpret the
> terms and provisions of the Plan . . . [and] the
> authority to determine eligibility for Benefits and the
> right to resolve and remedy ambiguities, inconsistencies
> or omissions in the Plan . . . .

Id. at 29.  The Plan is funded "through the general assets of Participating Employers or the Benefit Trust, as determined by the Employer."  Id.  Thus, it appears that a structural conflict of interest exists by virtue of the fact that Wachovia plays a role in both determining eligibility and funding the Plan.

Nonetheless, as noted above, the Court applies the abuse of discretion standard.  "An administrator's decision constitutes an abuse of discretion only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  Hinkle v. Assurant, Inc., No. 09-2710, 2010 WL 3199730, *2 (3d Cir. 2010 (quoting Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).  The Court, however, considers Wachovia's structural

conflict as a factor in evaluating whether the Plan abused its discretion in calculating Plaintiff's benefits.

### iii. Analysis

Plaintiff argues that his benefits were greatly reduced because the calculation incorporated a period when Plaintiff was earning less in commissions due to his disabling medical condition. The Plan argues that because Plaintiff did not appeal the denial of his 2003 STD claim, there is no basis to recalculate Plaintiff's disability benefits received in 2004. The Court, however, does not understand Plaintiff's argument to stem from the denial of Plaintiff's 2003 STD claim, but rather that Plaintiff experienced Intermittent Chronic Disability throughout 2004 and that, therefore, the 2004 disability date, and benefits calculation, should have been earlier.

The Court is unable to squarely address this, however. Neither party's submissions establish whether or not the Plan was presented with evidence that Plaintiff experienced Intermittent Chronic Disability between the denial of the 2003 claim and the finding of disability in 2004. If the evidence presented to the Plan during the appeal of that calculation (described above), however, related to qualifying absences occurring earlier it is not at all clear why the Plan excluded those absences when determining the onset date. Similarly, if there is no such evidence or it was

never presented to the Plan, then Plaintiff's failure to appeal the 2003 denial is fatal to his claim to a re-calculated benefit.

The issue then that neither party has properly briefed is the following: should the Plan Administrator have reviewed the absences and medical records throughout 2004 (and, if relevant, into 2003) to re-calculate the August 3, 2004, disability onset date. Neither party has provided a legal analysis relating to this critical issue. Accordingly, both motions for summary judgment on this issue are denied without prejudice. The Court will, therefore, require further briefing to address this issue.

### 3.   Plaintiff's Claim for Damages Under ERISA § 502(c)

Finally, Plaintiff's Complaint alleges a claim for damages under ERISA § 502(c), for the Plan's failure to provide Plaintiff with certain information. Defendant moved for summary judgment contending that damages are not a permissible remedy under ERISA. Def.'s Br. at 18. Plaintiff offered no argument in opposition and the Court assumes that Plaintiff concedes this claim. Accordingly, Plaintiff shall withdraw his Second Count or advise the Court in his supplemental brief why Defendant is not entitled to summary judgment on his claim.

**IV.  CONCLUSION**

For the aforementioned reasons, Defendant's motion for summary judgment is granted in part, and denied in part without prejudice. Plaintiff's motion for summary judgment is denied without prejudice.


Dated: <u>September 21, 2010</u>                  <u>s/Renée Marie Bumb</u>
                                                 RENÉE MARIE BUMB
                                                 UNITED STATES DISTRICT JUDGE