**HAGNER & ZOHLMAN, LLC**
Commerce Center
1820 Chapel Ave. West
Suite 160
Cherry Hill, New Jersey  08002
(856) 663-9090
Attorney for:   Plaintiff
By:  Thomas J.  Hagner, Esquire

| | |
|---|---|
| ROBERT S. CONRAD, SR.<br><br>         Plaintiff,<br><br>vs.<br><br>THE WACHOVIA GROUP LONG-<br>TERM DISABILITY PLAN;<br><br>         Defendant. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br><br>CIVIL ACTION NO. 1:08-cv-05416 |

**SUPPLEMENTAL BRIEF OF PLAINTIFF, ROBERT CONRAD
IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.  **THE PLAN ADMINISTRATORS VIOLATED THE TERMS OF THE PLAN BY CALCULATING BENEFITS USING THE LAST DAY PLAINTIFF WORKED BEFORE AN EXTENDED ABSENCE INSTEAD OF USING THE BUSINESS DAY IMMEDIATELY PRECEDING THE ONSET OF HIS DISABILITY AS THE PLAN REQUIRES.**

The Wachovia Group Long Term Disability Plan ("the Plan") includes a benefit calculation provision that is specifically designed to fairly compensate a commissioned income employee who suffers from an intermittent chronic disability, such as Mr. Conrad. Specifically, the Plan contains a section entitled "Calculation of Predisability Earnings." It

1

refers to "Predisability Earnings" as "Benefits Eligible Compensation" or "BEC." The operative section states, in pertinent part, that "… your BEC or predisability earnings is determined **as of the business day immediately preceding the date you incur a disability.**" (Emphasis added) This is an important provision because the compensation of commissioned employees fluctuates and an employee should not be penalized by a downturn caused by a disability.

Therefore, the critical date is **not** (1) the date that an employee last reports for work (2) the date that the employee files a notice of claim, or (3) the date and elimination period is met. Rather, the Plan is very specific and mandates that predisability earnings are determined as of specific date i.e. the business day immediately preceding the date a disability is incurred. In the case of a traumatic injury one might expect that the day immediately preceding the date of the disability would coincide with an employee's last day of work. However, that is not the case in the case of a progressive chronic disease with remissions and relapses. Here, Wachovia acknowledges that **at the very latest** Mr. Conrad incurred his disability on November 24, 2003, the date of his hospitalization. Therefore, even if the Plan Administrator (for reasons yet explained) did not give Mr. Conrad credit for any full or partial days of absence between September, 2003 and November 24, 2003, it should have used November 24, 2003 as the "business day immediately preceding the date Mr. Conrad incurred a disability" at the very latest.

Here, the Plan also includes a benefit provision specifically designed to recognize the affect of disabilities caused by chronic progressive diseases i.e. "Intermittent Chronic Disabilities." In the case of Intermittent Chronic Disabilities i.e. disabilities of long duration

characterized as diseases showing little change or slow progression, non-consecutive days are counted toward the 8 day elimination period.

The Plan also includes a provision giving Wachovia responsibility for tracking Plaintiff's days of absence from work. And finally, the Plan contains a section entitled "Partial Disability" which states that, in calculating the 8 day elimination period required for the commencement of benefits, partial absences, due to disability should be counted. This Plan provision states that, "Liberty, however, will consider the entire day as STD time, even though you are working on a partial basis, as this qualifies toward the 26 week elimination period for LTD."

Read as a whole, under this Plan the initial 8 day elimination period includes days which are neither consecutive, nor in which the applicant is absent for an entire day. However, the Plan Administrator never applied the Plan that way.

Here, Mr. Conrad submitted a claim for disability benefits in August, 2004. In support of his claim, he submitted an Attending Physician Statement ("APS") signed by his primary treating physician Dr. Petruncio dated November 19, 2004. The APS dated November 19, 2004 indicates that Mr. Conrad was first treated on September 15, 2003 for chronic fatigue syndrome, severe obstructive sleep apnea, uncontrolled hypertension, anxiety and depression. Mr. Conrad attempted on multiple occasions to communicate to Wachovia and Liberty that his disability began in September, 2003 and that he was absent from work on numerous days thereafter.

What stands out in this case is that neither Wachovia, nor Liberty ever even **attempted** to determine: (a) When Mr. Conrad was absent from work (including partial absences) commencing September, 2003; and (b) Whether those absences were caused by a disability

within the meaning of the Plan. In one case, Liberty issued a letter to Mr. Conrad actually denying that the Plan contained a provision for intermittent chronic disability benefits. ("The Wachovia Group LTD Plan does not provide intermittent chronic disability benefits.") (Plaintiff's Statement of Uncontested Material Facts ¶64; Exhibit 20)

Additionally, even though Wachovia was responsible for tracking absences, it ignored multiple requests for Mr. Conrad's attendance records during the months of September, October and November, 2003 (Plaintiff's Statement of Material Facts ¶74, ¶94, ¶103, ¶105, ¶106; Exhibits 28, 34, 38, 39 and 40); in one case stating that it was refusing to provide the information "without a Subpoena". (Plaintiff's Statement of Material Facts ¶75; Exhibit 30)

It is also well documented that Mr. Conrad sent numerous medical reports to the Plan Administrator, including the notes of Dr. Petruncio's treatment between September, 2003 and December, 2003 establishing the commencement of Mr. Conrad's disability in September, 2003. (Plaintiff's Statement of Material Facts ¶78; Exhibit 29; TJH Declaration 10/11/2010 ¶3, Exhibit 2) Mr. Conrad also submitted multiple reports from Dr. Thomas F. Morley all confirming the onset of Mr. Conrad's disability in September, 2003. Mr. Conrad issued a letter to Wachovia Benefits Committee dated December 31, 2004 explaining that:

> "… since September 15, 2003 I have been struggling with various chronic ailments. I first went to my primary physician who did a number of blood tests to determine the cause of my symptoms which included sweats, fatigue, diarrhea, sudden weight loss, lack of appetite, short term memory loss, etc. I continued to work but **found it difficult to work my regular hours**. Subsequently my production gradually declined as my symptoms persisted. (Emphasis added)

(Plaintiff's Statement of Uncontested Material Facts ¶36; Exhibit 4) In other words, beginning September 15, 2003 Mr. Conrad was partially absent on a regular basis.

4

Mr. Conrad further explained that he spoke with a representative of Liberty Mutual and informed the representative, "that I was unable to perform my entire work tasks but I was able to answer phone calls from clients and was likely to continue servicing my clients who call in." (Plaintiff's Statement of Uncontested Material Facts ¶36; Exhibit 4)  Mr. Conrad closed the letter by stating, "I hope you will examine the evidence in my situation and make the determination to adjust my benefits accordingly."  Mr. Conrad supported the letter with paystubs, a benefit calculation and an Attending Physicians Statement from his treating physician, George Petruncio, M.D. dated November 19, 2004.  Dr. Petruncio's Attending Physicians Statement indicated that Mr. Conrad was first treated on September 15, 2003.  (TJH Declaration 10/11/10, Exhibit 5)

An undated letter from Dr. Petruncio was also submitted indicating that Mr. Conrad had been a patient of Dr. Petruncio for over ten years and, "In September, 2003 Mr. Conrad experienced the onset of symptoms of depression, fatigue and malaise.  Prior to September, 2003 he was healthy, enthusiastic and quite successful in his position as a stockbroker.  Since the onset of symptoms in September, 2003 he has experienced spontaneous diapheresis of unknown etiology, depression, malagia, sleep apnea, etc.  His attempts to return to work only aggrevated his condition with a result in total disability."  (TJH Declaration 10/11/10, Exhibit 2)

The Plan Administrators' records confirm that Mr. Conrad had been disabled for seven days as of December 1, 2003.  (TJH Declaration 10/11/10, Exhibit 3) ("On 12/22/03 Mr. Conrad called in a claim with the date of disability as 11/25/03.  He returned to work 12/1/03, the seventh day from his date of disability.  Therefore, he did not satisfy the 8 day elimination period.")  The Plan Administrator's memo further indicates that in speaking with Mr. Conrad it

learned that in September Mr. Conrad began losing weight rapidly and by October "he was feeling bad... lost appetite... was seeing M.D. on weekly basis... week of Thanksgiving, he was admitted to hospital ... 11/24/03.  And D/C. on 11/28/03 ... continued with sx's after D/C...."

Liberty's memo further confirms that it was informed that, "Mr. Conrad's production was affected and his sales were down..." and that "he explained he was there, but he wasn't..."  In other words, Mr. Conrad was showing up for work, but was unable to competently perform his job.

The memo closes by stating that the Liberty representative "explained that since he had not satisfied E.P., we would not be able to consider claim; however, going forward, **if sx's reoccur** or something else comes up... if he misses at least 8 days from work, **he can file claim**... clmt advised he understood."  (Emphasis added)

However, the Plan Administrators made absolutely no attempt whatsoever to actually review the medical information provided in order to evaluate Mr. Conrad's claim that his disability actually began in September, 2003 and that he suffered an intermittent chronic disability.  In other words, the administrative record is absolutely devoid of any medical consultation or similar type of inquiry into Mr. Conrad's medical condition and days of absence during the September, 2003 through December, 2003 time period.

In other words, this is not a case where the Plan Administrators actually reviewed employment and medical records in order to reach a conclusion that Mr. Conrad was not disabled as of September, 2003. Rather, Liberty/Wachovia simply kept repeating without any meaningful explanation that August, 2004 was the date of disability being utilized.

In fact, the co-Plan Administrators, Liberty and Wachovia, literally bounced the Plaintiff back and forth, with Wachovia writing in one instance that, "We have confirmed with Liberty that they have not previously received a claim request to adjust your disability benefits," (Plaintiff's Statement of Material Facts ¶47; Exhibit 8) and Liberty writing in another instance that, with respect to the calculation of BEC, "… we must defer all comments and inquiries directly to the Wachovia Corporation, as we are not able to comment on this." (Plaintiff's Statement of Material Facts ¶82; Exhibit 31)

Here, the Administrative Record clearly reflects that Mr. Conrad's illness began in September, 2003. The uncontroverted facts contained in his November, 2007 appeal demonstrate that, for the very illness for which benefits were subsequently approved, Mr. Conrad missed 13 days in September, 2003; 12 days in October, 2003; 13 more days in November, 2003 (including a hospitalization); and 9 days in December, 2003. (Plaintiff's Statement of Material Facts ¶110; Exhibit 41)

Here, Plan Administrators improperly used the last date that Mr. Conrad worked before an extended absence i.e. August 3, 2004. (Exhibit 31) However, that date is clearly not the business day immediately preceding the date he incurred his disability. Mr. Conrad produced a wealth of medical information indicating that he was struggling with his illness since September, 2003. And, he produced evidence that in November, 2003 he had to leave a very important meeting and became hospitalized for a full week and thereafter experienced further days of absence during that month followed by 9 more days of absence in December, 2003.

The Plan Administrator has attempted to confuse the issue by asserting that Mr. Conrad failed to appeal the rejection of his initial short term disability application. However, the fact that Mr. Conrad's first short term disability claim was denied in January, 2004 is of no

consequence whatsoever with respect to this issue. Mr. Conrad is not seeking benefits for the months of September through December, 2003; rather, he is simply seeking an accurate calculation of his BEC by using the correct disability onset date which occurred in September, 2003.

The only thing that the Plan Administrator decided when it denied Mr. Conrad's first short term disability claim was that as of November 25, 2003, in its opinion, Mr. Conrad failed to satisfy the requisite elimination period. (See Defendant's Statement of Material Facts not in dispute, para. 13) Liberty has not clarified whether it perceived that Mr. Conrad had satisfied one, two, three, four, five, six or seven days of the 8 day elimination period as of November 25, 2003; only that Mr. Conrad had not satisfied the full 8 day elimination period as of November 25, 2003. (It is noteworthy that in support of its Motion for Summary Judgment, Wachovia still takes the position that an absence of 8 **consecutive** days is required. See Defendant's Statement of Material Facts not in dispute, para. 13)

In his appeal dated November 13, 2007, Mr. Conrad demonstrated that he was hospitalized on November 26th, 27th and 28th and was absent again on December 1st, 2nd, 3rd, 5th, 8th, 12th, 16th, 18th and 22nd.

Again, it is not clear whether the Plan Administrator counted one day or seven days prior to November 25, 2003. If 7 days, then the elimination period may have been satisfied as of November 26, 2003. However, even in a worse case scenario where the Plan Administrator did not count *any* days prior to November 25, 2003 (because none of the days were consecutive), Mr. Conrad's eighth day of absence after November 25, 2003 would have occurred on December 8, 2003. (November 26th, 27th, 28th, December 1st, 2nd, 3rd, 5th and 8th).

8

To this day the Plan Administrators have never denied that Mr. Conrad was absent on those days. Nor, has the Plan Administrators ever made a review and determination that Mr. Conrad was not disabled during those days and/or that his disability was not the same disability for which he ultimately left work on August 4, 2004.

However, the operative date for calculation for BEC does not rest on the date of the end of the elimination period. It is "the business day immediately preceding the date you incur a disability." Therefore, the operative date is clearly not the last day that an elimination period is satisfied as that would be directly contrary to the plain language of the Plan.

In the case of an intermittent chronic disability such as this where non-consecutive days are involved, the date the disability was incurred would be used even if it represented a date weeks, or, in this case months, before the employee finally stopped showing up for an extended period of time. For example, if an individual suffered an intermittent chronic disability that began on January 1st of a given year and then missed one day per month for the next eight months, the 8 day elimination period and entitlement to benefits would not occur until August. However, the BEC calculation date would be January 1st of that year. Here, the Plan Administrator has steadfastly refused to comply with the Plan by refusing to use Mr. Conrad's disability onset date as the operative date for cancellation of his pre-disability earnings. The date used by Liberty/Wachovia, i.e. August 3, 2004, is patently incorrect as it is well documented that this chronic progressive illness certainly did not suddenly occur on August 3, 2004.

In reviewing a Plan Administrator's interpretation of an ERISA Plan, the initial step involves an examination of the Plan in order to determine whether the terms of the Plan document are ambiguous. See <u>In Re: Unisys Corp. Long Term Disability Plan ERISA Litig.</u>,

97 F. 3d at 715-16. ("If the terms are unambiguous, then any actions taken by the Plan Administrator inconsistent with the terms of the Plan are arbitrary.")  Sotak v. Baxter Health Care Corp., 2010 W.L. 3303818 (W.D.Pa.)

In deciding if a Plan Administrator's determination is arbitrary i.e. without reason, unsupported by the evidence, or erroneous as a matter of law, the following rules of construction of contracts will be applied:  The Plan must be considered as a whole; straightforward, unambiguous language should be given its natural meaning; and, if a specific provision found in the Plan conflicts with a general provision, the specific provision should control.  Saltzman v. Independence Blue Cross, 2010 W.L. 2340182 (3d Cir. 6/10/10).

The following factors will be considered in determining whether a Plan Administrator's interpretation of the Plan is reasonable:

"(1)     Whether the interpretation is consistent with the goals of the Plan;

(2)     Whether it renders any language in the Plan meaningless or internally inconsistent;

(3)     Whether it conflicts with the substantive or procedural requirements of the ERISA statute;

(4)     Whether the [relevant entities have] interpreted the Plan at issue consistently; and

(5)     Whether the interpretation is contrary to the clear language of the Plan."

Howley v. Mellon Financial Corp., 2010 W.L. 3397456 (C.A. 3) (NJ) (citing Moench v. Robertson, 62 F. 3d 553, 556 (3d Cir. 1995).

As set forth in In Re: Unisys Corp., supra., "After an examination of the Plan documents in order to determine the clear and express language contained therein, the

10

unambiguous written provisions of the Plan control." In Re: Unisys, supra. at 902. "Straight forward language in a Plan is to be given its natural meaning." Ryan By Capria-Ryan v. Federal Express Corp., 78 F. 3d 123 (3d Cir. 1996).

Here, the Plan Administrators' determination was arbitrary because it is directly contrary to the clear language of the Plan, and the calculation of Mr. Conrad's benefits eligible compensation and resultant long term disability benefits was clearly inconsistent with the express unambiguous terms of this Plan. In calculating Mr. Conrad's BEC, this Plan Administrator has utilized a date which is plainly not the date expressly stated in the Plan. The Plan Administrator has used the last day that Mr. Conrad reported for work before an extended leave rather than the last business day before his disability was incurred.

By the Plan Administrator's own acknowledgment, Mr. Conrad's disability began at the very latest when he was hospitalized on November 24, 2003. At the very least the Plan Administrator should be ordered to recalculate Mr. Conrad's BEC as of November 24, 2003. However, it would be more appropriate to utilize the date selected by Mr. Conrad; namely, September, 2003, as it is based on numerous medical reports establishing that September, 2003 represented the onset of his disability. This onset date is established not only by the medical reports, but by Wachovia's own compensation records showing the sharp drop of commission income experienced by Mr. Conrad as of September, 2003.

Mr. Conrad submitted a letter to Wachovia dated March 11, 2005 explaining that he was extremely productive for 14 years, continuing to "advance in productivity and recognition, achieving levels of production granting him the title of Senior VP." (Plaintiff's Statement of Material Facts; Exhibit 7)

Mr. Conrad further explained that "Then, the unthinkable happens in September, 2003. The broker develops various symptoms which detract from his productivity." Mr. Conrad explained that "This is what happened to me in September, 2003, I came to the office while I was under physician's care and answered phones, placed orders from clients and did what I could due (sic) to be helpful."

On March 24, 2006 Mr. Conrad sent a letter to Wachovia providing a chart of his income from 1988 through 2003.  The chart substantiates that Mr. Conrad's commission income in October, 2000 it was $15,398.00 per month; in the year 2001 it was $21,769.00 per month; and in the year 2002 it was $15,161.00 per month.  Between January, 2003 and August, 2003 Mr. Conrad's commission income was $12,428.00 per month.  However, in September, 2003 his commission income sharply dropped so that between September, 2003 and December, 2003 it was only $4,298.00 per month, between approximately 20% and 33 1/3% of his customary earnings.  (Plaintiff's Statement of Uncontested Material Facts ¶50; Exhibit 10)

## II.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Regardless of whether this matter results in a judgment for past due benefits, or a remand for a further calculation of said benefits consistent with the Plan, Plaintiff, in either event, would be a successful party and, therefore, be entitled to the recovery of attorney's fees. See Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149 (2010).  In order to be entitled to attorney's fees under ERISA's general fee-shifting statute, a party need only show that it has achieved some success on the merits.  In Hardt the United States Supreme Court specifically

held that a fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under §1132(g)(1).

In determining the appropriateness of an award for attorney's fees the Court should examine the following 5 factors:

(1)  The degree of opposing parties' culpability or bad faith;

(2)  Ability of opposing parties to satisfy an award of attorney's fees;

(3)  Whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;

(4)  Whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA Plan or to resolve a significant legal question regarding ERISA itself; and

(5)  The relative merits of the parties' positions.

Hardt, supra. at 2155.

In Hardt, the Court remanded the matter permitting Reliance a further opportunity to consider the evidence and to act on Hardt's long term disability application. Reliance acted accordingly and ultimately awarded Hardt benefits. Hardt then filed a Motion for an award of attorney's fees which was denied on the basis that Hardt was "not a prevailing party." On appeal the United States Supreme Court ruled that being a "prevailing party" was not necessary; rather, a fee claimant "must have achieved some litigating success to be eligible for fees award…" Hardt supra. at 2157.

In this case, it is respectfully submitted that the Plan Administrator's abject refusal to even attempt to consider whether Mr. Conrad's disability began in September, 2003, coupled

13

with its refusal to provide attendance records, should be strongly considered. It is also respectfully submitted that strong consideration should be given to the fact that Wachovia and Liberty bounced Mr. Conrad back and forth on this issue each at one point indicating that it was the other's responsibility to calculate benefits eligible compensation, in one case issuing a letter to Mr. Conrad indicating that the Plan did not even contain a provision for intermittent chronic disabilities. Significantly, Defendant continues to take the position in its Motion for Summary Judgment that 8 consecutive days are needed. Then, in an effort to sustain its position, the Plan Administrator attempted to cloud the issue by arguing that Mr. Conrad did not appeal the denial of his first STD claim, which is immaterial to the issue of the date to be used for the computation of his benefits eligible compensation. A resolution of this issue favorable to the Plaintiff will benefit all participants and beneficiaries of the Plan as it will reinforce to the Plan Administrator the meaning of the terms of the Plan concerning the calculation of pre-disability earnings in the case of employees who suffer from intermittent chronic disabilities.

## CONCLUSION

It is uncontroverted that the Plan Administrators here violated the terms of the Plan in the following critical respects:

(1)     It calculated pre-disability income by using the last day Plaintiff worked before an extended absence instead of the day immediately preceding the date he incurred his disability;

(2)     It counted only consecutive days of absence towards the elimination period, when it was required to consider non-consecutive days of absences;

(3)     It only counted complete days of absences towards the elimination period when it was required to consider partial days of absences; and

(4)     The Plan Administrator refused to provide attendance records in order to permit Mr. Conrad to support his claim that he satisfied the elimination period.

In doing so, The Plan Administrator has endeavored to penalize Mr. Conrad for attempting to contribute in some small way to his job. However, the Plan requires that the diminution in income caused by Mr. Conrad's disability should be measured against his performance before he became disabled.

 

**Respectfully Submitted,**

**HAGNER & ZOHLMAN, LLC**
Attorneys for Plaintiff

DATED: October 21, 2010                    BY: _____
                                                                 Thomas J. Hagner