**HAGNER & ZOHLMAN, LLC**
Commerce Center
1820 Chapel Ave. West
Suite 160
Cherry Hill, New Jersey 08002
(856) 663-9090
Attorney for: Plaintiff

By: Thomas J. Hagner, Esquire

---

| | |
|---|---|
| ROBERT S. CONRAD, SR. | UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. 1:08-cv-05416 |
| THE WACHOVIA GROUP LONG-TERM DISABILITY PLAN; | |
| Defendant. | |

---

**BRIEF IN REPLY TO SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT, WACHOVIA**

---

**PRELIMINARY STATEMENT**

Plaintiff, Robert S. Conrad, Sr., submits this Brief in Reply to the Supplemental Brief in further support of the Motion for Summary Judgment filed on behalf of Defendant, Wachovia Corporation Long Term Disability Plan ("Plan").

The Plan continues to confuse the issue of when Mr. Conrad's **disability began** with the issue of when his **benefit eligibility began**. In its Supplemental Brief the Plan admits that Mr. Conrad's disability began at least as early as November 24, 2003 when Mr. Conrad was

1

hospitalized for a week. In an attempt to confuse the issue, the Plan side-steps the critical issue of when Mr. Conrad's disability began and focuses on when the elimination period was satisfied. Here, the Plan agrees that Mr. Conrad's disability began when he was hospitalized in November, 2003, at which time he satisfied at least 4 days of the elimination period. While the date that the elimination period was ultimately satisfied may be open to debate, the **latest** date that Mr. Conrad's disability began is not open to debate, i.e. at least as early as November 24, 2003 (although it arguably occurred earlier in September, 2003). Therefore, the Plan has never correctly calculated Mr. Conrad's long term disability benefit because it has never acknowledged in its calculation a date earlier than August, 2004, which is the date that it deemed the elimination period to be satisfied.

## LEGAL ARGUMENT

### I. THE PLAN HAS VIOLATED THE EXPRESS TERMS OF THE PLAN IN THE CALCULATION OF MR. CONRAD'S BENEFITS.

In support of its Motion for Summary Judgment the Plan states that Mr. Conrad was absent from work due to illness between Monday, November 24, 2003 and Friday, November 28, 2003. (Defendant's Uncontested Statement of Material Facts, ¶12) Defendant maintains that because Mr. Conrad was not absent from work for a period of 8 days at that point he failed to satisfy the requisite elimination period and therefore his claim for disability benefits was denied. (Defendant's Uncontested Statement of Material Facts, ¶14) Mr. Conrad was specifically advised that after the 8 days were satisfied he could proceed with the claim based on the disability which had begun.

The Plan has **never contested** Mr. Conrad's claim that the illness which led to his extended absence beginning in August, 2004 was not a continuation of the same illness that

caused his absence in November, 2003. Moreover, the Plan has **never contested** Mr. Conrad's claim that his illness actually began in September, 2003 and that it resulted in numerous absences throughout September, October, November and December, 2003. These dates were set forth in detail in Mr. Conrad's appeal dated November 13, 2007. (Plaintiff's Uncontested Material Facts, ¶108-¶112; Exhibit 41) In all of the multiple letters which Liberty and the Plan sent to Mr. Conrad in response to his claim that his BEC was miscalculated because the wrong disability onset date was used, the only reason given was a non-reason i.e. the date of August 3, 2004 was used.

In fact, while the Plan argues that Mr. Conrad never advised the Plan of the exact days of his absence, the record contains approximately one half dozen letters to the Plan requesting Mr. Conrad's attendance records between September, 2003 and December, 2003 - all of which were totally ignored by the Plan. Moreover, while the Plan now argues that Mr. Conrad did not file an intermittent chronic disability claim, it ignores the facts that not only did Mr. Conrad attempt to do so, but in response to his attempt to do so he was advised that, "The Wachovia Group LTD Plan does not provide intermittent chronic disability benefits."

In Defendant's Supplemental Statement of Material Facts Not in Dispute, dated October 21, 2010, the Plan refers to a memo of a telephone call between Mr. Conrad and a Ms. Darby on January 20, 2004. A reading of the memo clearly shows Mr. Conrad advised Ms. Darby that he was unable to work competently, and, even though he was showing up for work, "he was there but he wasn't." This is consistent with Mr. Conrad's letter of December 31, 2004 which explained in great detail how his disability began on September 15, 2003. Mr. Conrad explained, among other things, that he was unable to work a full day. ("I continued to work but found it difficult to work my regular hours.") ("... I told the Liberty rep. that I was unable

to perform my entire work tasks but I was able to answer phone calls from clients and was likely to continue servicing my clients who called in.")

More importantly, in his telephone conversation with Liberty's representative, Tasha Darby, on January 19, 2004 Mr. Conrad provided much more detail than her abbreviated notations reveal. (Conrad Declaration 11-1-10)   The Liberty representative **was** told that there had been frequent absences - both full days, and partial days - and was **never** told that Mr. Conrad came to work every day except the week of November 24th.

Furthermore, at any point in the five year administration of the claim Wachovia could have simply spoken to Mr. Conrad's supervisor to determine when he was absent.  Instead, it refused to supply his attendance records "without a Subpoena."

The Plan also agrees in its Supplemental Brief that Plaintiff, "…could file an STD claim if he satisfied the elimination period based on a recurrence on his November 24, 2003 symptoms…"   That is precisely what Mr. Conrad did.  The problem is that when he did so the Plan calculated his BEC erroneously by using the date that his elimination period was satisfied as a beginning point of the disability as opposed to the initial occurrence of the illness.

Most importantly, however, Ms. Darby's memo of her conversation with Mr. Conrad on January 20, 2004 closes with the following statement that she "…explained that since he had not satisfied the elimination period, we would not be able to consider claims; however, going forward, **if symptoms if reoccur** or something else comes up… **if he misses at least 8 days from work, he can file a claim**… Claimant advised he understood."   (Emphasis added)

Mr. Conrad proceeded not only according to the Plan, but also precisely in accordance with the instructions given to him by Ms. Darby.   While, in the view of the Plan, Mr. Conrad had not satisfied an 8 day elimination period as of November, 2003, eventually he did so.  That

is not the issue.  The issue is **when** Mr. Conrad's disability began.  Both here, and also during the entire administrative process, the Plan has offered nothing whatsoever to dispute Mr. Conrad's claim that his disability began in 2003.

The Plan argues that, "The only documents Plaintiff presented to the Plan in 2004 were those used to establish his August 3, 2004 disability date." (Supplemental Brief, pg. 3)  That is incorrect.  Plaintiff presented documents in late 2003 indicating an onset of his disability in 2003 and, through the course of multiple appeals, provided evidence of his absences throughout September, 2003 through December, 2003.  He also submitted his December 2004 letter.  In essence, the Plan seems to argue that it had the right to disregard all of the evidence that Mr. Conrad submitted throughout the multiple appeals.  If that is the case, then these appeals truly were acts of futility.  (In actuality, the Attending Physician Statement of Dr. Petruncio submitted in November, 2004 indicated that treatment began on September 15, 2003.)

Finally, the Plan argues in its Supplement Brief that "Plaintiff cannot claim benefits for an alleged period of disability with respect to which he never submitted a notice or proof of claim." The Plan's argument might make sense if Mr. Conrad was claiming benefits beginning in September, 2003.  However, he is not claiming benefits back to then.  He is simply claiming that since his disability began in 2003 that his benefits eligible compensation should be computed accordingly.

### II. THE NEW REASONS FOR DENYING BENEFITS SHOULD BE DISREGARDED AS AFTER-THE-FACT RATIONALIZATIONS BEYOND THE REASONS STATED IN THE ADMINISTRATIVE RECORD.

In a further effort to deny Mr. Conrad's claim, the Plan now resorts to new arguments and after-the-fact rationalizations.

In its Supplemental Brief the Plan goes to great length to explain why, in its view, Mr. Conrad failed to satisfy certain requirements of the Plan regarding intermittent chronic disability claims. The problem is, none of these reasons were ever communicated to Mr. Conrad over five years and dozens of communications. The administrative record reflects over a dozen letters back and forth between Mr. Conrad where Mr. Conrad was insisting that his disability began in 2003, but the Plan claimed otherwise. See e.g. Plaintiff's Statement of Uncontested Material Facts, Exhibits 7, 9, 10, 11, 13, 14, 16, 17, 18, 20, 28, 30, 31 and 41. However, none of these written communications contained anything close to what the Plan now, through counsel, offers as a reason for denial. Accordingly, these additional reasons argued by the Plan's counsel represent nothing more than *post hac* justifications of the type which have been universally criticized and rejected. See e.g. Skretvedt v. E.I. DuPont Denemours & Co., 268 F. 3d 167, 178, n.8 (3rd Cir. 2001). ("We take this opportunity, however, to underscore the importance of pension boards providing specific reasons for denying applicants' benefits claims, both so that the applicants may introduce the proper evidence on appeal and so that a federal court may exercise meaningful review.").

As the court explained in Skretvedt, citing University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839 (6th Cir. 2000), it "…strikes us as problematic to, on the one hand, recognize an administrator's discretion to interpret a Plan by applying a differential 'arbitrary and capricious' standard of review, yet, on the other hand, allow the administrator to 'shore up' a decision after – the – fact by testifying as to the 'true' basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative *post hoc* arguments that can survive deferential review…"

See also, Doyle v. Nationwide Ins. Companies. 240 F.Supp. 2d 328 (E.D. Pa. 2003). There, the Court noted that, "It is the Administrator's obligation to provide its 'specific reasons' for the denial. Id. Without knowing the specific reasoning behind the Administrator's decision, the Plaintiff was at a significant disadvantage in framing a response on appeal. This is the precise conduct condemned by the Third Circuit in Skretvedt, 268 F.3d at 177 n. 8 and it weighs in favor of finding that the Administrator's decision was arbitrary and capricious." Doyle, supra at 345.

Parenthetically, the Plan argues erroneously that "the onus was solely on Plaintiff to track any days of absence from work as they occurred…" (Defendant's Supplemental Brief, pg. 6) In fact, the express language of the Plan states otherwise, and the responsibility for tracking days of absence is shared by the employee and his Manager.

The statement in the Supplemental Brief that since Plaintiff was a 100% commissions financial advisor "who made his own hours" with the suggestion being that Mr. Conrad's Manager could not track absences himself was not only an after-the-fact argument but also a totally unsupported  -  and unsupportable  -  gratuitous statement by counsel. It is telling that at this stage the Plan needs to resort to not only making up new information, but making up new information that directly contradicts the express language of the Plan. And, of course, in this case, Wachovia's refusal of Mr. Conrad's multiple requests for his attendance records should be denied.

Respectfully Submitted,

HAGNER & ZOHLMAN, LLC
Attorneys for Plaintiff

DATED:  November 3, 2010          BY:_____
                                          Thomas J. Hagner